1

**GAUNTLETT & ASSOCIATES**
David A. Gauntlett (SBN 96399)
2   James A. Lowe (SBN 214383)
Andrew M. Sussman (SBN 112418)
3   18400 Von Karman, Suite 300
Irvine, California 92612
4   Telephone:  (949) 553-1010
Facsimile:  (949) 553-2050
5   jal@gauntlettlaw.com
ams@gauntlettlaw.com
6
Attorneys for Plaintiff
7   Big 5 Sporting Goods Corporation

8

FILED

2012 APR 27  PM 3: 51

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

9               **UNITED STATES DISTRICT COURT**

10              **CENTRAL DISTRICT OF CALIFORNIA**

11                    **WESTERN DIVISION**

12

13   BIG 5 SPORTING GOODS            )   Case No **CV12-3699** DMG
CORPORATION, a Delaware         )                      (MANx)
14   corporation,                    )   Hon.
)
15                    Plaintiff,     )
)   **COMPLAINT FOR:**
16                                   )
vs.                        )   **(1) DECLARATORY JUDGMENT
17                                   )   ON DEFENDANTS' DUTY TO
)   REIMBURSE DEFENSE EXPENSES;**
18   ZURICH AMERICAN INSURANCE       )
COMPANY, a New York corporation;)   **(2) BREACH OF CONTRACT; and**
19   and HARTFORD FIRE INSURANCE     )
COMPANY, a Connecticut corporation, )  **(3) BREACH OF THE DUTY OF
20                                   )   GOOD FAITH AND FAIR DEALING**
)
21                    Defendants.    )   **JURY TRIAL DEMANDED**
)
22                                   )

23

24

25

26

27

28

173239.11-10635-001-4/27/2012                    1

**COMPLAINT**

In this insurance coverage case, Plaintiff Big 5 Sporting Goods Corporation ("Big 5") seeks a declaratory judgment that its insurers, Defendants Zurich American Insurance Company ("Zurich") and Hartford Fire Insurance Company ("Hartford"), are obligated to fully reimburse Big 5 for reasonable defense expenses incurred in underlying class action lawsuits that allege that Big 5 infringed the privacy rights of class members by allegedly requesting, recording and publishing the ZIP Codes of customers to its stores. Since Zurich and Hartford have refused to fully reimburse Big 5's reasonable defense expenses in the underlying litigation, Big 5 must seek a declaration obligating them to do so.

Additionally Big 5 seeks damages from Zurich and Hartford for breach of contract for failing to pay or fully reimburse defense expenses Big 5 incurred and paid in underlying class action lawsuits that allege that Big 5 infringed the privacy rights of class members by requesting, recording and publishing the ZIP Codes of customers to its stores. The underlying factual allegations established a potential for coverage under Zurich's and Hartford's respective policies obligating them to fully reimburse Big 5 for reasonable defense expenses incurred in the underlying litigation. Since Zurich and Hartford have refused to fully reimburse Big 5 for the underlying defense expenses, they have each breached their respective insurance contracts with Big 5.

Because of the failure and refusal of Zurich and Hartford to fully pay defense expenses for the ZIP Code lawsuits, Big 5 has defended all the ZIP Code cases at its own expense and has incurred or paid hundreds of thousands of dollars in defense expenses that should have been reimbursed by Zurich and Hartford but were not. Those defense expenses continue and the insurers are obligated to pay them.

### THE PARTIES

1.      Plaintiff Big 5 is a Delaware corporation with its principal place of business at 2525 East El Segundo Blvd., El Segundo, CA 90245.  Big 5 is a citizen of Delaware and California.

2.     On information and belief, Defendant Zurich is a New York corporation with principal offices in Illinois, licensed to sell insurance in the State of California. Zurich is a citizen of New York and Illinois.

3.     On information and belief, Defendant Hartford is a Connecticut corporation, with principal offices in Connecticut, licensed to sell insurance in the State of California. Hartford is a citizen of Connecticut.

## JURISDICTION

4.     This is an action for declaratory relief pursuant to 28 U.S.C. § 2201 and for breach of contract.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Big 5, Zurich and Hartford and there is more than $75,000 in controversy in this action.

## VENUE AND APPLICABLE LAW

5.     Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(a)(c). The Defendant insurers sold and issued insurance policies to Big 5 in this District. Big 5 has its headquarters in this District. The recently consolidated ZIP Code cases for which Big 5 seeks defense expense reimbursement are pending in this District.

6.     This District is the place of performance under the policies and California law governs the Insurers' obligations to Big 5.

## INSURANCE POLICIES

### THE ZURICH POLICIES

7.     Zurich issued to Big 5 a commercial general liability policy, effective for the period September 25, 2007 through September 25, 2008. Zurich issued renewals to Big 5 which provided coverage from September 25, 2008 through September 25, 2010. ("the Zurich Policies") A copy of Zurich Policy, No. GLO 9262202-00, covering the period from September 25, 2007 through September 25, 2008 is attached as **Exhibit "1."** A copy of Zurich Policy, No. GLO 9262202-01, covering the period

from September 25, 2008 through September 25, 2009 is attached as **Exhibit "2."** A copy of Zurich Policy, No. GLO 9262202-02, covering the period from September 25, 2009 through September 25, 2010 is attached as **Exhibit "3."** The Zurich Policies provide coverage for "personal and advertising injury" caused by an offense committed during the policy period.

8.     The Zurich Policies promise to pay Big 5's "defense costs" for potentially covered claims after the Self Insured Retention ("SIR") of $250,000 per occurrence is satisfied by Big 5's payment of defense expenses and damages.

9.     The Zurich Policies provide that Big 5 will select and control defense counsel. Zurich has no primary duty to defend but only an obligation to reimburse "defense costs" after the SIR is satisfied, promising in its policies that "We Pay All Defense Costs Excess of Self Insured Retention Amount" and "[t]he Per Occurrence Amount is the most you will pay for damages and 'defense costs' arising out of any one 'occurrence' regardless of the number of persons or organizations making claims or bringing suits because of the 'occurrence'."

10.     Pertinent Zurich Policy language applicable from September 25, 2007 through September 25, 2010 includes:

**Coverage B - Personal and Advertising Injury Liability**

**1.  Insuring Agreement**
       **A.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages . . . .

**2.  Exclusions**
This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:
. . . .

       **c.**  Any statute, ordinance or regulation, other than the

TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**V – DEFINITIONS**

. . . .

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury . . . arising out of one or more of the following offenses: . . .

. . . .

    e. Oral or written publication, in any manner, of material that      violates a person's right of privacy;

. . . .

    11. The Zurich Policies include a "Self Insured Retention Endorsement" showing it is applicable "Per Occurrence." Next to "Per Occurrence" on that Endorsement's Schedule, "$250,000" is the amount listed. The Endorsement reads, in pertinent part:

**I. Self Insured Retention and Defense Costs – Your Obligations**

A. The "self insured retention" amounts stated in the Schedule of this endorsement apply as follows:

1. If a Per Occurrence Self Insured Retention Amount is shown in the Schedule of this endorsement, you shall be responsible for payment of all damages and "defense costs" as they are incurred for each "occurrence" until you have paid damages and "defense costs" equal to the Per Occurrence Amount . . . . The Per Occurrence Amount is the most you will pay for damages and "defense costs" arising out of any one "occurrence," regardless of the number of persons or organizations making claims or bringing suits because of the "occurrence."

**II. Our Rights and Obligations Excess of the Self Insured Retention**

. . . .

**B. Damages Excess of Self Insured Retention – Per Occurrence or Per Claim**

    We shall be liable only for the amount of damages and "defense costs" in excess of the "self insured retention" amounts as applicable, shown in the Schedule above . . . .

**III.  Definitions**

. . . .

B.  "Defense costs" means:

expenses directly allocable to specific claims and shall include but not be limited to all Supplementary payments as defined under the policy(ies); all court costs, fees and expenses, costs for all attorneys, witnesses, experts, depositions, reported or recorded statements, summonses, service of process, legal transcripts or testimony, copies of any public records, alternative dispute resolution, interest, investigative services … declaratory judgment, subrogation and any other fees, costs or expenses reasonably chargeable to the investigation, negotiation, settlement or defense of a claim or loss under the policy(ies).

**THE HARTFORD POLICY**

12.     Hartford issued to Big 5 a commercial general liability policy, effective for the period September 25, 2010 through September 25, 2011 ("the Hartford Policy"). The Hartford Policy provides coverage for "personal and advertising injury" caused by an offense committed during the policy period and claim expenses for suits that seek those types of damages.  A copy of the Policy, No. 72 ECS R95004 is attached as **Exhibit "4."**

13.     The Hartford Policy promises to pay Big 5's "claim expenses" for potentially covered claims after the Self Insured Retention Endorsement ("SIR") of $250,000 per occurrence is satisfied by Big 5's payment of "claim expenses" and damages. The Hartford Policy promises "[w]e will pay those sums that you or any insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies; but only to the extent that such 'personal and advertising injury' is in excess of the 'self-insured retention' that has been exhausted solely by the payment of 'claim expenses' . . . ."

14.     The Hartford Policy provides that Big 5 will select and control defense counsel. Hartford has no primary duty to defend but only an obligation to reimburse "claim expenses" after the SIR is satisfied. The insured is "responsible for payment of

expenses for any defense counsel selected by . . . you . . . including 'claim expenses', until the 'self-insured retention' has been exhausted solely by your payment of 'claim expenses' . . . . 'Claim expenses' and other defense expenses incurred subsequent to the exhaustion of the 'self-insured retention' are payable by us. . . . 1. You will pay: a. With respect to any claim or 'suit' against you … all 'claim expenses' you incur within the amount of the 'self-insured retention.' . . . . 2. We will pay: a. with respect to any claim you investigate or settle, or any 'suit' against you . . . all 'claim expenses' in excess of the 'self-insured retention.' . . ."

15.    Pertinent Hartford Policy language includes:

**Coverage B - Personal and Advertising Injury Liability**

**1.  Insuring Agreement**
      **a.**  We will pay those sums that you or any insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies; but only to the extent that such "personal and advertising injury" is in excess of the "self-insured retention" that has been exhausted solely by the payment of "claim expenses" . . . .
      **b.**  You are responsible for payment of expenses for any defense counsel selected by or on behalf of you or any insured, including "claim expenses", until the "self-insured retention" has been exhausted solely by your payment of "claim expenses" . . . . "Claim expenses" and other defense expenses incurred subsequent to the exhaustion of the "self-insured retention" are payable by us, as provided in Supplementary Payments . . . .

**2.  Exclusions**
      This insurance does not apply to: . . . .

**q.     Right Of Privacy Created By Statute**
"Personal and advertising injury" arising out of the violation of a person's right of privacy created by any state or federal act.

However, this exclusion does not apply to liability for damages that the insured would have in the absence of such state or federal act.

**w.     Distribution Of Material In Violation Of Statutes**
"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:
. . . .
      (3)  Any Statute, ordinance, or regulation, other than

TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information

. . . .

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**
**1. You will pay:**
    **a.** With respect to any claim or "suit" against you or any other insured that you have a duty to defend, all "claim expenses" you incur within the amount of the "self-insured retention." . . . .

. . . .

**2. We will pay:**
    **a.** With respect to any claim you investigate or settle, or any "suit" against you or any insured you have a duty to defend, all "claim expenses" in excess of the "self-insured retention." . . . .

. . . .

**SECTION V – DEFINITIONS**
. . . .

8. "Claim expenses" include . . . expenses incurred in the investigation or defense of claims or "suits". The following are not "claim expenses":

. . . .

    d. Damages.

. . . .

19. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

20. "Personal and advertising injury" means injury . . . arising out of one or more of the following offenses: . . .

. . . .

    e. Oral or written publication, in any manner, of material that    violates a person's right of privacy;

. . . .

16.    The Hartford Policy includes several policy declarations. Under the heading "4. Self-Insured Retentions," next to "Each Occurrence Retention," the amount "$250,000" is listed.

## UNDERLYING LITIGATION

17.    In 2008, two class-action lawsuits were filed against Big 5 alleging that, in 2007, Big 5 unlawfully invaded its customers' privacy through actions in

1   furtherance of its corporate policy that cashiers request and record customers' ZIP

2   Code before completing a credit card transaction in a Big 5 store.  These lawsuits are

3   styled as *Zimerman v. Big 5 Sporting Goods*, Case No. BC383834, Los Angeles

4   Superior Court (the "*Zimerman* action"), and *Gonzalez v. Big 5 Sporting Goods*

5   *Corporation*, Case No. 37-2008-83307, San Diego Superior Court (the "*Gonzalez*

6   action").

7                                    **THE *ZIMERMAN* ACTION**

8       18.   On January 15, 2008, Adi Zimerman filed the Complaint in the

9   *Zimerman* action, a copy of which is attached as **Exhibit "5."**

10      19.   The *Zimerman* Complaint alleges that Big 5 unlawfully invaded the

11  privacy of customers as a result of corporate policy which required that cashiers

12  obtain and record ZIP Code information from customers before completing credit card

13  transactions in Big 5 stores:

14          3.     This consumer class action arises out of Big 5's
            unlawful business practice of requesting and recording
15          personal identification information, specifically zip codes,
            from customers who make purchases using credit cards . . . .
16          . . . .

17          14.    On November 18, 2007, Plaintiff purchased
            merchandise at a Big 5 store . . . with a credit card. . . .
18

19          15.    As part of the sales, Plaintiff was asked for personal
            identification information, specifically his zip code, by the
20          Big 5 clerk attending to the transaction. Plaintiff provided
            the requested personal identification information, which was
            entered into the electronic sales register. The zip code also
21          was printed on the electronically printed receipt.

22          16.    On information and belief, Big 5 uses the personal
            identification information, such as the information provided
23          by Plaintiff, for business purposes, including to create and
            maintain a database for in-house or other forms of marketing
24          and advertising and/or to sell such data to direct marketing
            specialists or other third parties.
25          . . . .

26          32.    . . . . Big 5 knowingly reveals this personal
            identification information by *printing* the customer's zip
27          code on the credit card receipt, thereby exposing the
            customer to fraud . . . .

28

1      20.    The *Zimerman* Complaint sought money damages for invasion of privacy

2  and violation of consumer protection laws.

3                       **THE *GONZALEZ* ACTION**

4      21.    On May 5, 2008, Michele Gonzalez filed the Complaint in the *Gonzalez*

5  action, a copy of which is attached as **Exhibit "6."**

6      22.    The *Gonzalez* Complaint alleges that Big 5 unlawfully invaded the

7  privacy of customers as a result of its "Information Capture" policy, the same

8  corporate policy at issue in the *Zimerman* action, that required that cashiers obtain and

9  record ZIP Code information from customers before completing transactions in Big 5

10  stores:

> 2.    . . . . Defendant is engaging in a pattern of unlawful and deceptive business practices by utilizing an "Information Capture Policy" whereby Defendant's cashiers both request and record credit card numbers and zip codes from customers using credit cards at the point-of-sale in Defendant's retail establishments.
> . . . .
>
> 3.    . . . . On information and belief, Defendant uses the zip code information obtained from the cardholder to acquire additional personal information, including the cardholder's physical residential address by pairing the zip code with the cardholder's name obtained from the credit card.
> . . . .
>
> 13.    Within the last 12 months, Plaintiff went to Defendant's retail store located in California.
>
> 14.    Plaintiff entered Defendant's store and proceeded to select a product from the store that Plaintiff intended to purchase.
>
> 15.    After selecting an item, Plaintiff proceeded to the cashiers' section of Defendant's store to pay for the item selected through the use of a credit card.
>
> 16.    Defendant's employee saw that Plaintiff had selected a product that Plaintiff wished to purchase from Defendant, and Defendant's employee then proceeded to inform Plaintiff of the amounts due to Defendant for said product. Plaintiff handed Defendant's employee Plaintiff's credit card, after which said employee proceeded to swipe, enter, and/or record the Plaintiff's name and credit card number into an electronic cash register at the checkout counter

adjacent to both the employee and Plaintiff.

17.     As part of Defendant's Information Capture Policy, Defendant's employee then requested personal identification information from Plaintiff in the form of Plaintiff's zip code, without informing Plaintiff of the consequences if Plaintiff did not provide Defendant's employee with Plaintiff's zip code. Plaintiff, believing that she was required to provide her zip code to complete the transaction, told Defendant's employee Plaintiff's zip code.

18.     Defendant's employee then typed and recorded Plaintiff's zip code into the same electronic cash register that previously recorded Plaintiff's credit card number and name.

19.     At this point in the transaction, Defendant has Plaintiff's credit card number, name and zip code recorded in the same database.

20.     Defendant's employee then printed out and handed Plaintiff a credit card transaction form to sign.

21.     Defendant's employee and Plaintiff completed the transaction and Plaintiff left Defendant's store with her purchased item.

. . . .

37.     After acquiring personal identification information from Plaintiff and members of the Class at the point of sale, Defendant utilized customized computer software to perform reverse searches from "data warehousing" or "data mining" databases. . . . Essentially, Defendant's software matched the respective Class member's now-known name, zip code and/or other personal information with said Class member's previously unknown addresses thereby covertly giving Defendant access to the Class members' names and addresses, among other personal identification information.

. . . .

39.     . . . . Plaintiff and members of the Class have suffered an injury in fact by, among other things, having their personal information disseminated to others, and being exposed to identity theft.

. . . .

43.     During credit card transactions entered into at Defendant's stores . . . Defendant invaded Plaintiff's and the Class members' right to privacy by wrongfully requesting and recording their personal identification information . . . .

44.     The intrusion was offensive and objectionable to Plaintiff, the Class and to a reasonable person of ordinary sensibilities in that the personal identification information that Defendant obtains, is used by Defendant, without Plaintiff and the Class members' knowledge, in order to

11

obtain their address information, all for the profit to
Defendant.

23.    The *Gonzalez* Complaint sought money damages for invasion of privacy
and violation of consumer protection laws.

### THE *NELSON* AND *MOTTA* ACTIONS

24.    In early 2011, additional suits were filed against Big 5 alleging damages
and alleging that Big 5 invaded its customers' rights of privacy by following its
corporate policy requiring employees to request and record customers ZIP Codes prior
to completion of credit card transactions in Big 5 stores.

25.    On March 4, 2011, Robin Nelson filed a class-action complaint in San
Francisco Superior Court styled as *Nelson v. Big 5 Sporting Goods Corporation*, Case
No. CGC-11-508829 (the "*Nelson* action").    A copy of the *Nelson* Complaint is
attached as **Exhibit "7."**

26.    On March 16, 2011, Donna Motta filed a class-action complaint in San
Francisco Superior Court styled as *Motta v. Big 5 Sporting Goods Corporation*, Case
No. CGC-11-509228 (the "*Motta* action").   A copy of the *Motta* Complaint is attached
as **Exhibit "8."**

27.    Zurich agreed that the *Nelson* and *Motta* actions were potentially covered
under the Zurich Policies while denying coverage of other suits.

28.    Hartford also agreed that the *Nelson* and *Motta* actions were potentially
covered but denied coverage of other suits.

29.    The *Nelson* Complaint makes the following allegations in support of its
claims that Big 5 violated privacy rights by requiring disclosure of personal
information at the time of purchase:

> 2.    . . . . Defendant is engaging in a pattern of unlawful
> and deceptive business practices by utilizing an
> "Information Capture Policy" whereby Defendant's cashiers
> both request and record personal identification information,
> in the form of zip codes, and credit card numbers from
> customers using credit cards at the point-of-sale in
> Defendant's retail establishments. . . .

3.    On information and belief, Defendant uses the zip codes and additional information obtained from its customers' credit cards, including names and credit card numbers (or portions thereof) to obtain its customers' home addresses. Defendant obtains these addresses with the help of third-party vendors such as Acxiom that maintain proprietary software and databases containing hundreds of millions of individual consumers' contact information. . . .

4.    Defendant does not disclose its intentions to its customers, and instead relies on the common misconception of consumers that Defendant is using the zip code information as a security measure to verify cardholders' identities . . . .Defendant, however, is not using zip codes as a security measure to verify cardholders' identities . . . .
. . . .

14.    Within the last 12 months, Plaintiff went to one of Defendant's retail stores located in California.

15.    Plaintiff entered Defendant's store and proceeded to select a product from the store that Plaintiff intended to purchase.

16.    After selecting the item, Plaintiff proceeded to the cashiers' section of Defendant's store to pay for the item selected through the use of a credit card.

17.    Defendant's employee . . . , as part of Defendant's Information Capture Policy, then requested personal identification information from Plaintiff in the form of Plaintiff's zip code, without informing Plaintiff of the consequences if Plaintiff did not provide Defendant's employee with Plaintiff's zip code.

18.    Plaintiff, believing that she was required to provide her ZIP code to complete the transaction, told Defendant's employee Plaintiff's zip code.

19.    Defendant's employee then typed and recorded Plaintiff's zip code into an electronic cash register at the checkout counter adjacent to both the employee and Plaintiff.

20.    Defendant's employee then proceeded to inform Plaintiff of the amounts due to Defendant for said product. Plaintiff handed Defendant's employee Plaintiff's credit card, after which said employee proceeded to swipe, enter, and/or record the credit card number into an electronic cash register at the checkout counter adjacent to both the employee and Plaintiff. . . .

21.    Defendant's employee made no attempt to erase, strikeout, eliminate or otherwise delete Plaintiff's personal identification information from the electronic cash register

after Plaintiff's credit card number was recorded.

. . . .

26.   Defendant is engaged in a pattern of unlawful practices by utilizing a personal identification information capture policy, whereby Defendant requests persons, who use a credit card for the payment of goods purchased from Defendant, to provide personal identification information in connection with the use of his/her credit card; and/or requires such cardholders to provide personal identification information, as a condition to accepting his/her credit card. After receiving the personal identification information of the cardholder, Defendant records it and then completes the credit card transaction. Based upon information and belief, Defendant uses customers' personal identification information for profit.

. . . .

32.   During credit card transactions entered into at Defendant's stores during the one-year period preceding the filing of this class action complaint through the present, Defendant utilized, and continues to utilize, an "Information Capture Policy" whereby Defendant's cashiers both request and record zip codes and credit card numbers from customers using credit cards at the point-of-sale in Defendant's retail establishments.

30.   The *Motta* Complaint makes substantially similar allegations in support of its claim that Big 5 violated privacy rights by requiring personal identification information at the time of purchase.

**Specific Claims of Damages for Negligence**

31.   The *Nelson* Complaint alleges that Big 5's conduct constituted negligent violation of plaintiff's right of privacy, entitling Nelson and class members to damages:

35.   Defendant owed a duty of care to Plaintiff and the Class to reasonably protect their personal identification information, including their zip codes, home addresses and payment information, and to reasonably inform them of Defendant's intended use of their zip codes for purposes not related to the completion of their credit card transactions with Defendant.

36.   Defendant negligently failed to take reasonable steps to protect Plaintiff's and the Class' personal identifying information and payment information from being collected, stored and used without Plaintiff's and the Class' knowledge or consent.

37.    Defendant negligently failed to take affirmative steps to alert Plaintiff and the Class of Defendant's intent to use their zip codes to obtain their home addresses and other private information.

38.    Defendant further negligently omitted to inform Plaintiff and the Class that it would use their personal identification information for marketing, and that it would be sold or otherwise disseminated to third parties.

39.    On information and belief, Defendant also negligently failed to comply with third-party vendor rules, which requires Defendant to have customers' informed consent prior to sharing their personal information with the vendors, or using this information to obtain their home addresses from the vendors' proprietary databases of information.

40.    On information and belief, Defendant negligently shared Plaintiffs' and the Class' personal identification information, including their zip codes and home addresses, with other vendors and retailers, and without authorization.

41.    Defendant knew, or reasonably should have known, that Plaintiff and the Class would not have provided their zip codes to Defendant, or even entered into credit card transactions with Defendant, had Plaintiff and the Class known that Defendant intended to use their zip codes to obtain their home addresses, which would then be stored and shared with others.

42.    Defendant's conduct has caused Plaintiff and the Class to suffer damages by having their personal identification information accessed, stored, and disseminated without their knowledge or consent, and because they have been placed at serious risk for harassment, fraud, and identity theft from anyone that has, or may obtain access to their personal identification information, including their zip codes, home addresses, and billing information.

43.    At the time of Defendant's representations and omissions, Plaintiff and the Class did not know that they were false, and were ignorant of the omitted and/or concealed facts. In reliance upon these misrepresentations and without the benefit of the material omissions, Plaintiff and the Class entered into credit card transactions with Defendant and provided Defendant with their personal identification information.

44.    Reliance upon Defendant's representations and omissions was justified because Plaintiff and the Class had no reason to believe that Defendant would use their zip codes to obtain their private home addresses, that this information would be stored and used by Defendant, or that it would be disseminated and shared with others.

45.   Plaintiff and the Class have been damaged by Defendant's negligent misrepresentations in an amount to be proven at trial.

32.   The *Motta* Complaint makes substantially similar allegations in support of its claim labeled "Negligence."

## Specific Claims of Damages for "Invasion of Privacy"

33.   The *Nelson* Complaint contains a cause of action for "invasion of privacy," making the following pertinent allegations":

50.   Plaintiff and the Class had reasonable expectations that their private home addresses would remain private when they entered into credit card transactions with Defendant. They were certainly not aware that Defendant would use their names (captured from their credit cards) and zip codes to obtain their private home addresses.

51.   Defendant did not disclose their intention to use Plaintiff and the Class' zip codes to obtain their home addresses, and instead requested Plaintiff and the Class' zip codes under the guise of needing them for security purposes and to complete their credit card transactions.

52.   Defendant's actions constitute a "serious" invasion of privacy in that Plaintiff and the Class have had their private home addresses accessed, shared, and/or sold to others without their knowledge or consent. In addition to the unwanted dissemination of their private information, Plaintiff and the Class have been placed at serious risk of harassment, fraud and identity theft as a result of Defendant's conduct.

53.   Plaintiff and the Class have been damaged by Defendant's conduct in an amount to be proven at trial.

34.   The *Motta* Complaint makes substantially similar allegations in support of its claim labeled "Invasion of Privacy."

## Specific Claims of Damages for "Unlawful Intrusion"

35.   The *Nelson* Complaint contains the following pertinent allegations under the cause of action expressly labeled "Unlawful Intrusion":

57.   Plaintiff and the Class had reasonable expectations that their personal identification information, including their private home addresses and billing information would remain private when they entered into transactions with

Defendant. They had no idea that Defendant would use their zip codes to obtain their private home addresses, or that this information would be stored and used for Defendant's profit, and/or sold to others. Defendant did not disclose their intentions to use Plaintiff and the Class' zip codes to obtain their home addresses, and instead relied on Plaintiff and the Class' false assumption that their zip codes were a necessary security measure to process their credit card transactions.

58.    The manner in which Defendant intruded upon Plaintiff and the Class' privacy rights is highly offensive to a reasonable person.

59.    As a proximate result of the above acts, Plaintiff and the Class' personal identification information was used by Defendant for their own profit, and to the detriment of Plaintiff and the Class, resulting in damages . . . .

36.    The *Motta* Complaint makes substantially similar allegations in support of its claim labeled "Unlawful Intrusion."

37.    Also in early 2011, seven additional suits were filed against Big 5 which alleged damages caused by Big 5's corporate policy that cashiers request and record customers ZIP Codes before completing a credit card transaction at a Big 5 store.

38.    On February 14, 2011, Maria Valiente filed a class-action complaint styled as *Valiente v. Big 5 Sporting Goods Corporation*, Case No. BC455049, Los Angeles Superior Court (the "*Valiente* action") alleging damages based on Big 5's policy of requesting and recording customers' ZIP Codes at the time of purchase.  A copy of the *Valiente* Complaint is attached as **Exhibit "9."**

39.    On February 17, 2011, Yelena Matatova filed a class-action complaint styled as *Matatova v. Big 5 Sporting Goods Corporation et al*, Case No. BC455459, Los Angeles Superior Court (the "*Matatova* Complaint") alleging damages based on Big 5's policy of requesting and recording customers' ZIP Codes at the time of purchase. A copy of the *Matatova* Complaint is attached as **Exhibit "10."**

40.    On February 18, 2011, Scott Mossler filed a class-action complaint styled as *Mossler v. Big 5 Sporting Goods Corp.*, Case No. BC455477, Los Angeles Superior Court (the "*Mossler* Complaint") alleging damages based on Big 5's policy

17

of requesting and recording customers' ZIP Codes at the time of purchase.  A copy of the *Mossler* Complaint is attached as **Exhibit "11."**

41.     On February 25, 2011, Steve Holmes filed a class-action complaint styled as *Holmes v. Big 5 Sporting Goods Corporation et al*, Case No. RG-11563123, Alameda Superior Court (the "*Holmes* Complaint") alleging damages based on Big 5's policy of requesting and recording customers' ZIP Codes at the time of purchase. A copy of the *Holmes* Complaint is attached as **Exhibit "12."**

42.     On March 1, 2011, Neal Wiener filed a class-action complaint styled as *Wiener v. Big 5 Sporting Goods Corporation*, Case No. BC456300, Los Angeles Superior Court (the "*Wiener* Complaint") alleging damages based on Big 5's policy of requesting and recording customers' ZIP Codes at the time of purchase.  A copy of the *Wiener* Complaint is attached as **Exhibit "13."**

43.     On April 8, 2011, Pamela Smith filed a class-action complaint styled as *Smith v. Big 5 Sporting Goods Corporation*, Case No. 39-2011-00261014-CU-BT-STK, San Joaquin Superior Court (the "*Smith* Complaint") alleging damages based on Big 5's policy of requesting and recording customers' ZIP Codes at the time of purchase.  A copy of the *Smith* Complaint is attached as **Exhibit "14."**

44.     On May 24, 2011, Deena Gabriel filed a class-action complaint styled as *Gabriel v. Big 5 Sporting Goods Corporation*, Case No. BC462213, Los Angeles Superior Court (the "*Gabriel* Complaint") alleging damages based on Big 5's policy of requesting and recording customers' ZIP Codes at the time of purchase. A copy of the *Gabriel* Complaint is attached as **Exhibit "15."**

45.     These 2011 lawsuits, along with the *Nelson* and *Motta* actions, have been consolidated into litigation styled as *Coordination Proceedings, Big 5 Sporting Goods Song-Beverly Cases*, Case No. JCCP 4667, Los Angeles Superior Court ("the *Coordination Proceedings* action").

46.     The *Coordination Proceedings* action suits allege that Big 5, as a matter

1   of corporate policy, requested and recorded customers' personal identification

2   information, in the form of their ZIP Code, as a condition to completing a credit card

3   purchase in a Big 5 store. The suits further allege that Big 5 used this personal

4   identification information unlawfully for marketing or advertising purposes. This

5   corporate policy is the same corporate policy that was at issue in and the basis of the

6   *Zimerman* and *Gonzalez* actions.

7       47.    Several of the lawsuits before they were consolidated in the *Coordination*

8   *Proceedings* action alleged that Big 5 relied upon customers' misconception that

9   personal identification information was a necessary measure to protect the security of

10  credit card transactions to justify the policy.

11      48.    All of the ZIP Code lawsuits allege damages for violations of customers'

12  privacy rights.

13                  **General Allegations Supporting Invasion of Privacy Claims**

14      49.    The original *Valiente* Complaint made the following allegations in

15  support of its claims that Big 5 unlawfully required disclosure of personal information

16  at the time of purchase:

17              22.    On or around March 20, 2009, Plaintiff purchased
                certain items from Defendants by means of a credit card
18              transaction. At the time of said purchase, Defendants
                requested and/or required Plaintiff to provide her ZIP
19              code, which Defendants recorded as a part of processing
                the credit card transaction. As a result, Plaintiff provided
20              personal identification information to Defendants and
                Plaintiff is informed and believes said Defendants
21              recorded said information in their computer and
                information systems . . . .
22
                23.    In the course of accepting credit card payments
23              from Plaintiff and all those similarly situated, Defendants
                have employed a pattern, scheme, practice and/or policy
24              relative to processing purchases whereby Defendants
                have requested and/or required that purchasers provide
25              personal information to Defendants as part of the
                processing of the credit card transactions. Plaintiff is
26              informed and believes and based thereon alleges that
                Defendants have then caused all the personal
27              identification information to be otherwise recorded in
                Defendants' computer and information systems.
28              . . . .

**WHEREFORE**, Plaintiff prays judgment against Defendants, and each of them, as follows:

. . . .

5.      For reasonable attorneys' fees and costs as allowed by law according to proof;

6.      For any and all such other and further relief as the Court may deem just and proper.

50.    Maria Valiente was replaced by Amy DiSimone as lead plaintiff in the *Valiente* action at the time it was consolidated into the *Coordination Proceedings* in an amended complaint.

51.    Although the *Valiente* complaint did not originally make an express common law invasion of privacy claim, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a common law invasion of privacy claim.  Indeed under the same alleged facts the subsequently filed *Coordination Proceedings* consolidated amended complaint did make an express invasion of privacy claim.

52.    The *Matatova* Complaint made the following allegations in support of its claims that Big 5 unlawfully required disclosure of personal information at the time of purchase:

4.      . . . . Defendants' engaged and continue to engage in a pattern of unlawful business practices by utilizing an "Information Capture Policy" whereby Defendants' cashiers both request and record personal identification information, specifically zip codes, at the point-of-sale from customers who make purchases using credit cards . . . .

. . . .

17.    . . . [O]n February 11, 2011, Plaintiff purchased merchandise at a Big 5 store . . . with a credit card. . . .

18.    As part of Defendants' Information Capture Policy, and in conjunction with the credit card sales transaction, Plaintiff was asked for "personal identification information," specifically her zip code, by the Big 5 clerk attending to the transaction.

19.    Believing that the information was required to complete the transaction, Plaintiff provided the requested personal identification information, which was entered into

the electronic sales register at the checkout counter adjacent to both the employee and Plaintiff.
. . . .

28.   . . . .  Big 5 knowingly and specifically sought customers' personal identification information form marketing, advertising or other purposes . . . and Big 5 had procedures in place to request and record such information . . . .

WHEREFORE, Plaintiff on behalf of herself, and on behalf of members of the Class defined herein, prays for judgment and relief as follows:
. . . .

4.   For an award of attorneys' fees as authorized by statute . . . ;

5.   For costs of this suit;

6.   For pre- and post-judgment interest; and

7.   Such other and further relief as the Court may deem proper.

53.   Although the *Matatova* complaint did not originally make an express common law invasion of privacy claim, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a common law invasion of privacy claim.  Indeed under the same alleged facts the subsequently filed *Coordination Proceedings* consolidated amended complaint did make an express invasion of privacy claim.

54.   The *Mossler* Complaint made the following allegations in support of its claims that Big 5 unlawfully required disclosure of personal information at the time of purchase:

11.   On or around September 30, 2010, Plaintiff . . . purchased Big 5 goods for approximately $47.07 and made the purchase using his personal credit card.

12.   In conjunction with Plaintiff's credit card purchase transaction, the Big 5 employee conducting the sale requested Plaintiff's personal identification information, including his zip code, which was recorded by Big 5's sales associate.

13.   Plaintiff is informed and believes that Big 5 engages

in a pattern and practice of knowingly requesting and recording personal identification information of its customers during credit card transactions, including customer zip codes . . . .

14.   Plaintiff is informed and believes that Big 5 utilizes the personal identification information for unlawful purposes . . . . Plaintiff is informed and believes that Big 5 uses the collected personal identification information for marketing, future solicitation, and other data collection purposes . . . .
. . . .

25.   The Big 5 clerk handling Plaintiff's transaction at no point indicated that providing personal identifying information was optional or to be done on a voluntary basis only. The clerk simply requested the personal identifying information as part of Plaintiff's transaction. . . . Defendant's conduct led Plaintiff and class members to believe that providing their information was necessary to and required by the transaction.
. . . .

WHEREFORE, Plaintiff, on behalf of himself and the class defined herein, and the general public, prays for:
. . . .

5.   Interest according to law;

6.   Costs of suit;

7.   Attorneys' fees . . . as otherwise allowed by law; and

8.   Such other and further relief as the Court deems just.

55.   Although the *Mossler* complaint did not originally make an express common law invasion of privacy claim, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a common law invasion of privacy claim.  Indeed under the same alleged facts the subsequently filed *Coordination Proceedings* consolidated amended complaint did make an express invasion of privacy claim.

56.   The *Holmes* Complaint made the following allegations in support of its claims that Big 5 unlawfully required disclosure of personal information at the time of purchase:

3.   Defendants . . . have . . . engaged in intentional,

systematic violations of the provisions of California Civil Code section 1747.08 by requiring customers to provide, at minimum, both their names and ZIP codes, by recording that information, by obtaining private information, including customers' addresses, by pairing ZIP codes with customers' names, by creating and maintaining a database containing this private customer information, and by improperly using and disseminating this improperly obtained and maintained information.
. . . .

10.   Within the past year, plaintiff went to Defendants' retail store in California and made a retail purchase. Plaintiff paid for the purchase with a credit card which was swiped and the credit card information was thereby recorded by Defendants and retained after the purchase by defendants. When plaintiff was actually making the purchase and the checkout counter, Defendants' employee demanded that plaintiff provide plaintiff's zip code. Defendants' employee did not inform plaintiff of the consequences should plaintiff refuse or fail to provide the Zip code. Plaintiff reasonably believed that providing plaintiff's ZIP code was a requirement of completing the transaction and plaintiff therefore provided the ZIP code as demanded. Defendants' employee recorded plaintiff's ZIP code at the checkout counter.
. . . .

Wherefore, plaintiff prays for relief as follows:
. . . .

4.   That defendants be ordered to pay all amounts owed to the Plaintiff Class arising out of the actions complained of herein, including penalties, interest, attorney's fees, and costs;
. . . .

11.   For such other legal and equitable relief as the Court may deem just and proper.

57.   Although the *Holmes* complaint did not originally make an express common law invasion of privacy claim, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a common law invasion of privacy claim.  Indeed under the same alleged facts the subsequently filed *Coordination Proceedings* consolidated amended complaint did make an express invasion of privacy claim.

58.   The *Wiener* Complaint made the following allegations in support of its

claims that Big 5 unlawfully required disclosure of personal information at the time of purchase:

> 10.   In September of 2010, Plaintiff went to one of Defendant's Stores located in Los Angeles, California, to purchase a product from Defendant.
> . . . .
>
> 12.   After selecting the item, Plaintiff proceeded to pay for the item selected through the use of his credit card.
>
> 13.   In conjunction with the above, as part of Defendant's policy to capture customers' personal identification information, Defendant's employee requested that Plaintiff provide his ZIP code to Defendant as a condition to accepting the credit card as payment.
>
> 14.   Plaintiff, believing that he was required to provide his ZIP code to complete the transaction, gave Defendant's employee the information. It is believed that Defendant's employee recorded the information then completed the transaction.
> . . . .
>
> 26.   Defendant is engaged in a pattern of unlawful practices by utilizing a personal identification information capture policy, whereby Defendant requests persons, who use a credit card for the payment of goods purchased from Defendant, to provide personal identification information in connection with the use of his/her credit card; and/or requires such cardholders to provide personal identification information, as a condition to accepting his/her credit card. After receiving the personal identification information of the cardholder, Defendant records it and then completes the credit card transaction. Based upon information and belief, Defendant uses customers' personal identification information for profit.
> . . . .
>
> Plaintiff prays for judgment against Defendants as follows:
> . . . .
>
> 4.   For an award of attorneys' fees as authorized by statute . . .;
>
> 5.   For costs of the suit;
>
> 6.   For prejudgment interest at the legal rate;
>
> 7.   And for such other relief as the Court may deem proper.

59.   Although the *Wiener* complaint did not originally make an express common law invasion of privacy claim, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a common law invasion of privacy claim.  Indeed under the same alleged facts the subsequently filed *Coordination Proceedings* consolidated amended complaint did make an express invasion of privacy claim.

60.   The *Smith* Complaint made the following allegations in support of its claims that Big 5 unlawfully required disclosure of personal information at the time of purchase:

> 2     . . . . Defendants are engaging in a pattern of unlawful and deceptive business practices by utilizing an  Information Capture Policy  whereby Defendants  cashiers both request and record personal identification information, in the form of zip codes, and credit card numbers from customers using credit cards at the point-of-sale in Defendants    retail establishments . . . .
>
> 3     On information and belief Defendants use the zip code information obtained from cardholder to acquire additional personal information including the cardholder s physical residential address by pairing the zip code with the cardholder s name obtained from the credit card   Such conduct is performed intentionally  and without the knowledge or consent of the cardholder . . . .
>
> 14    On December 8 2010   Plaintiff went to one of Defendant's retail stores located in California.
>
> 15    Plaintiff entered Defendants  store and proceeded to select products from the store that Plaintiff intended to purchase
>
> 16    After selecting the items Plaintiff proceeded to the cashiers  section of Defendants  store to pay for the item selected through the use of a credit card
>
> 17    Defendants  employee . . .  as part of Defendants Information  Capture  Policy  then  requested  personal identification information from Plaintiff in the form of Plaintiff's zip code   without informing Plaintiff of the consequences if Plaintiff did not provide Defendants employee with Plaintiff's zip code
>
> 18    Plaintiff  believing that she was required to provide her zip code to complete the transaction  told Defendants

employee Plaintiff's zip code

19    Defendants   employee then typed and recorded Plaintiff's zip code into an electronic cash register at the checkout counter adjacent to both the employee and Plaintiff

20    Defendants   employee then proceeded to inform Plaintiff of the amounts due to Defendants for said products Plaintiff handed Defendants   employee Plaintiff's credit card after which said employee proceeded to swipe  enter  and/or record the credit card number into an electronic cash register at the checkout counter adjacent to both the employee and Plaintiff. . . .

21    Defendant's employee made no attempt to erase, strikeout, eliminate or otherwise delete Plaintiff's personal identification information from the electronic cash register after Plaintiff's credit card number was recorded.
. . . .

26    Defendant is engaged in a pattern of unlawful practices by utilizing a personal identification information capture policy, whereby Defendant requests persons, who use a credit card for the payment of goods purchased from Defendant, to provide personal identification information in connection with the use of his/her credit card; and/or requires such cardholders to provide personal identification information, as a condition to accepting his/her credit card. After receiving the personal identification information of the cardholder, Defendant records it and then completes the credit card transaction. Based upon information and belief, Defendant uses  customers'  personal  identification information for profit.
. . . .

34    During credit card transactions entered into at Defendants  California stores . . . during the one year period preceding the filing of this class action Complaint through the present  Defendants utilized  and continue to utilize  an Information Capture Policy  whereby Defendants  cashiers both request and record personal identification information and credit card numbers from customers using credit cards at the point of sale in Defendants  retail establishments
. . . .

PLAINTIFF AND THE CLASS PRAY for judgment against Defendants as follows
. . . .

5    For an award of attorneys   fees as authorized by statute . . .

6    For costs of the suit

7    For prejudgment interest at the legal rate

8    And for such other relief as the Court may deem proper

61.    These allegations in the *Smith* Complaint are substantially similar to allegations in the *Motta* Complaint, that both Zurich and Hartford agreed obligated them to reimburse Big 5 for "defense costs" or "claim expenses," and the *Nelson* Complaint, that Zurich agreed obligated it to reimburse Big 5 for defense costs.

62.    Although the *Smith* complaint did not originally make an express common law invasion of privacy claim, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a common law invasion of privacy claim.  Indeed under the same alleged facts the subsequently filed *Coordination Proceedings* consolidated amended complaint did make an express invasion of privacy claim.

63.    The *Gabriel* Complaint made the following allegations in support of its claims that Big 5 unlawfully required disclosure of personal information at the time of purchase:

> 5.    On August 8, 2010, PLAINTIFF went to a Big 5 Store in Los Angeles County, California and made a purchase with her credit card. In line with this transaction, the store clerk asked PLAINTIFF to provide her zip code. PLAINTIFF believed that she was required to give her zip code to the store clerk in order to complete her transaction. The store clerk entered PLAINTIFF'S zip code into the store computer as PLAINTIFF provided it to her. PLAINTIFF is informed and believes that Big 5 recorded her zip code for its marketing and other purposes.
> . . . .
>
> 17.    Big 5 requests and requires customers to provide Big 5 with personal information as a condition of accepting a credit card as payment for Big 5's goods and services.
> . . . .
>
> WHEREFORE, PLAINTIFF prays for judgment against DEFENDANTS as follows:
> . . . .
>
> 3.    An order awarding PLAINTIFF and all members of the class their reasonable attorneys' fees . . . ; and

4.     An order for costs of suit and such other relief as the Court deems just and proper.

64.     Although the *Gabriel* complaint did not originally make an express common law invasion of privacy claim, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a common law invasion of privacy claim.  Indeed under the same alleged facts the subsequently filed *Coordination Proceedings* consolidated amended complaint did make an express invasion of privacy claim.

### The Consolidated *Coordination Proceedings* Action

65.     On October 21, 2011, the *Nelson, Motta, Valiente, Matatova, Mossler, Holmes, Wiener, Smith,* and *Gabriel* actions were consolidated with an amended complaint filed in the Los Angeles Superior Court as the *Coordination Proceedings* action.   A copy of the Amended Consolidated Complaint in the *Coordination Proceedings* action is attached as **Exhibit "16."**

66.     The *Coordination Proceedings* Amended Complaint contains the same factual allegations as in the previous individual complaints but adds some labeled causes of action.  It alleges that Big 5, in the course of following the same corporate policy at issue in the *Zimerman, Gonzalez, Motta,* and *Nelson* actions, violated the privacy rights of class members by obtaining, recording and publishing customers' personal identification information including ZIP Codes obtained at the point of sale as a condition of completing a credit card transaction:

> 4.     . . . . Defendants engaged in and continue to engage in a pattern of unlawful business practices by utilizing an "Information Capture Policy" whereby Defendants' cashiers both request and record personal identification, specifically ZIP codes, at the point-of-sale from customers who make purchases using credit cards . . . .
> . . . .
>
> 7.     Big 5 requests and records ZIP code information from customers who pay by credit card . . . .
> . . . .
>
> 12.    . . . .  On or around September 30, 2010, Plaintiff Mossler purchased merchandise at a Big 5 store . . . with a

credit card, and was asked for "personal identification," specifically his ZIP code, by a Big 5 clerk attending to the transaction, and provided his ZIP code to the clerk in response to the request.

13.   . . . . [O]n February 11, 2011, Plaintiff Matatova purchased merchandise at a Big 5 store . . . with a credit card, and was asked for "personal identification," specifically her ZIP code, by a Big 5 clerk attending to the transaction, and provided her ZIP code to the clerk in response to the request.

14.   . . . . In or around September, 2010, Plaintiff Wiener purchased merchandise at a Big 5 store . . . with a credit card, and was asked for "personal identification," specifically his ZIP code, by a Big 5 clerk attending to the transaction, and provided his ZIP code to the clerk in response to the request.

15.   . . . . On or around September 30, 2010, Plaintiff Holmes purchased merchandise at a Big 5 store . . . with a credit card, and was asked for "personal identification," specifically his ZIP code, by a Big 5 clerk attending to the transaction, and provided his ZIP code to the clerk in response to the request.

16.   . . . . On or around December 9, 2010, and December 26, 2010, Plaintiff Nelson purchased merchandise at a Big 5 store . . . with a credit card, and was asked for "personal identification," specifically her ZIP code, by a Big 5 clerk attending to the transaction, and provided her ZIP code to the clerk in response to the request.

17.   . . . . On or around December 11, 2010, Plaintiff Motta purchased merchandise at a Big 5 store . . . with a credit card, and was asked for "personal identification," specifically her ZIP code, by a Big 5 clerk attending to the transaction, and provided her ZIP code to the clerk in response to the request.

18.   . . . . On or around December 8, 2010, Plaintiff Smith purchased merchandise at a Big 5 store . . . with a credit card, and was asked for "personal identification," specifically her ZIP code, by a Big 5 clerk attending to the transaction, and provided her ZIP code to the clerk in response to the request.

19.   . . . . On or around August 8, 2010, Plaintiff Gabriel purchased merchandise at a Big 5 store . . . with a credit card, and was asked for "personal identification," specifically her ZIP code, by a Big 5 clerk attending to the transaction, and provided her ZIP code to the clerk in response to the request.

20.   . . . . On or around November 24, 2010, Plaintiff

DiSimone purchased merchandise at a Big 5 store . . . with a credit card, and was asked for "personal identification," specifically her ZIP code, by a Big 5 clerk attending to the transaction, and provided her ZIP code to the clerk in response to the request.

. . . .

28.    [A]s part of Defendants' Information Capture Policy, and in conjunction with the credit card sales transaction, each of the Plaintiffs was asked for "personal identification information," specifically their ZIP codes, by a Big 5 clerk attending to the transaction.

29.    Each of the Plaintiffs provided the requested personal identification information, which was entered into the electronic sales register at the checkout counter adjacent to both the Big 5 employee and the customer.

67.    The *Coordination Proceedings* Complaint alleges that Big 5's ZIP Code collection conduct constituted negligence, entitling underlying plaintiffs and class members to damages:

## SECOND CAUSE OF ACTION

### (Negligence – By Plaintiffs Against All Defendants)

60.    Plaintiffs incorporate the above allegations by reference as if set forth fully herein.

61.    Defendants owed a duty of care to Plaintiffs and the Class to reasonably protect their personal identification information, including their ZIP codes, home addresses and payment information, and to reasonably inform them of Defendants' intended use of their ZIP codes for purposes not related to the completion of their credit card transactions with Defendants.

62.    Defendants negligently failed to take reasonable steps to protect Plaintiffs' and the Class' personal identifying information and payment information from being collected, stored and used without Plaintiffs' and the Class' knowledge or consent.

63.    Defendants negligently failed to take affirmative steps to alert Plaintiffs and the Class of Defendants' intent to use their ZIP codes to obtain their home addresses and other private information.

64.    Defendants further negligently omitted to inform Plaintiffs and the Class that they would use their personal identification information for marketing, and that it would be sold or otherwise disseminated to third parties.

65.    On   information   and   belief,   Defendants   also negligently failed to comply with third-party vendor rules, which require Defendants to have customers' informed consent prior to sharing their personal information with the vendors, or using this information to obtain their home addresses from the vendors' proprietary databases of information.

66.    On information and belief, Defendants negligently shared Plaintiffs' and the Class' personal identification information, including their ZIP codes and home addresses, with other vendors and retailers, and without authorization.

67.    Defendants knew, or reasonably should have known, that Plaintiffs and the Class would not have provided their ZIP codes to Defendants, or even entered into credit card transactions with Defendants, had Plaintiffs and the Class known that Defendants intended to use their ZIP codes to obtain their home addresses, which would then be stored and shared with others.

68.    Defendants' conduct has caused Plaintiffs and the Class to suffer damages by having their personal identification information accessed, stored, and disseminated without their knowledge or consent, and because they have been placed at serious risk for harassment, fraud, and identity theft from anyone who has, or may obtain access to, their personal identification information, including their ZIP codes, home addresses, and billing information.

69.    At the time of Defendants' representations and omissions, Plaintiffs and the Class did not know that they were false and were ignorant of the omitted and/or concealed facts. In reliance upon these misrepresentations and without the benefit of the material omissions, Plaintiffs and the Class entered into credit card transactions with Defendants and provided Defendants with their personal identification information.

70.    Reliance upon Defendants' representations and omissions was justified because Plaintiffs and the Class had no reason to believe that Defendants would use their ZIP codes to obtain their private home addresses, that this information would be stored and used by Defendants, or that it would be disseminated and shared with others.

71.    Plaintiffs and the Class have been damaged by Defendants' negligent misrepresentations in an amount to be proven at trial.

68.    These allegations are substantially similar to the allegations under the

cause of action labeled "negligence" in the *Motta* Complaint, that both Zurich and Hartford agreed obligated them to reimburse Big 5 for defense costs or "claim expenses," and the *Nelson* Complaint, that Zurich agreed obligated it to reimburse Big 5 for "defense costs."

69.    The *Coordination Proceedings* Complaint alleges that Big 5's alleged ZIP Code collection and publication conduct constituted an invasion of privacy, entitling the underlying plaintiffs and class members to damages:

## THIRD CAUSE OF ACTION

### (Invasion of Privacy – By Plaintiffs Against All Defendants)

73.    Plaintiffs incorporate the above allegations by reference as if set forth fully herein.

74.    The constitutionally guaranteed right of privacy unequivocally includes the right to control the dissemination of one's private personal information, including one's home address.

75.    Plaintiffs and the Class have legally protectable privacy interests in their home address information, and their ability to control the disclosure and dissemination of this information.

76.    Plaintiffs and the Class had reasonable expectations that their private home addresses would remain private when they entered into credit card transactions with Defendants. They were certainly not aware that Defendants would use their names (captured from their credit cards) and ZIP codes to obtain their private home addresses.

77.    Defendants did not disclose their intention to use Plaintiffs' and the Class' ZIP codes to obtain their home addresses, and instead requested Plaintiffs' and the Class' ZIP codes under the guise of needing them for security purposes and to complete their credit card transactions.

78.    Defendants' actions constitute a "serious" invasion of privacy in that Plaintiffs and the Class have had their private home addresses accessed, shared, and/or sold to others without their knowledge or consent. In addition to the unwanted dissemination of their private information, Plaintiffs and the Class have been placed at serious risk of harassment, fraud and identity theft as a result of Defendants' conduct.

79.    Plaintiffs and the Class have been damaged by

Defendants' conduct in an amount to be proven at trial.

70.    These allegations are substantially similar to the allegations under the cause of action labeled "invasion of privacy" in the *Motta* Complaint, that both Zurich and Hartford agreed obligated them to reimburse Big 5 for "defense costs" or "claim expenses," and the *Nelson* Complaint, that Zurich agreed obligated it to reimburse Big 5 for defense costs.

71.    The *Coordination Proceedings* Complaint further alleges that Big 5's alleged ZIP Code collection and publication conduct constituted an unlawful intrusion into plaintiffs and class members privacy, entitling them to damages:

## FOURTH CAUSE OF ACTION

### (Unlawful Intrusion – By Plaintiffs Against All Defendants)

81.    Plaintiffs incorporate the above allegations by reference as if set forth fully herein.

82.    One who intentionally intrudes upon the solitude or seclusion of another or his private affairs or concerns is subject to liability for invasion of privacy. The Supreme Court of California instructs that the tort of intrusion is not limited to physical invasions, but also lies where the defendant "obtained unwanted access to data about the plaintiff."

83.    Plaintiffs and the Class had reasonable expectations that their personal identification information, including their private home addresses and billing information would remain private when they entered into transactions with Defendants. They did not know that Defendants would use their ZIP codes to obtain their private home addresses, or that this information would be stored and used for Defendants' profit, and/or sold to others. Defendants did not disclose their intentions to use Plaintiffs' and the Class' ZIP codes to obtain their home addresses, and instead relied on Plaintiffs and the Class' false assumption that their zip codes were a necessary security measure to process their credit card transactions.

84.    The manner in which Defendants intruded upon Plaintiffs' and the Class' privacy rights in highly offensive to a reasonable person.

85.    As a proximate result of the above acts, Plaintiffs' and the Class' personal identification information was used by Defendants for their own profit, and to the detriment of

Plaintiffs and the Class, resulting in damages . . . .

72.    These allegations are substantially similar to the allegations under the cause of action labeled "unlawful intrusion" in the *Motta* Complaint, that both Zurich and Hartford agreed obligated them to reimburse Big 5 for "defense costs" or "claim expenses," and the *Nelson* Complaint, that Zurich agreed obligated it to reimburse Big 5 for "defense costs."

## NOTICE TO AND RESPONSE OF INSURERS
## TO THE UNDERLYING ACTIONS

### The *Zimerman* Action

73.    On February 8, 2008, Big 5, through its insurance broker, gave Zurich notice of the *Zimerman* action and requested payment of defense expenses.

74.    In a March 13, 2008 letter Zurich agreed to participate in the funding of Big 5's defense of the *Zimerman* action pursuant to a reservation of rights. Specifically, Zurich said:

> Zurich American will – pursuant to Coverage B of the Policy, and subject to satisfaction of applicable self-insured retentions – participate in funding Big 5's defense of the Zimerman Lawsuit.

75.    In May 2009 Big 5 and the plaintiff class settled all claims in the *Zimerman* action by Big 5's payment of $30,000.00.  Zurich reimbursed Big 5 for its settlement payment as "damages."  Zurich also reimbursed $27,675.03 of the "defense costs" amounting to only approximately 12% of defense costs in excess of the SIR that was paid by Big 5.

76.    Big 5 incurred over $490,000 in defense expenses defending the *Zimerman* action alone.  Pursuant to Zurich's self-insured retention Schedule Big 5 was responsible for paying a SIR of $250,000.  The Zurich Policy obligated Zurich to reimburse Big 5 for defense expenses and damages in excess of $250,000.00 per "occurrence."  Big 5 satisfied the self-insured retention by its payment of $250,000.00

of defense expenses in the *Zimerman* action. Big 5 was entitled to reimbursement of the over $240,000 in defense expenses it reasonably incurred and paid beyond the SIR amount.

77.   On June 4, 2010 Big 5 requested that Zurich reimburse it for the more than $212,000 in outstanding defense expenses incurred above the $250,000 self-insured retention in Big 5's defense of the *Zimerman* action.  Zurich has unreasonably refused to do so.

### The *Gonzalez* Action

78.   Despite repeated demands for the past twenty months, Zurich has failed and refused to reimburse Big 5 for its remaining costs in excess of the self-insured retention paid in defending the *Zimerman* action.

79.   On June 28, 2008, Big 5, through its insurance broker, gave notice of the *Gonzalez* action to Zurich and requested reimbursement of defense expenses.

80.   In a July 11, 2008 letter Zurich agreed to participate in the defense of the *Gonzalez* action pursuant to a reservation of rights.  Specifically, Zurich stated:

> Zurich American also explains that, subject to satisfaction of the applicable self-insured retentions, it will participate with other of Big 5's insurers in funding the reasonable and necessary costs that are incurred in Big 5's defense of the Gonzalez lawsuit.  Zurich American's defense funding will be pursuant to Coverage B of the Policy and will be pursuant to a full reservation of rights.

81.   Big 5 successfully defended the *Gonzalez* action which was dismissed.

82.   Both the *Zimerman* and *Gonzalez* actions arose from a single occurrence – Big 5's alleged corporate policy that cashiers request and record and require that customers provide their ZIP Code before completing credit card transactions in Big 5 stores.  Since the actions arose from a single occurrence, Big 5 needed only to satisfy a single SIR before Zurich became obligated to pay all defense costs and damages incurred in excess of the SIR even though there were two separate actions.

83.   Big 5 satisfied the single SIR by paying over $490,000 in defense

expenses defending the *Zimerman* action.  All reasonable defense expenses, totaling over $169,000, incurred and paid in the *Gonzalez* action, which arose from the same occurrence, must be reimbursed by Zurich according to its Policies.

84.    Zurich has failed and refused to reimburse Big 5 for any defense expenses incurred or paid in its successful defense of the *Gonzalez* action.

85.    Zurich has wrongfully asserted that it was not obligated to reimburse any defense expenses to Big 5 for the *Gonzalez* action because Big 5 did not satisfy a separate self-insured retention of $250,000 for that case, improperly asserting that its policies provided a "per claim" SIR and not a "per occurrence" SIR.

### The *Nelson* & *Motta* Actions

86.    On March 28, 2011, Big 5, through its insurance broker, notified Zurich and Hartford of the *Nelson* and *Motta* actions and requested payment of defense expenses in both.

87.    In Zurich's letters of June 2, 2011 Zurich agreed to participate in the funding of Big 5's defenses of the *Nelson* and *Motta* actions.  Specifically, these letters stated:

> [S]ubject to the satisfaction of the applicable self-insured retentions ("SIR"), Zurich will participate in the funding of the reasonable and necessary costs that are incurred in Big 5 Sporting Goods' ("Big 5") defense of the above-referenced matter.  Zurich's defense funding will be under Coverage B of policies GLO 9262202-01 and GLO9262202-02.
> . . . .
>
> Zurich has determined that the aspect of the consolidated lawsuit which seeks damages for the alleged disclosure of plaintiffs' personal information by Big 5 through its sale of the information to others raises a potential for coverage as an offense which pertains to "the oral or written publication of material, in any manner, of material that violates a person's right of privacy."

88.    By letters dated June 28, 2011 and August 30, 2011, Hartford acknowledged its coverage obligations under the *Motta* and *Nelson* actions, respectively.  Specifically, the letters stated:

> Once the self-insured retention is satisfied . . . Hartford

agrees to provide coverage to Big 5 in the Litigation under the Hartford Policy subject to the Hartford Policy's terms and conditions . . . . Hartford will allow Big 5 to retain its own defense counsel in connection with the Litigation under California Civil Code section 2860.

89.   To date, neither insurer has reimbursed Big 5 for defense expenses, in excess of $315,097, that it has incurred and paid defending the *Nelson* and *Motta* actions.

90.   The *Nelson* and *Motta* actions arose from the same "occurrence" as the *Zimerman* and *Gonzalez* actions – namely, Big 5's alleged adoption of a corporate policy that cashiers request and record customers ZIP Code information prior to completing credit card transactions in Big 5 stores.

91.   Since Big 5 has satisfied the Zurich Policies' SIR in defense of the *Zimerman* and *Gonzalez* suits, which also arise out of this "occurrence," Zurich, under its Policies, has a duty to reimburse Big 5 for all defense costs incurred in defending the *Nelson* and *Motta* actions, because all defense costs incurred or paid are in excess of the self-insured retention.

92.   The Hartford Policy obligates Hartford to reimburse Big 5 for any "claim expenses" incurred in excess of the self-insured retention.  Big 5 satisfied its self-insured retention with the "claim expenses" it incurred in defending the *Zimerman* and *Gonzalez* actions.  Since the *Nelson* and *Motta* actions relate to the same "occurrence" – Big 5's adoption of the corporate policy – which exhausted Big 5's self-insured retention, Hartford's policy language obligates it to reimburse Big 5 for all "claim expenses" incurred or paid as a result of the *Nelson* and *Motta* actions.

**The *Valiente*, *Matatova, Mossler, Holmes, Wiener, Smith,* and *Gabriel* Actions**

93.   Big 5, through its insurance broker, promptly notified Insurers between March 28, 2011 and June 1, 2011 of the underlying *Valiente, Matatova, Mossler, Holmes, Wiener, Smith,* and *Gabriel* complaints against it before they were consolidated in the *Coordination Proceedings* and requested defense expense

1    reimbursement in each action.

2        94.    By identical letters dated May 27, 2011, Zurich denied coverage of the

3    *Valiente*, *Matatova, Mossler, Holmes, Wiener,* and *Smith* actions.

4        95.    Zurich has not provided Big 5 with a coverage position regarding the

5    *Gabriel* action.

6        96.    On June 28, 2011 Hartford denied coverage of the *Holmes* action.

7        97.    Hartford denied Big 5 coverage for the *Valiente* action on September 9,

8    2011; the *Matatova* action on September 1, 2011; the *Mossler* action on September 8

9    2011; the *Wiener* action on September 14, 2011; the *Smith* action on September 1,

10   2011; and the *Gabriel* action on September 1, 2011.

11                    **The *Coordinated Proceedings* Action**

12       98.    Big 5, through its insurance broker, promptly notified Insurers of the

13   Consolidated Amended Complaint filed in the *Coordination Proceedings* action and

14   requested payment of defense expenses.

15       99.    On December 19, 2011 Zurich agreed to participate in the funding of Big

16   5's defense of the *Coordination Proceedings* action.  Specifically, this letter stated:

17               [S]ubject to the satisfaction of the applicable self-insured
             retentions ("SIR"), Zurich will participate in the funding of
18           the reasonable and necessary costs that are incurred in Big 5
             Sporting Goods' ("Big 5") defense of the above-referenced
19           matter.  Zurich's defense funding will be under Coverage B
             of policies GLO 9262202-01 and GLO9262202-02.
20           . . . .

21           Zurich has determined that the aspect of the consolidated
             lawsuit which seeks damages for the alleged disclosure of
22           plaintiffs' personal information by Big 5 through its sale of
             the information to others raises a potential for coverage as
23           an offense which pertains to "the oral or written publication
             of material, in any manner, of material that violates a
24           person's right of privacy."

25       100.   On January 23, 2012 Hartford agreed to participate in the funding of Big

26   5's defense of the *Coordination Proceedings* action.  Specifically, this letter stated:

27           Once the applicable self-insured retention is satisfied . . .
             The Hartford agrees to pay defense expenses incurred by
28           Big 5 in the Litigation . . . . The Hartford will allow Big 5 to

retain its own defense counsel in connection with the Litigation under California Civil Code 2860.

## BIG 5'S REASONABLE DEFENSE EXPENSES

101.   As of April 30, 2012, Big 5 has incurred in excess of $1,000,000 in reasonable and necessary defense expenses defending the underlying actions, in excess of its $250,000 self-insured retention. Big 5 has repeatedly requested reimbursement of these overdue defense expenses.

102.   Big 5 is entitled to reimbursement of all its reasonable defense expenses incurred in defending all of the Zip Code actions, including prejudgment interest from the date of invoice, less a one-time SIR deduction of $250,000.

103.   To date, Zurich and Hartford have failed and refused to fully reimburse Big 5 for defense expenses incurred or paid in *Zimerman, Gonzalez*, *Nelson*, *Motta, Valiente*, *Matatova, Mossler, Holmes, Wiener, Smith, Gabriel,* and *Coordinated Proceedings*.

104.   The *Coordination Proceedings* and previous separate *Valiente*, *Matatova, Mossler, Holmes, Wiener, Smith,* and *Gabriel* actions arose from the same "occurrence" as the *Zimerman*, *Gonzalez*, *Nelson*, and *Motta* actions – namely, Big 5's adoption of a corporate policy that cashiers request and record customers' provide ZIP Code information prior to completing credit card transactions in Big 5 stores.

105.   Since Big 5 has satisfied its single SIR requirement in defense of the *Zimerman* and *Gonzalez* suits, that also arise out of this single "occurrence," Zurich, under its Policies, has a duty to reimburse Big 5 for all "defense costs" incurred in defending the *Coordination Proceedings* and prior separate actions, because all "defense costs" incurred or paid are in excess of the single SIR.

106.   The Hartford Policy obligates Hartford to reimburse Big 5 for any "claim expenses" incurred in excess of the self-insured retention.  Big 5 satisfied its self-insured retention with the "claim expenses" it incurred in defending the *Zimerman* and

1   *Gonzalez* actions.  Since the *Coordination Proceedings* and prior separate actions are

2   claims based on the same "occurrence" – Big 5's adoption of the corporate policy –

3   that was exhausted by Big 5's payment of defense expenses in the *Zimerman* action,

4   Hartford's Policy obligates it to reimburse Big 5 for all "claim expenses" incurred as a

5   result of the *Coordination Proceedings* and the prior separate actions.

6   ## INSURERS UNREASONABLY WITHHOLD POLICY BENEFITS

7   107.   Under their respective policies Zurich and Hartford each have an

8   independent duty to fully reimburse Big 5 for its defense expenses incurred in the

9   underlying ZIP Code action once Big 5 has satisfied its self-insured retention. Big 5

10  seeks only full reimbursement of its underlying defense expenses, after satisfaction of

11  its SIR, and no duplicate payment of defense expenses. Therefore, Zurich and

12  Hartford can agree among themselves how to share the defense expense

13  reimbursement so long as Big 5 is fully and immediately reimbursed for those defense

14  expenses. But Big 5 is not bound by any agreement among the defendants and is

15  entitled to pursue full reimbursement from either insurer.

16  108.   On March 8, 2012 Hartford finally promised to partially reimburse Big 5

17  $15,677.22 for January 2012 defense expenses incurred in the *Coordination*

18  *Proceedings*.

19  109.   In April 2012 both Zurich and Hartford finally promised to reimburse

20  some limited defense expenses in the *Coordination Proceedings* with each promising

21  to pay, under a reservation of rights including a claimed right to reimbursement to

22  themselves, less than a quarter of Big 5's actual defense expenses beginning with the

23  January and February defense invoices.

24  110.   Zurich and Hartford have delayed payment of defense expenses and have

25  wrongfully asserted a right to pay a substantially lower rate for legal expenses than

26  Big 5 is actually incurring and paying and less than the reasonable market rate for

27  qualified defense counsel in the complex underlying actions.

28

111.   Zurich and Hartford have failed to pay any defenses of cases consolidated into the *Coordination Proceeding*, despite their earlier promises to "participate in the defense" of those actions.

112.   Zurich and Hartford have unreasonably withheld proper policy benefits from Big 5 including prompt and complete reimbursement of the underlying defense expenses causing damages to Big 5.

### ZURICH AND HARTFORD VIOLATED INSURANCE REGULATIONS REQUIRING PROMPT COMMUNICATION AND DETERMINATION OF CLAIMS

113.   California. Code Regs. Title 10, § 2695.7 (2001), applicable to Zurich and Hartford, requires that insurers make a prompt determination of every claim, including a prompt decision on a request for defense of a lawsuit. The regulations set the following requirements:

> (b)     Upon receiving proof of claim**, every insurer . . . shall** immediately, but **in no event more than forty (40) calendar days later, accept or deny the claim** . . . .

> (c)(1) **If more time is required** than is allotted in subsection 2695.7(b) . . . then, **every insurer shall provide the claimant . . . written notice of the need for additional time** [and] shall **specify any additional information the insurer requires** in order to make a determination and state any continuing reasons for the insurer's inability to make a determination.
> * * *
> (d)     **No insurer shall persist in seeking information not reasonably required** for or material to the resolution of a claim dispute.  [Emphasis added.]

114.   Zurich and Hartford failed to comply with the insurance regulation in that it failed to accept or deny all of Big 5's claims within forty calendar days, failed to provide written notice of additional time required, failed to specify additional information required for a determination of the claims, and persisted in seeking information not reasonably required for or material to the resolution of the dispute.

115.   California. Code Regs. Title 10, § 2695.5 (2001), applicable to Zurich and Hartford, requires that insurers acknowledge receipt of notice of a claim, provide

a claimant with any necessary forms, and begin investigation of a claim, all within fifteen days of receiving notice:

> (b)    Upon receiving any communication from a claimant, regarding a claim, that reasonably suggests that a response is expected, every licensee shall immediately, **but in no event more than fifteen (15) calendar days after receipt of that communication**, furnish the claimant with a complete response based on the facts as then known by the licensee. . . .

> * * *

> (e)    Upon receiving notice of claim, every insurer . . . shall immediately, **but in no event more than fifteen (15) calendar days later**, do the following unless the notice of claim received is a notice of legal action:
>> (1)    **acknowledge receipt** of such notice to the claimant unless payment is made within that period of time. . . .
>> (2)    provide to the claimant necessary forms, instructions, and reasonable assistance, including but not limited to, specifying the information the claimant must provide for proof of claim;
>> (3)    **begin** any necessary **investigation** of the claim.

> [Emphasis added.]

116.    Zurich and Hartford failed to comply with the insurance regulation in that, among other things, it failed to provide Big 5 with a complete response to Big 5's notices of claims within fifteen days, failed to acknowledge receipt of Big 5's notices of all claims within fifteen days, failed to provide Big 5 with forms or reasonable assistance within fifteen days, and failed to begin investigation of Big 5's claims within fifteen days, even though Zurich and Hartford purportedly believed that an investigation was necessary.

## FIRST CAUSE OF ACTION

### (Declaratory Judgment – Duty to Reimburse Defense Expenses)

117.    Big 5 incorporates the allegations in the above paragraphs of this Complaint as though fully alleged herein.

118.    Valid insurance contracts exist between Big 5 and Insurers, namely the Zurich Policies and the Hartford Policy.

119. By selling the Zurich Policies, Zurich agreed to reimburse "defense costs" incurred in defending suits seeking damages for "personal and advertising injury" offenses as defined in the Policies.

120. By selling the Hartford Policy, Hartford agreed to reimburse "claim expenses" incurred in defending suits seeking damages for "personal and advertising injury" offenses as defined in the Policies.

121. The *Zimerman, Gonzalez*, *Nelson*, *Motta, Valiente*, *Matatova, Mossler, Holmes, Wiener, Smith, Gabriel,* and *Coordinated Proceedings* actions allege facts potentially implicating coverage under the Policies as "personal and advertising injury" thereby triggering Zurich's and Hartford's independent obligation to reimburse Big 5's "defense costs" or "claim expenses" incurred in defense of those actions.

122. Zurich and Hartford have denied that some or all of the *Zimerman, Gonzalez*, *Nelson*, *Motta, Valiente*, *Matatova, Mossler, Holmes, Wiener, Smith, Gabriel,* and *Coordinated Proceedings* actions allege facts implicating coverage under the Policies and do not assert claims even potentially covered under the Policies. Insurers have refused to fully reimburse Big 5's "defense costs" or "claim expenses" incurred defending some or all of these actions.

123. An actual bona fide controversy exists between Big 5 on the one hand and Zurich and Hartford on the other hand that requires judicial declaration by this Court of the parties' rights and duties under the respective Policies concerning the Insurers' duties to fully reimburse Big 5 for its "defense costs" or "claim expenses" incurred defending the *Zimerman, Gonzalez*, *Nelson*, *Motta, Valiente*, *Matatova, Mossler, Holmes, Wiener, Smith, Gabriel,* and *Coordinated Proceedings* actions and the amount of "defense costs" or "claim expenses" owed by Zurich and Hartford in the underlying actions.

124. Big 5 is entitled to a judicial declaration of the duties of Zurich and

Hartford to reimburse the defense expenses of the underlying actions and the amount of defense expenses the insurers are obligated to reimburse.

## SECOND CAUSE OF ACTION

### (Breach of Contract)

125.   Big 5 incorporates each and every allegation set forth in the above paragraphs as though fully alleged herein.

126.   The Zurich and Hartford Policy are insurance contracts, pursuant to which Zurich and Hartford respectively are obligated to pay Big 5's "defense costs" or "claim expenses," respectively, in the *Zimerman, Gonzalez*, *Nelson*, *Motta, Valiente*, *Matatova, Mossler, Holmes, Wiener, Smith, Gabriel,* and *Coordinated Proceedings* actions above Big 5's $250,000 self-insured retention.

127.   Big 5 has incurred or paid defense expenses as of April 30, 2012 in more than $1,000,000 in the ZIP Code suits, in excess of its $250,000 self-insured retention it has paid. Defense expenses continue in the ongoing *Coordination Proceedings.*

128.   Zurich and Hartford have breached their contract duties by failing and refusing to reimburse Big 5 for costs incurred in defending the above actions in excess of Big 5's $250,000 self-insured retention for claims that the insurers are obligated to reimburse as "defense expenses" or "claim expenses."

129.   Big 5 has fully performed all of the obligations and conditions to be performed by it under the Policies or has been excused from performing them as a result of Insurers' breaches of contract.

130.   All other conditions required by the respective Policies or applicable law to trigger Insurers' duties to reimburse Big 5 for its defense costs in the above actions have been satisfied.

131.   Big 5 is entitled to an award of all damages it has sustained as a result of Insurers' breaches of their Policy obligations, including consequential damages and prejudgment interest as allowed by California law.

**THIRD CAUSE OF ACTION**

**(Breach of the Covenant of Good Faith and Fair Dealing)**

132.   Big 5 incorporates the foregoing paragraphs as though fully set forth here.

133.   A duty of good faith and fair dealing is implied by law in every insurance policy issued in California.  This duty requires Zurich and Hartford individually to act fairly and in good faith in discharging their separate contractual obligations to Big 5, prohibits Zurich and Hartford from doing or failing to do anything which will impair Big 5's right to receive benefits owed under the policy, and requires Zurich and Hartford to consider Big 5's interests equally with its own.   The good faith performance of Zurich's and Hartford's obligations under their respective policies calls for faithfulness to the agreed common purpose under the policies, consistent with Big 5's reasonably justified expectations.  Among the duties imposed by the covenant of good faith and fair dealing is the duty to reimburse defense expenses immediately and fully, and not to misrepresent any facts or law related to coverage issues.

134.   Zurich and Hartford put their own financial interests above Big 5's rights under their respective policies and unreasonably frustrated Big 5's rights and reasonable expectations to receive benefits under their policies.

135.   Zurich's and Hartford's unreasonable and improper conduct includes, but is not limited to its:

a) Unreasonably withholding insurance policy benefits from Big 5 including prompt and complete reimbursement of defense expenses.

b) Failure and refusal to promptly and entirely respond to Big 5's request for reimbursement of defense costs after Big 5 fully satisfied its self-insured retention by payment of defense expenses in the underlying actions.

c) Failure and refusal to immediately and entirely reimburse Big 5 for the defense expenses of the underlying complaint allegations of violation of the

underlying plaintiffs' rights of privacy, notwithstanding the fact that Big 5 has expressly advised both Zurich and Hartford of the factual allegations by the underlying plaintiffs and the law that establish Zurich's and Hartford's reimbursement obligations;

d) Delaying their coverage determinations in violation of the insurers' obligations under their respective policies and those imposed by California Code of Regulations, Title 10 § 2695.7, which required Zurich and Hartford to accept or deny Big 5's claims for reimbursement of underlying defense expenses within forty calendar days of receiving proof of such claims;

e) Failing to acknowledge Big 5's claims in a timely fashion, provide assistance to Big 5 to resolve the claim in a timely fashion, and begin investigation of Big 5's claim in a timely fashion in violation of the insurers obligations under their respective policies and those imposed by California Code of Regulations, Title 10 §2695.5, which required Zurich and Hartford to do so within fifteen days of receiving Big 5's notices of claim;

f) Making numerous misrepresentations throughout the duration of the underlying actions solely for the purpose of delaying or wrongfully avoiding their obligations to reimburse Big 5's defense expenses in the underlying actions; and

g) Forcing Big 5 to retain coverage counsel to obtain the policy benefits due and owing under the Zurich's and Hartford's policies;

136.   As a direct and proximate result of Zurich's and Hartford's breach of their respective implied duties of good faith and fair dealing, Big 5 has suffered substantial damages.  Big 5 was forced to hire attorneys to pursue coverage from the insurers and has been required to pay all underlying defense costs with only partial. Inadequate and delayed reimbursement payments.

137. Big 5 is entitled to an award of damages from Zurich and Hartford, including, but not limited to, reimbursement of all past, present and future amounts incurred to investigate and defend the underlying actions, attorneys' fees and costs incurred to obtain the benefits owed under the policies (*see Brandt v. Superior Court*, 37 Cal. 3d 813 (1985)), prejudgment interest and all other consequential damages and costs in amounts to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Big 5 prays for judgment against Defendants as follows:

1.      A declaration that Zurich and Hartford have duties to fully reimburse Big 5's reasonable "defense costs" or "claim expenses," respectively, incurred defending the underlying *Zimerman*, *Gonzalez*, *Nelson*, *Motta*, *Valiente*, *Matatova*, *Mossler*, *Holmes, Wiener, Smith, Gabriel,* and *Coordinated Proceedings* actions under their Policies sold to Big 5;

2.      An order finding that Zurich and Hartford have breached their contract obligations to Big 5 by failing and refusing to pay policy benefits related to the defense of claims and suits against Big 5 that Zurich and Hartford are obligated to pay;

3.      Determination and award of damages against Zurich and Hartford for all damages, including all unpaid reasonable defense expenses incurred by Big 5 in defense of the underlying claims that the insurers have failed to pay;

4.      Award of pre-judgment interest accruing from the date of each defense invoice at the statutory interest rate of 10% per annum;

5.      An order requiring Zurich and Hartford to fully reimburse Big 5 for all future defense expenses incurred defending against the underlying ZIP Code actions within 30 days of the invoice date;

6.      Award of costs of suit herein;

1       7.    Award of attorneys' fees as are available, including those available under

2   contract or statute;

3       8.    Such other and further relief as this Court may deem just and proper.

4

5   Dated:  April 27, 2012            **GAUNTLETT & ASSOCIATES**

6

7                           By:

8                               David A. Gauntlett

9                               James A. Lowe
                            Andrew M. Sussman

10                              Attorneys for Plaintiff
                            Big 5 Sporting Goods Corporation

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## JURY TRIAL DEMANDED

2      Plaintiff Big 5 demands a jury trial in this matter on all issues for which a jury

3   is permitted.

4

5   Dated:  April 27, 2012                    **GAUNTLETT & ASSOCIATES**

6

7                                             By: _____

8                                                 David A. Gauntlett

9                                                 James A. Lowe
                                                  Andrew M. Sussman

10                                                Attorneys for Plaintiff
                                                  Big 5 Sporting Goods Corporation

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBITS TO COMPLAINT**

**EXHIBIT 1**  -  Zurich Policy, No. GLO 9262202-00, covering the period from September 25, 2007 through September 25, 2008

**EXHIBIT 2**  -  Zurich Policy, No. GLO 9262202-01, covering the period from September 25, 2008 through September 25, 2009

**EXHIBIT 3**  -  Zurich Policy, No. GLO 9262202-02, covering the period from September 25, 2009 through September 25, 2010

**EXHIBIT 4**  -  Hartford Policy, No. 72 ECS R95004 covering the period From September 25, 2010 through September 25, 2011

**EXHIBIT 5**  -  Complaint in the *Zimerman* action filed January 15, 2008

**EXHIBIT 6**  -  Complaint in the *Gonzalez* action filed May 5, 2008

**EXHIBIT 7**  -  Complaint in the *Nelson* action filed March 4, 2011

**EXHIBIT 8**  -  Complaint in the *Motta* action filed March 16, 2011

**EXHIBIT 9**  -  Complaint in the *Valiente* action filed February 14, 2011

**EXHIBIT 10**  -  Complaint in the *Matatova* action filed February 17, 2011

**EXHIBIT 11**  -  Complaint in the *Mossler* action filed February 18, 2011

**EXHIBIT 12**  -  Complaint in the *Holmes* action filed February 25, 2011

**EXHIBIT 13**  -  Complaint in the *Wiener* action filed March 1, 2011

**EXHIBIT 14**  -  Complaint in the *Smith* action filed April 8, 2011

**EXHIBIT 15**  -  Complaint in the *Gabriel* action filed May 24, 2011

**EXHIBIT 16**  -  Amended Consolidated Complaint in the *Coordination Proceedings* action filed October 21, 2011

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Dolly Gee and the assigned discovery Magistrate Judge is Margaret A. Nagle.

The case number on all documents filed with the Court should read as follows:

## CV12- 3699 DMG (MANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=========================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

COPY

GAUNTLETT & ASSOCIATES
David A. Gauntlett (SBN 96399)
James A. Lowe (SBN 214383)
Andrew M. Sussman (SBN 112418)
18400 Von Karman, Suite 300, Irvine, CA 92612
Telephone: (949) 553-1010; Fax: (949) 553-2050

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIG 5 SPORTING GOODS CORPORATION, a Delaware corporation,<br><br>PLAINTIFF(S)<br><br>v.<br><br>ZURICH AMERICAN INSURANCE COMPANY, a New York corporation; and HARTFORD FIRE INSURANCE COMPANY, a Connecticut corporation,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV 12-3699** ~DMG (MAN)<br><br><br>**SUMMONS** |

TO:     DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, __James A. Lowe_____, whose address is __GAUNTLETT & ASSOCIATES, 18400 Von Karman, Suite 300, Irvine, CA 92612____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __APR 2 7 2012_____          By: _____

MARSHA DAVIS

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (10/11)                                                **SUMMONS**

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

 COPY

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| BIG 5 SPORTING GOODS CORPORATION, a Delaware corporation | ZURICH AMERICAN INSURANCE COMPANY, a New York corporation; and HARTFORD FIRE INSURANCE COMPANY, a Connecticut corporation |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| David A. Gauntlett; James A. Lowe; Andrew M. Sussman GAUNTLETT & ASSOCIATES, 18400 Von Karman, Suite 300, Irvine, CA 92612 - Phone: (949) 553-1010; Fax: (949) 553-2050 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☑ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes   ☑ No   ☑ MONEY DEMANDED IN COMPLAINT: $ In excess of $75,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Venue per 28 U.S.C. §1391(a)(c); Jurisdiction per 28 U.S.C. §1332

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☑ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | IMMIGRATION | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | ☐ 465 Other Immigration Actions | | |

# CV12-3699

**FOR OFFICE USE ONLY:**   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| BIG 5 SPORTING GOODS CORPORATION - Los Angeles County, CA | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | ZURICH AMERICAN INSURANCE COMPANY - State of Illinois<br>HARTFORD FIRE INSURANCE COMPANY - State of Connecticut |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles, California | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _[signature]_   Date April 27 2012

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |