# EXHIBIT 1

# Disclosure Statement



**ZURICH**

Big 5 Sporting Goods Corporation
Policy: GLO 9262202-00 Effective: 9/25/07-9/25/08

### ZURICH AGENT/BROKER COMPENSATION DISCLOSURE

Dear Policyholder:

On behalf of Zurich, we are glad you have chosen us as your insurance company. We look forward to meeting your insurance needs and want you to understand clearly our business relationship with the agent or broker you chose to represent your company's interests in the placement of insurance coverages.

As is the case with many insurance companies in the United States, Zurich distributes many of its insurance products through agents or brokers. This means that your agent or broker is not employed by Zurich and, in fact, may represent many insurance companies. Because we do not employ your agent or broker, the way they are compensated may vary. We recommend you discuss these arrangements with your agent or broker.

Many insurance representatives are compensated for their services by insurance companies with whom they place the insurance that they sell to their customers. Zurich is not paying your agent or broker any base commission or contingent compensation in connection with your policy.

For further information, please go to **http://www.zurichna.com**. Click on the information link located on the Agent/Broker Compensation Disclosure section. Where appropriate, insert the Access Code provided below, and you will be able to view this information. Alternatively, you may call (877) 347-6465 to obtain this type of information.

Thank you.

Access Code:  0816174594



EXHIBIT

**1**

U-RET-E-302-A CW  (09/06)
Page 1 of 1

EXH 1–1

## COMMON POLICY DECLARATIONS

| | |
|---|---|
| Policy Number GLO 9262202-00 | Renewal of Number    NEW |
| Named Insured and Mailing Address | Producer and Mailing Address |
| BIG 5 SPORTING GOODS CORPORATION<br>2525 EL SEGUNDO BLVD.<br>EL SEGUNDO CA 90245 | WILLIS RISK & INS SERVS OF LA<br>801 S FIGUEROA ST STE 700<br>LOS ANGELES CA 90017-2573 |

Producer Code 18757-000

Policy Period:  Coverage begins   09-25-07   at 12:01 A.M.;   Coverage ends   09-25-08   at 12:01 A.M.

The named insured is   ☐ Individual      ☐ Partnership      ☒ Corporation
☐ Other:

This insurance is provided by one or more of the stock insurance companies which are members of the Zurich-American Insurance Group. The company that provides coverage is designated on each Coverage Part Common Declarations. The company or companies providing this insurance may be referred to in this policy as "The Company", we, us, or our. The address of the companies of the Zurich-American Insurance Group are provided on the next page.

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE(S):**

GENERAL LIABILITY COVERAGE                          PREMIUM  $   222,817.00
  issued by ZURICH AMERICAN INSURANCE COMPANY

| | | |
|---|---|---|
| **THIS PREMIUM MAY BE SUBJECT TO AUDIT.**<br>This premium does not include Taxes and Surcharges. | **TOTAL**   $       222,817.00<br>SEE INSTALLMENT SCHEDULE | |
| **Taxes and Surcharges** | **TOTAL**   $ | |

The Form(s) and Endorsement(s) made a part of this policy at the time of issue are listed on the **SCHEDULE of FORMS and ENDORSEMENTS.**

Countersigned this        day of _____
                                                          Authorized Representative

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART FORM(S), FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

INSURED COPY

EXH 1-2



**ZURICH**

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY.
THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE
TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE OF PREMIUM
# (RELATING TO DISPOSITION OF TRIA)

## SCHEDULE*

(1) Premium attributable to risk of loss from certified acts of terrorism through the end of the policy period based on the extension of the Terrorism Risk Insurance Act of 2002, as amended by the Terrorism Risk Insurance Extension Act of 2005, ("TRIA") for lines subject to TRIA:

1%

If TRIA terminates, the portion of this premium attributable to the remaining part of the policy period, as modified by any change shown in (2) of this Schedule, applies to the risk of loss from terrorism after the termination of TRIA.

(2) Premium change upon termination of TRIA or upon applicability of a Conditional Endorsement:

No change unless one of the following is completed -

Return Premium:

Additional Premium:

If we notify you of an additional premium charge, the additional premium will be due as specified in such notice.

*Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.  Disclosure of Premium**

In accordance with the TRIA, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to the risk of loss from terrorist acts certified under that Act for lines subject to TRIA. That portion of your premium attributable is shown in the Schedule of this endorsement or in the Declarations.

**B.  Disclosure of Federal Participation in Payment of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% (85% for 2007) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. The Act currently provides for no insurance industry or United States government participation in terrorism losses that exceed $100 billion in any one calendar year. The federal program established by the Act is scheduled to terminate at the end of December 31, 2007 unless extended by the federal government.

**C.  Possibility of Additional or Return Premium**

The premium attributable to the risk of loss from certified acts of terrorism coverage is calculated based on the coverage (if any) in effect at the beginning of your policy for certified acts of terrorism. If your policy contains a Conditional Endorsement, the termination of TRIA or extension of the federal program with certain modifications (as explained in that endorsement) may modify the extent of coverage (if any) your policy provides for terrorism. If TRIA terminates or the Conditional Endorsement becomes applicable to your policy, the return premium (if any) or additional premium (if any) shown in (2) of the Schedule will apply. If the level or terms of federal participation change, the premium shown in (1) of the Schedule attributable to that part of the policy period extending beyond such a change may not be appropriate and we will notify you of any changes in your premium.

Includes copyrighted material of ISO Properties, Inc. with its permission.
Copyright Zurich American Insurance Company 2006

U-GU-692-B CW (01/06)
Page 1 of 1

INSURED COPY

# Important Notice - In Witness Clause

In return for the payment of premium and subject to all the terms of the policy, we agree with you to provide insurance as stated in this policy.  This policy shall not be valid unless countersigned by the duly authorized Representative of the Company.

**In Witness Whereof,** this Company has executed and attested these presents and, where required by law, has caused this policy to be countersigned by its duly authorized Representative.

**President**                                        **Corporate Secretary**

Zurich American Insurance Company
American Guarantee and Liability Insurance Company
American Zurich Insurance Company
Zurich American Insurance Company of Illinois
    Administrative Offices
    Zurich Towers
    1400 American Lane
    Schaumburg, Illinois 60196-1056

---

**QUESTIONS ABOUT YOUR INSURANCE?**  Your agent or broker is best equipped to provide information about your insurance.  Should you require additional information or assistance in re-solving a complaint, call or write to the following (please have your policy or claim number ready):

Zurich North America
Customer Inquiry Center
1400 American Lane
Schaumburg, Illinois 60196-1056
**1-800-382-2150** (Business Hours:  8 a.m. - 4 p.m. [CT])

---

U-GU-319-E (5/96)
Page 1 of 1

INSURED COPY

EXH 1–4

**INSTALLMENT PREMIUM SCHEDULE**

The total premium shown in the Declarations of this policy is made payable in installments, on the dates and in the amounts shown below.

| NAMED INSURED | POLICY NUMBER |
|---|---|
| BIG 5 SPORTING GOODS | GLO 9262202-00 |

| PAYMENT DUE | SUBJECT PREMIUM | TOTAL PREMIUM |
|---|---|---|
| 10/25/07 | $ 18,569.00 | $ 18,569.00 |
| 10/26/07 | $ 18,568.00 | $ 18,568.00 |
| 11/25/07 | $ 18,568.00 | $ 18,568.00 |
| 12/25/07 | $ 18,568.00 | $ 18,568.00 |
| 01/25/08 | $ 18,568.00 | $ 18,568.00 |
| 02/25/08 | $ 18,568.00 | $ 18,568.00 |
| 03/25/08 | $ 18,568.00 | $ 18,568.00 |
| 04/25/08 | $ 18,568.00 | $ 18,568.00 |
| 05/25/08 | $ 18,568.00 | $ 18,568.00 |
| 06/25/08 | $ 18,568.00 | $ 18,568.00 |
| 07/25/08 | $ 18,568.00 | $ 18,568.00 |
| 08/25/08 | $ 18,568.00 | $ 18,568.00 |
| TOTAL | $ 222,817.00 | $ 222,817.00 |

Failure to pay the Installment Premium by the Date Due shown shall constitute non-payment of premium for which we may cancel this policy.

INSURED COPY

U-GU-406-A (07/94)
PAGE 1 OF 1

EXH 1-5

**Policy Number**
**GLO 9262202-00**

SCHEDULE OF FORMS AND ENDORSEMENTS

# ZURICH AMERICAN INSURANCE COMPANY

| | | |
|---|---|---|
| Named Insured | BIG 5 SPORTING GOODS | Effective Date:      09-25-07 |
| | | 12:01 A.M., Standard Time |
| Agent Name | WILLIS RISK & INS SERVS OF LA | Agent No.      18757-000 |

COMMON POLICY FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| U-GU-692-B CW | 01-06 | DISCLOSURE OF PREMIUM (RELATING TO TRIA) |
| U-GU-D-365-A | 03-94 | POLICY COMMON DECLARATIONS |
| U-GU-319-E | 05-96 | IN WITNESS CLAUSE |
| U-GU-406-A | 07-94 | INSTALLMENT PREMIUM SCHEDULE |
| U-GU-619-A CW | 10-02 | SCHEDULE OF FORMS AND ENDORSEMENTS |
| IL 00 17 | 11-98 | COMMON POLICY CONDITIONS |
| IL 00 21 | 07-02 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDT |
| IL 02 70 | 11-04 | CA CHANGES - CANCELLATION & NONRENEWAL |
| IL 00 03 | 07-02 | CALCULATION OF PREMIUM |

GENERAL LIABILITY FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| U-GL-1016-B CW | 05-04 | LEAD LIABILITY EXCLUSION |
| U-GL-1055-A CW | 12-01 | BODILY INJURY REDEFINED |
| UGL1171ACW | 07-03 | FUNGI OR BACTERIA EXCLUSION |
| U-GL-1175ACW | 09-03 | ADD'L INSD-AUTO-OWNERS LESSEES CONTRACTR |
| U-GL-1178ACW | 07-03 | ASBESTOS EXCLUSION ENDORSEMENT |
| U-GL-849-B CW | 08-04 | EMPLOYEE BENEFITS LIABILITY-CLAIMS MADE |
| U-GL-D-1115-B CW | 09-04 | COMMERCIAL GL COVERAGE PART DECLARATIONS |
| U-GL-D-849-B CW | 09-04 | EMPLOYEE BENEFITS LIAB DEC - CLAIMS MADE |
| U-GL-113-B CW | 04-89 | MANUSCRIPT ENDORSEMENT |
| CG 00 01 | 12-04 | COMMERCIAL GENERAL LIABILITY COV FORM |
| CG 32 34 | 01-05 | CALIFORNIA CHANGES |
| UGL872A | 10-96 | PREMIUM & REPORTS AGREEMENT-COMP. RATED |
| CG 00 67 | 03-05 | EXCL-VIOL OF STATS THAT GOVERN EMAIL FAX |
| CG 20 11 | 01-96 | ADDL INSD-MANAGERS/LESSORS OF PREMISES |
| CG 20 15 | 07-04 | ADDL INSD-VENDORS |
| CG 20 26 | 07-04 | ADDL INSD-DESIGNATED PERSON/ORGANIZATION |
| CG 21 47 | 07-98 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG 21 65 | 12-04 | TOTAL POLLUTION EXCL-WITH EXCEPTIONS |
| CG 22 74 | 10-01 | LIMITED CONTR LIABILITY COV FOR PERS/ADV |
| CG 25 04 | 03-97 | DESIGNATED LOCATIONS GENERAL AGGREGATE |
| UGL1327ACW | 03-07 | OTHER INSURANCE AMENDMENT |

U-GU-619-A CW (10/02)

INSURED COPY

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

    a. Make inspections and surveys at any time;

    b. Give you reports on the conditions we find; and

    c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    a. Are safe or healthful; or

    b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IL 00 17 11 98

Copyright, Insurance Services Office, Inc., 1998

Page 1 of 1         □

INSURED COPY

EXH 1–7

IL 00 21 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

   (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

   (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

   (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

   (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

IL 00 21 07 02                    © ISO Properties, Inc., 2001                    Page 1 of 2   □

INSURED COPY

EXH 1–8

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

   **(a)** Any "nuclear reactor";

   **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

   **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

IL 02 70 11 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** Paragraphs **2.** and **3.** of the **Cancellation** Common Policy Condition are replaced by the following:

**2. All Policies In Effect For 60 Days Or Less**

If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured at the mailing address shown in the policy and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

**a.** 10 days before the effective date of cancellation if we cancel for:

**(1)** Nonpayment of premium; or

**(2)** Discovery of fraud by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3. All Policies In Effect For More Than 60 Days**

**a.** If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

**(1)** Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

**(2)** Discovery of fraud or material misrepresentation by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**(3)** A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

IL 02 70 11 04                    © ISO Properties, Inc., 2004                    Page 1 of 4      □

INSURED COPY

EXH 1–10

(4) Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

(5) Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

(6) A determination by the Commissioner of Insurance that the:

(a) Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

(b) Continuation of the policy coverage would:

(i) Place us in violation of California law or the laws of the state where we are domiciled; or

(ii) Threaten our solvency.

(7) A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

b. We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

(1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium or discovery of fraud; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph **3.a.**

**B.** The following provision is added to the **Cancellation** Common Policy Condition:

**7. Residential Property**

This provision applies to coverage on real property which is used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household personal property in a residential unit, if such coverage is written under one of the following:

Commercial Property Coverage Part

Farm Coverage Part – Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

a. If such coverage has been in effect for 60 days or less, and is not a renewal of coverage we previously issued, we may cancel this coverage for any reason, except as provided in **b.** and **c.** below.

b. We may not cancel this policy solely because the first Named Insured has:

(1) Accepted an offer of earthquake coverage; or

(2) Cancelled or did not renew a policy issued by the California Earthquake Authority (CEA) that included an earthquake policy premium surcharge.

However, we shall cancel this policy if the first Named Insured has accepted a new or renewal policy issued by the CEA that includes an earthquake policy premium surcharge but fails to pay the earthquake policy premium surcharge authorized by the CEA.

c. We may not cancel such coverage solely because corrosive soil conditions exist on the premises. This Restriction **(c.)** applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

(1) Capital Assets Program Coverage Form (Output Policy);

(2) Commercial Property Coverage Part – Causes Of Loss – Special Form; or

(3) Farm Coverage Part – Causes Of Loss Form – Farm Property, Paragraph **D.** Covered Causes Of Loss – Special.

© ISO Properties, Inc., 2004

IL 02 70 11 04   □

INSURED COPY

EXH 1–11

**C.** The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

1. Subject to the provisions of Paragraphs **C.2.** and **C.3.** below, if we elect not to renew this policy, we will mail or deliver written notice stating the reason for nonrenewal to the first Named Insured shown in the Declarations and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

   We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

2. **Residential Property**

   This provision applies to coverage on real property used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household property contained in a residential unit, if such coverage is written under one of the following:

   Capital Assets Program (Output Policy) Coverage Part

   Commercial Property Coverage Part

   Farm Coverage Part – Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

   **a.** We may elect not to renew such coverage for any reason, except as provided in **b., c.** and **d.** below:

   **b.** We will not refuse to renew such coverage solely because the first Named Insured has accepted an offer of earthquake coverage.

   However, the following applies only to insurers who are associate participating insurers as established by Cal. Ins. Code Section 10089.16. We may elect not to renew such coverage after the first Named Insured has accepted an offer of earthquake coverage, if one or more of the following reasons applies:

   **(1)** The nonrenewal is based on sound underwriting principles that relate to the coverages provided by this policy and that are consistent with the approved rating plan and related documents filed with the Department of Insurance as required by existing law;

   **(2)** The Commissioner of Insurance finds that the exposure to potential losses will threaten our solvency or place us in a hazardous condition. A hazardous condition includes, but is not limited to, a condition in which we make claims payments for losses resulting from an earthquake that occurred within the preceding two years and that required a reduction in policyholder surplus of at least 25% for payment of those claims; or

   **(3)** We have:

   **(a)** Lost or experienced a substantial reduction in the availability or scope of reinsurance coverage; or

   **(b)** Experienced a substantial increase in the premium charged for reinsurance coverage of our residential property insurance policies; and

   the Commissioner has approved a plan for the nonrenewals that is fair and equitable, and that is responsive to the changes in our reinsurance position.

   **c.** We will not refuse to renew such coverage solely because the first Named Insured has cancelled or did not renew a policy, issued by the California Earthquake Authority that included an earthquake policy premium surcharge.

   **d.** We will not refuse to renew such coverage solely because corrosive soil conditions exist on the premises. This Restriction **(d.)** applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

   **(1)** Capital Assets Program Coverage Form (Output Policy);

   **(2)** Commercial Property Coverage Part – Causes Of Loss – Special Form; or

   **(3)** Farm Coverage Part – Causes Of Loss Form – Farm Property, Paragraph **D.** Covered Causes Of Loss – Special.

3. We are not required to send notice of nonrenewal in the following situations:

   **a.** If the transfer or renewal of a policy, without any changes in terms, conditions, or rates, is between us and a member of our insurance group.

INSURED COPY

**b.** If the policy has been extended for 90 days or less, provided that notice has been given in accordance with Paragraph **C.1.**

**c.** If you have obtained replacement coverage, or if the first Named Insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

**d.** If the policy is for a period of no more than 60 days and you are notified at the time of issuance that it will not be renewed.

**e.** If the first Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

**f.** If we have made a written offer to the first Named Insured, in accordance with the timeframes shown in Paragraph **C.1.**, to re-new the policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

IL 00 03 07 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

    BOILER AND MACHINERY COVERAGE PART
    CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
    COMMERCIAL AUTOMOBILE COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    CRIME AND FIDELITY COVERAGE PART
    EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
    FARM COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    PROFESSIONAL LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

© ISO Properties, Inc.,  2001

INSURED COPY

EXH 1–14

# Lead Liability Exclusion



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following exclusion is added to paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability and Coverage B - Personal And Advertising Injury Liability:**

This insurance does not apply to:

**Lead**

(1) "Bodily injury", "property damage" or "personal and advertising injury" arising out of or caused by the actual or alleged:

  (a) exposure to or existence of lead, paint containing lead, or any other material or substance containing lead; or

  (b) manufacture, distribution, sale, resale, re-branding, installation, repair, removal, encapsulation, abatement, replacement or handling of lead, paint containing lead, or any other material or substance containing lead,

  whether or not the lead is or was at any time airborne as a particle contained in a product ingested, inhaled, transmitted in any fashion, or found in any form whatsoever;

(2) Any legal obligation of any insured for indemnification or contribution due to damages arising out of "bodily injury", "property damage" or "personal and advertising injury" caused by lead, paint containing lead, or any other substance or material containing lead;

(3) Any loss, cost, expense or damages, whether direct or consequential, arising out of any:

  (a) request, demand or order that any insured or others test for, monitor, clean up, remove, abate, contain, treat, or neutralize lead, paint containing lead, or any other substance or material containing lead, or in any way respond to, or assess the effects of lead; or

  (b) claim or suit relating to testing for, monitoring, cleaning up, removing, abating, containing, treating, or neutralizing lead, paint containing lead, or any other substance or material containing lead or in any way responding to or assessing the effects of lead.

INSURED COPY

U-GL-1016-B CW (5/2004)
Page 1 of 1

EXH 1–15

# Bodily Injury Redefined

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Form**

The definition of "bodily injury" in SECTION V -  DEFINITIONS is replaced by the following:

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person.  This includes mental anguish, mental injury, shock, fright or death resulting from bodily injury, sickness or disease.

INSURED COPY

# Fungi Or Bacteria Exclusion Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'L Prem | Return Prem. |
|---|---|---|---|---|---|---|
|  |  |  |  |  | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following exclusion is added to paragraph **2. Exclusions** of **Section I. – Coverage A – Bodily Injury And Property Damage Liability** and paragraph **2. Exclusions** of **Coverage B – Personal And Advertising Injury Liability**:

**2.   Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

A.  "Bodily injury", "property damage" or "personal and advertising injury " caused directly or indirectly by the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any:

  1.   "Fungi"or "bacteria"; or

  2.   Substance, vapor or gas produced by or arising out of any "fungi" or "bacteria".

B.  Loss, costs or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or "bacteria", by any insured or by any other person or entity.

C.  For the purposes of this exclusion, the following definitions are added:

  1.   "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, "spores", scents or byproducts produced or released by fungi.

  2.   "Spores" means reproductive bodies produced by or arising out of  "fungi".

  3.   "Bacteria" means any type or form of bacteria and any materials or substances that are produced or released by bacteria.

This exclusion does not apply to any "fungi"or "bacteria" that are, are on, or are contained in, an edible good or edible product intended for human or animal consumption.

U-GL-1171-AC W (07/03)
Page 1 of 1

Includes copyrighted material of Insurance Services Office, Inc. with its permission

INSURED COPY

EXH 1–17

# Additional Insured – Automatic - Owners, Lessees Or Contractors - Broad Form

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'L Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**A.** **WHO IS AN INSURED (Section II)** is amended to include as an insured any person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement.

**B.** The insurance provided to additional insureds applies only to "bodily injury",  "property damage" or "personal and advertising injury" covered under **Section I, Coverage A, BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and **Coverage B, PERSONAL AND ADVERTISING INJURY LIABILITY**, but only if:

   1.  The "bodily injury" or  "property damage" results from your negligence; and

   2.  The "bodily injury",  "property damage"  or "personal and advertising injury" results directly from:

      a.   Your ongoing operations; or

      b.   "Your work" completed as included in the "products-completed operations hazard",

      performed for the additional insured, which is the subject of the written contract or written agreement.

**C.**  However, regardless of the provisions of paragraphs **A.** and **B.** above:

   1.   We will not extend any insurance coverage to any additional insured person or organization:

      a.   That is not provided to you in this policy; or

      b.   That is any broader coverage than you are required to provide to the additional insured person or organization in the written contract or written agreement; and

   2.   We will not provide Limits of Insurance to any additional insured person or organization that exceed the lower of:

      a.   The Limits of Insurance provided to you in this policy; or

      b.   The Limits of Insurance you are required to provide in the written contract or written agreement.

**D.**  The insurance provided to the additional insured person or organization does not apply to:

   1.   "Bodily injury",  "property damage" or "personal and advertising injury" that results solely from negligence of the additional insured; or

U-GL-1175-A CW (9/03)
Page 1 of 2

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

INSURED COPY

EXH 1–18

2.  "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering or failure to render any professional architectural, engineering or surveying services including:

    a.  The preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

    b.  Supervisory, inspection, architectural or engineering activities.

**E.**  The additional insured must see to it that:

1.  We are notified as soon as practicable of an "occurrence" or offense that may result in a claim:

2.  We receive written notice of a claim or "suit" as soon as practicable; and

3.  A request for defense and indemnity of the claim or "suit" will promptly be brought against any policy issued by another insurer under which the additional insured also has rights as an insured or additional insured.

**F.**  The insurance provided by this endorsement is primary insurance and we will not seek contribution from any other insurance available to any additional insured person or organization unless the other insurance is provided by a contractor other than you for the same operations and job location.  Then we will share with that other insurance by the method described in paragraph **4.c.** of **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS.**

Any provisions in this Coverage Part not changed by the terms and conditions of this endorsement continue to apply as written.

U-GL-1175-A CW (9/03)
Page 2 of 2

INSURED COPY

# Asbestos Exclusion Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

<b>THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.</b>

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following exclusion is added to paragraph **2. Exclusions** of **Section I - Coverage A – Bodily Injury And Property Damage Liability and Coverage B - Personal And Advertising Injury Liability:**

2.  **Exclusions**

    This insurance does not apply to:

    **Asbestos**

    **A.**  "Bodily injury", "property damage" or "personal and advertising injury" arising out of or which would not have occurred, in whole or in part, but for the actual, alleged or threatened discharge, dispersal, release, leakage, leaching, friability, flaking, escape or presence of asbestos, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to the injury or damage; or

    **B.**  Any sums that any insured or other entity must pay, repay or reimburse because of any:

        1.  Request, demand, order, statutory or regulatory requirement, direction or determination  that any insured or others  test for, investigate, monitor, clean up, remove, study, contain, treat, encapsulate, control or take any other action regarding asbestos; or

        2.  Claim  or "suit"  for damages arising out of or relating in any way to any request, demand, order, statutory or regulatory requirement, direction or determination  that any insured or  others  test for, investigate, monitor, clean up, remove, study, contain, treat, encapsulate, control or take any other action regarding asbestos; or

    **C.**  Any other loss, cost or expense arising out of or relating in any way to asbestos.

U-GL-1178-A CW (07/03)<br>Page 1 of 1

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

INSURED COPY

# Employee Benefits Liability –
# Claims-Made Coverage Form

**This Coverage Form provides claims-made coverage.  Please read the entire form carefully.**
Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations.  The words "we", "us", and "our" refer to the Company providing this insurance.

**Other words and phrases that appear in quotes have special meaning.  Refer to the Definitions Section.**

## Section I. Coverage - Employee Benefit Liability

**1.   Insuring Agreement**

A.   We will pay those sums that the "insured" becomes legally obligated to pay as damages because of an act, error, or omission in the "administration" of the "insured's" "employee benefit programs".  We will have the right and duty to defend the "insured" against any suit seeking those damages.  However, we will have no duty to defend the "insured" against any "suit" seeking damages for any act, error, or omission for which this insurance does not apply.  We may, at our discretion, investigate any "claim" and settle any "suit" that may result; but:

(1)   The amount we pay for damages is limited as described in Section II. - Limits of Insurance of this Coverage Part; and

(2)   Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under this Employee Benefit Liability coverage.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments of this Coverage Part.

B.   (1)   This insurance applies to an act, error or omission only if:

a.   A "claim" arising out of the act, error or omission is first made against any "insured" during the policy period;

b.   The act, error, or omission takes place in the "coverage territory";

c.   The "insured" had no knowledge of and could not have reasonably foreseen any circumstances which might result in a "claim" or "suit"; and

d.   The act, error, or omission did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period.

(2)   A "claim" will be deemed to have been made when notice of such claim is received and recorded by any "insured" or by us, whichever comes first.   "All "claims" for damages to the same person or organization will be deemed to have been made at the time the first of those "claims" is made against any "insured".

**2.   Exclusions**

This insurance does not apply to:

A.   "Bodily injury", "property damage", or "personal and advertising injury";

B.   Any "claim" or "suit" arising out of any dishonest, fraudulent, criminal or malicious act;

C.   Any "claim" or "suit" arising out of discrimination or humiliation;

D.   Any "claim" or "suit" arising out of an insurer's or other provider's failure to perform its contract;

E.   Any "claim" or "suit" arising out of your failure to comply with any workers compensation, unemployment insurance, social security, disability benefits law, or similar laws;

F.   Any "claim" or "suit" arising out of the failure of any of your "employee benefit plans" to meet obligations due to insufficient funds;

G.   Any "claim" or "suit" arising out of:

(1)   Advice given to any person to participate or not participate in a plan or program included in "employee benefit programs";

(2)   The appointment of, or failure to appoint, any investment manager, administrator, trustee, actuary, advisor, counsel, accountant, custodian, or consultant;

U-GL-849-B CW (8/04)
Page 1 of 4

INSURED COPY

EXH 1–21

(3) Any investment activity, including the management, administration or disposition of assets of your "employee benefit programs"; or

(4) Failure of any investment to perform as represented by any "insured".

H. Any "claim" or "suit" arising out of an "insured's" liability as a fiduciary under:

a. The Employee Retirement Income Security Act of 1974 (PL93-406) and its amendments; or

b. The Internal Revenue Code of 1986 (including the Internal Revenue Code of 1954) and its amendments.

### 3. Supplementary Payments

We will pay, in addition to the applicable Limits of Insurance, with respect to any "claim" we investigate or settle or "suit" we defend:

A. All expenses incurred by us, all costs taxed against the "insured" in any "suit" defended by us and all interest on the full amount of any judgment which accrues after entry of the judgment and before we have paid or tendered or deposited in court, that part of the judgment which does not exceed the limit of our insurance.

B. Premiums on appeal bonds required and on bonds to release attachments in any "suit". We do not have to furnish these bonds.

C. All reasonable expenses incurred by the "insured" at our request to assist us in the investigation or defense of the "claim" or "suit", including actual loss of earnings up to $250 a day because of time off from work.

D. Prejudgment interest awarded against the "insured" on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

## II.  Limits of Insurance

A. The Limits of Insurance shown in the Declarations and the rules below establish the most we will pay regardless of the number of:

(1) "Insureds";

(2) "Claims" made or "suits" brought; or

(3) "Employees" or dependents or beneficiaries of "employees" making "claims" or bringing "suits".

B. The Aggregate Limit is the most we will pay for all damages because of all "claims" or "suits" arising from the "administration" of your "employee benefit programs" during the policy period.

C. Subject to the Aggregate Limit provisions in B. above, the Each Claim Limit is the most we will pay for all damages sustained by any one "employee", including the "employee's" dependents and beneficiaries, because of acts, errors, or omissions committed in the "administration" of your "employee benefit programs".

D. The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## III.  Conditions

### A.  Bankruptcy

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of our obligations.

### B.  Duties in the Event of an Act, Error, Omission, Claim or Suit

(1) Regardless of whether the loss exceeds any applicable deductible amount, you must see to it that we are notified as soon as practicable of any act, error, or omission which may result in a "claim". To the extent possible, notice should include:

a. How, when, and where the act, error, or omission took place;

b. The names and addresses of any injured "employee", dependents, or beneficiaries of any "employee" and witnesses.

Notice of an act, error, or omission is not notice of a "claim".

(2) If a "claim" is received by any "insured", you must:

a. Immediately record the specifics of the "claim" and the date received; and

b. Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim" as soon as practicable.

(3) You and any other involved "insured" must:

a. Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the "claim" or "suit";

b. Authorize us to obtain records and other information;

INSURED COPY

c.  Cooperate with us in the investigation, settlement, or defense of the "claim" or "suit"; and

d.  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury to which this insurance may also apply.

(4) No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

C.  **Legal Action Against Us**

No person or organization has a right:

(1) To join us as a party or otherwise bring us into a "suit" asking for damages from an "insured"; or

(2) To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an "insured" obtained after an actual trial, but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the "insured", and the claimant or the claimant's legal representative.

D.  **Other Insurance**

If other valid and collectible insurance is available to the "insured" for a loss we cover under this Coverage Part, our obligations are limited as follows:

(1) **Primary Insurance**

This insurance is primary except when 2. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in 3. below.

(2) **Excess Insurance**

This insurance is excess over any other insurance whether primary, excess, contingent, or on any other basis that is effective prior to the beginning of the policy period shown in the Declarations of this insurance and applies to an act, error, or omission on other than a claims-made basis, if:

a.  No Retroactive Date is shown in the Declarations of this insurance; or

b.  The other insurance has a policy period which continues after the Retroactive Date, if any, shown in the Declarations of this insurance.

When this insurance is excess, we will have no duty to defend any "claim" or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the "insured's" rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

i.  The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

ii.  The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

(3) **Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

E.  **Separation of Insureds**

Except with respect to the Limits of Insurance and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

(1) As if each Named Insured were the only Named Insured; and

(2) Separately to each "insured" against whom "claim" is made or "suit" is brought.

F.  **Transfer Of Rights Of Recovery Against Others To Us**

If the "insured" has rights to recover all or part of any payment we made under this Coverage Part, those rights are transferred to us. The "insured" must do nothing after loss to impair them. At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.

**IV. Definitions**

INSURED COPY

A. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

    (1) Notices that are published include material placed on the Internet or on similar electronic means of communication; and

    (2) Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

B. "Administration" means:

    (1) Counseling "employees", including their dependents and beneficiaries, with respect to "employee benefit programs";

    (2) Handling records in connection with "employee benefit programs"; or

    (3) Effecting or terminating an "employee's" participation in a plan included in "employee benefit programs".

C. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

D. "Claim" means:

The receipt by you of a demand for money or services which alleges an act, error, or omission in the "administration" of your "employee benefit programs."

E. "Coverage territory" means:

    (1) The United States of America (including its territories and possessions), Puerto Rico, and Canada; or

    (2) All parts of the world if the "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **E. 1.** above, or in a settlement to which we agree.

F. "Employee" means:

Your officers and employees, whether actively employed, disabled, or retired.

G. "Employee benefit programs" mean:

Group life insurance, group accident or health insurance, profit sharing plans, pension plans, employee stock subscription plans, workers compensation, unemployment insurance, salary continuation plans, social security, disability benefits insurance, savings plans, vacation plans, or any other similar plans or programs.

H. "Insured" means:

You and any of your partners, executive officers, directors, members, stockholders or "employees", provided such "employee" is authorized to act in the "administration" of your "employee benefit programs".

I. "Personal and advertising injury" means:

Injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    (1) False arrest, detention, or imprisonment;

    (2) Malicious prosecution;

    (3) The wrongful eviction from wrongful entry into, or invasion of the right of private occupancy of, a room, dwelling, or premises that a person occupies by or on behalf of its owner, landlord, or lessor;

    (4) Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services; or

    (5) Oral or written publication,' in any manner, of material that violates a person's right of privacy;

    (6) The use of another's advertising idea in your "advertisement"; or

    (7) Infringing upon another's copyright, trade dress or slogan in your "advertisement".

J. "Property damage" means:

    (1) Physical injury to tangible property, including all resulting loss of use of that property.

    (2) Loss of use of tangible property that is not physically injured.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications, software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

K. "Suit" means:

A civil proceeding in which damages to which this insurance applies is alleged. "Suit" includes:

    (1) An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

    (2) Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

## COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

Policy Number: GLO 9262202-00

Named Insured: BIG 5 SPORTING GOODS

Policy Period: Coverage begins        09-25-07        at 12:01 A.M.; Coverage ends        09/25/08        at 12:01 A.M.

Producer Name: WILLIS RISK & INS SERV OF LA                Producer No. 18757-000

**Item 1.** Business Description:

**Item 2.** Limits of Insurance

GENERAL AGGREGATE LIMIT                                    $ 2,000,000

PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT  $ 2,000,000

EACH OCCURRENCE LIMIT                             $ 1,000,000

    DAMAGE TO PREMISES
    RENTED TO YOU LIMIT                        $ 1,000,000                Any one premises

    MEDICAL EXPENSE LIMIT                      $ 10,000                    Any one person

PERSONAL AND ADVERTISING INJURY LIMIT      $ 1,000,000                Any one person or
    organization

**Item 3.** Retroactive Date  **(CG 00 02 ONLY)**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" offense
which occurs before the Retroactive Date, if any, shown here: NONE
    (Enter Date or "None" if no Retroactive Date applies)

**Item 4.** Form of Business and Location Premises

Form of Business: CORPORATION

Location of All Premises You Own, Rent or Occupy: **See Schedule of Locations**

**Item 5.** Schedule of Forms and Endorsements

Form(s) and Endorsement(s) made a part of this Policy at time of issue:
**See Schedule of Forms and Endorsements**

**Item 6.** Premiums

| | |
|---|---|
| Coverage Part Premium: | $ 222,817.00 |
| Other Premium: | |
| Total Premium: | $ 222,817.00 |

U-GL-D-1115-B CW   (9/04)

**EMPLOYEE BENEFIT LIABILITY COVERAGE PART - CLAIMS MADE DECLARATIONS**

Policy Number:  GLO 9262202-00

Named Insured:  BIG 5 SPORTING GOODS

Policy Period: Coverage begins 09-25-07    at 12:01 A.M.; Coverage ends 09-25-08    at 12:01 A.M.

Producer Name:  WILLIS RISK & INS SERVS OF LA     Producer No. 18757-000

**Item 1.**  Limits of Insurance

    $ 2,000,000    Aggregate Limit
    $ 1,000,000    Each Claim Limit

**Item 2.**  Form of Business:

☐ Individual    ☐ Parnership    ☐ Joint Venture    ☒ Corporation
☐ Other

**Item 3.**  Premium Schedule:

| Code No. | Premium Basis (Estimated Number of Employees) | Rate | | Advance Premium |
|----------|-----------------------------------------------|------|---|-----------------|
| _____ | _____ | $ _____ | Per Employee | $ INCLUDED |
| | | $ _____ | Flat Charge | $ _____ |

Total Advance Premium For This Coverage Part:    $ INCL

Audit Period:  ☒ Annual    ☐ Semi-annual    ☐ Quarterly    ☐ Monthly

**Forms And Endorsements Applicable To This Coverage Part:**

**SEE SCHEDULE OF FORMS AND ENDORSEMENTS**

**Retroactive Date:**

09/25/1992   (Enter date or "None" if no Retroactive Date applies)

This insurance does not apply to damages caused by an act, error, or omission which occurred before the Retroactive Date, if any, shown above.

U-GL-D-849-B CW (9/04)
Page 1 of 1

INSURED COPY

EXH 1-26

**COVERAGE CHANGE ENDORSEMENT**

Insurance for this coverage part provided by:
ZURICH AMERICAN INSURANCE COMPANY

This endorsement changes the policy.  Please read it carefully.

COMMERCIAL GENERAL LIAB. COVERAGE PART

90 DAYS CANCELLATION/NON-RENEWAL

IN THE EVENT OF CANCELLATION OR NON-RENEWAL, WRITTEN NOTICE
WILL BE GIVEN THE INSURED 90 DAYS PRIOR TO THE EFFECTIVE
DATE OF SUCH CANCELLATION OR NON-RENEWAL, EXCEPT FOR NON
PAYMENT OF PREMIUM WHERE 10 DAYS NOTICE WILL BE GIVEN.

U-GL-113-B CW (04/89)

**COVERAGE CHANGE ENDORSEMENT**

Insurance for this coverage part provided by:
ZURICH AMERICAN INSURANCE COMPANY

This endorsement changes the policy.  Please read it carefully.

COMMERCIAL GENERAL LIAB. COVERAGE PART

BROAD FORM NAMED INSURED

BIG 5 CORP. AND ANY SUBSIDIARY COMPANY AS NOW FORMED OR
CONSTITUTED, AND ANY OTHER COMPANY OVER WHICH THE NAMED
INSURED HAS ACTIVE CONTROL SO LONG AS THE NAMED INSURED OR
ANY SUBSIDIARY COMPANY HAS OWNERSHIP INTEREST OF MORE THAN
50% OF SUCH COMPANY.

U-GL-113-B CW (04/89)

INSURED COPY

EXH 1—28



**ZURICH**

# Coverage Change Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Agency No. | Addl. Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| GLO9262202-00 | 09/25/2007 | 09/25/2008 | 09/25/2007 | 18757-000 | $ | $ |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Amendment – Policy Aggregate Limits of Insurance – Per Location

Schedule

The Commercial General Liability Limits of Liability shown on the Declarations page are deleted and replaced by the following limits of liability:

| | |
|---|---|
| Policy General Aggregate Limit | 2,000,000 |
| Products-Completed Operations Aggregate Limit | 2,000,000 |
| Per Location Aggregate Limit | 20,000,000 |
| Personal Injury and Advertising Injury Limit | 1,000,000 |
| (Any one person or organization) | |
| Each Occurrence Limit | 1,000,000 |
| Fire Damage Limit | 1,000,000 |
| Medical Expense Limit | 10,000 |

Section III. Limits of Insurance is deleted and replaced by the following:

1. The Limits of Insurance shown in the Schedule of this endorsement and the rules below determine the most we will pay regardless of the number of:

   a. Insureds;
   b. Claims made or "suits" brought; or
   c. Persons or organizations making claims or bringing "suits".

2. The Policy General Aggregate Limit is the most we will pay for the sum of:

   a. All Medical Expenses under Coverage C.;

   b. All damages under Coverage A., except damages because of "bodily injury" or "property damage" included in the products - completed operations hazard"; and

5. Subject to 2. above, the Personal Injury and Advertising Injury Limit is the most we will pay under Coverage B. for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

6. Subject to 2., 3. or 4. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

c. All damages under Coverage B;

that arise out of all of your "locations" combined during the policy period, including any Medical Expenses under Coverage C. or damages under Coverage A. that may not be determinable as arising specifically from any one of your "locations".

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A., during the policy period for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard."

4. Subject to 2. above, the Per Location Aggregate Limit is the most we will pay for the sum of:

   a. Medical Expenses under Coverage C.; and

   b. Damages under Coverage A., except damages because of "bodily injury" or "property damage" included in the products-completed operations hazard";

   c. That arise out of any one of your "locations".

7. Subject to 6. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

8. Subject to 6 above, the Medical Expense Limit is the most we will pay under Coverage C. for all medical

U-GL-113-B CW (4/89)
Page 1 of 2

a.   Damages under Coverage A; and
b.   Medical Expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence."

For all sums which the insured becomes legal obligated to pay as damages caused by "occurrences" under Coverage A (Section I) and for all medical expenses caused by accidents under Coverage C (Section I), which cannot be attributed only to operations at or from any one of your "locations":

a.   Any payments made under Coverage A for damages or under Coverage C for medical expenses shall reduce the amount available under the Policy General Aggregate Limit or the Products-Completed Operations Aggregate Limit, which is applicable; and

b.   Such payments shall not reduce any Per Location Aggregate Limit.

9.   expenses because of "bodily injury" sustained by any one person

For purposes of this change in Limits of Insurance, the following definition applies:

"Location" means premises you own, rent or that are temporarily occupied by you.  A location involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad, will be deemed to be a single location.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months.  In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

Countersigned _____

          Authorized Representative

# Waiver Of Subrogation (Blanket) Endorsement



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 9262202-00 | 09/25/2007 | 09/25/2008 | 09/25/2007 | 18757-000 | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following is added to the **Transfer Of Rights Of Recovery Against Others To Us Condition**:

If you are required by a written contract or agreement, which is executed before a loss, to waive your rights of recovery from others, we agree to waive our rights of recovery.  This waiver of rights shall not be construed to be a waiver with respect to any other operations in which the insured has no contractual interest.

U-GL-113-B CW (4/89)
Page 1 of 1

EXH 1–31

# Unintentional Failure to Disclose Hazards



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 9262202-00 | 09/25/2007 | 09/25/2008 | 09/25/2007 | 18757-000 | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Form**

Any unintentional error or omission in the description of, or failure to completely describe, any premises or operations intended to be covered by this Commercial General Liability Coverage Form will not invalidate or affect coverage for those premises or operations.  However, you must report such error or omission to us as soon as practicable after its discovery.

U-GL-113-B CW (04/89)
Page 1 of 1

EXH 1−32

# Newly Formed Organizations
# Coverage Endorsement



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 9262202-00 | 09/25/2007 | 09/25/2008 | 09/25/2007 | 18757-000 | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

I.   Part 3. of Section II - WHO IS AN INSURED is deleted and replaced by the following:

   3.   Any organization you newly acquire or form and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization.  However:

      a.   Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

      b.   Coverage A. does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization;

      c.   Coverage B. does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization;

      d.   If the organization is a joint venture or partnership, coverage is afforded only to the extent of the percentage of ownership interest of any insured in the organization.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

U-GL-113-B CW (4/89)
Page 1 of 1

EXH 1–33

# Personal Injury- Limited Discrimination


**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Form**

It is agreed that "Personal and Advertising Injury" is amended to include the following offense:

Discrimination (other than unfair trade practices) based on race, religion excluding any discrimination:

1. Intentionally committed by, at the direction of, or with the consent of any insured;

2. Directly or indirectly related to the employment, prospective employment or any person or persons by any insured;

3. To the extent that coverage for discrimination is prohibited by stature an applicable decision of any appellate court, or ruling of an administration agency.



**ZURICH**

## Foreign Coverage - Worldwide

| Policy No. | Exp. Date of Pol. | Eff. Date of End. | Agency No. | Addl. Prem. | Return Prem. |
|---|---|---|---|---|---|
| GLO 9262202-00 | 09/25/2007 | 09/25/2008 | 18757-000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:
**Commercial General Liability Coverage Part**

1.  The "coverage territory" definition is replaced by the following:

    a.  Anywhere in the world, excluding Cambodia, Cuba, Iran, Iraq, Laos, Libya, North Korea, Mongolia, Croatia, Macedonia, Slovenia, Bosnia, Herzegovina, Serbia, Montenegro, Somalia, Sudan, Afghanistan, and any country not listed for which a United States of America Department of State ban is issued during the policy term.

    b.  International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place excluded in a. above.

2.  The Insuring Agreement is amended by adding the following:

    We have the right and duty to defend any "suit" asking for covered damages arising from the insured's operations within the "coverage territory" provided the "suit" is brought within the United States of America, including its territories and possessions, Puerto Rico, or Canada.  We have no duty, however, to defend any "suit" not covered by the Coverage Part.  We may investigate and settle any claim or "suit" as we consider appropriate.

# Nonowned Watercraft Coverage Endorsement


ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

It is understood and agreed that exclusion g. of Coverage A (Section I) does not apply to "bodily injury" or "property damage" arising out of the maintenance, operation or use, including "loading or unloading" of any watercraft that is less than 100 feet in length provided that such watercraft is not owned by you and is not being used to carry persons for a charge.

# Knowledge of Occurrence Endorsement



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 9262202-00 | 09/25/2007 | 09/25/2008 | 09/25/2007 | 18757-000 | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

1.   The Duties In The Event Of Accident, Occurrence, Offense, Injury, Claim Or Suit condition is amended per the following:

It is agreed that knowledge of an "accident", "occurrence", offense, "injury", claim, or "suit" by your agent, servant, or "employee" will not in itself be considered to be your knowledge of the "accident", "occurrence", offense, "injury" claim, or "suit" unless the individual(s) in the following positions(s) or department shall have received such notice from the agent, servant, or "employee":

**Position or Department**:

Risk Manager

2.   If a claim is made or "suit" is brought against any insured, you or the individual(s) in the Position or Department above must:

a.   Immediately record the specifics of the claim or "suit" and the date received; and

b.   Notify us and see that we receive written notice of the claim or "suit" as soon as practicable.

# Batch Endorsement



**ZURICH**

| Policy number | Effective date of policy | Expiration date of policy | Effective date of endorsement |
|---|---|---|---|
| GLO 9262202-00 | 09/25/2007 | 09/25/2008 | 09/25/2007 |

| Agency number | Additional premium | Return premium | |
|---|---|---|---|
| 18757-000 | $ | $ | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:
**Commercial General Liability Coverage Part**

It is agreed that all covered claims or "suits" for "bodily injury" or "property damage" which arise from the same hazard, defect or source of contamination relating to any single "batch" of "your product" shall be considered as arising out of one "occurrence".

All damages and subsequent claims or "suits" resulting from any "occurrence" noted above shall be allocated to the one policy period in which "bodily injury" or "property damage" first occurs, and only the available limits of insurance of that policy period will apply to the payment or settlement of all such claims or "suits".

"Batch" of "your product" is defined as follows:

All "bodily injury" and "property damage" arising out of one prepared or acquired lot of goods or products will Be considered as arising out of one "occurrence".

# Fellow Employee Coverage Endorsement



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 9262202-00 | 09/25/2007 | 09/25/2008 | 09/25/2007 | 18757-000 | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

1.  It is agreed that paragraph **2. a. (1)** of **SECTION II - WHO IS AN INSURED** is deleted and replaced by the following:

    (1)  "Bodily injury" or "personal and advertising injury":

        (a)  To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company);

        (b)  For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (1) (a) above; or

        (c)  Arising out of his or her providing or failing to provide professional health care services.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

U-GL-113-B CW (4/89)
Page 1 of 1

EXH 1—39

# Incidental Medical Malpractice
# Coverage Endorsement



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 9262202-00 | 09/25/2007 | 09/25/2008 | 09/25/2007 | 18757-000 | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

I. Sections 2.a.(1)(d) of **Section II. WHO IS AN INSURED** are deleted and replaced by the following:

    2. Each of the following is also an insured:

        **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insured for:

        **(1)** "Bodily injury" or "personal and advertising injury":

            **(d)** Arising out of his or her providing or failing to provide professional health care services, except any "bodily injury" or "personal and advertising injury" arising out of:

                **(1)** medical or paramedical services to persons performed by any physician, dentist, nurse, emergency medical technician, paramedic or other licensed medical care person employed by you to provide such services: or

                **(2)** emergency cardiopulmonary resuscitation (CPR) or first aid services performed by any other employee of yours who is not a licensed medical professional.

II. Any insurance coverage provided by this endorsement is excess over any other valid and collectible insurance.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

U-GL-113-B CW (4/89)
Page 1 of 1

EXH 1-40

## LAWYERS PROFESSIONAL LIABILITY ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| POLICY NO. | EFF. DATE OF POL. | AGENCY NO. | ADD'L PREM. | RETURN PREM. |
|---|---|---|---|---|
| GLO 9262202-00 | 09/25/2007-09/25/2008 | 18757-000 | | |

**Named Insured**    **Big 5 Sporting Goods Corporation**

**Address (including ZIP code)**    **2525 El Segundo Blvd.**
**El Segundo, CA 90245**

---

**This endorsement modifies insurance provided by the following**
**Commercial General Liability Coverage Part**

---

**SCHEDULE**

**LIMITS OF LIABILITY**

| | |
|---|---|
| **Each Act or Omission** Limit | $ 1,000,000 |
| **Lawyers Professional Aggregate Limit:** | $ 1,000,000 |
| **Self Insured Retention** | $ See Self Insured Retention Endorsement |

---

As respects coverage afforded by this endorsement, the following changes apply to the Commercial General Liability Coverage Part:

**I. The following applies in places of SECTION I. COVERAGES:**

SECTION I- COVERAGE

COVERAGE L. – LAWYERS PROFESSIONAL LIABILITY

**I. Insuring Agreement**

We will pay on behalf of the insured all sums which the insured shall be legally obligated to pay as "damages" because of any one act, error or omission or any one related series of acts, errors or omissions of the insured, or of any other person for whose acts, errors or omissions the insured is legally responsible, which occurs during the policy period, within the "coverage territory," and arises out of professional services performed on behalf of the insured by any lawyer employed by you in your legal department, including those professional services provided:

A. at your direction in service to non-profit organizations; or
B. without fee to fellow employees in connection with matters not related to your activities.

When the insured acts as an administrator, conservator, executor, guardian, trustee, or in any similar fiduciary capacity, the insured's acts, errors or omissions in such capacity shall be deemed to be the performance of professional services for others in the insured's profession as a lawyer, but only to the extent that such acts, errors or omissions are those for which is the usual attorney-client relationship the insured would be legally responsible as attorney for a fiduciary.

We shall have the right and duty to defend any suit against the insured seeking "damages" for acts, errors or omissions to which this insurance applies. We may at our discretion investigate any act, error or omission and settle any claim or "suit" that may result. But:

(1) The amount we will pay for "damages" is limited as described in LIMITS OF INSURANCE (SECTION III); and

Countersigned _____
          Authorized Representative

U-GL-113-B CW (4-89)

1 of 4

(2) Our right and duty to defend end when we have used up the applicable limit of

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided under SUPPLEMENTARY PAYMENTS COVERAGE L.

## 2. EXCLUSIONS

This insurance does not apply to any claim or "suit:"

a. arising out of any dishonest, fraudulent, criminal or malicious act or omission of any insured employee of any insured;

b. made by an employer or, if the employer is a corporation, its parent or subsidiary or by any director, officer, or stockholder thereof against an insured who is a salaried employee of such employer;

c. for bodily injury, or for injury to or destruction of any tangible property, including the loss of use thereof;

d. for any loss sustained by the insured as the beneficiary or distributee of any trust or estate;

e. arising out of acts or omissions involving any security or any activities or transactions subject or claimed to be subject to the Securities Act of 1933, the Securities Exchange Act of 1934, the Public Utility Holding Company Act of 1935, the Trust Indenture Act of 1939, the Investment Company Act of 1940 or the Investment Advisors Act of 1940 or any purchase, sale or offering of any security to or from the public which is subject to any State Blue Sky or Securities Law.

f. Arising out of or in connection with any insured's activities in the dual capacity as a lawyer and (1) as officer, director, partner, or any similar elective or appointive management position of any corporation, cooperative association, association, partnership, joint stock company, trust, unincorporated organization or any other entity other than that of the named insured, or (2) as a

insurance in the payment of judgements or settlements under this Coverage L.

public official or an employee of a governmental body, subdivision or agency;

g. Arising out of or in connection with the insured's activities as a fiduciary under the Employees Retirement Income Security Act of 1974 and any amendments thereof or any regulation or orders issued pursuant thereto.

## SUPPLEMENTARY PAYMENTS

We will pay, with respect to any claims or "suit" we defend:

1. All expenses we incur.

2. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

3. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $100 a day because of time off from work.

4. All costs taxed against the Insured in the "suit."

5. Prejudgment interest awarded against the insured on that part of the judgement we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

6. All interest on the full amount of any judgement that accrues after entry of the judgement and before we have paid, offered to pay, or deposited in court the part of the judgement that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

U-GL-113-B CW (4-89)

EXH 1–42

II. **SECTION II. WHO IS AN INSURED** is deleted and replaced by the following:

### II. WHO IS AN INSURED

1. The Insured: The word "Insured" whenever used for this coverage means:

   a. the Named Insured is the entity named in Item 1. of the Declarations;

   b. any person who is not defined as Named Insured, but was, is now, or hereafter becomes an employed lawyer or other employee of the entity named in the Declarations, solely while acting in a professional capacity on behalf of such entity;

   c. any former partner, officer, director or stockholder employee of the entity named in the Declarations, solely while acting in a professional capacity on behalf of such entity;

   d. any partner, officer, director or stockholder employee of the entity named in the Declarations who has retired from the practice of law, but only for those professional services rendered prior to the date of retirement from the insured entity.

   e. As respects the liability of each insured as is otherwise covered herein, the heirs, executors, administrators, assigns and legal representatives of each insured in the event of death, incapacity or bankruptcy.

2. Additional Insureds: The following shall also be deemed to be insureds: any lawyer who during a policy period becomes a partner, officer, director, stockholder employee or employed lawyer of the entity.

III. **Paragraphs 1 and 2 of SECTION III. LIMITS OF INSURANCE** are deleted and replaced by the following:

1. The Limits of Insurance shown in Declarations, or in the Schedule of this endorsement, and the rules below fix the most we will pay for Layers Professional Liability coverage, regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits."

2. The Lawyers Professional Aggregate Limit indicated in the Schedule of this endorsement is the most we will pay for all "damages" arising from all professional services as defined in Coverage L of this endorsement on pages 1 and 2, which occur during the policy period that are a result of any act, error or omission of the insured, or of any other person for whose acts, errors or omissions the insured is legally responsible.

The following is added to paragraph 5. Section III. LIMITS OF LIABILITY:

Subject to 2. above, our total liability for all "damages" arising out of any one act, error or omission or any one related series of acts, errors or omissions for which insurance is provided by Coverage L. Lawyers Professional Liability shall not exceed the limit of liability stated in the Schedule of the Lawyers Professional Liability Endorsement as applicable to Each Act or Omission.

IV. **Section IV. COMMERCIAL GENERAL LIABLITY CONDITIONS Condition 2.** Paragraph a. is amended per the following:

2. **Duties in the Event of Claim or Suit**

   a. You must see to it that we are notified in writing as soon as practicable of an act, error or omission which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the act, error or omission took place;

      (2) The nature of "damages" arising out of the act, error or omission.

U-GL-113-B CW (4-89)

3 of 4

V. **As respects this Coverage L. Lawyers Professional Liability, the following definitions apply:**

1. "Coverage territory" means the United States of America (including its territories and possessions), Puerto Rico and Canada.

2. "Damages" means loss, judgments and settlements, but does not include:

    (1) the return or withdrawal of fees;

    (2) judgements or awards from acts deemed uninsurable by law;

    (3) any fine, sanction, penalty, or punitive or exemplary damages; or

    (4) any damages which are a multiple of compensatory damages awarded against the insured, including without limitations an award of double and treble damages.

3. "Suit" means a civil proceeding in which "damages" because of an act or omission arising out of the performance of professional services to which this insurance applies are alleged. "Suit" includes:

    (a) An arbitration proceeding in which such "damages" are claimed and to which you must submit or do submit with our consent; or

    (b) Any other alternative dispute resolution proceeding in which such "damages" are claimed and to which submit with our consent.

VI. **As respects this Coverage L. Lawyers Professional Liability, the following shall apply:**

1. The Self Insured Retention amount shown in the Self Insured Retention Endorsement shall apply to all "damages" for each act or omission. The Self Insured Retention amount is in addition to the limit of liability for this Coverage L. Your obligation to pay the Self Insured Retention is applicable even when this insurance applies on an excess basis as provided for in **Section VII.**

VII. **As respects this Coverage L. Lawyers Professional Liability, the following Other Insurance provision shall apply:**

1. This insurance shall apply only as excess insurance over any other valid and collectible insurance.

U-GL-113-B CW (4-89)

EXH 1–44



**ZURICH**

## Self Insured Retention Endorsement

**(Including Defense Costs - We Pay All Defense Costs Excess of Self Insured Retention Amount)**

| Policy No. | Exp. Date of Pol. | Eff. Date of End. | Agency No. | Addl. Prem. | Return Prem. |
|---|---|---|---|---|---|
| GLO 9262202-00 | 09/25/2008 | 09/25/2007 | 18757-000 | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the policy.

---

### SCHEDULE

#### Self Insured Retention Amounts

$ __250,000_____ **Per Occurrence** ( Including Defense Costs - All Defense Costs Paid By Us Excess Of Self Insured Retention Amount)

$ _____ **Per Claim** (Including Defense Costs - All Defense Costs Paid By Us Excess of Self Insured Retention Amount)

$ _____ **Aggregate** (Including Defense Costs - The Maximum You Will Pay For Damages and Defense Costs Combined)

**Periodic Reporting Requirement** __Quarterly_____

**Claim Service Provider** __Zurich Services Corporation_____

---

The insurance provided by this policy is subject to the following additional provisions, which in the event of conflict with any other provisions elsewhere in the policy, shall control the application of the insurance to which this endorsement applies:

**I. Self Insured Retention and Defense Costs - Your Obligations**

A. The "self insured retention" amounts stated in the Schedule of this endorsement apply as follows:

1. If a Per Occurrence Self Insured Retention Amount is shown in the Schedule of this endorsement, you shall be responsible for payment of all damages and "defense costs" as they are incurred for each "occurrence" until you have paid damages and "defense costs" equal to the Per Occurrence Amount shown in the Schedule, subject to the provisions of A. 3. below, if applicable. The Per Occurrence Amount is the most you will pay for damages

and "defense costs" arising out of any one "occurrence", regardless of the number of persons or organizations making claims or bringing suits because of the "occurrence".

2. If a Per Claim Self Insured Retention Amount is shown in the Schedule of this endorsement, you shall be responsible for payment of all damages and "defense costs" as they are incurred until you have paid damages and "defense costs" for each claim equal to the Per Claim Amount shown in the Schedule, subject to the provisions of A. 3. below, if applicable. The Per Claim Amount is the most you will pay for each claim brought by each person or organization making a claim or bringing a suit as a result of any one "occurrence".

3. If the Self Insured Retention Aggregate Amount is shown in the Schedule of this endorsement, the Aggregate Amount is the most

---

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

you will pay for damages and "defense costs" incurred under this policy. If this Amount is exceeded in your payment of damages and "defense costs", then the policy terms and conditions at that time continue to apply as written, but your obligation for any further payment of damages or "defense costs" under this Self Insured Retention Endorsement is no longer applicable. This Amount applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of this policy.

If no entry appears in the Schedule of this endorsement as Aggregate, then your obligation for payment of damages and "defense costs" applies in accordance with the Per Occurrence or Per Claim "self insured retention" provisions, whichever is applicable.

**B. Defense Costs**

Except for any "defense costs" that we may elect to pay, you shall pay all "defense costs" as they are incurred until you have paid "defense costs" and damages equal to the applicable "self insured retention" amount, subject to application of the Aggregate Amount, if applicable.

**C. Settlement of Claim**

1. **Within Self Insured Retention**

   If any final judgment or settlement and "defense costs" is less than the "self insured retention" amount indicated in the Schedule of this endorsement above, you shall have the right and obligation to settle all such claims or suits under this policy.

2. **Excess of Self Insured Retention**

   You may not settle any claim or suit which exceeds any "self insured retention" amount indicated in the Schedule of this endorsement without our written permission to do so. If you fail to obtain such written permission, we shall have no obligation to provide coverage for that claim or suit under this policy.

**D. Authorized Claim Service Provider**

1. You shall employ a claim service provider acceptable to us for the purpose of providing claim services for settlement of losses within the "self insured retention" amounts. You shall pay all fees, charges and costs of the claim service provider in addition to the "self insured retention" amounts, without any reimbursement from us.

2. In the event of cancellation, expiration or revision of the claims service contract between you and the claim service provider, you shall

notify us within (10) days of such change and shall replace the claim service provider with another claim service provider that is acceptable to us.

**E. Notification of Potential Penetration**

1. You or the authorized claim service provider must notify us promptly of an "occurrence" which may result in a claim under this policy. Notice must include:

   a. How, when and where the "occurrence took place;

   b. The names and addresses of any injured persons and witnesses; and

   c. The nature and location of any injury or damage arising out of the "occurrence".

2. You or the authorized claim service provider must notify us promptly, per E.1. above, in the event of any "occurrence", without regard to liability, which results in any of the following injuries:

   a. Death;

   b. Brain damage;

   c. Paraplegic or quadriplegic impairment;

   d. Amputation or serious functional impairment of any major limb;

   e. Severe burns involving more than 25% of the body or causing serious disfigurement;

   f. Sensory impairment (sight, hearing, taste or smell);

   g. Severe internal body organ damage or loss;

   h. Multiple fractures involving more than one body part;

   i. Permanent and total disability;

   j. Sexual abuse or molestation; or

   k. Significant psychological / neurological involvement; or

   Where exposure, loss reserve or potential judgment initiates or changes or where suit is filed per the following:

   l. Potential exposure equals or exceeds 25% of the "self insured retention" amount shown in the Schedule of this endorsement for Per Occurrence or Per Claim, whichever applies; or

   m. Loss reserve established equals or exceeds 25% of the "self insured retention" amount shown in the Schedule of this en-

dorsement for Per Occurrence or Per Claim, whichever applies; or

n.  Potential judgment, if the claim prevails, without regard to liability, equals or exceeds 25% of the "self insured retention" amount shown in the Schedule of this endorsement for Per Occurrence or Per Claim, whichever applies; or

o.  A suit is filed. We shall have the right to appoint defense counsel, even if the amount claimed in the suit is unspecified or less than the "self insured retention" amount shown in the Schedule of this endorsement for Per Occurrence or Per Claim, whichever applies.

### F.  Reporting - Self Insured Retention

You must report claims or suits to our Claim Department per the following:

1.  You or the authorized claim service provider must monitor the cumulative losses and "defense costs" sustained during the policy period and report those total amounts to us in accordance with the frequency of report indicated in the Periodic Reporting Requirement of the Schedule of this endorsement. However, if the total of all incurred losses and "defense costs" should at any time during the policy period attain a total amount equal to 75% of the Self Insured Retention Aggregate Amount, if indicated in the Schedule of this endorsement, you are required in that event to make an immediate report to us as to total incurred losses and "defense costs" sustained at that time.

The Periodic Report that you send to us must be in a format that is acceptable to us, and include an accounting of all individual losses and "defense costs" incurred as of the date of the Report.

2.  Within forty-five (45) days after the end of the policy term, you must give us a listing of all existing claims or suits within the "self insured retention" amounts. At a minimum, such listing will include the following for each claim or suit:

i.   a description of each claim or suit;

ii   the date of the "occurrence";

iii.  the amounts paid and reserved for future payments for loss and "defense costs"; and

iv.  the current status of the claim or suit.

3.  Quarterly thereafter, you are required to give us an updated listing of the

status of all claims or suits, both paid and reserved, until all claims or suits for the reporting period are closed or settled.

### G.  Representations

By acceptance of this policy you agree that you will not procure insurance for all or any part of the "self insured retention" amounts shown in the Schedule of this endorsement. If such insurance is procured, there will be no coverage under this policy.

### H.  Compliance

Compliance with the requirements set forth in this endorsement is a condition precedent to coverage. You acknowledge that in the event of non-compliance, we shall not be required to establish prejudice resulting from the non-compliance, but shall be automatically relieved of liability with respect to any claim.

## II.  Our Rights and Obligations Excess of the Self Insured Retention

### A.  Self Insured Retention/Defense Costs – Your Failure To Respond

In the event of your refusal to respond to your obligations for the payment of "self insured retention" amounts or "defense costs" for any reason, we shall not make payments for you, nor in any event shall we be required to substitute for you as respects your responsibility for payment of these "self insured retention" amounts or "defense costs".

### B.  Damages Excess of Self Insured Retention – Per Occurrence or Per Claim

We shall be liable only for the amount of damages and "defense costs" in excess of the "self insured retention" amounts as applicable, shown in the Schedule above, up to the applicable Limits of Insurance shown in the Declarations of this policy.

### C.  Damages Excess of Self Insured Retention - Aggregate

1.  If the Self Insured Retention Aggregate Amount (if selected) shown in the Schedule of this endorsement is exceeded in your payment of damages or "defense costs", we will at that time assume your obligations for payment of all subsequent damages and "defense costs" subject to the Limits of Insurance provisions of this policy.

2. In the event of a midterm cancellation of this policy, the Self Insured Retention Aggregate Amount shown in the Schedule of this endorsement is not subject to any pro rata reduction. Such Aggregate Amount will apply as if the policy term had not been shortened.

D. **Settlement of Claims**

1. **Within Self Insured Retention**

We shall have, at our option, the right but not the obligation or duty to negotiate the settlement of any claim within the applicable "self insured retention" amount, which in our opinion is deemed expedient. But we shall obtain your consent prior to entering into any settlement of any claim which is equal to or less than the "self insured retention" amount. If, however, you shall refuse to consent to any settlement recommended by us within the "self insured retention" amount and shall elect to contest the claim or continue with any legal proceedings in connection with such claim, our liability for that claim shall not exceed the amount determined by subtracting the "self insured retention" amount from the amount for which the claim could have been settled, including "defense costs" incurred with our consent to the date of such refusal. And we shall have no liability with respect to such claim if that difference is zero or negative.

2. **Excess of Self Insured Retention**

With respect to any claim under this insurance which has been tendered to us and which may exceed the "self insured retention" amount shown in the Schedule of this endorsement for Per Occurrence or Per Claim, whichever applies, we have the right and duty to negotiate the settlement of such claim and may pay any or all damages and "defense costs" on your behalf, both within and excess of the applicable "self insured retention" amount. Any such payments made by us within the "self insured retention" amount shall be reimbursed promptly by you.

3. **Excess of Self Insured Retention Aggregate**

If during the policy period we assume responsibility for your obligations after you have exceeded the policy Self Insured Re-

tention Aggregate Amount (if selected) in your payment of damages and "defense costs", we shall at that time have the right and duty to defend "suits" and settle existing and new losses and claims as we deem expedient and without your consent for the remainder of the policy period.

III. **Definitions**

A. "Self insured retention" means:

the amount or amounts which you or any insured must pay for all compensatory damages and "defense costs" which you or any insured shall become legally obligated to pay because of damages arising from any coverage included in the policy.

B. "Defense costs" means:

expenses directly allocable to specific claims and shall include but not be limited to all Supplementary payments as defined under the policy(ies); all court costs, fees and expenses; costs for all attorneys, witnesses, experts, depositions, reported or recorded statements, summonses, service of process, legal transcripts or testimony, copies of any public records; alternative dispute resolution; interest; investigative services, medical examinations, autopsies, medical costs containment; declaratory judgment, subrogation and any other fees, costs or expenses reasonably chargeable to the investigation, negotiation, settlement or defense of a claim or a loss under the policy(ies).

C. "Occurrence" for purposes of this endorsement only, means an "occurrence", offense, accident, act, error or omission or any other such similar event, as defined or used in our policy, that must occur in order to initiate payment of covered losses under the policy terms and conditions.

# Lead Liability Exclusion

**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following exclusion is added to paragraph **2. Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability and Coverage B - Personal And Advertising Injury Liability:**

This insurance does not apply to:

**Lead**

(1)  "Bodily injury", "property damage" or "personal and advertising injury" arising out of or caused by the actual or alleged:

    **(a)**  exposure to or existence of lead, paint containing lead, or any other material or substance containing lead; or

    **(b)**  manufacture, distribution, sale, resale, re-branding, installation, repair, removal, encapsulation, abatement, replacement or handling of lead, paint containing lead, or any other material or substance containing lead,

    whether or not the lead is or was at any time airborne as a particle contained in a product ingested, inhaled, transmitted in any fashion, or found in any form whatsoever;

(2)  Any legal obligation of any insured for indemnification or contribution due to damages arising out of "bodily injury", "property damage" or "personal and advertising injury" caused by lead, paint containing lead, or any other substance or material containing lead;

(3)  Any loss, cost, expense or damages, whether direct or consequential, arising out of any:

    **(a)**  request, demand or order that any insured or others test for, monitor, clean up, remove, abate, contain, treat, or neutralize lead, paint containing lead, or any other substance or material containing lead, or in any way respond to, or assess the effects of lead; or

    **(b)**  claim or suit relating to testing for, monitoring, cleaning up, removing, abating, containing, treating, or neutralizing lead, paint containing lead, or any other substance or material containing lead or in any way responding to or assessing the effects of lead.

COMMERCIAL GENERAL LIABILITY
CG 00 01 12 04

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© ISO Properties, Inc., 2003

INSURED COPY

EXH 1–50

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

### 2. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2003

INSURED COPY

CG 00 01 12 04   □

EXH 1–51

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

© ISO Properties, Inc., 2003

INSURED COPY

EXH 1—52

**(2)** Any loss, cost or expense arising out of any:

  **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

  **(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g.  Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

  **(a)** Less than 26 feet long; and

  **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

  **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

  **(b)** the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h.  Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i.  War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j.  Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

© ISO Properties, Inc., 2003

INSURED COPY

CG 00 01 12 04        □

EXH 1–53

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III — Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III — Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III — Limits Of Insurance; and

© ISO Properties, Inc., 2003

INSURED COPY

☐

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

---

© ISO Properties, Inc., 2003

INSURED COPY

CG 00 01 12 04   □

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## COVERAGE C MEDICAL PAYMENTS

**1. Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A**.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

© ISO Properties, Inc., 2003

INSURED COPY

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All costs taxed against the insured in the "suit".

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

© ISO Properties, Inc., 2003

INSURED COPY

CG 00 01 12 04          □

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

© ISO Properties, Inc., 2003

INSURED COPY

EXH 1–58

**2.** The General Aggregate Limit is the most we will pay for the sum of:

   **a.** Medical expenses under Coverage **C**;

   **b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   **c.** Damages under Coverage **B**.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage **A**; and

   **b.** Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

### 1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

### 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

     **(1)** How, when and where the "occurrence" or offense took place;

     **(2)** The names and addresses of any injured persons and witnesses; and

     **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

   **b.** If a claim is made or "suit" is brought against any insured, you must:

     **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

     **(2)** Notify us as soon as practicable.

     You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   **c.** You and any other involved insured must:

     **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

     **(2)** Authorize us to obtain records and other information;

     **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

     **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

   **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

© ISO Properties, Inc., 2003

INSURED COPY

CG 00 01 12 04   ☐

EXH 1–59

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This Insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** — Coverage **A** — Bodily Injury And Property Damage Liability.

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

© ISO Properties, Inc., 2003

INSURED COPY

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in **a.** above;

**(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

© ISO Properties, Inc., 2003

INSURED COPY

CG 00 01 12 04        ☐

**b.** Your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

---

CG 00 01 12 04 © ISO Properties, Inc., 2003 **Page 13 of 15** □

INSURED COPY

**(1)** Equipment designed primarily for:

  **(a)** Snow removal;

  **(b)** Road maintenance, but not construction or resurfacing; or

  **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

  **(a)** When all of the work called for in your contract has been completed.

  **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

  **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2) The providing of or failure to provide warnings or instructions.

COMMERCIAL GENERAL LIABILITY
CG 32 34 01 05

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    ELECTRONIC DATA LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCT WITHDRAWAL COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    UNDERGROUND STORAGE TANK POLICY

The term "spouse" is replaced by the following:

Spouse or registered domestic partner under California law.

© ISO Properties, Inc., 2004

INSURED COPY

EXH 1–65



# Premium And Reports Agreement – Composite Rated Policies

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:
**Commercial General Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**

### Schedule

1. **Unit of Exposure (Check One):**

☐ per 1000 gallons          ☐ per licensed "auto"          ☒ **per $1,000 gross sales**

☐ per $1,000 **payroll**          ☐ per other: _____

2. **Coverage Unit of Exposure**          **Rate(s)**          **Estimated Premium(s)**
   $971,222,177          $0.2294          $222,817

3. **Deposit Premium:**          $          222,817

4. **Minimum Premium:**          $          222,817

Condition **5, Premium Audit,** of Section **IV, Commercial General Liability Conditions,** is replaced by the following:

5. **Premium Audit**

   a. We will compute all premiums for this Coverage Part according to our rules and the composite rates shown in the Schedule above or attached hereto.

   b. For policies other than Annual Reporting, the deposit premium shown in the Schedule is due and payable on the first day of the policy period. The first Named Insured will pay, within 20 days following the mailing or delivery of the statement of audited premium for each audit period, the earned premium due.

   c. Within 180 days after this Coverage Part expires we will conduct an audit, which may not be waived. We will compute the earned premium for the policy period by multiplying the composite rate against the total developed exposure. If the earned premium is greater than the sum of the deposit and any interim adjustment premiums, the first Named Insured will pay us the excess; if less, we will return the unearned portion to the first Named Insured. However, the earned premium will not be less than the greater of the 80% of the estimated annual premium or the Minimum Premium shown in the Schedule.

   d. The first Named Insured must maintain records of the information we need for premium computation and send us copies at such times as we may request.

   e. The units of exposure shown in the Schedule are defined as follows:

      1) **Gallons** means the total number of gallons of liquefied petroleum gasses invoiced on any basis to any customer, whether or not the insured actually takes possession of such gases.

      2) **Gross sales** means gross sales invoiced, before discounts, but does not include taxes collected for any governmental unit.

      3) **Licensed "auto"** means the final average of the number of "autos" at policy inception and the number of "autos" at policy termination.

      4) **Other** means the unit of exposure defined in the Unit of Exposure endorsement attached to this policy.

      5) **Payroll** means total remuneration for all "employees" of the insured as defined in our rating manuals.

COMMERCIAL GENERAL LIABILITY
CG 00 67 03 05

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

  **2. Exclusions**

  This insurance does not apply to:

  **DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

  "Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

  **a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

  **b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

  **c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**B.** The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

  **2. Exclusions**

  This insurance does not apply to:

  **DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

  "Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

  **a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

  **b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

  **c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

© ISO Properties, Inc., 2004

INSURED COPY

EXH 1–67

POLICY NUMBER: GLO 9262202-00

COMMERCIAL GENERAL LIABILITY
CG 20 11 01 96

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

1.  Designation of Premises (Part Leased to You):

    BLANKET WHERE REQUIRED BY CONTRACT, PRIOR TO LOSS.

2.  Name of Person or Organization (Additional Insured):

    BLANKET WHERE REQUIRED BY CONTRACT, PRIOR TO LOSS.

3.  Additional Premium: INCL.

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

1.  Any "occurrence" which takes place after you cease to be a tenant in that premises.

2.  Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.

CG 20 11 01 96                 Copyright, Insurance Services Office, Inc., 1994                 Page 1 of 1   ☐

INSURED COPY

POLICY NUMBER: GLO 9262202-00

COMMERCIAL GENERAL LIABILITY
CG 20 15 07 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) (Vendor) | Your Products |
|---|---|
| BLANKET WHERE REQUIRED BY CONTRACT, PRIOR TO LOSS. | BLANKET WHERE REQUIRED BY CONTRACT, PRIOR TO LOSS. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) (referred to below as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

1. The insurance afforded the vendor does not apply to:

    a. "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

    b. Any express warranty unauthorized by you;

    c. Any physical or chemical change in the product made intentionally by the vendor;

    d. Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

    e. Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

    f. Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

CG 20 15 07 04

© ISO Properties, Inc., 2004

Page 1 of 2

INSURED COPY

**g.** Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

**h.** "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

**(1)** The exceptions contained in Subparagraphs **d.** or **f.**; or

**(2)** Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

**2.** This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

© ISO Properties, Inc., 2004

INSURED COPY

**CG 20 15 07 04**   □

EXH 1–70

POLICY NUMBER: GLO 9262202-00

COMMERCIAL GENERAL LIABILITY
CG 20 26 07 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) |
| --- |
| ONLY THOSE WHERE REQUIRED BY WRITTEN CONTRACT. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**A.** In the performance of your ongoing operations; or

**B.** In connection with your premises owned by or rented to you.

CG 20 26 07 04

© ISO Properties, Inc., 2004

INSURED COPY

Page 1 of 1    □

EXH 1–71

COMMERCIAL GENERAL LIABILITY
CG 21 47 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph 2., **Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

    **(1)** A person arising out of any:

        **(a)** Refusal to employ that person;

        **(b)** Termination of that person's employment; or

        **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

    **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

    **(1)** Whether the insured may be liable as an employer or in any other capacity; and

    **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph 2., **Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

    **(1)** A person arising out of any:

        **(a)** Refusal to employ that person;

        **(b)** Termination of that person's employment; or

        **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

    **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

    **(1)** Whether the insured may be liable as an employer or in any other capacity; and

    **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, Insurance Services Office, Inc., 1997

INSURED COPY

COMMERCIAL GENERAL LIABILITY
CG 21 65 12 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION WITH A BUILDING HEATING, COOLING AND DEHUMIDIFYING EQUIPMENT EXCEPTION AND A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

   **(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

   This exclusion does not apply to:

   **(a)** "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests; or

   **(b)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

      **(i)** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

      **(ii)** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

   **(2)** Any loss, cost or expense arising out of any:

   **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   **(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

CG 21 65 12 04

© ISO Properties, Inc., 2003

Page 1 of 1

INSURED COPY

POLICY NUMBER:   GLO 9262202-00

**COMMERCIAL GENERAL LIABILITY**
CG 22 74 10 01

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LIMITED CONTRACTUAL LIABILITY COVERAGE FOR PERSONAL AND ADVERTISING INJURY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

Designated Contract Or Agreement:
AS RESPECTS THE NAMED INSURED'S OBLIGATION FOR SECURITY GUARD CONTRACTS.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** With respect to the contract or agreement designated in the Schedule above, Subparagraph **e.** of Paragraph **2. Exclusions** of Section I – Coverage B – **Personal And Advertising Injury Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement.

This exclusion does not apply to:

(1) Liability for damages that the insured would have in the absence of the contract or agreement; or

(2) Liability for "personal and advertising injury" if:

(a) The liability pertains to your business and is assumed in the designated contract or agreement shown in the Schedule in which you assume the tort liability of another. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

(b) The "personal and advertising injury" occurs subsequent to the execution of the designated contract or agreement shown in the Schedule; and

(c) The "personal and advertising injury" arises out of the offenses of false arrest, detention or imprisonment.

CG 22 74 10 01

© ISO Properties, Inc., 2001

Page 1 of 2   ☐

INSURED COPY

Solely for the purposes of liability so assumed in such designated contract or agreement, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "personal injury" described in Paragraph **A.2.e.(2)(c)** above, provided:

   **(i)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same designated contract or agreement; and

   **(ii)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**B.** With respect to the contract or agreement designated in the Schedule above, the following is added to **Section I — Supplementary Payments — Coverages A And B:**

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**1.** The "suit" against the indemnitee seeks damages for which the insured has assumed tort liability of the indemnitee in a designated contract or agreement shown in the Schedule, if such liability pertains to your business. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

**2.** This insurance applies to such liability assumed by the insured;

**3.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same designated contract or agreement;

**4.** The allegations in the "suit" and the information we know about the offense are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**5.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**6.** The indemnitee:

   **a.** Agrees in writing to:

      **(1)** Cooperate with us in the investigation, settlement or defense of the "suit";

      **(2)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

      **(3)** Notify any other insurer whose coverage is available to the indemnitee; and

      **(4)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

   **b.** Provides us with written authorization to:

      **(1)** Obtain records and other information related to the "suit"; and

      **(2)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **A.2.e.(2)** of this endorsement, such payments will not be deemed to be damages for "personal and advertising injury" as described in Paragraph **A.2.e.(2)(c)** above and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

**1.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**2.** The conditions set forth above, or the terms of the agreement described in Paragraph **6.** above, are no longer met.

© ISO Properties, Inc., 2001

INSURED COPY

CG 22 74 10 01      ☐

POLICY NUMBER: GLO 9262202-00

**COMMERCIAL GENERAL LIABILITY**
**CG 25 04 03 97**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DESIGNATED LOCATION(S)
# GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Designated Location(s):**

BLANKET ALL LOCATIONS PER SCHEDULE ON FILE WITH COMPANY.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE A (SECTION I), and for all medical expenses caused by accidents under COVERAGE C (SECTION I), which can be attributed only to operations at a single designated "location" shown in the Schedule above:

**1.** A separate Designated Location General Aggregate Limit applies to each designated "location", and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

**2.** The Designated Location General Aggregate Limit is the most we will pay for the sum of all damages under COVERAGE A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under COVERAGE C regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**3.** Any payments made under COVERAGE A for damages or under COVERAGE C for medical expenses shall reduce the Designated Location General Aggregate Limit for that designated "location". Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Location General Aggregate Limit for any other designated "location" shown in the Schedule above.

**4.** The limits shown in the Declarations for Each Occurrence, Fire Damage and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Location General Aggregate Limit.

**CG 25 04 03 97**

Copyright, Insurance Services Office, Inc., 1996

INSURED COPY

**Page 1 of 2**    □

EXH 1-76

**B.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE **A** (SECTION **I**), and for all medical expenses caused by accidents under COVERAGE **C** (SECTION I), which cannot be attributed only to operations at a single designated "location" shown in the Schedule above:

**1.** Any payments made under COVERAGE **A** for damages or under COVERAGE **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-Completed Operations Aggregate Limit, whichever is applicable; and

**2.** Such payments shall not reduce any Designated Location General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Location General Aggregate Limit.

**D.** For the purposes of this endorsement, the **Definitions** Section is amended by the addition of the following definition:

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**E.** The provisions of Limits Of Insurance (SECTION III) not otherwise modified by this endorsement shall continue to apply as stipulated.

Copyright, Insurance Services Office, Inc., 1996

INSURED COPY

CG 25 04 03 97   ☐

EXH 1–77



**ZURICH**

# Other Insurance Amendment – Primary And Non-Contributory

| Policy No. | Exp. Date of Pol. | Eff. Date of End. | Agency No. | Addl. Prem. | Return Prem. |
|---|---|---|---|---|---|
| GLO 9262202-00 | 09/25/2007 | 09/25/2008 | 18757-000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

Named Insured:
Address (including ZIP Code):

This endorsement modifies insurance provided under the:
**Commercial General Liability Coverage Part**

SECTION IV. COMMERCIAL GENERAL LIABILITY CONDITIONS, 4. Other Insurance, is amended per the following:

1. The following paragraph is added under **a. Primary Insurance**:

    This insurance is primary insurance as respects our coverage to an additional insured person or organization, where the written contract or written agreement requires that this insurance be primary and non-contributory. In that event, we will not seek contribution from any other insurance policy available to the additional insured on which the additional insured person or organization is a Named Insured.

2. The following paragraph is added under **b. Excess Insurance**:

    This insurance is excess over:

    Any of the other insurance, whether primary, excess, contingent or on any other basis, available to an additional insured, in which the additional insured on our policy is also covered as an additional insured by attachment of an endorsement to another policy providing coverage for the same "occurrence", claim or "suit". This provision does not apply to any policy in which the additional insured is a Named Insured on such other policy and where our policy is required by written contract or written agreement to provide coverage to the additional insured on a primary and non-contributory basis.

Any provisions in this Coverage Part not changed by the terms and conditions of this endorsement continue to apply as written.

# EXHIBIT 2

RECEIVED

DEC    2008

LEGAL DEPT.

COMMERCIAL INSURANCE

**COMMON POLICY DECLARATIONS**

Policy Number   GLO 9262202-01                          Renewal of Number GLO 9262202-00

Named Insured and Mailing Address                       Producer and Mailing Address
BIG 5 SPORTING GOODS CORPORATION                        WILLIS RISK & INS SERVS OF LA
2525 EL SEGUNDO BLVD.                                   801 S FIGUEROA ST STE 700
EL SEGUNDO, CA 90245                                    LOS ANGELES, CA 90017-2573

                                                        Producer Code 18757-000

Policy Period:    Coverage begins   09/25/2008   at 12:01 A.M.    Coverage ends 09/25/2009   at 12:01 A.M.

The Named insured is   [ ] Individual     [ ] Partnership   [X] Corporation
                       [ ] Other:

This insurance is provided by one or more of the stock insurance companies which are members of the Zurich-American Insurance Group. The company that provides coverage is designated to each Coverage Part Common Declarations. The company or companies providing this insurance may be referred to in this policy as "The Company", we, us, or our. The address of the companies of the Zurich-American Insurance Group are provided on the next page.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE(S):

**GENERAL LIABILITY COVERAGE**                 PREMIUM      $ 203,898.00
   issued by ZURICH AMERICAN INSURANCE COMPANY

| | | |
|---|---|---|
| **THIS PREMIUM MAY BE SUBJECT TO AUDIT.** | TOTAL | $   203,898.00 |
| This premium does NOT INCLUDE Taxes and Surcharges. | | SEE INSTALLMENT SCHEDULE |
| **Taxes and Surcharges** | TOTAL | $ |
| | | SEE INSTALLMENT SCHEDULE |

The Form(s) and Endorsement(s) made a part of this policy at the time of issue are listed in the **SCHEDULE of FORMS and ENDORSEMENTS**

Countersigned this        day of

                                                        Authorized Representative

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART FORM(S), FORMS AND ENDORSEMENTS, IF ANY , ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

INSURED COPY

**EXHIBIT**

**2**

ALL-STATE LEGAL®

U-GU-D-365-A (01/94)
Page 1 of 1

EXH 2–1

# Disclosure Statement



Big 5 Sporting Goods Corporation
Policy: GLO9262202-01Effective: 9/25/08-9/25/09

### ZURICH AGENT/BROKER COMPENSATION DISCLOSURE

Dear Policyholder:

On behalf of Zurich, we are glad you have chosen us as your insurance company. We look forward to meeting your insurance needs and want you to understand clearly our business relationship with the agent or broker you chose to represent your company's interests in the placement of insurance coverages.

As is the case with many insurance companies in the United States, Zurich distributes many of its insurance products through agents or brokers. This means that your agent or broker is not employed by Zurich and, in fact, may represent many insurance companies. Because we do not employ your agent or broker, the way they are compensated may vary. We recommend you discuss these arrangements with your agent or broker.

Many insurance representatives are compensated for their services by insurance companies with whom they place the insurance that they sell to their customers. Zurich is not paying your agent or broker any base commission or contingent compensation in connection with your policy.

For further information, please go to **http://www.zurichna.com**. Click on the information link located on the Agent/Broker Compensation Disclosure section. Where appropriate, insert the Access Code provided below, and you will be able to view this information. Alternatively, you may call (877) 347-6465 to obtain this type of information.

Thank you.

Access Code: 0816174594



ZURICH

**THIS DISCLOSURE IS ATTACHED TO AND MADE PART OF YOUR POLICY.**

# DISCLOSURE OF IMPORTANT INFORMATION RELATING TO TERRORISM RISK INSURANCE ACT

### SCHEDULE*

Premium attributable to risk of loss from certified acts of terrorism for lines of insurance subject to TRIA:
1%

*Any information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.  Disclosure of Premium**
In accordance with the federal Terrorism Risk Insurance Act ("TRIA"), as amended, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to the risk of loss from terrorist acts certified under that Act for lines subject to TRIA.  That portion of premium attributable is shown in the Schedule above.  The premium shown in the Schedule above is subject to adjustment upon premium audit, if applicable.

**B.  Disclosure of Federal Participation in Payment of Terrorism Losses**
The United States Government may pay a share of insured losses resulting from an act of terrorism. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the insurer retention.  The insurer retention equals 20% of the insurer's prior calendar year direct earned premium associated with lines of insurance subject to TRIA.  TRIA is scheduled to expire on December 31, 2014.

**C.  Disclosure of $100 Billion Cap on All Insurer and Federal Obligations**
If aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a Program Year (January 1 through December 31) and an insurer has met its deductible under the program, that insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

**D.  Availability**
As required by TRIA, we have made available to you for lines subject to TRIA coverage for losses resulting from acts of terrorism certified under TRIA with terms, amounts and limitations that do not differ materially from those for losses arising from events other than acts of terrorism.

**E.  Definition of Act of Terrorism under TRIA**
TRIA defines "act of terrorism" as any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States:
1.  to be an act of terrorism;
2.  to be a violent act or an act that is dangerous to human life, property or infrastructure;
3.  to have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and
4.  to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

Copyright © 2007 Zurich American Insurance Company
Includes copyrighted material of ISO Properties, Inc. with its permission

INSURED COPY

U-GU-630-C (12/07)
Page 1 of 1

EXH 2-3



**ZURICH**

## Important Notice - In Witness Clause

In return for the payment of premium and subject to all the terms of the policy, we agree with you to provide insurance as stated in this policy.  This policy shall not be valid unless countersigned by the duly authorized Representative of the Company.

**In Witness Whereof,** this Company has executed and attested these presents and, where required by law, has caused this policy to be countersigned by its duly authorized Representative.

*Nancy D. Mueller*

*[signature]*

President                                                                Corporate Secretary

**Zurich American Insurance Company**
**American Guarantee and Liability Insurance Company**
**American Zurich Insurance Company**
**Zurich American Insurance Company of Illinois**
    **Administrative Offices**
    **Zurich Towers**
    **1400 American Lane**
    **Schaumburg, Illinois 60196-1056**

---

**QUESTIONS ABOUT YOUR INSURANCE?**  Your agent or broker is best equipped to provide information about your insurance.  Should you require additional information or assistance in re-solving a complaint, call or write to the following (please have your policy or claim number ready):
Zurich North America
Customer Inquiry Center
1400 American Lane
Schaumburg, Illinois 60196-1056
**1-800-382-2150** (Business Hours:  8 a.m. - 4 p.m. [CT])

---

INSURED COPY



# ZURICH

## INSTALLMENT PREMIUM SCHEDULE

The total premium shown in the Declarations of this policy is made payable in installments, on the dates and in the amounts shown below.

| NAMED INSURED | POLICY NUMBER | ENDORSEMENT NUMBER |
|---|---|---|
| Big 5 Sporting Goods Corporation | GLO9262202-01 | |

Typed:        9/25/08

| PAYMENT DUE | SUBJECT PREMIUM | | TOTAL PREMIUM |
|---|---|---|---|
| 9/25/2008 | $ 50,978.00 | | $ 50,978.00 |
| 10/25/2008 | $ 19,115.00 | | $ 19,115.00 |
| 11/25/2008 | $ 19,115.00 | | $ 19,115.00 |
| 12/25/2008 | $ 19,115.00 | | $ 19,115.00 |
| 1/25/2009 | $ 19,115.00 | | $ 19,115.00 |
| 2/25/2009 | $ 19,115.00 | | $ 19,115.00 |
| 3/25/2009 | $ 19,115.00 | | $ 19,115.00 |
| 4/25/2009 | $ 19,115.00 | | $ 19,115.00 |
| 5/25/2009 | $ 19,115.00 | | $ 19,115.00 |
| TOTAL | $203,898.00 | | $203,898.00 |

Failure to pay the Installment Premium by the Date Due shown shall constitute non-payment of premium for which we may cancel this policy.

U-GU-406-A (07/94)
Page 1 of 1

EXH 2—5

**Policy Number**
**GLO 9262202-01**

SCHEDULE OF FORMS AND ENDORSEMENTS

# ZURICH AMERICAN INSURANCE COMPANY

Named Insured   BIG 5 SPORTING GOODS                    Effective Date:   09-25-08
12:01 A.M., Standard Time

Agent Name   WILLIS RISK & INS SERVS OF LA          Agent No.   18757-000

COMMON POLICY FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| U-GU-630-C | 12-07 | DISCLOSURE OF IMPORTANT INFO REL TO TRIA |
| U-GU-D-365-A | 03-94 | POLICY COMMON DECLARATIONS |
| U-GU-319-E | 05-96 | IN WITNESS CLAUSE |
| U-GU-406-A | 07-94 | INSTALLMENT PREMIUM SCHEDULE |
| U-GU-619-A CW | 10-02 | SCHEDULE OF FORMS AND ENDORSEMENTS |
| IL 00 17 | 11-98 | COMMON POLICY CONDITIONS |
| IL 00 21 | 07-02 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDT |
| IL 02 70 | 09-07 | CA CHANGES - CANCELLATION & NONRENEWAL |
| U-GU-298-B CW | 04-94 | CANCELLATION BY US |
| IL 00 03 | 09-07 | CALCULATION OF PREMIUM |

GENERAL LIABILITY FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| U-GL-919-B CW | 12-01 | KNOWLEDGE OF OCCURRENCE ENDORSEMENT |
| U-GL-1055-A CW | 12-01 | BODILY INJURY REDEFINED |
| UGL1171ACW | 07-03 | FUNGI OR BACTERIA EXCLUSION |
| U-GL-1175-B CW | 03-07 | ADDL INSD-AUTO-OWNERS LESSEES CONTRACTR |
| U-GL-1178ACW | 07-03 | ASBESTOS EXCLUSION ENDORSEMENT |
| U-GL-849-B CW | 08-04 | EMPLOYEE BENEFITS LIABILITY-CLAIMS MADE |
| U-GL-915-C CW | 08-04 | FELLOW EMPLOYEE COVERAGE ENDORSEMENT |
| U-GL-D-849-B CW | 09-04 | EMPLOYEE BENEFITS LIAB DEC - CLAIMS MADE |
| U-GL-D-1115-B CW | 09-04 | COMMERCIAL GL COVERAGE PART DECLARATIONS |
| U-GL-113-B CW | 04-89 | MANUSCRIPT ENDORSEMENT |
| CG 00 01 | 12-04 | COMMERCIAL GENERAL LIABILITY COV FORM |
| CG 32 34 | 01-05 | CALIFORNIA CHANGES |
| UGL872A | 10-96 | PREMIUM & REPORTS AGREEMENT-COMP. RATED |
| CG 00 67 | 03-05 | EXCL-VIOL OF STATS THAT GOVERN EMAIL FAX |
| CG 20 11 | 01-96 | ADDL INSD-MANAGERS/LESSORS OF PREMISES |
| CG 20 15 | 07-04 | ADDL INSD-VENDORS |
| CG 20 26 | 07-04 | ADDL INSD-DESIGNATED PERSON/ORGANIZATION |
| CG 21 47 | 07-98 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG 21 65 | 12-04 | TOTAL POLLUTION EXCL-WITH EXCEPTIONS |
| CG 22 74 | 10-01 | LIMITED CONTR LIABILITY COV FOR PERS/ADV |
| CG 24 04 | 10-93 | WAIVER OF TRANSFER RIGHTS OF RECOVERY |
| CG 25 04 | 03-97 | DESIGNATED LOCATIONS GENERAL AGGREGATE |
| UGL850ACW | 07-96 | DEDUCTIBLE ENDORSEMENT CLAIMS-MADE |
| U-GL-1016-ACW | 05-99 | LEAD LIABILITY ENDORSEMENT |
| U-GL-1195-B CW | 06-04 | FUNGI/BACTERIA EXCLUSION DISCLOSURE |
| U-GL-1203-A CW | 04-04 | POLLUTION LIABILITY EXCLUSION DISCLOSURE |
| U-GL-921-A | 12-97 | AMENDMENT OF REPRESENTATIONS CONDTIONS |
| U-GU-766-A | 12-07 | NOTIFICATION OF IMPORTANT CHANGES- TRIA |
| U-GU-767-A | 01-08 | CAP ON LOSSES FROM CERTIFIED ACTS OF TER |
| U-GL-1327-A CW | 03-07 | OTHER INSURANCE AMENDMENT |

INSURED COPY

EXH 2-6

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IL 00 17 11 98

Copyright, Insurance Services Office, Inc., 1998

Page 1 of 1   ☐

INSURED COPY

EXH 2–7

IL 00 21 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

IL 00 21 07 02                    © ISO Properties, Inc., 2001                    Page 1 of 2

INSURED COPY

EXH 2–8

IL 02 70 09 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** Paragraphs **2.** and **3.** of the **Cancellation** Common Policy Condition are replaced by the following:

**2.  All Policies In Effect For 60 Days Or Less**

If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured at the mailing address shown in the policy and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

**a.** 10 days before the effective date of cancellation if we cancel for:

**(1)** Nonpayment of premium; or

**(2)** Discovery of fraud by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.  All Policies In Effect For More Than 60 Days**

**a.** If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

**(1)** Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

**(2)** Discovery of fraud or material misrepresentation by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**(3)** A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

IL 02 70 09 07

© ISO Properties, Inc., 2006

Page 1 of 4

INSURED COPY

EXH 2–9

**C.** The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

1. Subject to the provisions of Paragraphs **C.2.** and **C.3.** below, if we elect not to renew this policy, we will mail or deliver written notice stating the reason for nonrenewal to the first Named Insured shown in the Declarations and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

   We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

2. **Residential Property**

   This provision applies to coverage on real property used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household property contained in a residential unit, if such coverage is written under one of the following:

   Capital Assets Program (Output Policy) Coverage Part

   Commercial Property Coverage Part

   Farm Coverage Part – Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

   **a.** We may elect not to renew such coverage for any reason, except as provided in **b., c.** and **d.** below:

   **b.** We will not refuse to renew such coverage solely because the first Named Insured has accepted an offer of earthquake coverage.

   However, the following applies only to insurers who are associate participating insurers as established by Cal. Ins. Code Section 10089.16. We may elect not to renew such coverage after the first Named Insured has accepted an offer of earthquake coverage, if one or more of the following reasons applies:

   **(1)** The nonrenewal is based on sound underwriting principles that relate to the coverages provided by this policy and that are consistent with the approved rating plan and related documents filed with the Department of Insurance as required by existing law;

   **(2)** The Commissioner of Insurance finds that the exposure to potential losses will threaten our solvency or place us in a hazardous condition. A hazardous condition includes, but is not limited to, a condition in which we make claims payments for losses resulting from an earthquake that occurred within the preceding two years and that required a reduction in policyholder surplus of at least 25% for payment of those claims; or

   **(3)** We have:

   **(a)** Lost or experienced a substantial reduction in the availability or scope of reinsurance coverage; or

   **(b)** Experienced a substantial increase in the premium charged for reinsurance coverage of our residential property insurance policies; and

   the Commissioner has approved a plan for the nonrenewals that is fair and equitable, and that is responsive to the changes in our reinsurance position.

   **c.** We will not refuse to renew such coverage solely because the first Named Insured has cancelled or did not renew a policy, issued by the California Earthquake Authority that included an earthquake policy premium surcharge.

   **d.** We will not refuse to renew such coverage solely because corrosive soil conditions exist on the premises. This Restriction **(d.)** applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

   **(1)** Capital Assets Program Coverage Form (Output Policy);

   **(2)** Commercial Property Coverage Part – Causes Of Loss – Special Form; or

   **(3)** Farm Coverage Part – Causes Of Loss Form – Farm Property, Paragraph **D.** Covered Causes Of Loss – Special.

3. We are not required to send notice of nonrenewal in the following situations:

   **a.** If the transfer or renewal of a policy, without any changes in terms, conditions, or rates, is between us and a member of our insurance group.

IL 02 70 09 07                    © ISO Properties, Inc., 2006                    Page 3 of 4

INSURED COPY

EXH 2–10

COMMERCIAL INSURANCE

CANCELLATION BY US

**This endorsement changes the policy.  Please read it carefully.**

This endorsement modifies insurance provided by the following:

BOILER AND MACHINERY COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
COMMERCIAL CRIME COVERAGE FORM
COMMERCIAL GENERAL LIABILITY COVERAGE FORM
COMMERCIAL INLAND MARINE COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE FORM
FARM COVERAGE FORM
GARAGE COVERAGE FORM
LIQUOR LIABILITY COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
POLLUTION LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
TRUCKERS COVERAGE FORM

### SCHEDULE

**Number of Days' Notice:**   90

(If no entry appears above, information required to complete this Schedule will be shown in the Declarations as applicable to this endorsement.)

For any statutorily permitted reason other than nonpayment of premium, the number of days required for notice of cancellation, as provided in paragraph 2, of either the CANCELLATION Common Policy Condition or as amended by an applicable state cancellation endorsement, is increased to the number of days shown in the Schedule above.

INSURED COPY

U-GU-298-B CW (4/94)
Page 1 of 1

EXH 2–11

IL 00 03 09 07

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

© ISO Properties, Inc.,  2006

INSURED COPY

EXH 2–12

# Knowledge of Occurrence Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'L Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Railroad Protective Liability Coverage Part**
**Liquor Liability Coverage Part**
**Product/Completed Operations Coverage Part**
**Business Auto Coverage Part**
**Truckers Liability Coverage Part**
**Garage Coverage Part**
**Farm Liability Coverage Part**

1. The Duties In The Event Of Accident, Occurrence, Offense, Injury, Claim Or Suit condition is amended per the following:

   It is agreed that knowledge of an "accident", "occurrence", offense, "injury", claim, or "suit" by your agent, servant, or "employee" will not in itself be considered to be your knowledge of the "accident", "occurrence", offense, "injury" claim, or "suit" unless the individual(s) in the following positions(s) or department shall have received such notice from the agent, servant, or "employee":

   **Position or Department:**

   KNOWLEDGE BY ANY PERSON IN THE RISK MANAGEMENT DEPARTMENT THAT IS RESPONSIBLE FOR RECEIVING OR ACTING UPON SUCH INFORMATION.

2. If a claim is made or "suit" is brought against any insured, you or the individual(s) in the Position or Department above must:

   a. Immediately record the specifics of the claim or "suit" and the date received; and

   b. Notify us and see that we receive written notice of the claim or "suit" as soon as practicable.

INSURED COPY

# Lead Liability Exclusion

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

This insurance does not apply to:

(1)  "Bodily injury", "property damage" or "personal injury" arising out of or caused by the actual or alleged:

   (a)  exposure to or existence of lead, paint containing lead, or any other material or substance containing lead; or

   (b)  manufacture, distribution, sale, resale, rebranding, installation, repair, removal, encapsulation, abatement, replacement or handling of lead, paint containing lead, or any other material or substance containing lead

whether or not the lead is or was at any time airborne as a particle contained in a product ingested, inhaled, transmitted in any fashion, or found in any form whatsoever;

(2)  Any legal obligation of any insured for indemnification or contribution due to damages arising out of "bodily injury", "property damage" or "personal injury" caused by lead, paint containing lead, or any other substance or material containing lead;

(3)  Any loss, cost, expense or damages, whether direct or consequential, arising out of any:

   (a)  request, demand or order that any insured or others test for, monitor, clean up, remove, abate, contain, treat, or neutralize lead, paint containing lead, or any other substance or material containing lead, or in any way respond to, or assess the effects of lead; or

   (b)  claim or suit relating to, testing for, monitoring, cleaning up, removing, abating, containing, treating, or neutralizing lead, paint containing lead, or any other substance or material containing lead or in any way responding to or assessing the effects of lead.

U-GL-1016-A CW (5/99)
Page 1 of 1

# Bodily Injury Redefined

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Form**

The definition of "bodily injury" in SECTION V - DEFINITIONS is replaced by the following:

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person.  This includes mental anguish, mental injury, shock, fright or death resulting from bodily injury, sickness or disease.

U-GL-1055-A CW (12/01)
Page 1 of 1
EXH 2-15

# Fungi Or Bacteria Exclusion Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following exclusion is added to paragraph **2. Exclusions** of **Section I. – Coverage A – Bodily Injury And Property Damage Liability** and paragraph **2. Exclusions** of **Coverage B – Personal And Advertising Injury Liability**:

**2.   Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

A.   "Bodily injury", "property damage" or "personal and advertising injury " caused directly or indirectly by the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any:

   1.   "Fungi" or "bacteria"; or

   2.   Substance, vapor or gas produced by or arising out of any "fungi" or "bacteria".

B.   Loss, costs or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or "bacteria", by any insured or by any other person or entity.

C.   For the purposes of this exclusion, the following definitions are added:

   1.   "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, "spores", scents or byproducts produced or released by fungi.

   2.   "Spores" means reproductive bodies produced by or arising out of  "fungi".

   3.   "Bacteria" means any type or form of bacteria and any materials or substances that are produced or released by bacteria.

This exclusion does not apply to any "fungi" or "bacteria" that are, are on, or are contained in, an edible good or edible product intended for human or animal consumption.

U-GL-1171-AC W (07/03)
Page 1 of 1

Includes copyrighted material of Insurance Services Office, Inc. with its permission

INSURED COPY

EXH 2–16

# Additional Insured – Automatic – Owners, Lessees Or Contractors



**ZURICH**

| Policy No. | Exp. Date of Pol. | Eff. Date of End. | Agency No. | Addl. Prem. | Return Prem. |
|---|---|---|---|---|---|
| | | | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Named Insured:**
**Address (including ZIP Code):**

This endorsement modifies insurance provided under the:
**Commercial General Liability Coverage Part**

A.  **Section II – Who Is An Insured** is amended to include as an insured any person or organization who you are required to add as an additional insured on this policy under a written contract or written agreement.

B.  The insurance provided to the additional insured person or organization applies only to "bodily injury", "property damage" or "personal and advertising injury" covered under **SECTION I - Coverage A - Bodily Injury And Property Damage Liability** and **Section I - Coverage B - Personal And Advertising Injury Liability**, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

    1.  Your acts or omissions; or

    2.  The acts or omissions of those acting on your behalf; and resulting directly from:

        a.  Your ongoing operations performed for the additional insured, which is the subject of the written contract or written agreement; or

        b.  "Your work" completed as included in the "products-completed operations hazard", performed for the additional insured, which is the subject of the written contract or written agreement.

C.  However, regardless of the provisions of paragraphs A. and B. above:

    1.  We will not extend any insurance coverage to any additional insured person or organization:

        a.  That is not provided to you in this policy; or

        b.  That is any broader coverage than you are required to provide to the additional insured person or organization in the written contract or written agreement; and

    2.  We will not provide Limits of Insurance to any additional insured person or organization that exceed the lower of:

        a.  The Limits of Insurance provided to you in this policy; or

        b.  The Limits of Insurance you are required to provide in the written contract or written agreement.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

U-GL-1175-B CW (3/2007)
Page 1 of 2

INSURED COPY

EXH 2–17

# Asbestos Exclusion Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following exclusion is added to paragraph **2. Exclusions of Section I - Coverage A – Bodily Injury And Property Damage Liability and Coverage B - Personal And Advertising Injury Liability:**

2.  **Exclusions**

This insurance does not apply to:

**Asbestos**

A.  "Bodily injury", "property damage" or "personal and advertising injury" arising out of or which would not have occurred, in whole or in part, but for the actual, alleged or threatened discharge, dispersal, release, leakage, leaching, friability, flaking, escape or presence of asbestos, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to the injury or damage; or

B.  Any sums that any insured or other entity must pay, repay or reimburse because of any:

1.  Request, demand, order, statutory or regulatory requirement, direction or determination  that any insured or others  test for, investigate, monitor, clean up, remove, study, contain, treat, encapsulate, control or take any other action regarding asbestos; or

2.  Claim  or "suit"  for damages arising out of or relating in any way to any request, demand, order, statutory or regulatory requirement, direction or determination  that any insured or  others   test for, investigate, monitor, clean up, remove, study, contain, treat, encapsulate, control or take any other action regarding asbestos; or

C.  Any other loss, cost or expense arising out of or relating in any way to asbestos.

U-GL-1178-A CW (07/03)

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

INSURED COPY

EXH 2–18

# Employee Benefits Liability – Claims-Made Coverage Form

**This Coverage Form provides claims-made coverage. Please read the entire form carefully.** Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us", and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotes have special meaning. Refer to the Definitions Section.

## Section I. Coverage - Employee Benefit Liability

**1. Insuring Agreement**

A. We will pay those sums that the "insured" becomes legally obligated to pay as damages because of an act, error, or omission in the "administration" of the "insured's" "employee benefit programs". We will have the right and duty to defend the "insured" against any suit seeking those damages. However, we will have no duty to defend the "insured" against any "suit" seeking damages for any act, error, or omission for which this insurance does not apply. We may, at our discretion, investigate any "claim" and settle any "suit" that may result; but:

   (1) The amount we pay for damages is limited as described in II. - Section II. - Limits of Insurance of this Coverage Part; and

   (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under this Employee Benefit Liability coverage.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments of this Coverage Part.

B. (1) This insurance applies to an act, error or omission only if:

   a. A "claim" arising out of the act, error or omission is first made against any "insured" during the policy period;

   b. The act, error, or omission takes place in the "coverage territory";

   c. The "insured" had no knowledge of and could not have reasonably foreseen any circumstances which might result in a "claim" or "suit"; and

   d. The act, error, or omission did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period.

   (2) A "claim" will be deemed to have been made when notice of such claim is received and recorded by any "insured" or by us, whichever comes first. "All "claims" for damages to the same person or organization will be deemed to have been made at the time the first of those "claims" is made against any "insured".

**2. Exclusions**

This insurance does not apply to:

A. "Bodily injury", "property damage", or "personal and advertising injury";

B. Any "claim" or "suit" arising out of any dishonest, fraudulent, criminal or malicious act;

C. Any "claim" or "suit" arising out of discrimination or humiliation;

D. Any "claim" or "suit" arising out of an insurer's or other provider's failure to perform its contract;

E. Any "claim" or "suit" arising out of your failure to comply with any workers compensation, unemployment insurance, social security, disability benefits law, or similar laws;

F. Any "claim" or "suit" arising out of the failure of any of your "employee benefit plans" to meet obligations due to insufficient funds;

G. Any "claim" or "suit" arising out of:

   (1) Advice given to any person to participate or not participate in a plan or program included in "employee benefit programs";

   (2) The appointment of, or failure to appoint, any investment manager, administrator, trustee, actuary, advisor, counsel, accountant, custodian, or consultant;

INSURED COPY

EXH 2–19

c.   Cooperate with us in the investigation, settlement, or defense of the "claim" or "suit"; and

d.   Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury to which this insurance may also apply.

(4)   No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

### C.   Legal Action Against Us

No person or organization has a right:

(1)   To join us as a party or otherwise bring us into a "suit" asking for damages from an "insured"; or

(2)   To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an "insured" obtained after an actual trial, but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the "insured", and the claimant or the claimant's legal representative.

### D.   Other Insurance

If other valid and collectible insurance is available to the "insured" for a loss we cover under this Coverage Part, our obligations are limited as follows:

(1)   **Primary Insurance**

This insurance is primary except when **2.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **3.** below.

(2)   **Excess Insurance**

This insurance is excess over any other insurance whether primary, excess, contingent, or on any other basis that is effective prior to the beginning of the policy period shown in the Declarations of this insurance and applies to an act, error, or omission on other than a claims-made basis, if:

a.   No Retroactive Date is shown in the Declarations of this insurance; or

b.   The other insurance has a policy period which continues after the Retroactive Date, if any, shown in the Declarations of this insurance.

When this insurance is excess, we will have no duty to defend any "claim" or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the "insured's" rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

i.   The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

ii.   The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

(3)   **Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

### E.   Separation of Insureds

Except with respect to the Limits of Insurance and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

(1)   As if each Named Insured were the only Named Insured; and

(2)   Separately to each "insured" against whom "claim" is made or "suit" is brought.

### F.   Transfer Of Rights Of Recovery Against Others To Us

If the "insured" has rights to recover all or part of any payment we made under this Coverage Part, those rights are transferred to us. The "insured" must do nothing after loss to impair them. At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.

## IV.   Definitions

# Fellow Employee Coverage Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

1. It is agreed that paragraph **2. a. (1)** of **SECTION II - WHO IS AN INSURED** is deleted and replaced by the following:

   (1) "Bodily injury" or "personal and advertising injury":

   (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company);

   (b) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (1) (a) above; or

   (c) Arising out of his or her providing or failing to provide professional health care services.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

INSURED COPY

EXH 2–21

**EMPLOYEE BENEFIT LIABILITY COVERAGE PART - CLAIMS MADE DECLARATIONS**

Policy Number: GLO 9262202-01

Named Insured: BIG 5 SPORTING GOODS

Policy Period: Coverage begins 09-25-08 at 12:01 A.M.; Coverage ends 09-25-09 at 12:01 A.M.

Producer Name: WILLIS RISK & INS SERVS OF LA    Producer No. 18757-000

**Item 1.** Limits of Insurance

$ 2,000,000      Aggregate Limit
$ 1,000,000      Each Claim Limit

**Item 2.** Form of Business:

[ ] Individual    [ ] Parnership    [ ] Joint Venture    [X] Corporation
[ ] Other _____

**Item 3.** Premium Schedule:

| Code No. | Premium Basis (Estimated Number of Employees) | Rate | Advance Premium |
|---|---|---|---|
| _____ | _____ | $ _____ Per Employee | $ INCLUDED |
| | | $ _____ Flat Charge | $ _____ |

Total Advance Premium For This Coverage Part:   $ INCL

Audit Period:  [X] Annual   [ ] Semi-annual   [ ] Quarterly   [ ] Monthly

**Forms And Endorsements Applicable To This Coverage Part:**

**SEE SCHEDULE OF FORMS AND ENDORSEMENTS**

**Retroactive Date:**

09/25/1992  (Enter date or "None" if no Retroactive Date applies)

This insurance does not apply to damages caused by an act, error, or omission which occurred before the Retroactive Date, if any, shown above.

INSURED COPY

## COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

Policy Number: GLO 9262202-01

Named Insured: BIG 5 SPORTING GOODS CORPORATION

Policy Period: Coverage begins     09-25-08     at 12:01 A.M.; Coverage ends     09-25-09     at 12:01 A.M.

Producer Name: WILLIS RISK & INS SERV OF LA               Producer No. 18757-000

**Item 1.** Business Description:

**Item 2.** Limits of Insurance

| | | |
|---|---|---|
| GENERAL AGGREGATE LIMIT | $ 2,000,000 | |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $ 2,000,000 | |
| EACH OCCURRENCE LIMIT | $ 1,000,000 | |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | $ 1,000,000 | Any one premises |
| MEDICAL EXPENSE LIMIT | $ 10,000 | Any one person |
| PERSONAL AND ADVERTISING INJURY LIMIT | $ 1,000,000 | Any one person or organization |

**Item 3.** Retroactive Date  **(CG 00 02 ONLY)**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" offense which occurs before the Retroactive Date, if any, shown here: NONE

(Enter Date or "None" if no Retroactive Date applies)

**Item 4.** Form of Business and Location Premises

Form of Business: CORPORATION

Location of All Premises You Own, Rent or Occupy: **See Schedule of Locations**

**Item 5.** Schedule of Forms and Endorsements

Form(s) and Endorsement(s) made a part of this Policy at time of issue:
**See Schedule of Forms and Endorsements**

**Item 6.** Premiums

| | |
|---|---|
| Coverage Part Premium: | $ 203,898.00 |
| Other Premium: | |
| Total Premium: | $ 203,898.00 |

U-GL-D-1115-B CW   (9/04)

EXH 2–23

# Limited Discrimination



## ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 9262202-01 | 09/25/2008 | 09/25/2009 | 09/25/2008 | 18757-000 | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**It is agreed that "Personal and Advertising Injury" is amended to include the following offense:**

Discrimination (other than Unfair Trade Practices) based on race, religion, nationality, national origin, color, creed, sex or age; but excluding any discrimination:

1. Intentionally committed by, at the direction of, or with the consent of any insured;
2. Directly or indirectly related to the employment, prospective employment or termination of employment of any person or persons by any insured; or
3. To the extent, that coverage for discrimination is prohibited by statute, an applicable decision of any appellate court, or ruling of an administrative agency.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

U-GL-113-B CW (4/89)
Page 1 of 1

EXH 2–24



## Broad Form Named Insured

| POLICY NUMBER | EFF. DATE OF POLICY | EXP. DATE OF POLICY | EFF. DATE OF ENDT | PRODUCER NO. | ADD'L PREMIUM | RETURN PREMIUM |
|---|---|---|---|---|---|---|
| GLO 9262202-01 | 09-25-08 | 09-25-09 | 09-25-08 | 18757-000 | | |

NAMED INSURED / MAILING ADDRESS:
BIG 5 SPORTING GOODS CORPORATION
2525 EL SEGUNDO BLVD.
EL SEGUNDO, CA 90245

PRODUCER:
WILLIS RISK & INS SERVS OF LA
801 S. FIGUEROA ST STE 700
LOS ANGELES, CA 90017-2573

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability - Coverage Part**

**Big 5 Corp. and any subsidiary company as now formed or constituted, and any other company over which the named insured has active control so long as the named insured or any subsidiary company has an ownership interest of more than 50% of such company.**

Countersigned _____
                         Authorized Representative

U-GL-113-B CW (04/89)
Page 1 of 1

EXH 2—25



ZURICH

# Coverage Change Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Agency No. | Addl. Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| GLO9262202-01 | 09/25/2008 | 09/25/2009 | 09/25/2008 | 18757-000 | $ | $ |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### Amendment – Policy Aggregate Limits of Insurance – Per Location

### Schedule

The Commercial General Liability Limits of Liability shown on the Declarations page are deleted and replaced by the following limits of liability:

| | |
|---|---|
| Policy General Aggregate Limit | 20,000,000 |
| Products-Completed Operations Aggregate Limit | 2,000,000 |
| Per Location Aggregate Limit | 2,000,000 |
| Personal Injury and Advertising Injury Limit | 1,000,000 |
| (Any one person or organization) | |
| Each Occurrence Limit | 1,000,000 |
| Fire Damage Limit | 1,000,000 |
| Medical Expense Limit | 10,000 |

Section III.  Limits of Insurance is deleted and replaced by the following:

1.  The Limits of Insurance shown in the Schedule of this endorsement and the rules below determine the most we will pay regardless of the number of:

   a.  Insureds;
   b.  Claims made or "suits" brought; or
   c.  Persons or organizations making claims or bringing "suits".

2.  The Policy General Aggregate Limit is the most we will pay for the sum of:

   a.  All Medical Expenses under Coverage C.;

   b.  All damages under Coverage A., except damages because of "bodily injury" or "property damage" included in the products - completed operations hazard"; and

5.  Subject to 2. above, the Personal Injury and Advertising Injury Limit is the most we will pay under Coverage B. for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

6.  Subject to 2., 3. or 4. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   c.  All damages under Coverage B;

   that arise out of all of your "locations" combined during the policy period, including any Medical Expenses under Coverage C. or damages under Coverage A. that may not be determinable as arising specifically from any one of your "locations".

3.  The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A., during the policy period for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard."

4.  Subject to 2. above, the Per Location Aggregate Limit is the most we will pay for the sum of:

   a.  Medical Expenses under Coverage C.; and

   b.  Damages under Coverage A., except damages because of "bodily injury" or "property damage" included in the products-completed operations hazard";

   c.  That arise out of any one of your locations".

7.  Subject to 6. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

8.  Subject to 6 above, the Medical Expense Limit is the most we will pay under Coverage C. for all medical

U-GL-113-B CW (4/89)
Page 1 of 2

EXH 2–26

a.  Damages under Coverage A; and
b.  Medical Expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence."

For all sums which the insured becomes legal obligated to pay as damages caused by "occurrences" under Coverage A (Section I) and for all medical expenses caused by accidents under Coverage C (Section I), which cannot be attributed only to operations at or from any one of your "locations":

a.  Any payments made under Coverage A for damages or under Coverage C for medical expenses shall reduce the amount available under the Policy General Aggregate Limit or the Products-Completed Operations Aggregate Limit, which is applicable; and

b.  Such payments shall not reduce any Per Location Aggregate Limit.

9.  expenses because of "bodily injury" sustained by any one person

For purposes of this change in Limits of Insurance, the following definition applies:

"Location" means premises you own, rent or that are temporarily occupied by you.  A location involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad, will be deemed to be a single location.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months.  In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

Countersigned _____
          Authorized Representative

U-GL-113-B CW (4/89)
Page 2 of 2

EXH 2—27



## Foreign Coverage – Worldwide

| Policy No. | Exp. Date of Pol. | Eff. Date of End. | Agency No. | Addl. Prem. | Return Prem. |
|---|---|---|---|---|---|
| GLO 9262202-01 | 09/25/2008 | 09/25/2009 | 18757-000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:
**Commercial General Liability Coverage Part**

1.  The "coverage territory" definition is replaced by the following:

    a.  Anywhere in the world, excluding Cambodia, Cuba, Iran, Iraq, Laos, Libya, North Korea, Mongolia, Croatia, Macedonia, Slovenia, Bosnia, Herzegovina, Serbia, Montenegro, Somalia, Sudan, Afghanistan, and any country not listed for which a United States of America Department of State ban is issued during the policy term.

    b.  International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place excluded in a. above.

2.  The Insuring Agreement is amended by adding the following:

    We have the right and duty to defend any "suit" asking for covered damages arising from the insured's operations within the "coverage territory" provided the "suit" is brought within the United States of America, including its territories and possessions, Puerto Rico, or Canada. We have no duty, however, to defend any "suit" not covered by the Coverage Part. We may investigate and settle any claim or "suit" as we consider appropriate.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright, Insurance Services Office, Inc. 1997

U-GL-113-B CW (4/89)
Page 1 of 1

EXH 2–28

# Incidental Medical Malpractice Coverage Endorsement



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 9262202-01 | 09/25/2008 | 09/25/2009 | 09/25/2008 | 18757-000 | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

I.   Sections **2.a.(1)(d)** of Section **II. WHO IS AN INSURED** are deleted and replaced by the following:

2.   Each of the following is also an insured:

a.   Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.  However, none of these "employees" or "volunteer workers" are insured for:

(1)   "Bodily injury" or "personal and advertising injury":

(d)   Arising out of his or her providing or failing to provide professional health care services, except any "bodily injury" or "personal and advertising injury" arising out of:

(1)   medical or paramedical services to persons performed by any physician, dentist, nurse, emergency medical technician, paramedic or other licensed medical care person employed by you to provide such services: or

(2)   emergency cardiopulmonary resuscitation (CPR) or first aid services performed by any other employee of yours who is not a licensed medical professional.

II.   Any insurance coverage provided by this endorsement is excess over any other valid and collectible insurance.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

U-GL-113-B CW (4/89)
Page 1 of 1

EXH 2–29

# Newly Formed Organizations Coverage Endorsement



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 9262202-01 | 09/25/2008 | 09/25/2009 | 09/25/2008 | 18757-000 | $ | $ |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**I.** Part 3. of Section II – WHO IS AN INSURED is deleted and replaced by the following:

**3.** Any organization you newly acquire or form and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

  **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

  **b.** Coverage A. does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization;

  **c.** Coverage B. does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization;

  **d.** If the organization is a joint venture or partnership, coverage is afforded only to the extent of the percentage of ownership interest of any insured in the organization.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

U-GL-113-B CW (4/89)
Page 1 of 1

EXH 2–30

# Nonowned Watercraft Coverage Endorsement



**ZURICH**

| .Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

It is understood and agreed that exclusion g. of Coverage A (Section I) does not apply to "bodily injury" or "property damage" arising out of the maintenance, operation or use, including "loading or unloading" of any watercraft that is less than 100 feet in length provided that such watercraft is not owned by you and is not being used to carry persons for a charge.

EXH 2–31

# Batch Endorsement



**ZURICH**

| Policy number | Effective date of policy | Expiration date of policy | Effective date of endorsement |
|---|---|---|---|
| GLO 9262202-01 | 09/25/2008 | 09/25/2009 | 09/25/2008 |

| Agency number | Additional premium | Return premium |
|---|---|---|
| 18757-000 | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

It is agreed that all covered claims or "suits" for "bodily injury" or "property damage" which arise from the same hazard, defect or source of contamination relating to any single "batch" of "your product" shall be considered as arising out of one "occurrence".

All damages and subsequent claims or "suits" resulting from any "occurrence" noted above shall be allocated to the one policy period in which "bodily injury" or "property damage" first occurs, and only the available limits of insurance of that policy period will apply to the payment or settlement of all such claims or "suits".

"Batch" of "your product" is defined as follows:

One batch of product shall be deemed to include all of the Named Insured's like products which are produced in a single production run and can be distinguished from other such products by a specific location, date or time of production or by a common lot number, batch number or other production identifier assigned to such products.



ZURICH

## Self Insured Retention Endorsement

(Including Defense Costs - We Pay All Defense Costs Excess of Self Insured Retention Amount)

| Policy No. | Exp. Date of Pol. | Eff. Date of End. | Agency No. | Addl. Prem. | Return Prem. |
|---|---|---|---|---|---|
| GLO 9262202-01 | 09/25/2008 | 09/25/2009 | 18757-000 | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the policy.

---

### SCHEDULE

#### Self Insured Retention Amounts

$ __250,000__      **Per Occurrence** ( Including Defense Costs - All Defense Costs Paid By Us Excess Of Self Insured Retention Amount)

$ _____      **Per Claim** (Including Defense Costs - All Defense Costs Paid By Us Excess of Self Insured Retention Amount)

$ _____      **Aggregate** (Including Defense Costs - The Maximum You Will Pay For Damages and Defense Costs Combined)

**Periodic Reporting Requirement** __ESIS__

**Claim Service Provider** __Zurich Services Corporation__

---

The insurance provided by this policy is subject to the following additional provisions, which in the event of conflict with any other provisions elsewhere in the policy, shall control the application of the insurance to which this endorsement applies:

**I.**  **Self Insured Retention and Defense Costs - Your Obligations**

A.  The "self insured retention" amounts stated in the Schedule of this endorsement apply as follows:

1.  If a Per Occurrence Self Insured Retention Amount is shown in the Schedule of this endorsement, you shall be responsible for payment of all damages and "defense costs" as they are incurred for each "occurrence" until you have paid damages and "defense costs" equal to the Per Occurrence Amount shown in the Schedule, subject to the provisions of A. 3. below, if applicable. The Per Occurrence Amount is the most you will pay for damages

and "defense costs" arising out of any one "occurrence", regardless of the number of persons or organizations making claims or bringing suits because of the "occurrence".

2.  If a Per Claim Self Insured Retention Amount is shown in the Schedule of this endorsement, you shall be responsible for payment of all damages and "defense costs" as they are incurred until you have paid damages and "defense costs" for each claim equal to the Per Claim Amount shown in the Schedule, subject to the provisions of A. 3. below, if applicable. The Per Claim Amount is the most you will pay for each claim brought by each person or organization making a claim or bringing a suit as a result of any one "occurrence".

3.  If the Self Insured Retention Aggregate Amount is shown in the Schedule of this endorsement, the Aggregate Amount is the most you will pay for damages and "defense costs"

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

U-GL-113-B CW (04/89)
Page 1 of 4

EXH 2–33

incurred under this policy.  If this Amount is exceeded in your payment of damages and "defense costs", then the policy terms and conditions at that time continue to apply as written, but your obligation for any further payment of damages or "defense costs" under this Self Insured Retention Endorsement is no longer applicable.  This Amount applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of this policy.

If no entry appears in the Schedule of this endorsement as Aggregate, then your obligation for payment of damages and "defense costs" applies in accordance with the Per Occurrence or Per Claim  "self insured retention" provisions, whichever is applicable.

B.  **Defense Costs**

Except for any "defense costs" that we may elect to pay, you shall pay all "defense costs" as they are incurred until you have paid "defense costs" and damages equal to the applicable "self insured retention" amount, subject to application of the Aggregate Amount, if applicable.

C.  **Settlement of Claim**

1.  **Within Self Insured Retention**

If any final judgment or settlement and "defense costs" is less than the "self insured retention" amount indicated in the Schedule of this endorsement above, you shall have the right and obligation to settle all such claims or suits under this policy

2.  **Excess of Self Insured Retention**

You may not settle any claim or suit which exceeds any "self insured retention" amount indicated in the Schedule of this endorsement without our written permission to do so.  If you fail to obtain such written permission, we shall have no obligation to provide coverage for that claim or suit under this policy.

D.  **Authorized Claim Service Provider**

1.  You shall employ a claim service provider acceptable to us for the purpose of providing claim services for settlement of losses within the "self insured retention" amounts.  You shall pay all fees, charges and costs of the claim service provider in addition to the "self insured retention" amounts, without any reimbursement from us.

2.  In the event of cancellation, expiration or revision of the claims service contract between you and the claim service provider, you shall notify us within (10) days of such change and shall

replace the claim service provider with another claim service provider that is acceptable to us.

E.  **Notification of Potential Penetration**

1.  You or the authorized claim service provider must notify us promptly of an "occurrence" which may result in a claim  under this policy. Notice must include:

a.  How, when and where the "occurrence took place;

b.  The names and addresses of any injured persons and witnesses; and

c.  The nature and location of any injury or damage arising out of the "occurrence".

2.  You or the authorized claim service provider must notify us promptly, per E.1. above, in the event of any "occurrence",  without regard to liability,  which results in any of the following injuries:

a.  Death;

b.  Brain damage;

c.  Paraplegic or quadriplegic impairment;

d.  Amputation or serious functional impairment of any major limb;

e.  Severe burns involving more than 25% of the body or causing serious disfigurement;

f.  Sensory impairment (sight, hearing, taste or smell);

g.  Severe internal body organ damage or loss;

h.  Multiple fractures involving more than one body part;

i.  Permanent and total disability;

j.  Sexual abuse or molestation; or

k.  Significant psychological / neurological involvement; or

Where exposure, loss reserve or potential judgment initiates or changes or where suit is filed per the following:

l.  Potential exposure equals or exceeds 25% of the "self insured retention" amount shown in the Schedule of this endorsement for Per Occurrence or Per Claim, whichever applies; or

m.  Loss reserve established equals or exceeds 25% of the "self insured retention" amount shown in the Schedule of this endorsement for Per Occurrence or Per Claim, whichever applies; or

n. Potential judgment, if the claim prevails, without regard to liability, equals or exceeds 25% of the "self insured retention" amount shown in the Schedule of this endorsement for Per Occurrence or Per Claim, whichever applies; or

o. A suit is filed. We shall have the right to appoint defense counsel, even if the amount claimed in the suit is unspecified or less than the "self insured retention" amount shown in the Schedule of this endorsement for Per Occurrence or Per Claim, whichever applies.

## F. Reporting - Self Insured Retention

You must report claims or suits to our Claim Department per the following:

1. You or the authorized claim service provider must monitor the cumulative losses and "defense costs" sustained during the policy period and report those total amounts to us in accordance with the frequency of report indicated in the Periodic Reporting Requirement of the Schedule of this endorsement. However, if the total of all incurred losses and "defense costs" should at any time during the policy period attain a total amount equal to 75% of the Self Insured Retention Aggregate Amount, if indicated in the Schedule of this endorsement, you are required in that event to make an immediate report to us as to total incurred losses and "defense costs" sustained at that time.

   The Periodic Report that you send to us must be in a format that is acceptable to us, and include an accounting of all individual losses and "defense costs" incurred as of the date of the Report.

2. Within forty-five (45) days after the end of the policy term, you must give us a listing of all existing claims or suits within the "self insured retention" amounts. At a minimum, such listing will include the following for each claim or suit:

   i. a description of each claim or suit;

   ii. the date of the "occurrence";

   iii. the amounts paid and reserved for future payments for loss and "defense costs"; and

   iv. the current status of the claim or suit.

3. Quarterly thereafter you are required to give us an updated listing of the status of all claims or suits both paid and reserved until all claims or suits for the reporting period are closed or settled.

## G. Representations

By acceptance of this policy you agree that you will not procure insurance for all or any part of the "self insured retention" amounts shown in the Schedule of this endorsement. If such insurance is procured, there will be no coverage under this policy.

## H. Compliance

Compliance with the requirements set forth in this endorsement is a condition precedent to coverage. You acknowledge that in the event of non-compliance, we shall not be required to establish prejudice resulting from the non-compliance, but shall be automatically relieved of liability with respect to any claim.

## II. Our Rights and Obligations Excess of the Self Insured Retention

### A. Self Insured Retention/Defense Costs – Your Failure To Respond

In the event of your refusal to respond to your obligations for the payment of "self insured retention" amounts or "defense costs" for any reason, we shall not make payments for you, nor in any event shall we be required to substitute for you as respects your responsibility for payment of these "self insured retention" amounts or "defense costs".

### B. Damages Excess of Self Insured Retention – Per Occurrence or Per Claim

We shall be liable only for the amount of damages and "defense costs" in excess of the "self insured retention" amounts as applicable, shown in the Schedule above, up to the applicable Limits of Insurance shown in the Declarations of this policy.

### C. Damages Excess of Self Insured Retention - Aggregate

1. If the Self Insured Retention Aggregate Amount (if selected) shown in the Schedule of this endorsement is exceeded in your payment of damages or "defense costs", we will at that time assume your obligations for payment of all subsequent damages and "defense costs" subject to the Limits of Insurance provisions of this policy.

2. In the event of a midterm cancellation of this policy, the Self Insured Retention Aggregate Amount shown in the Schedule of this endorsement is not subject to any pro rata reduction. Such Aggregate

Amount will apply as if the policy term had not been shortened.

D. **Settlement of Claims**

1. **Within Self Insured Retention**

   We shall have, at our option, the right but not the obligation or duty to negotiate the settlement of any claim within the applicable "self insured retention" amount, which in our opinion is deemed expedient. But we shall obtain your consent prior to entering into any settlement of any claim which is equal to or less than the "self insured retention" amount. If, however, you shall refuse to consent to any settlement recommended by us within the "self insured retention" amount and shall elect to contest the claim or continue with any legal proceedings in connection with such claim, our liability for that claim shall not exceed the amount determined by subtracting the "self insured retention" amount from the amount for which the claim could have been settled, including "defense costs" incurred with our consent to the date of such refusal. And we shall have no liability with respect to such claim if that difference is zero or negative.

2. **Excess of Self Insured Retention**

   With respect to any claim under this insurance which has been tendered to us and which may exceed the "self insured retention" amount shown in the Schedule of this endorsement for Per Occurrence or Per Claim, whichever applies, we have the right and duty to negotiate the settlement of such claim and may pay any or all damages and "defense costs" on your behalf, both within and excess of the applicable "self insured retention" amount. Any such payments made by us within the "self insured retention" amount shall be reimbursed promptly by you.

3. **Excess of Self Insured Retention Aggregate**

   If during the policy period we assume responsibility for your obligations after you have exceeded the policy Self Insured Retention Aggregate Amount (if selected) in your payment of damages and "defense

costs", we shall at that time have the right and duty to defend "suits" and settle existing and new losses and claims as we deem expedient and without your consent for the remainder of the policy period.

III. **Definitions**

A. "Self insured retention" means:

   the amount or amounts which you or any insured must pay for all compensatory damages and "defense costs" which you or any insured shall become legally obligated to pay because of damages arising from any coverage included in the policy.

B. "Defense costs" means:

   expenses directly allocable to specific claims and shall include but not be limited to all Supplementary payments as defined under the policy(ies); all court costs, fees and expenses; costs for all attorneys, witnesses, experts, depositions, reported or recorded statements, summonses, service of process, legal transcripts or testimony, copies of any public records, alternative dispute resolution; interest; investigative services, medical examinations, autopsies, medical costs containment; declaratory judgment, subrogation and any other fees, costs or expenses reasonably chargeable to the investigation, negotiation, settlement or defense of a claim or a loss under the policy(ies).

C. "Occurrence" for purposes of this endorsement only, means an "occurrence", offense, accident, act, error or omission or any other such similar event, as defined or used in our policy, that must occur in order to initiate payment of covered losses under the policy terms and conditions.

## LAWYERS PROFESSIONAL LIABILITY ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

| POLICY NO. | EFF. DATE OF POL. | AGENCY NO. | ADD'L PREM. | RETURN PREM. |
|---|---|---|---|---|
| GLO 9262202-01 | 09/25/2008-09/25/2009 | 18757-000 | | |

**Named Insured**   Big 5 Sporting Goods Corporation

**Address (including ZIP code)**   2525 El Segundo Blvd.
El Segundo, CA 90245

| This endorsement modifies insurance provided by the following Commercial General Liability Coverage Part |
|---|

| SCHEDULE |
|---|
| **LIMITS OF LIABILITY** |

| | |
|---|---|
| Each Act or Omission Limit | $ 1,000,000 |
| Lawyers Professional Aggregate Limit: | $ 1,000,000 |
| Self Insured Retention | $ See Self Insured Retention Endorsement |

As respects coverage afforded by this endorsement, the following changes apply to the Commercial General Liability Coverage Part:

**I. The following applies in places of SECTION I. COVERAGES:**

SECTION I- COVERAGE

COVERAGE L. – LAWYERS PROFESSIONAL LIABILITY

**I. Insuring Agreement**

We will pay on behalf of the insured all sums which the insured shall be legally obligated to pay as "damages" because of any one act, error or omission or any one related series of acts, errors or omissions of the insured, or of any other person for whose acts, errors or omissions the insured is legally responsible, which occurs during the policy period, within the "coverage territory," and arises out of professional services performed on behalf of the insured by any lawyer employed by you in your legal department, including those professional services provided:

A. at your direction in service to non-profit organizations; or
B. without fee to fellow employees in connection with matters not related to your activities.

When the insured acts as an administrator, conservator, executor, guardian, trustee, or in any similar fiduciary capacity, the insured's acts, errors or omissions in such capacity shall be deemed to be the performance of professional services for others in the insured's profession as a lawyer, but only to the extent that such acts, errors or omissions are those for which is the usual attorney-client relationship the insured would be legally responsible as attorney for a fiduciary.

We shall have the right and duty to defend any suit against the insured seeking "damages" for acts, errors or omissions to which this insurance applies. We may at our discretion investigate any act, error or omission and settle any claim or "suit" that may result. But:

(1) The amount we will pay for "damages" is limited as described in LIMITS OF INSURANCE (SECTION III); and

Countersigned_____
                         Authorized Representative

U-GL-113-B CW (4-89)

1 of 4

EXH 2–37

(2) Our right and duty to defend end when we have used up the applicable limit of

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided under SUPPLEMENTARY PAYMENTS COVERAGE L.

## 2. EXCLUSIONS

This insurance does not apply to any claim or "suit:"

a.  arising out of any dishonest, fraudulent, criminal or malicious act or omission of any insured employee of any insured;

b.  made by an employer or, if the employer is a corporation, its parent or subsidiary or by any director, officer, or stockholder thereof against an insured who is a salaried employee of such employer;

c.  for bodily injury, or for injury to or destruction of any tangible property, including the loss of use thereof;

d.  for any loss sustained by the insured as the beneficiary or distributee of any trust or estate;

e.  arising out of acts or omissions involving any security or any activities or transactions subject or claimed to be subject to the Securities Act of 1933, the Securities Exchange Act of 1934, the Public Utility Holding Company Act of 1935, the Trust Indenture Act of 1939, the Investment Company Act of 1940 or the Investment Advisors Act of 1940 or any purchase, sale or offering of any security to or from the public which is subject to any State Blue Sky or Securities Law.

f.  Arising out of or in connection with any insured's activities in the dual capacity as a lawyer and (1) as officer, director, partner, or any similar elective or appointive management position of any corporation, cooperative association, association, partnership, joint stock company, trust, unincorporated organization or any other entity other than that of the named insured, or (2) as a

insurance in the payment of judgements or settlements under this Coverage L.

public official or an employee of a governmental body, subdivision or agency;

g.  Arising out of or in connection with the insured's activities as a fiduciary under the Employees Retirement Income Security Act of 1974 and any amendments thereof or any regulation or orders issued pursuant thereto.

## SUPPLEMENTARY PAYMENTS

We will pay, with respect to any claims or "suit" we defend:

1.  All expenses we incur.

2.  The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance.  We do not have to furnish these bonds.

3.  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $100 a day because of time off from work.

4.  All costs taxed against the Insured in the "suit."

5.  Prejudgment interest awarded against the insured on that part of the judgement we pay.  If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

6.  All interest on the full amount of any judgement that accrues after entry of the judgement and before we have paid, offered to pay, or deposited in court the part of the judgement that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

U-GL-113-B CW (4-89)

EXH 2–38

II. **SECTION II. WHO IS AN INSURED** is deleted and replaced by the following:

    **II. WHO IS AN INSURED**

      1. The Insured: The word "Insured" whenever used for this coverage means:

      a. the Named Insured is the entity named in Item 1. of the Declarations;

      b. any person who is not defined as Named Insured, but was, is now, or hereafter becomes an employed lawyer or other employee of the entity named in the Declarations, solely while acting in a professional capacity on behalf of such entity;

      c. any former partner, officer, director or stockholder employee of the entity named in the Declarations, solely while acting in a professional capacity on behalf of such entity;

      d. any partner, officer, director or stockholder employee of the entity named in the Declarations who has retired from the practice of law, but only for those professional services rendered prior to the date of retirement from the insured entity.

      e. As respects the liability of each insured as is otherwise covered herein, the heirs, executors, administrators, assigns and legal representatives of each insured in the event of death, incapacity or bankruptcy.

  2. Additional Insureds: The following shall also be deemed to be insureds: any lawyer who during a policy period becomes a partner, officer, director, stockholder employee or employed lawyer of the entity.

III. **Paragraphs 1 and 2 of SECTION III. LIMITS OF INSURANCE** are deleted and replaced by the following:

    1. The Limits of Insurance shown in Declarations, or in the Schedule of this endorsement, and the rules below fix the most we will pay for Layers Professional Liability coverage. regardless of the number of:

  a. Insureds;

  b. Claims made or "suits" brought; or

  c. Persons or organizations making claims or bringing "suits."

  2. The Lawyers Professional Aggregate Limit indicated in the Schedule of this endorsement is the most we will pay for all "damages" arising from all professional services as defined in Coverage L of this endorsement on pages 1 and 2. which occur during the policy period that are a result of any act. error or omission of the insured, or of any other person for whose acts, errors or omissions the insured is legally responsible.

The following is added to paragraph 5. Section III. LIMITS OF LIABILITY:

Subject to 2. above, our total liability for all "damages" arising out of any one act, error or omission or any one related series of acts, errors or omissions for which insurance is provided by Coverage L. Lawyers Professional Liability shall not exceed the limit of liability stated in the Schedule of the Lawyers Professional Liability Endorsement as applicable to Each Act or Omission.

IV. **Section IV. COMMERCIAL GENERAL LIABLITY CONDITIONS Condition 2.** Paragraph a. is amended per the following:

  **2. Duties in the Event of Claim or Suit**

    a. You must see to it that we are notified in writing as soon as practicable of an act, error or omission which may result in a claim.  To the extent possible, notice should include:

      (1) How, when and where the act, error or omission took place;

      (2) The nature of "damages" arising out of the act, error or omission.

U-GL-113-B CW (4-89)

EXH 2-39

**V. As respects this Coverage L. Lawyers Professional Liability, the following definitions apply:**

1. "Coverage territory" means the United States of America (including its territories and possessions), Puerto Rico and Canada.

2. "Damages" means loss, judgments and settlements, but does not include:

    (1) the return or withdrawal of fees;

    (2) judgements or awards from acts deemed uninsurable by law;

    (3) any fine, sanction, penalty, or punitive or exemplary damages; or

    (4) any damages which are a multiple of compensatory damages awarded against the insured, including without limitations an award of double and treble damages.

3. "Suit" means a civil proceeding in which "damages" because of an act or omission arising out of the performance of professional services to which this insurance applies are alleged. "Suit" includes:

    (a) An arbitration proceeding in which such "damages" are claimed and to which you must submit or do submit with our consent; or

    (b) Any other alternative dispute resolution proceeding in which such "damages" are claimed and to which submit with our consent.

**VI. As respects this Coverage L. Lawyers Professional Liability, the following shall apply:**

1. The Self Insured Retention amount shown in the Self Insured Retention Endorsement shall apply to all "damages" for each act or omission. The Self Insured Retention amount is in addition to the limit of liability for this Coverage L. Your obligation to pay the Self Insured Retention is applicable even when this insurance applies on an excess basis as provided for in Section VII.

**VII. As respects this Coverage L. Lawyers Professional Liability, the following Other Insurance provision shall apply:**

1. This insurance shall apply only as excess insurance over any other valid and collectible insurance.

U-GL-113-B CW (4-89)

COMMERCIAL GENERAL LIABILITY
CG 00 01 12 04

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

  **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

  **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

  **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

  **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

  **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

  **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

  **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

  **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© ISO Properties, Inc., 2003

INSURED COPY

EXH 2–41

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2003

INSURED COPY

CG 00 01 12 04          ☐

EXH 2–42

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

© ISO Properties, Inc., 2003

INSURED COPY

EXH 2–43

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    (b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

    (a) Less than 26 feet long; and

    (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

    (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

    (b) the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

© ISO Properties, Inc., 2003

INSURED COPY

CG 00 01 12 04

EXH 2–44

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

© ISO Properties, Inc., 2003

INSURED COPY

EXH 2–45

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

## 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods — Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

© ISO Properties, Inc., 2003

INSURED COPY

CG 00 01 12 04        □

EXH 2–46

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## COVERAGE C MEDICAL PAYMENTS

**1. Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage A.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

© ISO Properties, Inc., 2003

INSURED COPY

EXH 2–47

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

© ISO Properties, Inc., 2003

INSURED COPY

CG 00 01 12 04

EXH 2–48

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   **a.** Medical expenses under Coverage **C;**

   **b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   **c.** Damages under Coverage **B.**

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage **A;** and

   **b.** Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   **(2)** Authorize us to obtain records and other information;

   **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

© ISO Properties, Inc., 2003

INSURED COPY

CG 00 01 12 04   □

EXH 2–50

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

    **(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

    **(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

    **(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

    **(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I — Coverage **A** — Bodily Injury And Property Damage Liability.

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in a. above;

(2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

© ISO Properties, Inc., 2003

INSURED COPY

CG 00 01 12 04     □

**b.** Your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

---

CG 00 01 12 04                    © ISO Properties, Inc., 2003                    **Page 13 of 15**          □

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

© ISO Properties, Inc., 2003

INSURED COPY

CG 00 01 12 04

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2) The providing of or failure to provide warnings or instructions.

INSURED COPY

EXH 2–55

COMMERCIAL GENERAL LIABILITY
CG 32 34 01 05

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

The term "spouse" is replaced by the following:

Spouse or registered domestic partner under California law.

© ISO Properties, Inc., 2004

INSURED COPY

EXH 2–56



# Premium And Reports Agreement – Composite Rated Policies

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:
**Commercial General Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**

### Schedule

1. **Unit of Exposure (Check One):**

   ☐ per 1000 gallons ☐ per licensed "auto" ☒ per $1,000 gross sales

   ☐ per $1,000 payroll ☐ per other: _____

2. **Coverage Unit of Exposure** — **Rate(s)** — **Estimated Premium(s)**

   | Coverage Unit of Exposure | Rate(s) | Estimated Premium(s) |
   |---|---|---|
   | 916,323,000 | 0.2225 | $ 203,898 |

3. **Deposit Premium:** $50,978.00 _____

4. **Minimum Premium:** $163,118.00 _____

Condition **5, Premium Audit,** of Section IV, **Commercial General Liability Conditions,** is replaced by the following:

5. **Premium Audit**

   a. We will compute all premiums for this Coverage Part according to our rules and the composite rates shown in the Schedule above or attached hereto.

   b. For policies other than Annual Reporting, the deposit premium shown in the Schedule is due and payable on the first day of the policy period. The first Named Insured will pay, within 20 days following the mailing or delivery of the statement of audited premium for each audit period, the earned premium due.

   c. Within 180 days after this Coverage Part expires we will conduct an audit, which may not be waived. We will compute the earned premium for the policy period by multiplying the composite rate against the total developed exposure. If the earned premium is greater than the sum of the deposit and any interim adjustment premiums, the first Named Insured will pay us the excess; if less, we will return the unearned portion to the first Named Insured. However, the earned premium will not be less than the greater of the 80% of the estimated annual premium or the Minimum Premium shown in the Schedule.

   d. The first Named Insured must maintain records of the information we need for premium computation and send us copies at such times as we may request.

   e. The units of exposure shown in the Schedule are defined as follows:

      1) **Gallons** means the total number of gallons of liquefied petroleum gasses invoiced on any basis to any customer, whether or not the insured actually takes possession of such gases.

      2) **Gross sales** means gross sales invoiced, before discounts, but does not include taxes collected for any governmental unit.

      3) **Licensed "auto"** means the final average of the number of "autos" at policy inception and the number of "autos" at policy termination.

      4) **Other** means the unit of exposure defined in the Unit of Exposure endorsement attached to this policy.

      5) **Payroll** means total remuneration for all "employees" of the insured as defined in our rating manuals.

COMMERCIAL GENERAL LIABILITY
CG 00 67 03 05

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**B.** The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

© ISO Properties, Inc., 2004

INSURED COPY

EXH 2–58

POLICY NUMBER: GLO 9262202-01

COMMERCIAL GENERAL LIABILITY
CG 20 11 01 96

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITIONAL INSURED - MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

1. Designation of Premises (Part Leased to You):

BLANKET WHERE REQUIRED BY CONTRACT, PRIOR TO LOSS.

2. Name of Person or Organization (Additional Insured):

BLANKET WHERE REQUIRED BY CONTRACT, PRIOR TO LOSS.

3. Additional Premium: INCL.

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

1. Any "occurrence" which takes place after you cease to be a tenant in that premises.

2. Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.

CG 20 11 01 96

Copyright, Insurance Services Office, Inc., 1994

Page 1 of 1 ☐

INSURED COPY

EXH 2-59

POLICY NUMBER: GLO922202-01

COMMERCIAL GENERAL LIABILITY
CG 20 15 07 04

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) (Vendor) | Your Products |
|---|---|
| Blanket where required by contract, prior to loss. | All Products. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) (referred to below as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

1. The insurance afforded the vendor does not apply to:

   a. "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

   b. Any express warranty unauthorized by you;

   c. Any physical or chemical change in the product made intentionally by the vendor;

   d. Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

   e. Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally

undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

   f. Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

   g. Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

   h. "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

      (1) The exceptions contained in Sub-paragraphs **d.** or **f.;** or

      (2) Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

2. This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

CG 20 15 07 04

Copyright, ISO Properties, Inc., 2004

**Page 1 of 1**
**UNIFORM**

POLICY NUMBER: GLO 9262202-01

COMMERCIAL GENERAL LIABILITY
CG 20 26 07 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) |
|---|
| ONLY THOSE WHERE REQUIRED BY WRITTEN CONTRACT. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**A.** In the performance of your ongoing operations; or

**B.** In connection with your premises owned by or rented to you.

CG 20 26 07 04

© ISO Properties, Inc., 2004

Page 1 of 1

INSURED COPY

EXH 2–61

COMMERCIAL GENERAL LIABILITY
CG 21 47 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph 2., Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability:

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph 2., Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:

This insurance does not apply to:

"Personal and advertising injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

CG 21 47 07 98          Copyright, Insurance Services Office, Inc., 1997          Page 1 of 1 ☐

INSURED COPY

EXH 2–62

COMMERCIAL GENERAL LIABILITY
CG 21 65 12 04

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TOTAL POLLUTION EXCLUSION WITH A BUILDING HEATING, COOLING AND DEHUMIDIFYING EQUIPMENT EXCEPTION AND A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to:

(a) "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests; or

(b) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

(i) At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

(ii) At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

CG 21 65 12 04

© ISO Properties, Inc., 2003

Page 1 of 1

INSURED COPY

EXH 2–63

POLICY NUMBER:   GLO 9262202-01

COMMERCIAL GENERAL LIABILITY
CG 22 74 10 01

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITED CONTRACTUAL LIABILITY COVERAGE FOR PERSONAL AND ADVERTISING INJURY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

Designated Contract Or Agreement:
LIMITED TO NAMED INSURED'S OBLIGATION FOR SECURITY GUARD CONTRACTS.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** With respect to the contract or agreement designated in the Schedule above, Subparagraph **e.** of Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement.

This exclusion does not apply to:

**(1)** Liability for damages that the insured would have in the absence of the contract or agreement; or

**(2)** Liability for "personal and advertising injury" if:

**(a)** The liability pertains to your business and is assumed in the designated contract or agreement shown in the Schedule in which you assume the tort liability of another. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

**(b)** The "personal and advertising injury" occurs subsequent to the execution of the designated contract or agreement shown in the Schedule; and

**(c)** The "personal and advertising injury" arises out of the offenses of false arrest, detention or imprisonment.

© ISO Properties, Inc., 2001

INSURED COPY

EXH 2-64

Solely for the purposes of liability so assumed in such designated contract or agreement, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "personal injury" described in Paragraph **A.2.e.(2)(c)** above, provided:

(i) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same designated contract or agreement; and

(ii) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**B.** With respect to the contract or agreement designated in the Schedule above, the following is added to **Section I – Supplementary Payments – Coverages A And B:**

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

1. The "suit" against the indemnitee seeks damages for which the insured has assumed tort liability of the indemnitee in a designated contract or agreement shown in the Schedule, if such liability pertains to your business. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

2. This insurance applies to such liability assumed by the insured;

3. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same designated contract or agreement;

4. The allegations in the "suit" and the information we know about the offense are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

5. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

6. The indemnitee:

   **a.** Agrees in writing to:

   (1) Cooperate with us in the investigation, settlement or defense of the "suit";

   (2) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

   (3) Notify any other insurer whose coverage is available to the indemnitee; and

   (4) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

   **b.** Provides us with written authorization to:

   (1) Obtain records and other information related to the "suit"; and

   (2) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **A.2.e.(2)** of this endorsement, such payments will not be deemed to be damages for "personal and advertising injury" as described in Paragraph **A.2.e.(2)(c)** above and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

1. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

2. The conditions set forth above, or the terms of the agreement described in Paragraph **6.** above, are no longer met.

© ISO Properties, Inc., 2001

INSURED COPY

CG 22 74 10 01   ☐

EXH 2–65

POLICY NUMBER: GLO 9262202-01

**COMMERCIAL GENERAL LIABILITY**
CG 24 04 10 93

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**

WHERE REQUIRED BY WRITTEN CONTRACT.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Condition (Section **IV** – COMMERCIAL GENERAL LIABILITY CONDITIONS) is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

CG 24 04 10 93

Copyright, Insurance Services Office, Inc., 1992

Page 1 of 1   □

INSURED COPY

EXH 2–66

POLICY NUMBER: GLO 9262202-01

**COMMERCIAL GENERAL LIABILITY**
CG 25 04 03 97

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DESIGNATED LOCATION(S)
# GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Designated Location(s):**

BLANKET ALL LOCATIONS PER SCHEDULE ON FILE WITH COMPANY.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE A (SECTION I), and for all medical expenses caused by accidents under COVERAGE C (SECTION I), which can be attributed only to operations at a single designated "location" shown in the Schedule above:

**1.** A separate Designated Location General Aggregate Limit applies to each designated "location", and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

**2.** The Designated Location General Aggregate Limit is the most we will pay for the sum of all damages under COVERAGE A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under COVERAGE C regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**3.** Any payments made under COVERAGE A for damages or under COVERAGE C for medical expenses shall reduce the Designated Location General Aggregate Limit for that designated "location". Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Location General Aggregate Limit for any other designated "location" shown in the Schedule above.

**4.** The limits shown in the Declarations for Each Occurrence, Fire Damage and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Location General Aggregate Limit.

CG 25 04 03 97

Copyright, Insurance Services Office, Inc., 1996

INSURED COPY

Page 1 of 2   ☐

EXH 2—67

**B.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE **A** (SECTION I), and for all medical expenses caused by accidents under COVERAGE **C** (SECTION I), which cannot be attributed only to operations at a single designated "location" shown in the Schedule above:

  **1.** Any payments made under COVERAGE **A** for damages or under COVERAGE **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-Completed Operations Aggregate Limit, whichever is applicable; and

  **2.** Such payments shall not reduce any Designated Location General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Location General Aggregate Limit.

**D.** For the purposes of this endorsement, the **Definitions** Section is amended by the addition of the following definition:

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**E.** The provisions of Limits Of Insurance (SECTION III) not otherwise modified by this endorsement shall continue to apply as stipulated.

Copyright, Insurance Services Office, Inc., 1996

INSURED COPY

CG 25 04 03 97  ☐

EXH 2–68

**ZURICH-AMERICAN** INSURANCE GROUP

**COMMERCIAL INSURANCE**

---

**DEDUCTIBLE ENDORSEMENT CLAIMS-MADE**

This endorsement changes policy number_ GLO 9262202-01           . Please read it carefully.

This endorsement modifies insurance provided under the:

**EMPLOYEE BENEFITS LIABILITY COVERAGE PART**

It is agreed that the following deductible provisions are added to the policy as respects the Employee Benefit Liability Coverage Part:

**Deductible:** $ 250,000

1.  The deductible amount stated above shall be deducted from the amount of all "claims" arising out of the same act, error, or omission. We shall be liable only for the difference between such deductible amount and the amount of insurance otherwise applicable on a per "claim" basis. The Aggregate Limit will not be reduced by the application of such deductible.

2.  The terms of this Coverage Part apply regardless of the application of the deductible amount. This includes those terms with respect to:

    a.  Our rights and duties with respect to the defense of "suits"; and

    b.  The "insured's" duties in the event of an act, error, or omission or a "claim" or "suit".

3.  We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit". You shall promptly reimburse us for such part of the deductible amount as has been paid by us after we notify you of our action.

U-GL-850-A CW (7/96)
Page 1 of 1

INSURED COPY

EXH 2—69

# Fungi/Bacteria Exclusion Disclosure Notice


**ZURICH**

**This insurance does not apply to or provides limited coverage as respects fungi or bacteria. You should refer to the specific fungi or bacteria endorsements indicated below for determination of specific terms and conditions as respects exclusion of any fungi or bacteria exposures that you may have. The following fungi or bacteria endorsements that are checked ☒ apply in the indicated areas of the "coverage territory":**

<u>ISO FORM CG 00 01</u>

☒ Fungi or Bacteria Exclusion Endorsement
   U-GL-1171 A CW
☐ Fungus Exclusion Endorsement
   U-GL-1063 A CW; **or**
☐ Limited Fungus Exclusion Endorsement
   U-GL-1046 A CW

All states in the "coverage territory" except:
   AK, NY, VA
Applicable in the following states:

☐ Fungi or Bacteria Exclusion
   ISO form CG 2167

Applicable in the following states:
VA

☐ Georgia Limited Fungi or Bacteria Coverage - Small Businesses
   CG 32 01*
☐ Other

GA

Applicable in the following states:

*Applicable only to risks with less than 25 employees or annual revenues less than $2.5 million.


**ZURICH**

# Pollution Liability Exclusion Disclosure Notice

This insurance policy does not apply to or provides very limited coverage as respects pollution liability.  You should refer to the specific pollution liability policy exclusions or pollution liability exclusion endorsements of your policy for determination of specific terms and conditions as respects exclusion of any pollution liability exposures that you may have.  The policy exclusions of the Commercial General Liability Coverage Part, form CG 00 01, apply to pollution exposures in the "coverage territory" unless replaced or modified, as indicated in the applicable endorsement,  by one or more of the following pollution exclusion endorsements.  The pollution exclusion endorsements that are checked ☒ apply to pollution exposures in the indicated area(s) of the "coverage territory":

<u>ISO FORM CG 00 01</u>

| | |
|---|---|
| ☐ Total Pollution Exclusion Endorsement, ISO Form CG 21 49 | ☐ All states in the "coverage territory"  except: _____ _____ |
| ☐ Total Pollution Exclusion - Hostile Fire Exception, ISO Form CG 21 55 | ☐ All states in the "coverage territory" except: _____ |
| | ☐ Only applicable in the following state(s) _____ |
| ☒ Total Pollution Exclusion with a Building Heating Equipment Exception and a Hostile Fire Exception ISO Form CG 21 65 | ☒ All states in the "coverage territory" except: <u>MN, NH, TX</u> _____ |
| | ☐ Only applicable in the following state(s) |

**Other State Endorsements:**

| | |
|---|---|
| ☐ Indiana Changes - Pollution Exclusion, ISO Form CG 01 23 | ☐ Indiana |
| ☐ Missouri Changes - Pollution Exclusion, ISO Form CG 01 34; or | ☐ Missouri |
| ☐ Missouri Changes – Gasoline Risks - Pollution Exclusion, ISO Form  CG 01 35; | ☐ Missouri |
| ☐ Vt. Changes - Pollution, ISO form CG 01 54 | ☐ Vermont |
| ☐ Other _____ _____ | ☐ Applicable in the following states: _____ _____ |

## Amendment of Representations
## Condition Endorsement



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following is added to the Representations Condition of Section IV - Commercial General Liability Conditions:

Coverage will continue to apply if you:

- unintentionally fail to disclose all hazards existing at the inception of this policy, or
- unintentionally make an error, omission, or improper description of premises or other statement of information stated in this policy.

You must notify us as soon as possible after the discovery of any hazards or any other information that was not provided to us prior to the acceptance of this policy.



ZURICH

# NOTIFICATION OF IMPORTANT CHANGES RELATING TO TERRORISM RISK INSURANCE ACT

**To Our Valued Customers:**

The Terrorism Risk Insurance Act ("TRIA") had been scheduled to expire on December 31, 2007. Prior to the termination of the program, Congress enacted an extension of TRIA until December 31, 2014. There are several important changes to TRIA included with the extension of which you should be aware:

**A.  Change in Definition of "Act of Terrorism"**
Prior to the enactment of the extension legislation, TRIA applied only to acts of terrorism committed by an individual or individuals "acting on behalf of any foreign person or foreign interest." This restriction has been removed such that the Secretary of Treasury may also certify acts of terrorism commonly described as "domestic terrorism." Because your policy may contain a limitation or exclusion relating to "certified acts of terrorism" and/or "other acts of terrorism" or "non-certified acts of terrorism" this change in the law may impact coverage under your policy.  You should review your insurance policy and note the revised certification criteria under TRIA (as fully described in paragraph D. below).

**B.  Clarification of Operation of $100 Billion Cap on All Insurer and Federal Obligations**
If aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a Program Year (January 1 through December 31) and an insurer has met its deductible under the program, that insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

**C.  Change in the Recoupment of the Federal Share of Insured Losses**
Should there be a terrorist act certified under TRIA, Treasury must recoup 133% of the amount of its payments under the program (limited to $27.5 billion minus the amount insurers retain in that calendar year as a result of the insurer deductible and co-share) through policyholder surcharges:
  1.  For an act of terrorism occurring prior to 2011, the collection must be completed by September 30, 2012;
  2.  For an act of terrorism occurring during 2011, the collection must be 35% completed by September, 30, 2012 with the balance collected by September 30, 2017; and
  3.  For a later event, the collection must be completed by September 30, 2017.

**D.  Revised Definition of Act of Terrorism under TRIA**
TRIA defines "act of terrorism" as any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States:
  1.  to be an act of terrorism;
  2.  to be a violent act or an act that is dangerous to human life, property or infrastructure;
  3.  to have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and
  4.  to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

Copyright © 2007 Zurich American Insurance Company
Includes copyrighted material of ISO Properties, Inc. with its permission

EXH 2–73


ZURICH

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

| Insureds Name | Policy Number | Effective Date | Endorsement Number |
|---|---|---|---|
| Big 5 Sporting Goods Corporation | GLO 9262202-01 | 09/25/2008 | |

### THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies your insurance:

Commercial General Liability Coverage Part

**A.** **Cap on Losses From Certified Terrorism Losses**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act ("TRIA").  The Terrorism Risk Insurance Act provides that the Secretary of Treasury shall certify an act of terrorism:

1. to be an act of terrorism;

2. to be a violent act or an act that is dangerous to human life, property or infrastructure;

3. to have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and

4. to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

If aggregate insured losses attributable to one or more "certified acts of terrorism" exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

**B.** **Application of Other Exclusions**

The terms and limitations of a terrorism exclusion or any other exclusion, or the inapplicability or omission of a terrorism exclusion or any other exclusion, do not serve to create coverage which would otherwise be excluded, limited or restricted under this policy.

Copyright © 2008 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

EXH 2–74



# Other Insurance Amendment – Primary And Non-Contributory

| Policy No. | Exp. Date of Pol. | Eff. Date of End. | Agency No. | Addl. Prem. | Return Prem. |
|---|---|---|---|---|---|
| GLO 9262202-01 | 09/25/2008 | 09/25/2009 | 18757-000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

Named Insured:
Address (including ZIP Code):

This endorsement modifies insurance provided under the:
**Commercial General Liability Coverage Part**

SECTION IV. COMMERCIAL GENERAL LIABILITY CONDITIONS, 4. Other Insurance, is amended per the following:

1. The following paragraph is added under **a. Primary Insurance:**

   This insurance is primary insurance as respects our coverage to an additional insured person or organization, where the written contract or written agreement requires that this insurance be primary and non-contributory. In that event, we will not seek contribution from any other insurance policy available to the additional insured on which the additional insured person or organization is a Named Insured.

2. The following paragraph is added under **b. Excess Insurance:**

   This insurance is excess over:

   Any of the other insurance, whether primary, excess, contingent or on any other basis, available to an additional insured, in which the additional insured on our policy is also covered as an additional insured by attachment of an endorsement to another policy providing coverage for the same "occurrence", claim or "suit". This provision does not apply to any policy in which the additional insured is a Named Insured on such other policy and where our policy is required by written contract or written agreement to provide coverage to the additional insured on a primary and non-contributory basis.

Any provisions in this Coverage Part not changed by the terms and conditions of this endorsement continue to apply as written.

EXH 2–75

# EXHIBIT 3

# Disclosure Statement



BIG 5 SPORTING GOODS CORPORATION
POLICY: GLO 9262202-02 EFFECTIVE: 9/25/2009-9/25/2010

### ZURICH AGENT/BROKER COMPENSATION DISCLOSURE

Dear Policyholder:

On behalf of Zurich, we are glad you have chosen us as your insurance company.  We look forward to meeting your insurance needs and want you to understand clearly our business relationship with the agent or broker you chose to represent your company's interests in the placement of insurance coverages.

As is the case with many insurance companies in the United States, Zurich distributes many of its insurance products through agents or brokers.  This means that your agent or broker is not employed by Zurich and, in fact, may represent many insurance companies.  Because we do not employ your agent or broker, the way they are compensated may vary.  We recommend you discuss these arrangements with your agent or broker.

Many insurance representatives are compensated for their services by insurance companies with whom they place the insurance that they sell to their customers. Some customers choose to compensate their representatives directly with a fee.  In certain situations, we may pay a commission to representatives who are also directly compensated by their customers, but only if the customer has agreed to it and only where it is permitted by law.

For further information, please go to **http://www.zurichna.com**.  Click on the information link located on the Agent/Broker Compensation Disclosure section.  Where appropriate, insert the Access Code provided below, and you will be able to view this information.  Alternatively, you may call (877) 347-6465 to obtain this type of information.

Thank you.

Access Code:  0816174594



U-RET-E-302-A CW (09/06)
Page 1 of 1

EXH 3-1


**ZURICH**

**COMMON POLICY DECLARATIONS**

Policy Number   GLO 9262202-02          Renewal of Number   GLO 9262202-01

Named Insured and Mailing Address          Producer and Mailing Address
BIG 5 SPORTING GOODS                       WILLIS RISK & INS SERVS OF LA
CORPORATION                                801 S FIGUEROA ST STE 700
2525 EL SEGUNDO BLVD.                      LOS ANGELES CA 90017-2573
EL SEGUNDO CA 90245-4632

                                           Producer Code   18757-000

Policy Period: Coverage begins   09-25-2009  at 12:01 A.M.;  Coverage ends 09-25-2010  at 12:01 A.M.

The name insured is  ☐ Individual        ☐ Partnership      ☒ Corporation
                     ☐ Other:

This insurance is provided by one or more of the stock insurance companies which are members of the Zurich-American Insurance Group.  The company that provides coverage is designated on each Coverage Part Common Declarations.  The company or companies providing this insurance may be referred to in this policy as "The Company", we, us, or our.  The address of the companies of the Zurich-American Insurance Group are provided on the next page.

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE(S):**

GENERAL LIABILITY COVERAGE                    PREMIUM   $   195,013.00
  issued by ZURICH AMERICAN INSURANCE COMPANY

WA REGULATORY SURCHARGE                                  $        12.00

**THIS PREMIUM MAY BE SUBJECT TO AUDIT.**      TOTAL    $     195,013.00
This premium does not include Taxes and Surcharges.

**Taxes and Surcharges**                       TOTAL    $          12.00
                                               SEE INSTALLMENT SCHEDULE

Form(s) and Endorsement(s) made a part of this policy at time of issue are listed on the **SCHEDULE of FORMS and ENDORSEMENTS.**

Countersigned this        day of

                                               Authorized Representative

THIS DECLARATION TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART FORM(S), FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

Insured Copy

U-GU-D-365-A (03/94)
Page 1 of 1

EXH 3-2


**ZURICH**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

| Insureds Name | Policy Number | Effective Date | Endorsement Number |
|---|---|---|---|
| Big 5 Sporting Goods Corporation | GLO 9262202-02 | 09/25/2009 | |

### THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies your insurance:

Commercial General Liability Coverage Part

**A.   Cap on Losses From Certified Terrorism Losses**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act ("TRIA").  The Terrorism Risk Insurance Act provides that the Secretary of Treasury shall certify an act of terrorism:

1.   to be an act of terrorism;

2.   to be a violent act or an act that is dangerous to human life, property or infrastructure;

3.   to have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and

4.   to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

If aggregate insured losses attributable to one or more "certified acts of terrorism" exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

**B.   Application of Other Exclusions**

The terms and limitations of a terrorism exclusion or any other exclusion, or the inapplicability or omission of a terrorism exclusion or any other exclusion, do not serve to create coverage which would otherwise be excluded, limited or restricted under this policy.

Copyright © 2008 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

EXH 3–3



**ZURICH**

### THIS DISCLOSURE IS ATTACHED TO AND MADE PART OF YOUR POLICY.

# DISCLOSURE OF IMPORTANT INFORMATION RELATING TO TERRORISM RISK INSURANCE ACT

## SCHEDULE*

Premium attributable to risk of loss from certified acts of terrorism for lines of insurance subject to TRIA:

1%

*Any information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.  Disclosure of Premium**
In accordance with the federal Terrorism Risk Insurance Act ("TRIA"), as amended, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to the risk of loss from terrorist acts certified under that Act for lines subject to TRIA.  That portion of premium attributable is shown in the Schedule above.  The premium shown in the Schedule above is subject to adjustment upon premium audit, if applicable.

**B.  Disclosure of Federal Participation in Payment of Terrorism Losses**
The United States Government may pay a share of insured losses resulting from an act of terrorism. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the insurer retention.  The insurer retention equals 20% of the insurer's prior calendar year direct earned premium associated with lines of insurance subject to TRIA.  TRIA is scheduled to expire on December 31, 2014.

**C.  Disclosure of $100 Billion Cap on All Insurer and Federal Obligations**
If aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a Program Year (January 1 through December 31) and an insurer has met its deductible under the program, that insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

**D.  Availability**
As required by TRIA, we have made available to you for lines subject to TRIA coverage for losses resulting from acts of terrorism certified under TRIA with terms, amounts and limitations that do not differ materially from those for losses arising from events other than acts of terrorism.

**E.   Definition of Act of Terrorism under TRIA**
TRIA defines "act of terrorism" as any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States:
   1.  to be an act of terrorism;
   2.  to be a violent act or an act that is dangerous to human life, property or infrastructure;
   3.  to have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and
   4.  to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

Copyright © 2007 Zurich American Insurance Company
Includes copyrighted material of ISO Properties, Inc. with its permission

U-GU-630-C (12/07)
Page 1 of 1

Insured Copy

EXH 3–4

Policy Number
GLO 9262202-02

SCHEDULE OF FORMS AND ENDORSEMENTS

# ZURICH AMERICAN INSURANCE COMPANY

| Named Insured | BIG 5 SPORTING GOODS | Effective Date: | 09-25-09 |
|---|---|---|---|
| | | | 12:01 A.M., Standard Time |
| Agent Name | WILLIS RISK & INS SERVS OF LA | Agent No. | 18757-000 |

COMMON POLICY FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| U-GU-767-A CW | 01-08 | CAP ON LOSSES FROM CERTIFIED ACTS OF TER |
| U-GU-630-C | 12-07 | DISCLOSURE OF IMPORTANT INFO REL TO TRIA |
| U-GU-D-365-A | 03-94 | POLICY COMMON DECLARATIONS |
| U-GU-619-A CW | 10-02 | SCHEDULE OF FORMS AND ENDORSEMENTS |
| U-GU-319-E | 05-96 | IN WITNESS CLAUSE |
| U-GU-406-A | 07-94 | INSTALLMENT PREMIUM SCHEDULE |
| IL 00 17 | 11-98 | COMMON POLICY CONDITIONS |
| IL 00 21 | 09-08 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDT |
| IL 02 70 | 09-08 | CA CHANGES - CANCELLATION & NONRENEWAL |
| U-GU-298-B CW | 04-94 | CANCELLATION BY US |
| IL 00 03 | 09-08 | CALCULATION OF PREMIUM |

GENERAL LIABILITY FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| U-GL-1114-A CW | 10-02 | BROAD FORM NAMED INSURED |
| U-GL-1114-A CW | 10-02 | BATCH ENDORSEMENT |
| U-GL-1114-A CW | 10-02 | FOREIGN COVERAGE- WORLDWIDE- SUITS |
| U-GL-1114-A CW | 10-02 | NEWLY FORMED ORGANIZATIONS COVERAGE ENDT |
| U-GL-1114-A CW | 10-02 | INCIDENTAL MEDICAL MALPRACTICE ENDT |
| U-GL-1114-A CW | 10-02 | PERSONAL INJURY LIMITED DISCRIMINATION |
| U-GL-1114-A CW | 10-02 | NONOWNED WATERCRAFT ENDORSEMENT |
| U-GL-1114-A CW | 10-02 | LAWYERS PROFESSIONAL LIABILITY ENDT |
| U-GL-1114-A CW | 10-02 | SELF INSURED RETENTION ENDORSEMENT |
| U-GL-1114-A CW | 10-02 | AMENDMENT POLICY AGGREGATE LIMITS- LOC |
| U-GL-1114-A CW | 10-02 | AMENDMENT OF REPRESENTATIONS CONDITION |
| U-GL-919-B CW | 12-01 | KNOWLEDGE OF OCCURRENCE ENDORSEMENT |
| U-GL-1016-B CW | 05-04 | LEAD LIABILITY EXCLUSION |
| U-GL-1055-A CW | 12-01 | BODILY INJURY REDEFINED |
| UGL1171ACW | 07-03 | FUNGI OR BACTERIA EXCLUSION |
| U-GL-1175-B CW | 03-07 | ADDL INSD-AUTO-OWNERS LESSEES CONTRACTR |
| U-GL-1327-A CW | 03-07 | OTH INS AMNDMT-PRIMARY & NONCONTRIBUTORY |
| U-GL-849-B CW | 08-04 | EMPLOYEE BENEFITS LIABILITY-CLAIMS MADE |
| U-GL-915-C CW | 08-04 | FELLOW EMPLOYEE COVERAGE ENDORSEMENT |
| U-GL-D-849-B CW | 09-04 | EMPLOYEE BENEFITS LIAB DEC - CLAIMS MADE |
| U-GL-1178ACW | 07-03 | ASBESTOS EXCLUSION ENDORSEMENT |
| U-GL-1365-A CW | 08-08 | DIST OF MATERIAL IN VIOLATION OF STATUTE |
| CG 00 01 | 12-07 | COMMERCIAL GENERAL LIABILITY COV FORM |
| CG 32 34 | 01-05 | CALIFORNIA CHANGES |
| UGL872A | 10-96 | PREMIUM & REPORTS AGREEMENT-COMP. RATED |
| CG 20 11 | 01-96 | ADDL INSD-MANAGERS/LESSORS OF PREMISES |
| CG 20 15 | 07-04 | ADDL INSD-VENDORS |
| CG 20 26 | 07-04 | ADDL INSD-DESIGNATED PERSON/ORGANIZATION |
| CG 21 47 | 07-98 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG 21 65 | 12-04 | TOTAL POLLUTION EXCL-WITH EXCEPTIONS |
| CG 22 74 | 10-01 | LIMITED CONTR LIABILITY COV FOR PERS/ADV |
| CG 24 04 | 10-93 | WAIVER OF TRANSFER RIGHTS OF RECOVERY |
| CG 25 04 | 03-97 | DESIGNATED LOCATIONS GENERAL AGGREGATE |
| U-GL-1195-B CW | 06-04 | FUNGI/BACTERIA EXCLUSION DISCLOSURE |

U-GU-619-A CW (10/02)

EXH 3-5



**ZURICH**

# Important Notice - In Witness Clause

In return for the payment of premium and subject to all the terms of the policy, we agree with you to provide insurance as stated in this policy. This policy shall not be valid unless countersigned by the duly authorized Representative of the Company.

**In Witness Whereof,** this Company has executed and attested these presents and, where required by law, has caused this policy to be countersigned by its duly authorized Representative.


**President**                                      **Corporate Secretary**


Zurich American Insurance Company
American Guarantee and Liability Insurance Company
American Zurich Insurance Company
Zurich American Insurance Company of Illinois
     Administrative Offices
     Zurich Towers
     1400 American Lane
     Schaumburg, Illinois 60196-1056

---

**QUESTIONS ABOUT YOUR INSURANCE?** Your agent or broker is best equipped to provide information about your insurance. Should you require additional information or assistance in resolving a complaint, call or write to the following (please have your policy or claim number ready):

Zurich North America
Customer Inquiry Center
1400 American Lane
Schaumburg, Illinois 60196-1056
**1-800-382-2150** (Business Hours: 8 a.m. - 4 p.m. [CT])

---

Insured Copy

EXH 3-6



# ZURICH

## INSTALLMENT PREMIUM SCHEDULE

The total premium shown in the Declarations of this policy is made payable in installments, on the dates and in the amounts shown below.

| NAMED INSURED | POLICY NUMBER | ENDORSEMENT NUMBER | |
|---|---|---|---|
| Big 5 Sporting Goods Corporation | GLO9262202-02 | | |
| | | Typed: | 9/25/09 |

| PAYMENT DUE | SUBJECT PREMIUM | | TOTAL PREMIUM |
|---|---|---|---|
| 10/25/2009 | $ 48,761.00 | | $ 48,761.00 |
| 11/25/2009 | $ 18,283.00 | | $ 18,283.00 |
| 12/25/2009 | $ 18,283.00 | | $ 18,283.00 |
| 1/25/2010 | $ 18,283.00 | | $ 18,283.00 |
| 2/25/2010 | $ 18,283.00 | | $ 18,283.00 |
| 3/25/2010 | $ 18,283.00 | | $ 18,283.00 |
| 4/25/2010 | $ 18,283.00 | | $ 18,283.00 |
| 5/25/2010 | $ 18,283.00 | | $ 18,283.00 |
| 6/25/2010 | $ 18,283.00 | | $ 18,283.00 |
| | | | |
| TOTAL | $195,025.00 | | $195,025.00 |

Failure to pay the Installment Premium by the Date Due shown shall constitute non-payment of premium for which we may cancel this policy.

U-GU-406-A (07/94)
Page 1 of 1

EXH 3–7

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IL 00 17 11 98

Copyright, Insurance Services Office, Inc., 1998

Page 1 of 1

Insured Copy

EXH 3–8

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   **A.** Under any Liability Coverage, to "bodily injury" or "property damage":

   **(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   **B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

   **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

   **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

   **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property threat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

Page 1 of 2

Insured Copy

EXH 3−9

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the t amount of such material in the custody or the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2007
IL 00 21 09 08  □

Insured Copy

EXH 3−10

IL 02 70 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS / COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs **2.** and **3.** of the **Cancellation** Common Policy Condition are replaced by the following:

**2. All Policies In Effect For 60 Days Or Less**

If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured at the mailing address shown in the policy and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

**a.** 10 days before the effective date of cancellation if we cancel for:

**(1)** Nonpayment of premium; or

**(2)** Discovery of fraud by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3. All Policies In Effect For More Than 60 Days**

**a.** If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

**(1)** Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

**(2)** Discovery of fraud or material misrepresentation by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**(3)** A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

IL 02 70 09 08

© ISO Properties, Inc., 2007

Page 1 of 4

Insured Copy

EXH 3–11

(4) Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

(5) Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

(6) A determination by the Commissioner of Insurance that the:

    (a) Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

    (b) Continuation of the policy coverage would:

        (i) Place us in violation of California law or the laws of the state where we are domiciled; or

        (ii) Threaten our solvency.

(7) A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

**b.** We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

(1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium or discovery of fraud; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph **3.a.**

**B.** The following provision is added to the **Cancellation** Common Policy Condition:

**7. Residential Property**

This provision applies to coverage on real property which is used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household personal property in a residential unit, if such coverage is written under one of the following:

Commercial Property Coverage Part

Farm Coverage Part — Farm Property — Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

**a.** If such coverage has been in effect for 60 days or less, and is not a renewal of coverage we previously issued, we may cancel this coverage for any reason, except as provided in **b.** and **c.** below.

**b.** We may not cancel this policy solely because the first Named Insured has:

(1) Accepted an offer of earthquake coverage; or

(2) Cancelled or did not renew a policy issued by the California Earthquake Authority (CEA) that included an earthquake policy premium surcharge.

However, we shall cancel this policy if the first Named Insured has accepted a new or renewal policy issued by the CEA that includes an earthquake policy premium surcharge but fails to pay the earthquake policy premium surcharge authorized by the CEA.

**c.** We may not cancel such coverage solely because corrosive soil conditions exist on the premises. This Restriction **(c.)** applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

(1) Capital Assets Program Coverage Form (Output Policy);

(2) Commercial Property Coverage Part — Causes Of Loss – Special Form; or

(3) Farm Coverage Part — Causes Of Loss Form — Farm Property, Paragraph **D.** Covered Causes Of Loss – Special.

© ISO Properties, Inc., 2007

IL 02 70 09 08      □

Insured Copy

EXH 3–12

**C.** The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

1. Subject to the provisions of Paragraphs **C.2.** and **C.3.** below, if we elect not to renew this policy, we will mail or deliver written notice stating the reason for nonrenewal to the first Named Insured shown in the Declarations and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

   We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

2. **Residential Property**

   This provision applies to coverage on real property used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household property contained in a residential unit, if such coverage is written under one of the following:

   Capital Assets Program (Output Policy) Coverage Part

   Commercial Property Coverage Part

   Farm Coverage Part — Farm Property — Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

   **a.** We may elect not to renew such coverage for any reason, except as provided in **b., c.** and **d.** below:

   **b.** We will not refuse to renew such coverage solely because the first Named Insured has accepted an offer of earthquake coverage.

   However, the following applies only to insurers who are associate participating insurers as established by Cal. Ins. Code Section 10089.16. We may elect not to renew such coverage after the first Named Insured has accepted an offer of earthquake coverage, if one or more of the following reasons applies:

   **(1)** The nonrenewal is based on sound underwriting principles that relate to the coverages provided by this policy and that are consistent with the approved rating plan and related documents filed with the Department of Insurance as required by existing law;

   **(2)** The Commissioner of Insurance finds that the exposure to potential losses will threaten our solvency or place us in a hazardous condition. A hazardous condition includes, but is not limited to, a condition in which we make claims payments for losses resulting from an earthquake that occurred within the preceding two years and that required a reduction in policyholder surplus of at least 25% for payment of those claims; or

   **(3)** We have:

   **(a)** Lost or experienced a substantial reduction in the availability or scope of reinsurance coverage; or

   **(b)** Experienced a substantial increase in the premium charged for reinsurance coverage of our residential property insurance policies; and

   the Commissioner has approved a plan for the nonrenewals that is fair and equitable, and that is responsive to the changes in our reinsurance position.

   **c.** We will not refuse to renew such coverage solely because the first Named Insured has cancelled or did not renew a policy, issued by the California Earthquake Authority that included an earthquake policy premium surcharge.

   **d.** We will not refuse to renew such coverage solely because corrosive soil conditions exist on the premises. This Restriction **(d.)** applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

   **(1)** Capital Assets Program Coverage Form (Output Policy);

   **(2)** Commercial Property Coverage Part — Causes Of Loss — Special Form; or

   **(3)** Farm Coverage Part — Causes Of Loss Form — Farm Property, Paragraph **D.** Covered Causes Of Loss — Special.

3. We are not required to send notice of nonrenewal in the following situations:

   **a.** If the transfer or renewal of a policy, without any changes in terms, conditions, or rates, is between us and a member of our insurance group.

IL 02 70 09 08                © ISO Properties, Inc., 2007                **Page 3 of 4**   □

**b.** If the policy has been extended for 90 days or less, provided that notice has been given in accordance with Paragraph **C.1.**

**c.** If you have obtained replacement coverage, or if the first Named Insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

**d.** If the policy is for a period of no more than 60 days and you are notified at the time of issuance that it will not be renewed.

**e.** If the first Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

**f.** If we have made a written offer to the first Named Insured, in accordance with the timeframes shown in Paragraph **C.1.**, to renew the policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

© ISO Properties, Inc., 2007

IL 02 70 09 08   □

Insured Copy

EXH 3–14

**COMMERCIAL INSURANCE**

**CANCELLATION BY US**

**This endorsement changes the policy.  Please read it carefully.**

This endorsement modifies insurance provided by the following:

BOILER AND MACHINERY COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
COMMERCIAL CRIME COVERAGE FORM
COMMERCIAL GENERAL LIABILITY COVERAGE FORM
COMMERCIAL INLAND MARINE COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE FORM
FARM COVERAGE FORM
GARAGE COVERAGE FORM
LIQUOR LIABILITY COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
POLLUTION LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
TRUCKERS COVERAGE FORM

**SCHEDULE**

**Number of Days' Notice:  9 0**

(If no entry appears above, information required to complete this Schedule will be shown in the Declarations as applicable to this endorsement.)

For any statutorily permitted reason other than nonpayment of premium, the number of days required for notice of cancellation, as provided in paragraph 2, of either the CANCELLATION Common Policy Condition or as amended by an applicable state cancellation endorsement, is increased to the number of days shown in the Schedule above.

Insured Copy

IL 00 03 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

© ISO Properties, Inc., 2007

Insured Copy

EXH 3–16

**Policy Number**
**GLO 9262202-02**

ENDORSEMENT

## ZURICH AMERICAN INSURANCE COMPANY

| | | |
|---|---|---|
| Named Insured   BIG 5 SPORTING GOODS | Effective Date: | 09-25-09 |
| | | 12:01 A.M., Standard Time |
| Agent Name    WILLIS RISK & INS SERVS OF LA | Agent No. | 18757-000 |

### BROAD FORM NAMED INSURED

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

Commercial General Liability - Coverage Part

Big 5 Sporting Goods Corporation and any subsidiary company as now
formed or constituted, and any other company over which the named
insured has active control so long as the named insured or any
subsidiary company has an ownership interest of more than 50% of such
company.

U-GL-1114-A CW (10/02)

EXH 3-17

**Policy Number**
**GLO 9262202-02**

**ENDORSEMENT**

# ZURICH AMERICAN INSURANCE COMPANY

| | |
|---|---|
| Named Insured  BIG 5 SPORTING GOODS | Effective Date:  09-25-09 |
| | 12:01 A.M., Standard Time |
| Agent Name   WILLIS RISK & INS SERVS OF LA | Agent No.   18757-000 |

**BATCH ENDORSEMENT**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:
Commercial General Liability Coverage Part

It is agreed that all covered claims or "suits" for "bodily injury" or "property damage" which arise from the same hazard, defect or source of contamination relating to any single "batch" of "your product" shall be considered as arising out of one "occurrence". All damages and subsequent claims or "suits" resulting from any "occurrence" noted above shall be allocated to the one policy period in which "bodily injury" or "property damage" first occurs, and only the available limits of insurance of that policy period will apply to the payment or settlement of all such claims or "suits".

"Batch" of "your product" is defined as follows:

One batch of product shall be deemed to include all of the Named Insured's like products which are produced in a single production run and can be distinguished from other such products by a specific location, date or time of production or by a common lot number, batch number or other production identifier assigned to such products.

**U-GL-1114-A CW (10/02)**

Insured Copy

EXH 3-18

Policy Number
GLO 9262202-02

ENDORSEMENT

## ZURICH AMERICAN INSURANCE COMPANY

| Named Insured | BIG 5 SPORTING GOODS | Effective Date: | 09-25-09 |
|---|---|---|---|

12:01 A.M., Standard Time

| Agent Name | WILLIS RISK & INS SERVS OF LA | Agent No. | 18757-000 |
|---|---|---|---|

### FOREIGN COVERAGE- WORLDWIDE- SUITS

THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.
This endorsement modifies insurance provided under the:
Commercial General Liability Coverage Part

1. The "coverage territory" definition is replaced by the
following:
a. Anywhere in the world, excluding Cambodia, Cuba, Iran, Iraq,
Laos, Libya, North Korea, Mongolia, Croatia, Macedonia, Slovenia,
Bosnia, Herzegovina, Serbia, Montenegro, Somalia, Sudan, Afghanistan,
and any country not listed for which a United States of America
Department of State ban is issued during the policy term.
b. International waters or airspace, provided the injury or
damage does not occur in the course of travel or transportation to or
from any place excluded in a. above.
2. The Insuring Agreement is amended by adding the following:
 We have the right and duty to defend any "suit" asking for
covered damages arising from the insured's operations within
the "coverage territory" provided the "suit" is brought within the
United States of America, including its territories and possessions,
Puerto Rico, or Canada.  We have no duty, however, to defend
any "suit" not covered by the Coverage Part.  We may investigate and
settle any claim or "suit" as we consider appropriate.

**U-GL-1114-A CW (10/02)**

Policy Number
**GLO 9262202-02**

ENDORSEMENT

# ZURICH AMERICAN INSURANCE COMPANY

| | | |
|---|---|---|
| Named Insured | BIG 5 SPORTING GOODS | Effective Date: 09-25-09 |
| | | 12:01 A.M., Standard Time |
| Agent Name | WILLIS RISK & INS SERVS OF LA | Agent No. 18757-000 |

## NEWLY FORMED ORGANIZATIONS COVERAGE ENDT

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
This endorsement modifies insurance provided under the:
Commercial General Liability Coverage Part

I. Part 3. of Section II - WHO IS AN INSURED is deleted and
replaced by the following:
3. Any organization you newly acquire or form and over which you
maintain ownership or majority interest, will qualify as a Named
Insured if there is no other similar insurance available to that
organization.  However:
a. Coverage under this provision is afforded only until the 90th
day after you acquire or form the organization or the end of the
policy period, whichever is earlier;
b. Coverage A. does not apply to "bodily injury" or "property
damage" that occurred before you acquired or formed the organization;
c. Coverage B. does not apply to "personal and advertising
injury" arising out of an offense committed before you acquired or
formed the organization;
d. If the organization is a joint venture or partnership,
coverage is afforded only to the extent of the percentage of
ownership interest of any insured in the organization.

U-GL-1114-A CW (10/02)

Insured Copy

EXH 3-20

**Policy Number**
**GLO 9262202-02**

**ENDORSEMENT**

## ZURICH AMERICAN INSURANCE COMPANY

| | |
|---|---|
| Named Insured   BIG 5 SPORTING GOODS | Effective Date:   09-25-09 |
| | 12:01 A.M., Standard Time |
| Agent Name   WILLIS RISK & INS SERVS OF LA | Agent No.   18757-000 |

### INCIDENTAL MEDICAL MALPRACTICE ENDT

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
This endorsement modifies insurance provided under the:
Commercial General Liability Coverage Part

I. Sections 2.a.(1)(d) of Section II. WHO IS AN INSURED are
deleted and replaced by the following:
2. Each of the following is also an insured:
a. Your "volunteer workers" only while performing duties related
to the conduct of your business, or your "employees", other than
either your "executive officers" (if you are an organization other
than a partnership, joint venture or limited liability company) or
your managers (if you are a limited liability company), but only for
acts within the scope of their employment by you or while performing
duties related to the conduct of your business.  However, none of
these "employees" or "volunteer workers" are insured for:
(1) "Bodily injury" or "personal and advertising injury":
(d) Arising out of his or her providing or failing to provide
professional health care services, except any "bodily injury"
or "personal and advertising injury" arising out of:
(1) medical or paramedical services to persons performed by any
physician, dentist, nurse, emergency medical technician, paramedic or
other licensed medical care person employed by you to provide such
services; or
(2) emergency cardiopulmonary resuscitation (CPR) or first aid
services performed by any other employee of yours who is not a
licensed medical professional.
II. Any insurance coverage provided by this endorsement is excess
over any other valid and collectible insurance.

**U-GL-1114-A CW (10/02)**

Insured Copy

EXH 3-21

**Policy Number**
**GLO 9262202-02**

ENDORSEMENT

## ZURICH AMERICAN INSURANCE COMPANY

Named Insured   BIG 5 SPORTING GOODS

Effective Date:   09-25-09
12:01 A.M., Standard Time

Agent Name   WILLIS RISK & INS SERVS OF LA

Agent No.   18757-000

### PERSONAL INJURY LIMITED DISCRIMINATION

THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:
Commercial General Liability Coverage Form

It is agreed that "Personal and Advertising Injury" is amended to
include the following offense:
 Discrimination (other than unfair trade practices) based on
race, religion excluding any discrimination:

1. Intentionally committed by, at the direction of, or with the
consent of any insured;
2. Directly or indirectly related to the employment, prospective
employment or any person or persons by any insured;
3. To the extent that coverage for discrimination is prohibited
by stature an applicable decision of any appellate court, or ruling
of an administration agency.

U-GL-1114-A CW (10/02)

Insured Copy

**Policy Number**
**GLO 9262202-02**

ENDORSEMENT

## ZURICH AMERICAN INSURANCE COMPANY

| Named Insured | BIG 5 SPORTING GOODS | Effective Date: | 09-25-09 |
| | | | 12:01 A.M., Standard Time |
| Agent Name | WILLIS RISK & INS SERVS OF LA | Agent No. | 18757-000 |

### NONOWNED WATERCRAFT ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.
This endorsement modifies insurance provided under the:
Commercial General Liability Coverage Part

It is understood and agreed that exclusion g. of Coverage A (Section I) does not apply to "bodily injury" or "property damage" arising out of the maintenance, operation or use, including "loading or unloading" of any watercraft that is less than 100 feet in length provided that such watercraft is not owned by you and is not being used to carry persons for a charge.

U-GL-1114-A CW (10/02)

Insured Copy

EXH 3-23

**Policy Number**
**GLO 9262202-02**

ENDORSEMENT

## ZURICH AMERICAN INSURANCE COMPANY

| | | |
|---|---|---|
| Named Insured   BIG 5 SPORTING GOODS | Effective Date:   09-25-09 | |
| | 12:01 A.M., Standard Time | |
| Agent Name    WILLIS RISK & INS SERVS OF LA | Agent No.    18757-000 | |

### AMENDMENT OF REPRESENTATIONS CONDITION

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
This endorsement modifies insurance provided under the:
Commercial General Liability Coverage Part

The following is added to the Representations Condition of  Section
IV - Commercial General Liability Conditions:
  Coverage will continue to apply if you:
• unintentionally fail to disclose all hazards existing at the
inception of this policy, or
• unintentionally make an error, omission, or improper
description of premises or other statement of information stated in
this policy.
You must notify us as soon as possible after the discovery of any
hazards or any other information that was not provided to us prior to
the acceptance of  this policy.

U-GL-1114-A CW (10/02)

EXH 3-24

## LAWYERS PROFESSIONAL LIABILITY ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| POLICY NO. | EFF. DATE OF POL. | AGENCY NO. | ADD'L PREM. | RETURN PREM. |
|---|---|---|---|---|
| GLO 9262202-02 | 09/25/2009-09/25/2010 | 18757-000 | | |

**Named Insured**   **Big 5 Sporting Goods Corporation**

**Address (including ZIP code)**   **2525 El Segundo Blvd.**
**El Segundo, CA 90245**

| This endorsement modifies insurance provided by the following Commercial General Liability Coverage Part |
|---|

| SCHEDULE |
|---|
| LIMITS OF LIABILITY |

| | |
|---|---|
| Each Act or Omission Limit | $ 1,000,000 |
| Lawyers Professional Aggregate Limit: | $ 1,000,000 |
| Self Insured Retention | $ See Self Insured Retention Endorsement |

As respects coverage afforded by this endorsement, the following changes apply to the Commercial General Liability Coverage Part:

**I.  The following applies in places of SECTION I. COVERAGES:**

SECTION I- COVERAGE

COVERAGE L. – LAWYERS PROFESSIONAL LIABILITY

**1.  Insuring Agreement**

We will pay on behalf of the insured all sums which the insured shall be legally obligated to pay as "damages" because of any one act, error or omission or any one related series of acts, errors or omissions of the insured, or of any other person for whose acts, errors or omissions the insured is legally responsible, which occurs during the policy period, within the "coverage territory," and arises out of professional services performed on behalf of the insured by any lawyer employed by you in your legal department, including those professional services provided:

A.  at your direction in service to non-profit organizations; or

B.  without fee to fellow employees in connection with matters not related to your activities.

When the insured acts as an administrator, conservator, executor, guardian, trustee, or in any similar fiduciary capacity, the insured's acts, errors or omissions in such capacity shall be deemed to be the performance of professional services for others in the insured's profession as a lawyer, but only to the extent that such acts, errors or omissions are those for which is the usual attorney-client relationship the insured would be legally responsible as attorney for a fiduciary.

We shall have the right and duty to defend any suit against the insured seeking "damages" for acts, errors or omissions to which this insurance applies. We may at our discretion investigate any act, error or omission and settle any claim or "suit" that may result. But:

(1)  The amount we will pay for "damages" is limited as described in LIMITS OF INSURANCE (SECTION III); and

Countersigned _____
                   Authorized Representative

U-GL-1114-A CW (10-02)

EXH 3–25

(2) Our right and duty to defend end when we have used up the applicable limit of

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided under SUPPLEMENTARY PAYMENTS COVERAGE L.

## 2.  EXCLUSIONS

This insurance does not apply to any claim or "suit:"

a.  arising out of any dishonest, fraudulent, criminal or malicious act or omission of any insured employee of any insured;

b.  made by an employer or, if the employer is a corporation, its parent or subsidiary or by any director, officer, or stockholder thereof against an insured who is a salaried employee of such employer;

c.  for bodily injury, or for injury to or destruction of any tangible property, including the loss of use thereof;

d.  for any loss sustained by the insured as the beneficiary or distributee of any trust or estate;

e.  arising out of acts or omissions involving any security or any activities or transactions subject or claimed to be subject to the Securities Act of 1933, the Securities Exchange Act of 1934, the Public Utility Holding Company Act of 1935, the Trust Indenture Act of 1939, the Investment Company Act of 1940 or the Investment Advisors Act of 1940 or any purchase, sale or offering of any security to or from the public which is subject to any State Blue Sky or Securities Law.

f.  Arising out of or in connection with any insured's activities in the dual capacity as a lawyer and (1) as officer, director, partner, or any similar elective or appointive management position of any corporation, cooperative association, association, partnership, joint stock company, trust, unincorporated organization or any other entity other than that of the named insured, or (2) as a

insurance in the payment of judgements or settlements under this Coverage L.

public official or an employee of a governmental body, subdivision or agency;

g.  Arising out of or in connection with the insured's activities as a fiduciary under the Employees Retirement Income Security Act of 1974 and any amendments thereof or any regulation or orders issued pursuant thereto.

## SUPPLEMENTARY PAYMENTS

We will pay, with respect to any claims or "suit" we defend:

1.  All expenses we incur.

2.  The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance.  We do not have to furnish these bonds.

3.  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $100 a day because of time off from work.

4.  All costs taxed against the Insured in the "suit."

5.  Prejudgment interest awarded against the insured on that part of the judgement we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

6.  All interest on the full amount of any judgement that accrues after entry of the judgement and before we have paid, offered to pay, or deposited in court the part of the judgement that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

U-GL-1114-A CW (10-02)

EXH 3-26

**II.** **SECTION II.  WHO IS AN INSURED** is deleted and replaced by the following:

### II. WHO IS AN INSURED

1. The Insured:  The word "Insured" whenever used for this coverage means:

    a.   the Named Insured is the entity named in Item 1. of the Declarations;

    b.   any person who is not defined as Named Insured, but was, is now, or hereafter becomes an employed lawyer or other employee of the entity named in the Declarations, solely while acting in a professional capacity on behalf of such entity;

    c.   any former partner, officer, director or stockholder employee of the entity named in the Declarations, solely while acting in a professional capacity on behalf of such entity;

    d.   any partner, officer, director or stockholder employee of the entity named in the Declarations who has retired from the practice of law, but only for those professional services rendered prior to the date of retirement from the insured entity.

    e.   As respects the liability of each insured as is otherwise covered herein, the heirs, executors, administrators, assigns and legal representatives of each insured in the event of death, incapacity or bankruptcy.

2. Additional Insureds:  The following shall also be deemed to be insureds: any lawyer who during a policy period becomes a partner, officer, director, stockholder employee or employed lawyer of the entity.

**III. Paragraphs 1 and 2 of SECTION III. LIMITS OF INSURANCE** are deleted and replaced by the following:

1. The Limits of Insurance shown in Declarations, or in the Schedule of this endorsement, and the rules below fix the most we will pay for Layers Professional Liability coverage, regardless of the number of:

    a.   Insureds;

    b.   Claims made or "suits" brought; or

    c.   Persons or organizations making claims or bringing "suits."

2. The Lawyers Professional Aggregate Limit indicated in the Schedule of this endorsement is the most we will pay for all "damages" arising from all professional services as defined in Coverage L of this endorsement on pages 1 and 2, which occur during the policy period that are a result of any act, error or omission of the insured, or of any other person for whose acts, errors or omissions the insured is legally responsible.

The following is added to paragraph 5.  Section III. LIMITS OF LIABILITY:

Subject to 2. above, our total liability for all "damages" arising out of any one act, error or omission or any one related series of acts, errors or omissions for which insurance is provided by Coverage L. Lawyers Professional Liability shall not exceed the limit of liability stated in the Schedule of the Lawyers Professional Liability Endorsement as applicable to Each Act or Omission.

**IV.  Section IV.  COMMERCIAL GENERAL LIABLITY CONDITIONS Condition 2.** Paragraph a. is amended per the following:

2. **Duties in the Event of Claim or Suit**

    a.   You must see to it that we are notified in writing as soon as practicable of an act, error or omission which may result in a claim.  To the extent possible, notice should include:

    (1)  How, when and where the act, error or omission took place;

    (2)  The nature of "damages" arising out of the act, error or omission.

U-GL-1114-A CW (10-02)

EXH 3–27

V. As respects this Coverage L. Lawyers Professional Liability, the following definitions apply:

1. "Coverage territory" means the United States of America (including its territories and possessions), Puerto Rico and Canada.

2. "Damages" means loss, judgments and settlements, but does not include:

   (1) the return or withdrawal of fees;

   (2) judgements or awards from acts deemed uninsurable by law;

   (3) any fine, sanction, penalty, or punitive or exemplary damages; or

   (4) any damages which are a multiple of compensatory damages awarded against the insured, including without limitations an award of double and treble damages.

3. "Suit" means a civil proceeding in which "damages" because of an act or omission arising out of the performance of professional services to which this insurance applies are alleged. "Suit" includes:

   (a) An arbitration proceeding in which such "damages" are claimed and to which you must submit or do submit with our consent; or

   (b) Any other alternative dispute resolution proceeding in which such "damages" are claimed and to which submit with our consent.

VI. As respects this Coverage L. Lawyers Professional Liability, the following shall apply:

1. The Self Insured Retention amount shown in the Self Insured Retention Endorsement shall apply to all "damages" for each act or omission. The Self Insured Retention amount is in addition to the limit of liability for this Coverage L. Your obligation to pay the Self Insured Retention is applicable even when this insurance applies on an excess basis as provided for in Section VII.

VII. As respects this Coverage L. Lawyers Professional Liability, the following Other Insurance provision shall apply:

1. This insurance shall apply only as excess insurance over any other valid and collectible insurance.

U-GL-1114-A CW (10-02)

EXH 3–28


ZURICH

## Self Insured Retention Endorsement

(Including Defense Costs - We Pay All Defense Costs Excess of Self Insured Retention Amount)

| Policy No. | Exp. Date of Pol. | Eff. Date of End. | Agency No. | Addl. Prem. | Return Prem. |
|---|---|---|---|---|---|
| GLO 9262202-02 | 09/25/2009 | 09/25/2010 | 18757-000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the policy.

---

### SCHEDULE
### Self Insured Retention Amounts

$  250,000       **Per Occurrence** ( Including Defense Costs - All Defense Costs Paid By Us Excess Of Self Insured Retention Amount)

$ _____       **Per Claim** (Including Defense Costs - All Defense Costs Paid By Us Excess of Self Insured Retention Amount)

$ _____       **Aggregate** (Including Defense Costs - The Maximum You Will Pay For Damages and Defense Costs Combined)

**Periodic Reporting Requirement  Quarterly**

**Claim Service Provider  Zurich Services Corporation**

---

The insurance provided by this policy is subject to the following additional provisions, which in the event of conflict with any other provisions elsewhere in the policy, shall control the application of the insurance to which this endorsement applies:

I. **Self Insured Retention and Defense Costs - Your Obligations**

    A. The "self insured retention" amounts stated in the Schedule of this endorsement apply as follows:

      1. If a Per Occurrence Self Insured Retention Amount is shown in the Schedule of this endorsement, you shall be responsible for payment of all damages and "defense costs" as they are incurred for each "occurrence" until you have paid damages and "defense costs" equal to the Per Occurrence Amount shown in the Schedule, subject to the provisions of A. 3. below, if applicable. The Per Occurrence Amount is the most you will pay for damages

and "defense costs" arising out of any one "occurrence", regardless of the number of persons or organizations making claims or bringing suits because of the "occurrence".

      2. If a Per Claim Self Insured Retention Amount is shown in the Schedule of this endorsement, you shall be responsible for payment of all damages and "defense costs" as they are incurred until you have paid damages and "defense costs" for each claim equal to the Per Claim Amount shown in the Schedule, subject to the provisions of A. 3. below, if applicable. The Per Claim Amount is the most you will pay for each claim brought by each person or organization making a claim or bringing a suit as a result of any one "occurrence".

      3. If the Self Insured Retention Aggregate Amount is shown in the Schedule of this endorsement, the Aggregate Amount is the most you will pay for damages and "defense costs"

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

U-GL-1114-A CW (10/02)
Page 1 of 4

EXH 3-29

incurred under this policy. If this Amount is exceeded in your payment of damages and "defense costs", then the policy terms and conditions at that time continue to apply as written, but your obligation for any further payment of damages or "defense costs" under this Self Insured Retention Endorsement is no longer applicable. This Amount applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of this policy.

If no entry appears in the Schedule of this endorsement as Aggregate, then your obligation for payment of damages and "defense costs" applies in accordance with the Per Occurrence or Per Claim "self insured retention" provisions, whichever is applicable.

**B.   Defense Costs**

Except for any "defense costs" that we may elect to pay, you shall pay all "defense costs" as they are incurred until you have paid "defense costs" and damages equal to the applicable "self insured retention" amount, subject to application of the Aggregate Amount, if applicable.

**C.   Settlement of Claim**

**1.   Within Self Insured Retention**

If any final judgment or settlement and "defense costs" is less than the "self insured retention" amount indicated in the Schedule of this endorsement above, you shall have the right and obligation to settle all such claims or suits under this policy.

**2.   Excess of Self Insured Retention**

You may not settle any claim or suit which exceeds any "self insured retention" amount indicated in the Schedule of this endorsement without our written permission to do so. If you fail to obtain such written permission, we shall have no obligation to provide coverage for that claim or suit under this policy.

**D.   Authorized Claim Service Provider**

1.   You shall employ a claim service provider acceptable to us for the purpose of providing claim services for settlement of losses within the "self insured retention" amounts. You shall pay all fees, charges and costs of the claim service provider in addition to the "self insured retention" amounts, without any reimbursement from us.

2.   In the event of cancellation, expiration or revision of the claims service contract between you and the claim service provider, you shall notify us within (10) days of such change and shall

replace the claim service provider with another claim service provider that is acceptable to us.

**E.   Notification of Potential Penetration**

1.   You or the authorized claim service provider must notify us promptly of an "occurrence" which may result in a claim under this policy. Notice must include:

a.   How, when and where the "occurrence" took place;

b.   The names and addresses of any injured persons and witnesses; and

c.   The nature and location of any injury or damage arising out of the "occurrence".

2.   You or the authorized claim service provider must notify us promptly, per E.1. above, in the event of any "occurrence", without regard to liability, which results in any of the following injuries:

a.   Death;

b.   Brain damage;

c.   Paraplegic or quadriplegic impairment;

d.   Amputation or serious functional impairment of any major limb;

e.   Severe burns involving more than 25% of the body or causing serious disfigurement;

f.   Sensory impairment (sight, hearing, taste or smell);

g.   Severe internal body organ damage or loss;

h.   Multiple fractures involving more than one body part;

i.   Permanent and total disability;

j.   Sexual abuse or molestation; or

k.   Significant psychological / neurological involvement; or

Where exposure, loss reserve or potential judgment initiates or changes or where suit is filed per the following:

l.   Potential exposure equals or exceeds 25% of the "self insured retention" amount shown in the Schedule of this endorsement for Per Occurrence or Per Claim, whichever applies; or

m.   Loss reserve established equals or exceeds 25% of the "self insured retention" amount shown in the Schedule of this endorsement for Per Occurrence or Per Claim, whichever applies; or

n.  Potential judgment, if the claim prevails, without regard to liability, equals or exceeds 25% of the "self insured retention" amount shown in the Schedule of this endorsement for Per Occurrence or Per Claim, whichever applies; or

o.  A suit is filed. We shall have the right to appoint defense counsel, even if the amount claimed in the suit is unspecified or less than the "self insured retention" amount shown in the Schedule of this endorsement for Per Occurrence or Per Claim, whichever applies.

F.  **Reporting - Self Insured Retention**

You must report claims or suits to our Claim Department per the following:

1.  You or the authorized claim service provider must monitor the cumulative losses and "defense costs" sustained during the policy period and report those total amounts to us in accordance with the frequency of report indicated in the Periodic Reporting Requirement of the Schedule of this endorsement. However, if the total of all incurred losses and "defense costs" should at any time during the policy period attain a total amount equal to 75% of the Self Insured Retention Aggregate Amount, if indicated in the Schedule of this endorsement, you are required in that event to make an immediate report to us as to total incurred losses and "defense costs" sustained at that time.

    The Periodic Report that you send to us must be in a format that is acceptable to us, and include an accounting of all individual losses and "defense costs" incurred as of the date of the Report.

2.  Within forty-five (45) days after the end of the policy term, you must give us a listing of all existing claims or suits within the "self insured retention" amounts. At a minimum, such listing will include the following for each claim or suit:

    i.   a description of each claim or suit;

    ii.  the date of the "occurrence";

    iii. the amounts paid and reserved for future payments for loss and "defense costs"; and

    iv.  the current status of the claim or suit.

3.  Quarterly thereafter, you are required to give us an updated listing of the status of all claims or suits, both paid and reserved, until all claims or suits for the reporting period are closed or settled.

G.  **Representations**

By acceptance of this policy you agree that you will not procure insurance for all or any part of the "self insured retention" amounts shown in the Schedule of this endorsement. If such insurance is procured, there will be no coverage under this policy.

H.  **Compliance**

Compliance with the requirements set forth in this endorsement is a condition precedent to coverage. You acknowledge that in the event of non-compliance, we shall not be required to establish prejudice resulting from the non-compliance, but shall be automatically relieved of liability with respect to any claim.

II. **Our Rights and Obligations Excess of the Self Insured Retention**

A.  **Self Insured Retention/Defense Costs – Your Failure To Respond**

In the event of your refusal to respond to your obligations for the payment of "self insured retention" amounts or "defense costs" for any reason, we shall not make payments for you, nor in any event shall we be required to substitute for you as respects your responsibility for payment of these "self insured retention" amounts or "defense costs".

B.  **Damages Excess of Self Insured Retention – Per Occurrence or Per Claim**

We shall be liable only for the amount of damages and "defense costs" in excess of the "self insured retention" amounts as applicable, shown in the Schedule above, up to the applicable Limits of Insurance shown in the Declarations of this policy.

C.  **Damages Excess of Self Insured Retention - Aggregate**

1.  If the Self Insured Retention Aggregate Amount (if selected) shown in the Schedule of this endorsement is exceeded in your payment of damages or "defense costs", we will at that time assume your obligations for payment of all subsequent damages and "defense costs" subject to the Limits of Insurance provisions of this policy.

2.  In the event of a midterm cancellation of this policy, the Self Insured Retention Aggregate Amount shown in the Schedule of this endorsement is not subject to any pro rata reduction. Such Aggregate

Amount will apply as if the policy term had not been shortened.

D. **Settlement of Claims**

1. **Within Self Insured Retention**

We shall have, at our option, the right but not the obligation or duty to negotiate the settlement of any claim within the applicable "self insured retention" amount, which in our opinion is deemed expedient. But we shall obtain your consent prior to entering into any settlement of any claim which is equal to or less than the "self insured retention" amount. If, however, you shall refuse to consent to any settlement recommended by us within the "self insured retention" amount and shall elect to contest the claim or continue with any legal proceedings in connection with such claim, our liability for that claim shall not exceed the amount determined by subtracting the "self insured retention" amount from the amount for which the claim could have been settled, including "defense costs" incurred with our consent to the date of such refusal. And we shall have no liability with respect to such claim if that difference is zero or negative.

2. **Excess of Self Insured Retention**

With respect to any claim under this insurance which has been tendered to us and which may exceed the "self insured retention" amount shown in the Schedule of this endorsement for Per Occurrence or Per Claim, whichever applies, we have the right and duty to negotiate the settlement of such claim and may pay any or all damages and "defense costs" on your behalf, both within and excess of the applicable "self insured retention" amount. Any such payments made by us within the "self insured retention" amount shall be reimbursed promptly by you.

3. **Excess of Self Insured Retention Aggregate**

If during the policy period we assume responsibility for your obligations after you have exceeded the policy Self Insured Retention Aggregate Amount (if selected) in your payment of damages and "defense

costs", we shall at that time have the right and duty to defend "suits" and settle existing and new losses and claims as we deem expedient and without your consent for the remainder of the policy period.

III. **Definitions**

A. "Self insured retention" means:

the amount or amounts which you or any insured must pay for all compensatory damages and "defense costs" which you or any insured shall become legally obligated to pay because of damages arising from any coverage included in the policy.

B. "Defense costs" means:

expenses directly allocable to specific claims and shall include but not be limited to all Supplementary payments as defined under the policy(ies); all court costs, fees and expenses; costs for all attorneys, witnesses, experts, depositions, reported or recorded statements, summonses, service of process, legal transcripts or testimony, copies of any public records; alternative dispute resolution; interest; investigative services, medical examinations, autopsies, medical costs containment; declaratory judgment, subrogation and any other fees, costs or expenses reasonably chargeable to the investigation, negotiation, settlement or defense of a claim or a loss under the policy(ies).

C. "Occurrence" for purposes of this endorsement only, means an "occurrence", offense, accident, act, error or omission or any other such similar event, as defined or used in our policy, that must occur in order to initiate payment of covered losses under the policy terms and conditions.



**ZURICH**

# Coverage Change Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Agency No. | Addl. Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| GLO9262202-02 | 09/25/2009 | 09/25/2010 | 09/25/2009 | 18757-000 | $ | $ |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Amendment – Policy Aggregate Limits of Insurance – Per Location

Schedule

The Commercial General Liability Limits of Liability shown on the Declarations page are deleted and replaced by the following limits of liability:

| | |
|---|---|
| Policy General Aggregate Limit | 20,000,000 |
| Products-Completed Operations Aggregate Limit | 2,000,000 |
| Per Location Aggregate Limit | 2,000,000 |
| Personal Injury and Advertising Injury Limit | 1,000,000 |
| (Any one person or organization) | |
| Each Occurrence Limit | 1,000,000 |
| Fire Damage Limit | 1,000,000 |
| Medical Expense Limit | 10,000 |

Section III. Limits of Insurance is deleted and replaced by the following:

1. The Limits of Insurance shown in the Schedule of this endorsement and the rules below determine the most we will pay regardless of the number of:

   a. Insureds;
   b. Claims made or "suits" brought; or
   c. Persons or organizations making claims or bringing "suits".

2. The Policy General Aggregate Limit is the most we will pay for the sum of:

   a. All Medical Expenses under Coverage C.;

   b. All damages under Coverage A., except damages because of "bodily injury" or "property damage" included in the products - completed operations hazard"; and

5. Subject to 2. above, the Personal Injury and Advertising Injury Limit is the most we will pay under Coverage B. for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

6. Subject to 2., 3. or 4. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   c. All damages under Coverage B;

   that arise out of all of your "locations" combined during the policy period, including any Medical Expenses under Coverage C. or damages under Coverage A. that may not be determinable as arising specifically from any one of your "locations".

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A., during the policy period for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard."

4. Subject to 2. above, the Per Location Aggregate Limit is the most we will pay for the sum of:

   a. Medical Expenses under Coverage C.; and

   b. Damages under Coverage A., except damages because of "bodily injury" or "property damage" included in the products-completed operations hazard";

   c. That arise out of any one of your "locations".

7. Subject to 6. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

8. Subject to 6 above, the Medical Expense Limit is the most we will pay under Coverage C. for all medical

U-GL-1114-A CW (10/02)
Page 1 of 2

EXH 3-33

a.  Damages under Coverage A; and
b.  Medical Expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence."

For all sums which the insured becomes legal obligated to pay as damages caused by "occurrences" under Coverage A (Section I) and for all medical expenses caused by accidents under Coverage C (Section I), which cannot be attributed only to operations at or from any one of your "locations":

a.  Any payments made under Coverage A for damages or under Coverage C for medical expenses shall reduce the amount available under the Policy General Aggregate Limit or the Products-Completed Operations Aggregate Limit, which is applicable; and

b.  Such payments shall not reduce any Per Location Aggregate Limit.

expenses because of "bodily injury" sustained by any one person

9.  For purposes of this change in Limits of Insurance, the following definition applies:

"Location" means premises you own, rent or that are temporarily occupied by you.  A location involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad, will be deemed to be a single location.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months.  In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

Countersigned  _____
                   Authorized Representative

U-GL-1114-A CW (10/02)
Page 2 of 2

EXH 3–34



**ZURICH**

# Knowledge of Occurrence Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Railroad Protective Liability Coverage Part**
**Liquor Liability Coverage Part**
**Product/Completed Operations Coverage Part**
**Business Auto Coverage Part**
**Truckers Liability Coverage Part**
**Garage Coverage Part**
**Farm Liability Coverage Part**

1.   The Duties In The Event Of Accident, Occurrence, Offense, Injury, Claim Or Suit condition is amended per the following:

It is agreed that knowledge of an "accident", "occurrence", offense, "injury", claim, or "suit" by your agent, servant, or "employee" will not in itself be considered to be your knowledge of the "accident", "occurrence", offense, "injury" claim, or "suit" unless the individual(s) in the following positions(s) or department shall have received such notice from the agent, servant, or "employee":

**Position or Department:**

KNOWLEDGE BY ANY PERSON IN THE RISK MANAGEMENT DEPARTMENT THAT IS RESPONSIBLE FOR RECEIVING OR ACTING UPON SUCH INFORMATION.

2.   If a claim is made or "suit" is brought against any insured, you or the individual(s) in the Position or Department above must:

**a.**   Immediately record the specifics of the claim or "suit" and the date received; and

**b.**   Notify us and see that we receive written notice of the claim or "suit" as soon as practicable.

# Lead Liability Exclusion



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following exclusion is added to paragraph 2. Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability and Coverage B - Personal And Advertising Injury Liability:

This insurance does not apply to:

**Lead**

(1) "Bodily injury", "property damage" or "personal and advertising injury" arising out of or caused by the actual or alleged:

    (a) exposure to or existence of lead, paint containing lead, or any other material or substance containing lead; or

    (b) manufacture, distribution, sale, resale, re-branding, installation, repair, removal, encapsulation, abatement, replacement or handling of lead, paint containing lead, or any other material or substance containing lead,

    whether or not the lead is or was at any time airborne as a particle contained in a product ingested, inhaled, transmitted in any fashion, or found in any form whatsoever;

(2) Any legal obligation of any insured for indemnification or contribution due to damages arising out of "bodily injury", "property damage" or "personal and advertising injury" caused by lead, paint containing lead, or any other substance or material containing lead;

(3) Any loss, cost, expense or damages, whether direct or consequential, arising out of any:

    (a) request, demand or order that any insured or others test for, monitor, clean up, remove, abate, contain, treat, or neutralize lead, paint containing lead, or any other substance or material containing lead, or in any way respond to, or assess the effects of lead; or

    (b) claim or suit relating to testing for, monitoring, cleaning up, removing, abating, containing, treating, or neutralizing lead, paint containing lead, or any other substance or material containing lead or in any way responding to or assessing the effects of lead.

# Bodily Injury Redefined

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Form**

The definition of "bodily injury" in SECTION V – DEFINITIONS is replaced by the following:

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person.  This includes mental anguish, mental injury, shock, fright or death resulting from bodily injury, sickness or disease.

# Fungi Or Bacteria Exclusion Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following exclusion is added to paragraph **2. Exclusions** of **Section I. – Coverage A – Bodily Injury And Property Damage Liability** and paragraph **2. Exclusions** of **Coverage B – Personal And Advertising Injury Liability:**

**2.   Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

A.   "Bodily injury", "property damage" or "personal and advertising injury " caused directly or indirectly by the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any:

   1.   "Fungi" or "bacteria"; or

   2.   Substance, vapor or gas produced by or arising out of any "fungi" or "bacteria".

B.   Loss, costs or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or "bacteria", by any insured or by any other person or entity.

C.   For the purposes of this exclusion, the following definitions are added:

   1.   "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, "spores", scents or byproducts produced or released by fungi.

   2.   "Spores" means reproductive bodies produced by or arising out of  "fungi".

   3.   "Bacteria" means any type or form of bacteria and any materials or substances that are produced or released by bacteria.

This exclusion does not apply to any "fungi" or "bacteria" that are, are on, or are contained in, an edible good or edible product intended for human or animal consumption.

U-GL-1171-AC W (07/03)
Page 1 of 1

Includes copyrighted material of Insurance Services Office, Inc. with its permission

Insured Copy

EXH 3–38

# Additional Insured – Automatic – Owners, Lessees Or Contractors


**ZURICH**

| Policy No. | Exp. Date of Pol. | Eff. Date of End. | Agency No. | Addl. Prem. | Return Prem. |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Named Insured:**
**Address (including ZIP Code):**

This endorsement modifies insurance provided under the:
**Commercial General Liability Coverage Part**

**A.** **Section II – Who Is An Insured** is amended to include as an insured any person or organization who you are re-quired to add as an additional insured on this policy under a written contract or written agreement.

**B.** The insurance provided to the additional insured person or organization applies only to "bodily injury", "property damage" or "personal and advertising injury" covered under **SECTION I - Coverage A - Bodily Injury And Property Damage Liability** and **Section I - Coverage B - Personal And Advertising Injury Liability**, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

  **1.** Your acts or omissions; or

  **2.** The acts or omissions of those acting on your behalf; and resulting directly from:

    **a.** Your ongoing operations performed for the additional insured, which is the subject of the written con-tract or written agreement; or

    **b.** "Your work" completed as included in the "products-completed operations hazard", performed for the additional insured, which is the subject of the written contract or written agreement.

**C.** However, regardless of the provisions of paragraphs **A.** and **B.** above:

  **1.** We will not extend any insurance coverage to any additional insured person or organization:

    **a.** That is not provided to you in this policy; or

    **b.** That is any broader coverage than you are required to provide to the additional insured person or or-ganization in the written contract or written agreement; and

  **2.** We will not provide Limits of Insurance to any additional insured person or organization that exceed the lower of:

    **a.** The Limits of Insurance provided to you in this policy; or

    **b.** The Limits of Insurance you are required to provide in the written contract or written agreement.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

U-GL-1175-B CW (3/2007)
Page 1 of 2

Insured Copy

EXH 3-39

D. The insurance provided to the additional insured person or organization does not apply to:

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering or failure to render any professional architectural, engineering or surveying services including:

1. The preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2. Supervisory, inspection, architectural or engineering activities.

E. The additional insured must see to it that:

1. We are notified as soon as practicable of an "occurrence" or offense that may result in a claim;

2. We receive written notice of a claim or "suit" as soon as practicable; and

3. A request for defense and indemnity of the claim or "suit" will promptly be brought against any policy issued by another insurer under which the additional insured may be an insured in any capacity. This provision does not apply to insurance on which the additional insured is a Named Insured, if the written contract or written agreement requires that this coverage be primary and non-contributory.

F. For the coverage provided by this endorsement:

1. The following paragraph is added to Paragraph **4.a.** of the Other Insurance Condition of **Section IV – Commercial General Liability Conditions:**

This insurance is primary insurance as respects our coverage to the additional insured person or organization, where the written contract or written agreement requires that this insurance be primary and non-contributory. In that event, we will not seek contribution from any other insurance policy available to the additional insured on which the additional insured person or organization is a Named Insured.

2. The following paragraph is added to Paragraph **4.b.** of the Other Insurance Condition of **Section IV – Commercial General Liability Conditions:**

This insurance is excess over:

Any of the other insurance, whether primary, excess, contingent or on any other basis, available to an additional insured, in which the additional insured on our policy is also covered as an additional insured by attachment of an endorsement to another policy providing coverage for the same "occurrence", claim or "suit". This provision does not apply to any policy in which the additional insured is a Named Insured on such other policy and where our policy is required by written contract or written agreement to provide coverage to the additional insured on a primary and non-contributory basis.

G. This endorsement does not apply to an additional insured which has been added to this policy by an endorsement showing the additional insured in a Schedule of additional insureds, and which endorsement applies specifically to that identified additional insured.

Any provisions in this Coverage Part not changed by the terms and conditions of this endorsement continue to apply as written.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.          U-GL-1175 B CW (3/2007)
Page 2 of 2

Insured Copy

EXH 3–40



**ZURICH**

# Other Insurance Amendment – Primary And Non-Contributory

| Policy No. | Exp. Date of Pol. | Eff. Date of End. | Agency No. | Addl. Prem. | Return Prem. |
|---|---|---|---|---|---|
| | | | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Named Insured:**

**Address (including ZIP Code):**

This endorsement modifies insurance provided under the:
**Commercial General Liability Coverage Part**

SECTION IV. COMMERCIAL GENERAL LIABILITY CONDITIONS, 4. Other Insurance, is amended per the following:

1. The following paragraph is added under **a. Primary Insurance:**

   This insurance is primary insurance as respects our coverage to an additional insured person or organization, where the written contract or written agreement requires that this insurance be primary and non-contributory. In that event, we will not seek contribution from any other insurance policy available to the additional insured on which the additional insured person or organization is a Named Insured.

2. The following paragraph is added under **b. Excess Insurance:**

   This insurance is excess over:

   Any of the other insurance, whether primary, excess, contingent or on any other basis, available to an additional insured, in which the additional insured on our policy is also covered as an additional insured by attachment of an endorsement to another policy providing coverage for the same "occurrence", claim or "suit". This provision does not apply to any policy in which the additional insured is a Named Insured on such other policy and where our policy is required by written contract or written agreement to provide coverage to the additional insured on a primary and non-contributory basis.

Any provisions in this Coverage Part not changed by the terms and conditions of this endorsement continue to apply as written.

Insured Copy

EXH 3–41

# Employee Benefits Liability – Claims-Made Coverage Form

**This Coverage Form provides *claims-made* coverage. Please read the entire form carefully.** Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us", and "our" refer to the Company providing this insurance. Other words and phrases that appear in quotes have special meaning. Refer to the Definitions Section.

## Section I. Coverage - Employee Benefit Liability

**1.  Insuring Agreement**

**A.**  We will pay those sums that the "insured" becomes legally obligated to pay as damages because of an act, error, or omission in the "administration" of the "insured's" "employee benefit programs". We will have the right and duty to defend the "insured" against any suit seeking those damages. However, we will have no duty to defend the "insured" against any "suit" seeking damages for any act, error, or omission for which this insurance does not apply. We may, at our discretion, investigate any "claim" and settle any "suit" that may result; but:

(1)  The amount we pay for damages is limited as described in Section II. - Limits of Insurance of this Coverage Part; and

(2)  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under this Employee Benefit Liability coverage.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments of this Coverage Part.

**B.**  (1)  This insurance applies to an act, error or omission only if:

a.  A "claim" arising out of the act, error or omission is first made against any "insured" during the policy period;

b.  The act, error, or omission takes place in the "coverage territory";

c.  The "insured" had no knowledge of and could not have reasonably foreseen any circumstances which might result in a "claim" or "suit"; and

d.  The act, error, or omission did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period.

(2)  A "claim" will be deemed to have been made when notice of such claim is received and recorded by any "insured" or by us, whichever comes first.  "All "claims" for damages to the same person or organization will be deemed to have been made at the time the first of those "claims" is made against any "insured".

**2.  Exclusions**

This insurance does not apply to:

**A.**  "Bodily injury", "property damage", or "personal and advertising injury";

**B.**  Any "claim" or "suit" arising out of any dishonest, fraudulent, criminal or malicious act;

**C.**  Any "claim" or "suit" arising out of discrimination or humiliation;

**D.**  Any "claim" or "suit" arising out of an insurer's or other provider's failure to perform its contract;

**E.**  Any "claim" or "suit" arising out of your failure to comply with any workers compensation, unemployment insurance, social security, disability benefits law, or similar laws;

**F.**  Any "claim" or "suit" arising out of the failure of any of your "employee benefit plans" to meet obligations due to insufficient funds;

**G.**  Any "claim" or "suit" arising out of:

(1)  Advice given to any person to participate or not participate in a plan or program included in "employee benefit programs";

(2)  The appointment of, or failure to appoint, any investment manager, administrator, trustee, actuary, advisor, counsel, accountant, custodian, or consultant;

U-GL-849-B CW (8/04)
Page 1 of 4

Insured Copy

EXH 3–42

(3) Any investment activity, including the management, administration or disposition of assets of your "employee benefit programs"; or

(4) Failure of any investment to perform as represented by any "insured".

H. Any "claim" or "suit" arising out of an "insured's" liability as a fiduciary under:

a. The Employee Retirement Income Security Act of 1974 (PL93-406) and its amendments; or

b. The Internal Revenue Code of 1986 (including the Internal Revenue Code of 1954) and its amendments.

3. **Supplementary Payments**

We will pay, in addition to the applicable Limits of Insurance, with respect to any "claim" we investigate or settle or "suit" we defend:

A. All expenses incurred by us, all costs taxed against the "insured" in any "suit" defended by us and all interest on the full amount of any judgment which accrues after entry of the judgment and before we have paid or tendered or deposited in court, that part of the judgment which does not exceed the limit of our insurance.

B. Premiums on appeal bonds required and on bonds to release attachments in any "suit". We do not have to furnish these bonds.

C. All reasonable expenses incurred by the "insured" at our request to assist us in the investigation or defense of the "claim" or "suit", including actual loss of earnings up to $250 a day because of time off from work.

D. Prejudgment interest awarded against the "insured" on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

## II. Limits of Insurance

A. The Limits of Insurance shown in the Declarations and the rules below establish the most we will pay regardless of the number of:

(1) "Insureds";

(2) "Claims" made or "suits" brought; or

(3) "Employees" or dependents or beneficiaries of "employees" making "claims" or bringing "suits".

B. The Aggregate Limit is the most we will pay for all damages because of all "claims" or "suits" arising from the "administration" of your "employee benefit programs" during the policy period.

C. Subject to the Aggregate Limit provisions in B. above, the Each Claim Limit is the most we will pay for all damages sustained by any one "employee", including the "employee's" dependents and beneficiaries, because of acts, errors, or omissions committed in the "administration" of your "employee benefit programs".

D. The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## III. Conditions

A. **Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of our obligations.

B. **Duties in the Event of an Act, Error, Omission, Claim or Suit**

(1) Regardless of whether the loss exceeds any applicable deductible amount, you must see to it that we are notified as soon as practicable of any act, error, or omission which may result in a "claim". To the extent possible, notice should include:

a. How, when, and where the act, error, or omission took place;

b. The names and addresses of any injured "employee", dependents, or beneficiaries of any "employee" and witnesses.

Notice of an act, error, or omission is not notice of a "claim".

(2) If a "claim" is received by any "insured", you must:

a. Immediately record the specifics of the "claim" and the date received; and

b. Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim" as soon as practicable.

(3) You and any other involved "insured" must:

a. Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the "claim" or "suit";

b. Authorize us to obtain records and other information;

Insured Copy

    c.   Cooperate with us in the investigation, settlement, or defense of the "claim" or "suit"; and

    d.   Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury to which this insurance may also apply.

(4)  No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

## C. Legal Action Against Us

No person or organization has a right:

(1)  To join us as a party or otherwise bring us into a "suit" asking for damages from an "insured"; or

(2)  To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an "insured" obtained after an actual trial, but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the "insured", and the claimant or the claimant's legal representative.

## D. Other Insurance

If other valid and collectible insurance is available to the "insured" for a loss we cover under this Coverage Part, our obligations are limited as follows:

### (1) Primary Insurance

This insurance is primary except when **2.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **3.** below.

### (2) Excess Insurance

This insurance is excess over any other insurance whether primary, excess, contingent, or on any other basis that is effective prior to the beginning of the policy period shown in the Declarations of this insurance and applies to an act, error, or omission on other than a claims-made basis, if:

    a.   No Retroactive Date is shown in the Declarations of this insurance; or

    b.   The other insurance has a policy period which continues after the Retroactive Date, if any, shown in the Declarations of this insurance.

When this insurance is excess, we will have no duty to defend any "claim" or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the "insured's" rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

    i.   The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

    ii.   The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

### (3) Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

## E. Separation of Insureds

Except with respect to the Limits of Insurance and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

(1)  As if each Named Insured were the only Named Insured; and

(2)  Separately to each "insured" against whom "claim" is made or "suit" is brought.

## F. Transfer Of Rights Of Recovery Against Others To Us

If the "insured" has rights to recover all or part of any payment we made under this Coverage Part, those rights are transferred to us. The "insured" must do nothing after loss to impair them. At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.

## IV. Definitions

Insured Copy

EXH 3–44

**A.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

  (1) Notices that are published include material placed on the Internet or on similar electronic means of communication; and

  (2) Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**B.** "Administration" means:

  (1) Counseling "employees", including their dependents and beneficiaries, with respect to "employee benefit programs";

  (2) Handling records in connection with "employee benefit programs"; or

  (3) Effecting or terminating an "employee's" participation in a plan included in "employee benefit programs".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**D.** "Claim" means:

  The receipt by you of a demand for money or services which alleges an act, error, or omission in the "administration" of your "employee benefit programs."

**E.** "Coverage territory" means:

  (1) The United States of America (including its territories and possessions), Puerto Rico, and Canada; or

  (2) All parts of the world if the "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **E. 1.** above, or in a settlement to which we agree.

**F.** "Employee" means:

  Your officers and employees, whether actively employed, disabled, or retired.

**G.** "Employee benefit programs" mean:

  Group life insurance, group accident or health insurance, profit sharing plans, pension plans, employee stock subscription plans, workers compensation, unemployment insurance, salary continuation plans, social security, disability benefits insurance, savings plans, vacation plans, or any other similar plans or programs.

**H.** "Insured" means:

You and any of your partners, executive officers, directors, members, stockholders or "employees", provided such "employee" is authorized to act in the "administration" of your "employee benefit programs".

**I.** "Personal and advertising injury" means:

Injury, including consequential "bodily injury", arising out of one or more of the following offenses:

  (1) False arrest, detention, or imprisonment;

  (2) Malicious prosecution;

  (3) The wrongful eviction from wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies by or on behalf of its owner, landlord, or lessor;

  (4) Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services; or

  (5) Oral or written publication,' in any manner, of material that violates a person's right of privacy;

  (6) The use of another's advertising idea in your "advertisement"; or

  (7) Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**J.** "Property damage" means:

  (1) Physical injury to tangible property, including all resulting loss of use of that property.

  (2) Loss of use of tangible property that is not physically injured.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications, software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**K.** "Suit" means:

A civil proceeding in which damages to which this insurance applies is alleged. "Suit" includes:

  (1) An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

  (2) Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

# Fellow Employee Coverage Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

1. It is agreed that paragraph **2. a. (1)** of **SECTION II - WHO IS AN INSURED** is deleted and replaced by the following:

   (1) "Bodily injury" or "personal and advertising injury":

   (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company);

   (b) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (1) (a) above; or

   (c) Arising out of his or her providing or failing to provide professional health care services.

U-GL-915-C CW (8/04)
Page 1 of 1

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Insured Copy

EXH 3-46

## COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

Policy Number: GLO 9262202-02

Named Insured: BIG 5 SPORTING GOODS CORPORATION

Policy Period: Coverage begins 09-25-2009   at 12:01 A.M.; Coverage ends 09-25-2010   at 12:01 A.M.

Producer Name: WILLIS RISK & INS SERVS OF LA   Producer No. 18757-000

**Item 1.** Business Description:

**Item 2.** Limits of Insurance

| | | |
|---|---|---|
| GENERAL AGGREGATE LIMIT | $ 20,000,000 | |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $ 2,000,000 | |
| EACH OCCURRENCE LIMIT | $ 1,000,000 | |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | $ 1,000,000 | Any one premises |
| MEDICAL EXPENSE LIMIT | $ 10,000 | Any one person |
| PERSONAL AND ADVERTISING INJURY LIMIT | $ 1,000,000 | Any one person or organization |

**Item 3.** Retroactive Date **(CG 00 02 ONLY)**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" offense which occurs before the Retroactive Date, if any, shown here: NONE

(Enter Date or "None" If no Retroactive Date applies)

**Item 4.** Form of Business and Location Premises

Form of Business:

Location of All Premises You Own, Rent or Occupy: **See Schedule of Locations**

**Item 5.** Schedule of Forms and Endorsements

Form(s) and Endorsement(s) made a part of this Policy at time of issue:
**See Schedule of Forms and Endorsements**

**Item 6.** Premiums

| | |
|---|---|
| Coverage Part Premium: | $ 195,013 |
| Other Premium: | |
| Total Premium: | $ 195,013 |

U-GL-D-1115-B CW   (9/04)

EXH 3–47

**EMPLOYEE BENEFIT LIABILITY COVERAGE PART - CLAIMS MADE DECLARATIONS**

Policy Number: GLO 9262202-02

Named Insured: BIG 5 SPORTING GOODS

**Policy Period:** Coverage begins 09-25-2009 at 12:01 A.M; Coverage ends 09-25-2010 at 12:01 A.M

Producer Name: WILLIS RISK & INS SERVS OF LA          Producer No. 18757-000

**Item 1.** Limits of Insurance

$ __2,000,000__ Aggregate Limit
$ __1,000,000__ Each Claim Limit

**Item 2.** Form of Business:

☐ Individual     ☐ Parnership     ☐ Joint Venture     ☒ Corporation
☐ Other

**Item 3.** Premium Schedule:

| Code No. | Premium Basis (Estimated Number of Employees) | Rate | | Advance Premium |
|---|---|---|---|---|
| _____ | _____ | $ _____ | Per Employee | $ INCL |
| | | $ _____ | Flat Charge | $ _____ |

Total Advance Premium For This Coverage Part:    $ INCL

Audit Period:  ☒ Annual    ☐ Semi-annual    ☐ Quarterly    ☐ Monthly

**Forms And Endorsements Applicable To This Coverage Part:**

**SEE SCHEDULE OF FORMS AND ENDORSEMENTS**

**Retroactive Date:**

__09/25/1992__ (Enter date or "None" if no Retroactive Date applies)

This insurance does not apply to damages caused by an act, error, or omission which occurred before the Retroactive Date, if any, shown above.

Insured Copy

EXH 3-48

# Asbestos Exclusion Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following exclusion is added to paragraph 2. Exclusions of Section I - Coverage A – Bodily Injury And Property Damage Liability and Coverage B - Personal And Advertising Injury Liability:

**2.    Exclusions**

This insurance does not apply to:

Asbestos

A.    "Bodily injury", "property damage" or "personal and advertising injury" arising out of or which would not have occurred, in whole or in part, but for the actual, alleged or threatened discharge, dispersal, release, leakage, leaching, friability, flaking, escape or presence of asbestos, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to the injury or damage; or

B.    Any sums that any insured or other entity must pay, repay or reimburse because of any:

1.   Request, demand, order, statutory or regulatory requirement, direction or determination  that any insured or others   test for, investigate, monitor, clean up, remove, study, contain, treat, encapsulate, control or take any other action regarding asbestos; or

2.   Claim  or "suit"  for damages arising out of or relating in any way to any request, demand, order, statutory or regulatory requirement, direction or determination  that any insured or  others  test for, investigate, monitor, clean up, remove, study, contain, treat, encapsulate, control or take any other action regarding asbestos; or

C.    Any other loss, cost or expense arising out of or relating in any way to asbestos.

U-GL-1178-A CW (07/03)
Page 1 of 1

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Insured Copy

EXH 3–49

# Distribution Of Material In Violation Of Statutes Exclusion Amendment



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Exclusion **q.** under Paragraph **2., Exclusions** of Section I — Coverage A — Bodily Injury And Property Damage Liability is replaced by the following:

    **2. Exclusions**

        This insurance does not apply to:

        **q. Distribution Of Material In Violation Of Statutes**

           "Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

           (1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

           (2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

           (3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law including the Fair and Accurate Credit Transaction Act (FACTA); or

           (4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA, that relates to, prohibits or limits the accessing, collection, recording, printing, dissemination, disposal, sending, transmitting, communicating or distribution of material or information.

B. Exclusion **p.** under Paragraph **2., Exclusions** of Section I — Coverage B — Personal And Advertising Injury Liability is replaced by the following:

    **2. Exclusions**

        This insurance does not apply to:

        **p. Distribution Of Material In Violation Of Statutes**

           "Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

           (1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

           (2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

           (3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law including the Fair and Accurate Credit Transaction Act (FACTA); or

           (4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA, that relates to, prohibits or limits the accessing, collection, recording, printing, dissemination, disposal, sending, transmitting, communicating or distribution of material or information.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Insured Copy

EXH 3−50

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II — Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V — Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III — Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II — Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II — Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II — Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© ISO Properties, Inc., 2006

Insured Copy

EXH 3–51

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason o

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or s of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2006

Insured Copy

CG 00 01 12 07      ☐

EXH 3–52

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

© ISO Properties, Inc., 2006

Insured Copy

EXH 3–53

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    (b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

    (a) Less than 26 feet long; and

    (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

    (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

    (b) the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

© ISO Properties, Inc., 2006

**CG 00 01 12 07**

Insured Copy

EXH 3–54

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III — Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

© ISO Properties, Inc., 2006

Insured Copy

EXH 3–55

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or

© ISO Properties, Inc., 2006

*Insured Copy*

CG 00 01 12 07    ☐

EXH 3–56

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Distribution Of Material In Violation Of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

## COVERAGE C MEDICAL PAYMENTS

**1. Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(a) The accident takes place in the "coverage territory" and during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions**

We will not pay expenses for "bodily injury":

a. **Any Insured**

To any insured, except "volunteer workers".

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

f. **Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

g. **Coverage A Exclusions**

Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

© ISO Properties, Inc., 2006

CG 00 01 12 07

Insured Copy

EXH 3–58

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

© ISO Properties, Inc., 2006

Insured Copy

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage C;

b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

a. Damages under Coverage A; and

b. Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

© ISO Properties, Inc., 2006

Insured Copy

CG 00 01 12 07

EXH 3–60

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I — Coverage **A** — Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V — DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

© ISO Properties, Inc., 2006

Insured Copy

CG 00 01 12 07   ☐

EXH 3–62

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph a. above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in Paragraph a. above;

(2) The activities of a person whose home is in the territory described in Paragraph a. above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

© ISO Properties, Inc., 2006

Insured Copy

CG 00 01 12 07

EXH 3–64

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, re-conditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

 © ISO Properties, Inc., 2006 ☐

Insured Copy

      **(2)** The providing of or failure to provide warnings or instructions.

   **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

   **a.** Means:

      **(1)** Work or operations performed by you or on your behalf; and

      **(2)** Materials, parts or equipment furnished in connection with such work or operations.

   **b.** Includes:

      **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

      **(2)** The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc., 2006

Insured Copy

CG 00 01 12 07    □

EXH 3–66

COMMERCIAL GENERAL LIABILITY
CG 32 34 01 05

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

The term "spouse" is replaced by the following:

Spouse or registered domestic partner under California law.

© ISO Properties, Inc., 2004

Insured Copy

EXH 3–67



# Premium And Reports Agreement – Composite Rated Policies

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:
**Commercial General Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**

## Schedule

1. **Unit of Exposure (Check One):**

   ☐ per 1000 gallons        ☐ per licensed "auto"        ☒ per $1,000 gross sales

   ☐ per $1,000 payroll      ☐ per other: _____

2. **Coverage Unit of Exposure**     **Rate(s)**         **Estimated Premium(s)**
   903,675,000                        0.21579900          $ 195,013

3. **Deposit Premium:**      $195,013 _____

4. **Minimum Premium:**      $156,010 _____

Condition 5, Premium Audit, of Section IV, Commercial General Liability Conditions, is replaced by the following:

5. **Premium Audit**

   a. We will compute all premiums for this Coverage Part according to our rules and the composite rates shown in the Schedule above or attached hereto.

   b. For policies other than Annual Reporting, the deposit premium shown in the Schedule is due and payable on the first day of the policy period. The first Named Insured will pay, within 20 days following the mailing or delivery of the statement of audited premium for each audit period, the earned premium due.

   c. Within 180 days after this Coverage Part expires we will conduct an audit, which may not be waived. We will compute the earned premium for the policy period by multiplying the composite rate against the total developed exposure. If the earned premium is greater than the sum of the deposit and any interim adjustment premiums, the first Named Insured will pay us the excess; if less, we will return the unearned portion to the first Named Insured. However, the earned premium will not be less than the greater of the 80% of the estimated annual premium or the Minimum Premium shown in the Schedule.

   d. The first Named Insured must maintain records of the information we need for premium computation and send us copies at such times as we may request.

   e. The units of exposure shown in the Schedule are defined as follows:

   1) **Gallons** means the total number of gallons of liquefied petroleum gasses invoiced on any basis to any customer, whether or not the insured actually takes possession of such gases.

   2) **Gross sales** means gross sales invoiced, before discounts, but does not include taxes collected for any governmental unit.

   3) **Licensed "auto"** means the final average of the number of "autos" at policy inception and the number of "autos" at policy termination.

   4) **Other** means the unit of exposure defined in the Unit of Exposure endorsement attached to this policy.

   5) **Payroll** means total remuneration for all "employees" of the insured as defined in our rating manuals.

EXH 3–68

POLICY NUMBER: **GLO 9262202-02**                    COMMERCIAL GENERAL LIABILITY
                                                     CG 20 11 01 96

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED - MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

1.  Designation of Premises (Part Leased to You):

    **BLANKET WHERE REQUIRED BY CONTRACT, PRIOR TO LOSS.**

2.  Name of Person or Organization (Additional Insured):

    **BLANKET WHERE REQUIRED BY CONTRACT, PRIOR TO LOSS.**

3.  Additional Premium: **INCL.**

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

1.  Any "occurrence" which takes place after you cease to be a tenant in that premises.

2.  Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.

CG 20 11 01 96              Copyright, Insurance Services Office, Inc., 1994              Page 1 of 1 ☐

Insured Copy

POLICY NUMBER: GLO 9262202-02

**COMMERCIAL GENERAL LIABILITY**
CG 20 15 07 04

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) (Vendor) | Your Products |
|---|---|
| BLANKET WHERE REQUIRED BY CONTRACT, PRIOR TO LOSS. | ALL PRODUCTS. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) (referred to below as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

1. The insurance afforded the vendor does not apply to:

   a. "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

   b. Any express warranty unauthorized by you;

c. Any physical or chemical change in the product made intentionally by the vendor;

d. Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

e. Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

f. Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

CG 20 15 07 04

© ISO Properties, Inc., 2004

Page 1 of 2   □

Insured Copy

EXH 3–70

g. Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

h. "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

(1) The exceptions contained in Subparagraphs **d.** or **f.**; or

(2) Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

2. This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

© ISO Properties, Inc., 2004

Insured Copy

CG 20 15 07 04   □

EXH 3–71

POLICY NUMBER: GLO 9262202-02

COMMERCIAL GENERAL LIABILITY
CG 20 26 07 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) |
|---|
| ONLY THOSE WHERE REQUIRED BY WRITTEN CONTRACT. |
| |
| |
| |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

A. In the performance of your ongoing operations; or

B. In connection with your premises owned by or rented to you.

© ISO Properties, Inc., 2004

Insured Copy

COMMERCIAL GENERAL LIABILITY
CG 21 47 07 98

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph 2., Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability:

This insurance does not apply to:

"Bodily injury" to:

    (1) A person arising out of any:

        (a) Refusal to employ that person;

        (b) Termination of that person's employment; or

        (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

    (2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

    (1) Whether the insured may be liable as an employer or in any other capacity; and

    (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph 2., Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:

This insurance does not apply to:

"Personal and advertising injury" to:

    (1) A person arising out of any:

        (a) Refusal to employ that person;

        (b) Termination of that person's employment; or

        (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

    (2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

    (1) Whether the insured may be liable as an employer or in any other capacity; and

    (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

CG 21 47 07 98
Copyright, Insurance Services Office, Inc., 1997
Page 1 of 1  □

Insured Copy

EXH 3–73

COMMERCIAL GENERAL LIABILITY
CG 21 65 12 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION WITH A BUILDING HEATING, COOLING AND DEHUMIDIFYING EQUIPMENT EXCEPTION AND A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion f. under Paragraph 2. **Exclusions** of **Section I — Coverage A — Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to:

(a) "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests; or

(b) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

(i) At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

(ii) At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

© ISO Properties, Inc., 2003

Insured Copy

EXH 3–74

POLICY NUMBER:  GLO 9262202-02

COMMERCIAL GENERAL LIABILITY
CG 22 74 10 01

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITED CONTRACTUAL LIABILITY COVERAGE FOR PERSONAL AND ADVERTISING INJURY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

Designated Contract Or Agreement:
LIMITED TO NAMED INSURED'S OBLIGATION FOR SECURITY GUARD CONTRACTS.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** With respect to the contract or agreement designated in the Schedule above, Subparagraph **e.** of Paragraph **2. Exclusions** of Section I - **Coverage B - Personal And Advertising Injury Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement.

This exclusion does not apply to:

**(1)** Liability for damages that the insured would have in the absence of the contract or agreement; or

**(2)** Liability for "personal and advertising injury" if:

**(a)** The liability pertains to your business and is assumed in the designated contract or agreement shown in the Schedule in which you assume the tort liability of another. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

**(b)** The "personal and advertising injury" occurs subsequent to the execution of the designated contract or agreement shown in the Schedule; and

**(c)** The "personal and advertising injury" arises out of the offenses of false arrest, detention or imprisonment.

CG 22 74 10 01

© ISO Properties, Inc., 2001
Insured Copy

Page 1 of 2    □

EXH 3-75

Solely for the purposes of liability so assumed in such designated contract or agreement, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "personal injury" described in Paragraph **A.2.e.(2)(c)** above, provided:

(i) Liability to such party for, or the cost of, that party's defense has also been assumed in the same designated contract or agreement; and

(ii) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**B.** With respect to the contract or agreement designated in the Schedule above, the following is added to **Section I - Supplementary Payments - Coverages A And B:**

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

1. The "suit" against the indemnitee seeks damages for which the insured has assumed tort liability of the indemnitee in a designated contract or agreement shown in the Schedule, if such liability pertains to your business. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

2. This insurance applies to such liability assumed by the insured;

3. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same designated contract or agreement;

4. The allegations in the "suit" and the information we know about the offense are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

5. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

6. The indemnitee:

   a. Agrees in writing to:

      (1) Cooperate with us in the investigation, settlement or defense of the "suit";

      (2) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

      (3) Notify any other insurer whose coverage is available to the indemnitee; and

      (4) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

   b. Provides us with written authorization to:

      (1) Obtain records and other information related to the "suit"; and

      (2) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **A.2.e.(2)** of this endorsement, such payments will not be deemed to be damages for "personal and advertising injury" as described in Paragraph **A.2.e.(2)(c)** above and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

1. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

2. The conditions set forth above, or the terms of the agreement described in Paragraph **6.** above, are no longer met.

© ISO Properties, Inc., 2001
Insured Copy

CG 22 74 10 01 ☐

EXH 3–76

POLICY NUMBER: GLO 9262202-02

COMMERCIAL GENERAL LIABILITY
CG 24 04 10 93

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**

WHERE REQUIRED BY WRITTEN CONTRACT.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Condition (Section IV — COMMERCIAL GENERAL LIABILITY CONDITIONS) is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

CG 24 04 10 93         Copyright, Insurance Services Office, Inc., 1992         Page 1 of 1    □

Insured Copy

EXH 3-77

POLICY NUMBER: GLO 9262202-02

COMMERCIAL GENERAL LIABILITY
CG 25 04 03 97

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DESIGNATED LOCATION(S)
# GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Designated Location(s):**

BLANKET ALL LOCATIONS PER SCHEDULE ON FILE WITH COMPANY.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE **A** (SECTION I), and for all medical expenses caused by accidents under COVERAGE **C** (SECTION I), which can be attributed only to operations at a single designated "location" shown in the Schedule above:

1. A separate Designated Location General Aggregate Limit applies to each designated "location", and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

2. The Designated Location General Aggregate Limit is the most we will pay for the sum of all damages under COVERAGE **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under COVERAGE **C** regardless of the number of:

   **a.** Insureds;

   **b.** Claims made or "suits" brought; or

   **c.** Persons or organizations making claims or bringing "suits".

3. Any payments made under COVERAGE **A** for damages or under COVERAGE **C** for medical expenses shall reduce the Designated Location General Aggregate Limit for that designated "location". Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Location General Aggregate Limit for any other designated "location" shown in the Schedule above.

4. The limits shown in the Declarations for Each Occurrence, Fire Damage and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Location General Aggregate Limit.

Copyright, Insurance Services Office, Inc., 1996

Insured Copy

EXH 3-78

**B.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE **A** (SECTION I), and for all medical expenses caused by accidents under COVERAGE **C** (SECTION I), which cannot be attributed only to operations at a single designated "location" shown in the Schedule above:

**1.** Any payments made under COVERAGE **A** for damages or under COVERAGE **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-Completed Operations Aggregate Limit, whichever is applicable; and

**2.** Such payments shall not reduce any Designated Location General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Location General Aggregate Limit.

**D.** For the purposes of this endorsement, the **Definitions** Section is amended by the addition of the following definition:

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**E.** The provisions of Limits Of Insurance (SECTION III) not otherwise modified by this endorsement shall continue to apply as stipulated.

Copyright, Insurance Services Office, Inc., 1996

CG 25 04 03 97

Insured Copy

EXH 3–79


**ZURICH**

# Fungi/Bacteria Exclusion Disclosure Notice

**This insurance does not apply to or provides limited coverage as respects fungi or bacteria. You should refer to the specific fungi or bacteria endorsements indicated below for determination of specific terms and conditions as respects exclusion of any fungi or bacteria exposures that you may have. The following fungi or bacteria endorsements that are checked ☒ apply in the indicated areas of the "coverage territory".**

<u>ISO FORM CG 00 01</u>

☒  Fungi or Bacteria Exclusion Endorsement          All states in the "coverage territory" except:
   U-GL-1171 A CW                                    AK, NY, VA

☐  Fungus Exclusion Endorsement                     Applicable in the following states:
   U-GL-1063 A CW; **or**
☐  Limited Fungus Exclusion Endorsement
   U-GL-1046 A CW

☐  Fungi or Bacteria Exclusion                      Applicable in the following states:
   ISO form CG 2167

☐  Georgia Limited Fungi or Bacteria Coverage -     GA
   Small Businesses  CG 32 01*

☐  Other
                                                    Applicable in the following states:

*Applicable only to risks with less than 25 employees or annual revenues less than $2.5 million.



**ZURICH**

# Pollution Liability Exclusion Disclosure Notice

This insurance policy does not apply to or provides very limited coverage as respects pollution liability.  You should refer to the specific pollution liability policy exclusions or pollution liability exclusion endorsements of your policy for determination of specific terms and conditions as respects exclusion of any pollution liability exposures that you may have. The policy exclusions of the Commercial General Liability Coverage Part, form CG 00 01, apply to pollution exposures in the "coverage territory" unless replaced or modified, as indicated in the applicable endorsement, by one or more of the following pollution exclusion endorsements.  The pollution exclusion endorsements that are checked ☒ apply to pollution exposures in the indicated area(s) of the "coverage territory":

<hr>

### ISO FORM CG 00 01

| | | |
|---|---|---|
| ☐ | Total Pollution Exclusion Endorsement, ISO Form CG 21 49 | All states in the "coverage territory"  except: |
| ☐ | Total Pollution Exclusion - Hostile Fire Exception, ISO Form CG 21 55 | All states in the "coverage territory" except:<br><br>Only applicable in the following state(s) |
| ☒ | Total Pollution Exclusion with a Building Heating Equipment Exception and a Hostile Fire Exception ISO Form CG 21 65 | All states in the "coverage territory" except:<br>MN, NH, TX<br>Only applicable in the following state(s) |

**Other State Endorsements:**

| | | |
|---|---|---|
| ☐ | Indiana Changes - Pollution Exclusion, ISO Form CG 01 23 | Indiana |
| ☐ | Missouri Changes - Pollution Exclusion, ISO Form CG 01 34; or | Missouri |
| ☐ | Missouri Changes – Gasoline Risks - Pollution Exclusion, ISO Form  CG 01 35; | Missouri |
| ☐ | Vt. Changes - Pollution, ISO form CG 01 54 | Vermont |
| ☐ | Other | Applicable in the following states: |

<hr>

Insured Copy

EXH 3–81

# EXHIBIT 4

This SPECIAL MULTI-FLEX POLICY is provided by the stock insurance company(s) of The Hartford Insurance Group, shown below.

# COMMON POLICY DECLARATIONS

**POLICY NUMBER:** 72 ECS R95004
**RENEWAL OF:** NEW

THE HARTFORD

**Named Insured and Mailing Address:**
**(No.,Street,Town,State,Zip Code)**

BIG 5 SPORTING GOODS CORPORATION
2525 E. EL SEGUNDO BLVD
EL SEGUNDO, CA 90245

**Policy Period:**   **From** 09/25/2010   **To** 09/25/2011
12:01 a.m. Standard Time at your mailing address shown above.

In return for the payment of the premium, and subject to all of the terms of this policy, we agree with you to provide insurance as stated in this policy. The Coverage Parts that are of this policy are listed below. The Advance Premium shown may be subject to adjustment.

**Total Advance Premium:** $200,606

**Coverage Part and Insurance Company Summary**                              **Advance Premium**

COMMERCIAL GENERAL LIABILITY          HARTFORD FIRE INSURANCE COMPANY          INCLUDED
(EXCESS)                              HARTFORD, CT 06155

**Form Numbers of Coverage Parts, Forms and Endorsements that are a part of this policy and that are not listed in the Coverage Parts.**

EH0022(0605)

**Agent/Broker Name:**                   **Agency Code:**

WILLIS RISK & INSURANCE SERVICES         255143
801 SOUTH FIGUEROA STREET
LOS ANGELES, CA 90017

Countersigned by _____
(Where required by law)          Authorized Representative                 Date

10/25/2010

**Form HM 00 10 01 07**


EXHIBIT
4

EXH 4-1

# COMMERCIAL GENERAL LIABILITY (EXCESS) COVERAGE PART - DECLARATIONS



**DECLARATIONS**

| **Previous Policy No.** | **POLICY NO.** 72 ECS R95004 |
| NEW | |

This COMMERCIAL GENERAL LIABILITY (EXCESS) COVERAGE PART consists of:

- **A.** This Declarations;
- **B.** Commercial Liability Schedule, if applicable;
- **C.** Commercial General Liability (Excess) Coverage Form; and
- **D.** Any Endorsements issued to be part of this Coverage Part and listed below.

**1. Audit Period is the Policy Period unless otherwise herein stated:**  ☐ Semi-Annual  ☐ Quarterly  ☐ Monthly
  ☒ Annual  ☐ Not subject to Audit

**2. Advance Premium**  $200,606  ,which is  ☐ A Flat Charge Per Each Policy Period
  ☒ Adjustable at the end of each Audit Period, Per Premium Computation Endorsement

**Minimum Retained Audit Premium**  $168,609

**Minimum Retained Premium**  $168,609  , not subject to adjustment in the event of cancellation by you.

**Applicable State Surcharges:** REFER TO SCHEDULE HC1210

Note: charges, if any, are included in item **2.** above

**3. Limits of Insurance**
The Limits of Insurance, subject to all the terms of this policy that apply, are:

| | |
|---|---:|
| Each Occurrence | $1,000,000 |
| Personal and Advertising Injury Limit | $1,000,000 |
| General Aggregate Limit (Other than Products-Completed Operations) | $2,000,000 |
| Products-Completed Operations Aggregate Limit | $2,000,000 |

**4. Self-Insured Retentions**
Your self-insured retentions, subject to all the terms of this policy that apply, are:

| | |
|---|---:|
| Each Occurrence Retention | $ 250,000 |
| Personal and Advertising Injury Retention | $ 250,000 |
| General Aggregate Retention (Other than Products-Completed Operations) | N/A |
| Products-Completed Operations Aggregate Retention | N/A |
| All coverages (including Products-Completed Operations) Aggregate Retention | $9,000,000 |

**5. Classification, if any:**
REFER TO EXTENSION SCHEDULE.

**6. Business Description**
MISC. RETAIL

**7. Form Numbers of Coverage Forms and Endorsements forming a part of this policy:**
SEE LISTING OF POLICY PROVISIONS AND ENDORSEMENTS FORMING A PART OF THE POLICY AT ISSUE.

10/25/2010

**Form EH 00 22 06 05**

(c) 2005, The Hartford

EXH 4-2

**Policy Number:** 72 ECS R95004



# LISTING OF COVERAGE PARTS AND ENDORSEMENTS FORMING A PART OF THE POLICY

The following is a listing of policy provisions and endorsements by Form Number and Title that form a part of the policy at issue.

| | FORM NUMBER | | TITLE |
|---|---|---|---|
| 1 | EH0001 | 06-05 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM (EXCESS) |
| 2 | ET2015 | 09-10 | BROAD FORM NAMED INSURED - INCLUDING JOINT VENTURES AND PARTNERSHIPS |
| 3 | HM9901 | 11-85 | INSTALLMENT PAYMENT PLAN |
| 4 | HS9906 | 06-05 | PREMIUM COMPUTATION ENDORSEMENT |
| 5 | HS2422 | 06-05 | EARLIER NOTICE OF CANCELLATION OR NONRENEWAL PROVIDED BY US |
| 6 | EH0494 | 06-05 | EMPLOYEE BENEFITS LIABILITY COVERAGE ENDORSEMENT CLAIMS MADE |
| 7 | GN984716 | 01-08 | CONFIRMATION OF COVERAGE ELECTION - TERRORISM RISK INSURANCE ACT |
| 8 | HC2370 | 01-08 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| 9 | HS9855 | 01-06 | ADJUSTMENT OF TERRORISM CHARGES AT AUDIT |
| 10 | CG2026 | 07-04 | ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION |
| 11 | HC2137 | 03-93 | ABSOLUTE LEAD EXCLUSION |
| 12 | HC2190 | 06-08 | EXCLUSION -FUNGI, BACTERIA, AND VIRUSES |

**Form HS 99 22 06 05**

(c) 2005, The Hartford

**Policy Number:** 72 ECS R95004



# LISTING OF COVERAGE PARTS AND ENDORSEMENTS FORMING A PART OF THE POLICY

The following is a listing of policy provisions and endorsements by Form Number and Title that form a part of the policy at issue.

| | FORM NUMBER | | TITLE |
|---|---|---|---|
| 13 | EH2535 | 08-09 | AMENDMENT-AGGREGATE LIMITS OF LIABILITY(GEN'L AGG CAP LIMIT) |
| 14 | EH2200 | 06-05 | AMDT OF CONTRACTUAL LIAB EXCL FOR PERSONAL & ADVERTISING INJURY LIMITED TO FALSE ARREST,DETENTION |
| 15 | EH9953 | 06-05 | AMENDMENT OF PROVISIONS - OUR PAYMENT OF CLAIM EXPENSES WHEN SELF-INSURED RETENTION IS EXHAUSTED |
| 16 | EH0405 | 04-08 | ABSOLUTE POLLUTION EXCLUSION - EXCEPTION FOR BUILDING HEATING, COOLING & DEHUMIDIFYING EQUIPMENT |
| 17 | ET2437 | 09-10 | BATCH CLAUSE |
| 18 | HC0403 | 12-07 | FELLOW EMPLOYEE SUITS |
| 19 | EH0452 | 06-05 | DAMAGE TO PREMISES RENTED TO YOU ENDORSEMENT |
| 20 | EH0404 | 04-08 | ABSOLUTE POLLUTION EXCLUSION - EXCEPTION FOR HOSTILE FIRE |
| 21 | HC0408 | 04-89 | HOST LIQUOR LIABILITY COVERAGE ENDORSEMENT |
| 22 | HS2473 | 06-05 | WORLDWIDE COVERAGE ENDORSEMENT |
| 23 | EH2016 | 06-05 | AMENDMENT OF OTHER INS. CONDITION SCHEDULED ADDITIONAL INSRDS |
| 24 | ET5017 | 07-06 | AMENDMENT OF PERSONAL AND ADVERTISING INJURY COVERAGE - DISCRIMINATION- PATRONS ONLY |

**Form HS 99 22 06 05**

**Policy Number:**  72 ECS R95004



# LISTING OF COVERAGE PARTS AND ENDORSEMENTS FORMING A PART OF THE POLICY

The following is a listing of policy provisions and endorsements by Form Number and Title that form a part of the policy at issue.

|  | FORM NUMBER | | TITLE |
|---|---|---|---|
| 25 | ET0425 | 09-10 | LAWYERS PROFESSIONAL LIABILITY COVERAGE ENDORSEMENT |
| 26 | CG3234 | 01-05 | CALIFORNIA CHANGES |
| 27 | IL0270 | 09-08 | CALIFORNIA CHANGES - CANCELLATION AND NONRENEWAL |
| 28 | IL0017 | 11-98 | COMMON POLICY CONDITIONS |
| 29 | HS2531 | 06-05 | AMENDMENT - PREMIUMS AND PREMIUM AUDIT |
| 30 | IL0021 | 07-02 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT |
| 31 | IH9940 | 04-09 | U.S. DEPT OF THE TREASURY, OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS |
| 32 | IH9941 | 04-09 | TRADE OR ECONOMIC SANCTIONS ENDORSEMENT |
| 33 | HS9948 | 06-08 | IMPORTANT STATE INFORMATION  FRAUD WARNING STATEMENTS |
| 34 | G-3418-0 | | PRODUCER COMPENSATION NOTICE |

Form HS 99 22 06 05

(c) 2005, The Hartford

EXH 4-5



# COMMERCIAL GENERAL LIABILITY COVERAGE FORM (EXCESS)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and what is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the stock insurance company member of The Hartford providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II Who Is An Insured.

Other words and phrases that appear in quotation marks have a special meaning. Refer to Section V - Definitions

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that you or any insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies; but only to the extent that such "bodily injury" or "property damage" is in excess of the "self-insured retention" that has been exhausted solely by your payment of "claim expenses" and that portion of judgments or settlements to which this insurance would have applied in the absence of the "self-insured retention".

   b. Subject to subsection **d.** below:

      (1) You are responsible for the payment of expenses for any defense counsel selected by or on behalf of you or any insured, including "claim expenses", whether or not the "self-insured retention" or Limits of Insurance are exhausted; and

      (2) If we make a payment relating to the defense counsel or defense of any claim against you or any insured, whether within or above the "self-insured retention", it will be on your behalf, and you must reimburse us within seven business days of the date you receive notice that such payments have been made.

   c. Subject to subsection **d.** below, you shall have the duty to defend any "suit" brought against you or any insured seeking damages because of "bodily injury" or "property damage" to which this insurance applies. Such duty shall continue whether or not the "self-insured retention" or Limits of Insurance are exhausted.

   d. We shall not be obligated to assume charge of, participate in, or pay for the investigation or defense of any claim or "suit".

      However, if such claim or "suit", in our opinion, involves or is reasonably likely to involve payment by us under this Coverage Part, we shall:

      (1) Require you or the insured against whom the claim is made or "suit" is brought to obtain our written consent regarding the selection of any defense counsel;

      (2) At our own expense, have the right but not the duty to investigate and to assign counsel in addition to any defense counsel assigned by or on behalf of you or the insured. Such additional counsel shall have the right to participate in the investigation, defense or settlement of any claim or "suit" on our behalf; and

      (3) Have the right but not the duty to assume control of the defense, and we shall have that right even if we have not elected to assign additional defense counsel.

      If we assume control of the defense:

      (a) We shall have the right to select or dismiss defense counsel for the purpose of continuing the defense of any "suit"; and

      (b) You shall continue to pay, or reimburse us for, any "claim expenses" pursuant to the defense of you or any insured.

      During the course of controlling the defense we shall have the right but not the duty to settle the claim or "suit" by paying all or part of the "self-insured retention" or Limits of Insurance. Such

**Form EH 00 01 06 05**

© 2005, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc. with its permission.)

EXH 4–6

payment is on your behalf and, you are responsible for reimbursing us for:

**(i)** Payments for damages within the "self-insured retention" we have made; and

**(ii)** Expenses we have paid, whether or not such expenses have exhausted the "self-insured retention",

within seven business days of the date you receive notice that any such payments have been made.

If we avail ourselves of the foregoing right(s), you and any other insured, your or any other insured's claim servicing agency and we shall cooperate in such investigation, defense or settlement.

Any right or opportunity we have exercised to participate in or control the defense ends at our discretion, but in all events ends when we have used up the limit of insurance in the payment of judgments or settlements to which this Coverage Part applies.

**e.** In no event shall:

**(1)** The "self-insured retention" be reduced by your or any insured's overhead, cost of investigation of claims by salaried "employees", or "employee" time; nor any expenses or appeals not incurred with our written consent pursuant to the Duties In The Event of Occurrence, Offense, Claim or Suit Condition in Section **IV** or the Appeals Condition in Section **IV**; or

**(2)** We have any obligation or liability to pay sums or performs acts or services unless explicitly provided for under Supplementary Payments – Coverage **A** and **B**.

**f.** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance. We have no other obligation to pay anything unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**g.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the "policy period"; and

**(3)** Prior to the "policy period", no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee"

authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the "policy period", that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the "policy period" will be deemed to have been known prior to the "policy period".

**h.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**i.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**j. Incidental Medical Malpractice**

**(1)** "Bodily injury" arising out of the rendering of or failure to render professional health care services as a physician, dentist, nurse, emergency medical technician or paramedic shall be deemed to be caused by an "occurrence", but only if:

**(a)** The physician, dentist, nurse, emergency medical technician or paramedic is employed by you to provide such services; and

**(b)** You are not engaged in the business or occupation of providing such services.

**(2)** For the purposes of determining the limits of insurance for incidental medical malpractice, any act or omission together with all related acts or omissions in the furnishing of these services to any one person will be considered one "occurrence".

/

EXH 4–7

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

### f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible;

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations; or

(e) To the extent that any such injury or damage is included in the "products-completed operations hazard".

Solely to the extent "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; subparagraph (d) does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to

EXH 4–8

hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor. This exception also does not apply if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or access the effects of "pollutants".

**(2)** Any loss, cost or expense arising out of any:

   **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   **(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g.  Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any "aircraft", "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of

any "aircraft", "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

   **(a)** Less than 51 feet long; and

   **(b)** Not being used to carry persons for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of "aircraft" or watercraft;

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment"; or

**(6)** An "aircraft" that is not owned by any insured and is hired, chartered or loaned with a paid crew. However, this exception does not apply if the insured has any other insurance for such "bodily injury" or "property damage", whether the other insurance is primary, excess, contingent or on any other basis.

**h.  Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity .

**i.  War**

"Bodily injury" or "property damage", however caused, arising directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j.  Damage to Property**

"Property Damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3) and (4) of this exclusion do not apply to "property damage" arising from the use of elevators.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraphs (3) and (4) of this exclusion do not apply to "property damage" to borrowed equipment while not being used to perform operations at the job site.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.  Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.  Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.  Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.  Recall of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o.  Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p.  Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Employment-Related Practices**

"Bodily injury" to:

(1) A person arising out of any "employment–related practices"; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any "employment-related practices" are directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**r. Asbestos**

(1) "Bodily injury" or "property damage" arising out of the "asbestos hazard".

(2) Any damages, judgments, settlements, loss, costs or expenses that:

(a) May be awarded or incurred by reason of any claim or suit alleging actual or threatened injury or damage of any nature or kind to persons or property which would not have occurred in whole or in part but for the "asbestos hazard";

(b) Arise out of any request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of an "asbestos hazard"; or

(c) Arise out of any claim or suit for damages because of testing for, monitoring, cleaning up, removing, encapsulating, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of an "asbestos hazard".

**s. Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) Any Statute, ordinance or regulation, other than TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**t. Aircraft Products**

(1) "Bodily injury" or "property damage" included in the "products - completed operations hazard" and arising out of the design, manufacture, sale, handling or distribution of "aircraft products", or reliance upon any representation or warranty made with respect thereto, or to any liability arising out of the "grounding" of any "aircraft"; or

(2) Liability assumed by you under any contract or agreement if such liability arises out of "aircraft products" designed, manufactured, sold, handled or distributed by you or by others trading under your name.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

a. We will pay those sums that you or any insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies; but only to the extent that such "personal and advertising injury" is in excess of the "self-insured retention" that has been exhausted solely by the payment of "claim expenses" and that portion of judgments or settlements to which this insurance would have applied in the absence of the "self-insured retention".

b. Subject to subsection **d.** below:

(1) You are responsible for the payment of expenses for any defense counsel selected by or on behalf of you or any insured, including "claim expenses", whether or not the "self-insured retention" or Limits of Insurance are exhausted; and

(2) If we make a payment relating to the defense of any claim against you or any insured, whether within or above the "self-insured retention," it will be on your behalf, and you must reimburse us within seven business days of the date you receive notice that such payments have been made.

c. Subject to subsection **d.** below, you shall have the duty to defend any "suit" brought against you or any insured seeking damages because of "personal and advertising injury"

EXH 4–11

to which this insurance applies. Such duty shall continue whether or not the "self-insured retention" or Limits of Insurance are exhausted.

d. We shall not be obligated to assume charge of, participate in, or pay for the investigation or defense of any claim or "suit".

However, if such claim or "suit", in our opinion, involves or is reasonably likely to involve payment by us under this Coverage Part, we shall:

(1) Require you or the insured against whom a claim is made or "suit" is brought to obtain our written consent regarding the selection of any defense counsel;

(2) At our own expense, have the right but not the duty to investigate and to assign counsel in addition to any defense counsel assigned by or on behalf of you or the insured. Such additional counsel shall have the right to participate in the investigation, defense or settlement of any claim or "suit" on our behalf; and

(3) Have the right but not the duty to assume control of the defense, and we shall have that right even if we have not elected to assign additional defense counsel.

If we assume control of the defense:

(a) We shall have the right to select or dismiss defense counsel for the purpose of continuing the defense of any "suit"; and

(b) You shall continue to pay, or reimburse us for, any "claim expenses" pursuant to the defense of you or any insured.

During the course of controlling the defense we shall have the right but not the duty to settle the claim or "suit" by paying all or part of the "self-insured retention" or Limits of Insurance. Such payment is on your behalf and, you are responsible for reimbursing us for:

(i) Payments for damages within the "self-insured retention" we have made; and

(ii) Expenses we have paid, whether or not such expenses have exhausted the "self-insured retention"

within seven business days of the date you receive notice that any such payments have been made.

If we avail ourselves of the foregoing right(s), you and any other insured, your and any other insured's claim servicing agency and we shall cooperate in such investigation, defense or settlement.

Any right or opportunity we have exercised to participate in or control the defense ends at our discretion, but in all events ends when we have used up the limit of insurance in the payment of judgments or settlements to which this Coverage Part applies.

e. In no event shall:

(1) The "self-insured retention" be reduced by your or any insured's overhead, cost of investigation of claims by salaried "employees," or "employee" time; nor any expenses or appeals not incurred with our written consent pursuant to the Duties In The Event of Occurrence, Offense, Claim or Suit Condition in Section **IV** or the Appeals Condition in Section **IV**; or

(2) We have any obligation or liability to pay sums or performs acts or services unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

f. The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance. We have no other obligation to pay anything unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

g. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the "policy period".

2. **Exclusions**

This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" arising out of an offense committed by, at the direction or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity.

EXH 4–12

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the "policy period".

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's "advertising idea" in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services.

**i. Infringement Of Intellectual Property Rights**

"Personal and advertising injury" arising out of any violation of any intellectual property rights such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity. However, this exclusion does not apply to infringement, in your "advertisement", of:

**(1)** Copyright;

**(2)** Slogan, unless the slogan is also a trademark, trade name, service mark or other designation of origin or authenticity; or

**(3)** Title of any literary or artistic work.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **20.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, placing an "advertisement" for or linking to others on your website, by itself, is not considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising directly or indirectly out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by

any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

p. **Internet Advertisements And Content Of Others**

"Personal and advertising injury" arising out of:

(1) An "advertisement" for others on your website;

(2) Placing a link to a website of others on your website;

(3) Content, including information, sounds, text, graphics, or images from a website of others displayed within a frame or border on your website; or

(4) Computer code, software or programming used to enable:

(a) Your website; or

(b) The presentation or functionality of an "advertisement" or other content on your website.

q. **Right Of Privacy Created By Statute**

"Personal and advertising injury" arising out of the violation of a person's right of privacy created by any state or federal act.

However, this exclusion does not apply to liability for damages that the insured would have in the absence of such state or federal act.

r. **Violation Of Anti-Trust law**

"Personal and advertising injury" arising out of a violation of any anti-trust law.

s. **Securities**

"Personal and advertising injury" arising out of the fluctuation in price or value of any stocks, bonds or other securities.

t. **Discrimination**

"Personal and advertising injury" arising out of discrimination.

u. **Employment-Related Practices**

"Personal and advertising injury" to:

(1) A person arising out of any "employment–related practices"; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of

"personal and advertising injury" to that person at whom any "employment-related practices" are directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

v. **Asbestos**

(1) "Personal and advertising injury" arising out of the "asbestos hazard".

(2) Any damages, judgments, settlements, loss, costs or expenses that:

(a) May be awarded or incurred by reason of any claim or suit alleging actual or threatened injury or damage of any nature or kind to persons or property which would not have occurred in whole or in part but for the "asbestos hazard";

(b) Arise out of any request, demand, order or statutory or regulatory requirement that any insured test for, monitor, clean up, remove, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of an "asbestos hazard"; or

(c) Arise out of any claim or suit for damages because of testing for, monitoring, cleaning up, removing, encapsulating, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of an "asbestos hazard".

w. **Distribution Of Material In Violation Of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) Any Statute, ordinance or regulation, other than TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. **You will pay:**

   a. With respect to any claim or any "suit" against you or any other insured that you have a duty to defend, all "claim expenses" you incur, whether or not such expenses are within the amount of the "self-insured retention". Even if we elect to assume control of the defense, you will continue to pay such expenses, or reimburse us for such expenses, at our sole discretion and direction. If we pay such expenses, you must reimburse us for all such expenses within seven business days of the date you receive notification that such payment has been made.

   b. Prejudgment interest awarded against you or any insured on that portion of the judgment or settlement that is within or equal to the amount of the "self-insured retention". Your payment will be in the ratio that your liability for the judgment rendered or settlement made bears to the whole amount of such judgment or settlement.

   c. Interest on that portion of a judgment or settlement that accrues after entry of the judgment and before you have paid, offered to pay, or deposited in court the part of the judgment that is within or equal to the amount of the "self-insured retention". Your payment will be in the ratio that your liability for the judgment rendered or settlement made bears to the whole amount of such judgment or settlement.

   Paragraphs **b.** and **c.** above will not reduce the amount of the applicable "self-insured retention".

2. **We will pay:**

   a. "Claim expenses" we incur if we have elected to associate with the defense counsel assigned by or on behalf of you or any other insured.

   b. The following in the ratio that our liability for the judgment rendered or settlement made bears to the whole amount of such judgment or settlement:

      (1) Prejudgment interest awarded against you or any other insured on that portion of the judgment or settlement we pay that is in excess of the amount of the "self-insured retention".

      (2) Interest on that portion of a judgment or settlement that accrues after entry of the judgment and before you have paid, offered to pay, or deposited in court the part of the judgment that is in excess of the amount of the "self-insured retention".

   (3) Up to $1,000 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   (4) The cost of appeal bonds or bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   (5) All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or 'suit', including actual loss of earnings up to $500 a day because of time off from work.

   (6) All costs taxed against the insured in the "suit".

These payments will not reduce the limits of insurance.

## SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. **Employees And Volunteer Workers**

      Your "volunteer workers" only while performing duties related to the conduct of

your business, or your "employees," other than either your "executive officers," (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury" or "personal and advertising injury":

    (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while in the course of his or her employment or while performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

    (b) To the spouse, child, parent, brother or sister of that co-"employee" *or* "volunteer worker" as a consequence of paragraph **(1)(a)** above;

    (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs **(1)(a)** or **(1)(b)** above; or

    (d) Arising out of his or her providing or failing to provide professional health care services.

If you are not in the business of providing professional health care services, paragraph **(d)** does not apply to any nurse, emergency medical technician or paramedic employed by you to provide such services.

(2) "Property damage" to property:

    (a) Owned, occupied or used by, or

    (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

    **b.  Real Estate Manager**

        Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

    **c.  Temporary Custodians of Your Property**

        Any person or organization having proper temporary custody of your property if you die, but only:

        (1) With respect to the liability arising out of the maintenance or use of that property; and

        (2) Until your legal representative has been appointed.

    **d.  Legal Representative If You Die**

        Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.  Newly Acquired or Formed Organization**

Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain financial interest of more than 50% of the voting stock, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

    **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the "policy period", whichever is earlier;

    **b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

    **c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

**4.  Mobile Equipment**

With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

    **a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

**b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**5. Nonowned Watercraft**

With respect to watercraft you do not own that is less than 51 feet long and is not being used to carry persons for a charge, any person is an insured while operating such watercraft with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the watercraft, and only if no other insurance of any kind is available to that person or organization for this liability.

However, no person or organization is an insured with respect to:

**a.** "Bodily injury" to a co-"employee" of the person operating the watercraft; or

**b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**6. Additional Insureds When Required By Written Contract, Written Agreement Or Permit**

The following person(s) or organization(s) are an additional insured when you have agreed, in a written contract, written agreement or because of a permit issued by a state or political subdivision, that such person or organization be added as an additional insured on your policy, provided the injury or damage occurs subsequent to the execution of the contract agreement.

A person or organization is an additional insured under this provision only for that period of time required by the contract or agreement.

However, no such person or organization is an insured under this provision if such person or organization is included as an insured by an endorsement issued by us and made part of this Coverage Part.

**a. Vendors**

Any person(s) or organization(s) (referred to below as vendor), but only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendor's business; and only if this Coverage Part provides coverage for "bodily injury" or "property damage" included within the "products-completed operations hazard".

**(1)** The insurance afforded the vendor is subject to the following additional exclusions:

This insurance does not apply to:

**(a)** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

**(b)** Any express warranty unauthorized by you;

**(c)** Any physical or chemical change in the product made intentionally by the vendor;

**(d)** Repackaging except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

**(e)** Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

**(f)** Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

**(g)** Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

**(h)** "Bodily injury" or "property damage" arising out of the sole negligence of the vender for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

**(i)** The exceptions contained in sub-paragraphs **(d)** or **(f)**; or

**(ii)** Such inspections adjustments or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

(2) This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

**b. Lessors of Equipment**

(1) Any person or organization from whom you lease equipment; but only with respect to their liability for "bodily injury" or "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person or organization.

(2) With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

**c. Lessors of Land or Premises**

Any person or organization from whom you lease land or premises, but only with respect to liability arising out of the ownership, maintenance or use of that part of the land or premises leased to you.

With respect to the insurance afforded these additional insureds, the following additional exclusions apply:

This insurance does not apply to:

(1) Any "occurrence" which takes place after you cease to lease that land; or

(2) Structural alterations, new construction or demolition operations performed by or on behalf of such person or organization.

**d. Architects, Engineers or Surveyors**

Any architect, engineer, or surveyor, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

(1) In connection with your premises; or

(2) In the performance of your ongoing operations performed by you or on your behalf.

With respect to the insurance afforded these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or the failure to render any professional services by or for you, including:

1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

2. Supervisory, inspection, architectural or engineering activities.

**e. Permits issued By State or Political Subdivisions**

Any state or political subdivision, but only with respect to operations performed by you or on your behalf for which the state or political subdivision has issued a permit.

With respect to the insurance afforded these additional insureds, this insurance does not apply to:

(1) "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the state or municipality; or

(2) "Bodily injury" or "property damage" included within the "products-completed operations hazard".

**f. Any Other Party**

Any other person or organization who is not an insured under paragraphs **a.** through **e.** above, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

(1) In the performance of your ongoing operations,

(2) In connection with your premises owned by or rented to you; or

(3) In connection with "your work" and included within the "products-completed operations hazard", but only if:

(a) The written contract or agreement requires you to provide such coverage to such additional insured; and

(b) This Coverage Part provides coverage for "bodily injury" or "property damage" included within the "products-completed operations" hazard".

With respect to the insurance afforded to these additional insureds, this insurance does not apply to:

"Bodily injury", "property damage" or "personal and advertising injury" arising out of

the rendering of, or failure to render, any professional architectural, engineering or surveying services, including:

(1) The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(2) Supervisory, inspection, architectural or engineering activities.

The limits of insurance that apply to additional insureds under this provision is described in Section III – Limits Of Insurance. Such limits of insurance apply only in excess of the "self-insured retention".

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III LIMITS OF INSURANCE

### 1. The Most We Will Pay

Subject to item **1.a.** of the **Insuring Agreement,** the Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

### 2. The General Aggregate Limit

The General Aggregate Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**b.** Damages under Coverage **B**.

### 3. Products-Completed Operations Aggregate Limit

The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

### 4. Personal and Advertising Injury Limit

Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

### 5. Each Occurrence Limit

Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for damages under Coverage **A** because of all "bodily injury" and "property damage" arising out of any one "occurrence".

### 6. How Limits And Self-Insured Retention Apply to Additional Insureds

If you have agreed in a contract or agreement that another person or organization be added as an insured on your policy:

**a.** You are responsible for payment of any "self-insured retention" on behalf of such person or organization; and

**b.** The most we will pay on behalf of such insured or any other insured endorsed to this Coverage Part, is the lesser of:

(1) The limits of insurance specified in the contract or agreement; or

(2) The Limits of Insurance shown in the Declarations.

Any amount we pay shall be in excess of the "self-insured retention" and is part of and not in addition to the Limits of Insurance shown in the Declarations and described in this Section.

The Limits of Insurance of this Coverage Part and the amount of the "self-insured retention" apply separately to each "policy period". If the "policy period" is extended after issuance for an additional period, such additional period will be deemed to be part of the "policy period" for purposes of determining the applicable Limits of Insurance and "self-insured retention".

## SECTION IV COMMERCIAL GENERAL LIABILITY CONDITIONS

### 1. Bankruptcy

Your bankruptcy or insolvency, or the bankruptcy of any other insured or of the insured's estate will not relieve:

**a.** Us of our obligations under this Coverage Part; or

**b.** You of your obligations to defend any claim or "suit" against you or any other insured.

### 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

**a. Notice of Occurrence Or Offense**

You or any insured must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.  Notice Of Claim Or Suit**

If a claim is made or "suit" is brought against any insured, you or any insured must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable if the claim or "suit" is likely to exceed the "self-insured retention".

You or any insured must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.  Assistance And Cooperation Of The Insured**

You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit" involving or likely to involve a sum in excess of the "self-insured retention";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit";

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance or the "self-insured retention" may also apply;

(5) Advise us of the name and address of defense counsel retained to represent the insured's interest with respect to the "self-insured retention".  Further, if the claim or "suit", in our opinion, involves or is reasonably likely to involve payment by us under this Coverage Part, we shall require you or the insured against whom the claim is made or "suit" is brought, to obtain our written consent regarding your selection of any defense counsel;

(6) Furnish us the following information:

(a) Quarterly loss runs identifying all open and paid claims and "claim expenses".  Such loss runs shall be furnished until all claims and "claim expenses" are paid;

(b) Complete information on all claims reserved for 50% or more of the amount of the "self-insured retention". This information must be furnished within 30 days from the date such reserve is established;

(c) Complete information on all claims (including multiple claims) arising out of an "occurrence" or offense which might require payment in excess of the "self-insured retention".    This information must be furnished within 30 days from the date such possibility first arises;

(d) Complete information on any claim arising out of an "occurrence" or offense involving a minor child, or any of the following injuries:

(i) Death,

(ii) Quadriplegia,

(iii) Paraplegia,

(iv) Brain Damage,

(v) Loss of Vision,

(vi) Loss of Limb, or

(vii) Hospitalization for more than 30 days.

This information must be furnished within 30 days from the date such claim is first made; and

(7) Maintain adequate claim records and supporting data which document reserves for payment of claims, dates and amounts of any settlements, including specific identification of "claim expenses" incurred and paid.

**d.  Acceptance Or Rejection of Settlement Within The "Self-Insured Retention"**

You, any insured as described in Section II – Who Is an Insured or any insured endorsed to this Coverage Part shall, as respects the "self-insured retention", exercise good faith in evaluating whether to accept or reject a settlement offer extended by a party making a claim. The failure to exercise such good faith by you, and any such insured will relieve us of any obligation to pay any sums in excess of the amount of the settlement that could have been accepted.

**e.   Obligations At The Insureds Own Cost**

No insureds will, except at the insured's own cost, make or agree to any settlement for a sum in excess of the "self-insured retention" without our consent.

If any insured makes a payment, assumes any obligation, or incurs any expense, other than for first aid, without our consent, such payment, obligation or expense will be at the insured's own cost.

**f.   Insureds Other Insurance**

If we cover a claim or "suit" under this Coverage Part that may also be covered by other insurance available to an insured, such insured must submit such claim or "suit" to the other insurer for defense and indemnity.

**g.   Knowledge Of An Occurrence, Offense, Claim Or Suit**

Paragraphs **a.** and **b.** apply to you or to any insured only when such "occurrence", offense, claim or "suit" is known to:

**(1)** You or any insured that is an individual;

**(2)** Any partner, if you or an insured is a partnership;

**(3)** Any manager, if you or an insured is a limited liability company;

**(4)** Any "executive officer" or insurance manager, if you or an insured is a corporation;

**(5)** Any trustee, if you or an insured is a trust; or

**(6)** Any elected or appointed official, if you or any insured is a political subdivision or public entity.

Paragraph **g.** applies separately to you and any insured..

**3.   Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.**   To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.**   To sue us under this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4.   Other Insurance**

This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis, except when purchased specifically to apply in excess of this insurance.

If this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for damages in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

**5.   Premium Audit**

**a.**   We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.**   Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the "policy period" is greater than the earned premium, we will return the excess to the first Named Insured.

**c.**   The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6.   Representations**

**a.   When You Accept This Policy**

By accepting this policy, you agree:

**(1)** The statements in the Declarations are accurate and complete;

**(2)** Those statements are based upon representations you made to us; and

**(3)** We have issued this policy in reliance upon your representations.

**b.   Unintentional Failure To Disclose Hazards**

If unintentionally you should fail to disclose all hazards relating to the conduct of your business that exist at the inception date of this Coverage Part, we shall not deny coverage under this Coverage Part because of such failure.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, your responsibility under the "self-insured retention" and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

**a. Transfer of Rights Of Recovery**

If the insured has rights to recover all or part of any payment, including Supplementary Payments, we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**b. How Recoveries Shall Be Applied**

Recoveries shall be applied to reimburse:

**(1)** First, any interest (including the Named Insured) that paid any amount in excess of our Limits of Insurance;

**(2)** Second, us, along with any other insurers having a quota share interest at the same level; and

**(3)** Third, such interests (including the Named Insured) of whom this insurance is excess.

However, a different apportionment may be made to effect settlement of a claim by agreement signed by all interests.

**c. Apportionment Among All Interests**

Reasonable expenses incurred in the exercise of rights of recovery shall be apportioned among all interests in the ratio of their respective losses for which recovery is sought.

**d. Waiver Of Rights Of Recovery (Waiver Of Subrogation)**

If the insured has waived any rights of recovery against any person or organization for all or part of any payment, including Supplementary Payments, we have made under this Coverage Part, we also waive that right, provided the insured waived their rights of recovery against such person or organization in a contract, agreement or permit that was executed prior to the injury or damage.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**10. Maintenance of Self-Insured Retention**

You shall do whatever is required, including provision of sufficient funds, to maintain the "self-insured retention" in full effect during the currency of this Coverage Part. If the "self-insured retention" becomes invalid, suspended, unenforceable or uncollectable for any reason, including bankruptcy or insolvency, we shall be liable only to the extent we would have been had such "self-insured retention" remained in full effect.

The first Named Insured shall give us written notice as soon as practicable of any change in the operating status of any "self-insured retention", or when the sum of all incurred losses and "claim expenses" equals or exceeds 70% of the "self-insured retention".

**11. Appeals**

**a.** For amounts within the "self-insured retention":

**(1)** If we or you with our consent, elect to appeal a judgment, then any resultant additional expenses, settlements or judgments to which this insurance applies shall reduce the amount of the "self-insured retention". We shall be liable for such additional expenses, settlements or judgments that are in excess of the "self-insured retention".

**(2)** If you or any insured, without our consent, elects to appeal a judgment, any resultant additional expenses, settlements or judgments shall not reduce the amount of the "self-insured retention". We shall not be liable for such resultant additional expenses, settlements or judgments, whether or not they are in excess of the "self-insured retention".

**b.** For amounts in excess of the "self-insured retention":

**(1)** If you or any insured elects to appeal, and such appeal is with our consent, then we shall be liable for any additional expenses, settlements or judgments to which this insurance applies.

(2) If you or any insured elect to appeal, and such appeal is without our consent, then we shall not be liable for any additional expenses, settlements or judgments.

(3) If you or any insured elect not to appeal a judgment, then we may, at our option, make such appeal at our cost and expense, and we shall be liable for any additional expenses, settlements or judgments to which this insurance applies.

We will in no event be obligated to post or obtain any appeal bond, but we will pay for the cost of such a bond obtained by the insured on appeals we consent to, and taxable costs, disbursements and interest incidental thereto.

## SECTION V – DEFINITIONS

1. "Advertisement" means the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services through:

   **a.** (1) Radio;

   (2) Television;

   (3) Billboard;

   (4) Magazine;

   (5) Newspaper; or

   **b.** Any other publication that is given widespread public distribution.

   However, "advertisement" does not include:

   **a.** The design, printed material, information or images contained in, on or upon the packaging or labeling of any goods or products; or

   **b.** An interactive conversation between or among persons through a computer network.

2. "Advertising idea" means any idea for an "advertisement".

3. "Aircraft" includes but is not limited to heavier-than-air flying vehicles, helicopters, gliders, missiles or spacecraft.

4. "Aircraft products" means "aircraft" and any other goods or products manufactured, sold, handled or distributed or services provided or recommended by the insured or by others trading under his or her name for use in the manufacture, repair, operation, maintenance or use of any "aircraft".

   "Aircraft products" includes:

   **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "aircraft products"; and

   **b.** The providing of or failure to provide warnings or instructions.

5. "Asbestos hazard" means an exposure or threat of exposure to the actual or alleged properties of asbestos and includes the mere presence of asbestos in any form.

6. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

7. "Bodily injury" means physical:

   **a.** Injury;

   **b.** Sickness; or

   **c.** Disease

   sustained by a person and, if arising out of the above, mental anguish or death at any time.

8. "Claim expenses" include only those expenses incurred in the investigation or defense of claims or "suits". The following are not "claim expenses":

   **a.** Claim fees paid to your or any other insured's claim servicing agency;

   **b.** Any expenses associated with appeals made by you or any other insured without our consent for judgments or settlements, whether greater or lesser than the amount of the "self-insured retention";

   **c.** Salaries of your "employees", any other insured's "employees" and our "employees", except the costs and expenses of our staff defense counsel and legal assistants; or

   **d.** Damages.

9. "Coverage territory" means:

   **a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

   **b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

   **c.** All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in a. above;

      (2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in the United States of

America (including its territories and possessions), Puerto Rico or Canada, in a "suit" on the merits according to the substantive law in such territory or in a settlement we agree to.

**10.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**11.** "Employment-Related Practices" means:

   **a.** Refusal to employ a person;

   **b.** Termination of a person's employment; or

   **c.** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at a person.

**12.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**13.** "Grounding" means:

   **a.** The withdrawal of one or more "aircraft" from flight operations; or

   **b.** The imposition of speed, passenger or load restrictions on such "aircraft" by reason of the existence of or alleged or suspected existence of any defect, fault or condition in such "aircraft" or any part thereof:

      **(1)** Sold, handled or distributed by the insured; or

      **(2)** Manufactured, assembled or processed by any other person or organization:

         **(a)** According to specifications, plans, suggestions, orders or drawings of the insured; or

         **(b)** With tools, machinery or other equipment furnished to such persons or organizations by the insured;

   Whether such "aircraft" so withdrawn or restricted are owned or operated by the same or different person or organizations.

**14.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   **b.** You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   **a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

   **b.** Your fulfilling the terms of the contract or agreement.

**15.** "Insured contract" means:

   **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire, lightning or explosion to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   **b.** A sidetrack agreement;

   **c.** Any easement or license agreement;

   **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   **e.** An elevator maintenance agreement;

   **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph **f.** does not include that part of any contract or agreement:

      **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

      **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

         **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

      **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for any injury or damage arising out of the

insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

16. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

17. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

18. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in **a., b., c. or d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in **a., b., c. or d.** above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

      (1) Equipment, of at least 1,000 pounds gross vehicle weight, designed primarily for:

         (a) Snow removal;

         (b) Road maintenance, but not construction or resurfacing; or

         (c) Street cleaning;

      (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

      (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

19. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

20. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral, written or electronic publication of material that violates a person's right of privacy;

   f. Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement"; or

   g. Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement".

21. "Policy period" means the period beginning with the inception date shown in the Declarations and ending with the earlier of:

Form EH 00 01 06 05

EXH 4–25

a. The date of cancellation of this Coverage Part; or

b. The expiration date shown in the Declarations.

22. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

23. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

24. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

As used in this definition, computerized or electronically stored data, programs or software are not tangible property. Electronic data means information, facts or programs:

a. Stored as or on;

b. Created or used on; or

c. Transmitted to or from;

computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

25. "Self- insured retention" refers to the amount(s) set forth in the Declarations as such, and is defined below:

a. As respects the All Coverages (including Products-Completed Operations) Aggregate Retention, "self-insured retention" means the amount you must pay as damages and "claim expenses" for all "personal and advertising injury" and all "occurrences" taking place during the "policy period";

b. Subject to a. above, as respects the Products-Completed Operations Aggregate Retention, "self-insured retention" means the amount you must pay as damages and "claim expenses" for all "occurrences" taking place during the "policy period" and arising out of the "products-completed operations hazard";

c. Subject to a. above, as respects the General Aggregate Retention, "self-insured retention" means the amount you must pay as damages and "claim expenses" for all "personal and advertising injury" and all "occurrences" arising out of other than the "products-completed operations hazard"; and

d. Subject to b. or c. above, whichever applies, as respects the Personal and Advertising Injury Retention, or the Each Occurrence Retention, "self-insured retention" means the amount you must pay as damages and "claim expenses" for "personal and advertising injury", or any one "occurrence", respectively, before we will pay anything.

You are responsible for payment of any sums in satisfaction of the "self-insured retention" regardless whether you or any other insured is found legally liable for damages.

Your obligation to pay the "self-insured retention" shall apply fully and separately to each "policy period" shown in the Declarations and shall not be reduced by:

**a.** The payment of any deductible amount, any participation of the insured or any amount retained by the insured under any other policy of insurance for any other applicable "policy period";

**b.** Any payment made on your behalf by another, including any payment from any other applicable insurance;

**c.** Any defense costs or damages to which this insurance does not apply; or

**d.** Any amount we pay pursuant to **1.b.** of the Insuring Agreement, unless you reimburse us.

However, if the "policy period" is extended after issuance for an additional period of less than 12 months, the additional period will be deemed part of the last preceding period for purposes of determining the applicable "self-insured retention".

**26.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**27.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**28.** "Volunteer worker" means a person who

**a.** Is not your "employee";

**b.** Donates his or her work;

**c.** Acts at the direction of and within the scope of duties determined by you; and

**d.** Is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**29.** "Your product":

**a.** Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**30.** "Your work":

**a.** Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2) The providing of or failure to provide warnings or instructions.

**POLICY NUMBER:** 72 ECS R95004



## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BROAD FORM NAMED INSURED - INCLUDING JOINT VENTURES AND PARTNERSHIPS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART (EXCESS)
COMMERCIAL GENERAL LIABILITY COVERAGE PART (EXCESS – BROAD FORM)

**Section II – Who Is An Insured** is amended as follows:

**A.** The following is added to Paragraph **2.**:

    **2.** Each of the following is also an insured:

        **e. Unnamed Subsidiaries**

        Any subsidiary, and subsidiary thereof, of yours which is a legally incorporated entity, joint venture or partnership of which you own a financial interest of 50% or more on the effective date of the Coverage Part will qualify as a Named Insured.

        However, no such subsidiary qualifies as a Named Insured under this provision if such subsidiary also qualifies as a Named Insured under another Commercial General Liability or similar policy, whether or not the insurance provided by this Coverage Part is broader than that provided by such other policy.

**B.** Paragraph **3.** is replaced by the following:

    **3. Newly Acquired or Formed Organization**

    Any organization you newly acquire or form, other than a limited liability company, and over which you maintain financial interest of 50% or more, will qualify as a Named Insured. However:

        **a.** Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the "policy period", whichever is earlier;

        **b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization;

        **c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization; and

        **d.** No organization qualifies as a Named Insured under this provision if such organization also qualifies as a Named Insured under another Commercial General Liability or similar policy, whether or not the insurance provided by this Coverage Part is broader than that provided by such other policy.

**C.** The last paragraph of Section **II – Who Is An Insured** is replaced by the following:

    No person or organization is an insured with respect to the conduct of any current or past:

    **a.** Limited liability company that is not shown as a Named Insured in the Declarations; or

    **b.** Joint venture or partnership that is not shown as a Named Insured in the Declarations or qualifies as a Named Insured under Paragraphs **A.** or **B.** of this endorsement.

**Form ET 20 15 09 10**

© 2010, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc., with its permission.)

**Page 1 of 1**

EXH 4–28

**POLICY NUMBER:** 72 ECS R95004



## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# INSTALLMENT PAYMENT PLAN

We and you agree that you will pay the premium in installments as shown below:

| Date | Premium | Date | Premium |
|------|---------|------|---------|
| 09/25/2010 | $20,066 | 03/25/2011 | $20,060 |
| 10/25/2010 | $20,060 | 04/25/2011 | $20,060 |
| 11/25/2010 | $20,060 | 05/25/2011 | $20,060 |
| 12/25/2010 | $20,060 | 06/25/2011 | $20,060 |
| 01/25/2011 | $20,060 | | |
| 02/25/2011 | $20,060 | | |

**Form HM 99 01 11 85**T Printed in U.S.A.

**POLICY NUMBER:** 72 ECS R95004



## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
# PREMIUM COMPUTATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**(1)** The Advance Premium set forth in Item **2.** of the Declarations is adjustable, and is only an estimated premium for the Audit Period set forth in Item **1.** of the Declarations.

The final earned premium for the Audit Period shall be determined as specified in paragraph **b.** of the **Premium Audit** Condition (Section IV).

The Audit Premium referred to in such paragraph **b.** shall be computed by applying the Rate of

$.2090 _____ per $1,000 _____ of the Premium Base identified in **(2)** below.  Such Rate is net of any taxes, licenses, or fees.

**(2)** The Premium Base shall be identified in **(A)** and **(B)** below:

**(A)** PREMIUM BASE:

[X]  Gross "Sales," excluding "aircraft products;"

EXCLUDED _____  "intercompany sales;" and

EXCLUDED _____  "foreign sales."

[ ]  "Payroll," as determined immediately below:
  [ ] Gross Unmodified "Payroll"
  [ ] "Workers Compensation Payroll"
  [ ] "Workers Compensation Payroll" excluding:
    (1) "Clerical Office Employees;"
    (2) "Salesmen, Collectors, Messengers;"
    (3) Drivers and their helpers if principal duties are to work on or in connection with "autos."
  [ ] Other: (Describe)

**(B)** SPECIFIC DELETIONS FROM PREMIUM BASE, IF ANY:

[ ]  Designated Products described in the following endorsements:

[ ]  Designated Operations described in the following endorsements:

[ ]  Other, described in the following endorsements:

**Form HS 99 06 06 05**                     (c) 2005, The Hartford                     **Page 1 of 2**

**(3)** As used in this endorsement, the following additional definitions apply:

"Aircraft" includes but is not limited to heavier-than-air flying vehicles, helicopters, gliders, missiles or spacecraft.

"Aircraft products" means "aircraft" and any other goods or products manufactured, sold, handled or distributed or services provided or recommended by the insured or by others trading under his or her name for use in the manufacture, repair, operation, maintenance or use of any "aircraft."

"Aircraft products" includes:

**a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "aircraft products;" and

**b.** The providing of or failure to provide warnings or instructions.

"Clerical Office Employees" means those employees who work in an area which is physically separated by walls, floors or partitions from all your other work areas and whose duties are strictly limited to keeping your books or records or conducting correspondence, including any other employees engaged in clerical work in the same area.

"Foreign Sales," unless otherwise specifically defined in an endorsement forming a part of this policy, are "sales" which directly emanate from the sale of "your product" sold for use or consumption outside the United States of America, its territories or possessions, or Canada.

"Intercompany sales," unless otherwise specifically defined in an endorsement forming a part of this policy, are "sales" between you and any other organization covered under this policy over which you maintain ownership or majority interest in.

"Payroll" means remuneration.  Remuneration means money or substitute for money.

"Sales" means the gross amount charged by the Named Insured, concessionaires of the Named Insured, or by others trading under the insured's name for:

**(a)** All goods or products sold or distributed;

**(b)** Operations performed; or

**(c)** Rentals

during the Audit Period set forth in Item **3.** of the Declarations;

The following items shall be deducted from "sales:"

**(a)** Sales or excise taxes which are collected and submitted to a governmental division;

**(b)** Credits for repossessed merchandise and products returned and allowance for damaged and spoiled goods;

**(c)** Finance charges for items sold on installments;

**(d)** Freight charges on sales if freight is charged as a separate item on customer's invoice; and

**(e)** Royalty income from patent rights or copyrights which are not product "sales."

"Salesmen, collectors, and messengers" means those employees engaged principally in any such duties away from the Named Insured's premises.

"Workers' Compensation Payroll" means "payroll" developed in accordance with the applicable Workers' Compensation manual.

**Form HS 99 06 06 05**

EXH 4–31

**POLICY NUMBER:** 72 ECS R95004



### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EARLIER NOTICE OF CANCELLATION OR NONRENEWAL PROVIDED BY US

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

**Number of Days' Notice**

Cancellation:     90

Nonrenewal:     90

A.  For any statutorily permitted reason other than nonpayment of premium, the number of days required for notice of cancellation or nonrenewal, as provided in:

    1.  The **CANCELLATION** paragraph A.2.b. of the **COMMON POLICY CONDITIONS**;

    2.  The **NONRENEWAL** paragraph G.1. of the **COMMON POLICY CONDITIONS**; or

    3.  An applicable state cancellation or nonrenewal endorsement

whichever may apply, is increased to the number of days shown in the Schedule above.

In no event, however, will notice of cancellation or nonrenewal be less than the minimum number of days required, if any, of the state shown as the first Named Insured's mailing address shown in the Declarations.

**Form HS 24 22 06 05**            (c) 2005, The Hartford            **Part 1 of 1**

**POLICY NUMBER:** 72 ECS R95004



### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYEE BENEFITS LIABILITY COVERAGE
# ENDORSEMENT - CLAIMS MADE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART (EXCESS)
COMMERCIAL GENERAL LIABILITY COVERAGE PART (EXCESS - BROAD FORM)

THIS IS A CLAIMS MADE ENDORSEMENT.   PLEASE READ ALL PROVISIONS AND CONTACT YOUR AGENT IF YOU HAVE ANY QUESTIONS.   THIS ENDORSEMENT APPLIES ONLY TO "EMPLOYEE BENEFITS INJURY" CAUSED BY AN "OFFENSE" COMMITTED BETWEEN THE RETROACTIVE DATE IN THE SCHEDULE OF THIS ENDORSEMENT AND THE END OF THE "POLICY PERIOD".  ADDITIONALLY, THIS ENDORSEMENT APPLIES ONLY TO CLAIMS MADE AGAINST THE INSURED AFTER THE INCEPTION DATE AND BEFORE THE END OF THE "POLICY PERIOD".   UPON TERMINATION OF THIS ENDORSEMENT, AN EXTENDED REPORTING PERIOD MAY BE AVAILABLE.

The "self-insured retention" applicable to the coverage provided by this endorsement is intended to be consistent with the application of "claim expenses" and damages in accordance with the "self-insured retention" in the Coverage Part to which this endorsement is attached. If the "self-insured retention" in the Coverage Part is reduced by damages and "claim expenses," then the "self-insured retention" applicable to this endorsement is likewise so reduced. If the "self-insured retention" in the Coverage Part is reduced by damages only, then the "self-insured retention" applicable to this endorsement is also likewise reduced

## SCHEDULE

**Coverage:**    Employee Benefits Injury Liability

**Premium:**    INCLUDED

**Retroactive Date:**   09/25/2005      (If no date is entered, the Retroactive Date is the Inception Date of the "policy period" shown in the Common Policy Declarations

| Limits of Insurance | Self-Insured Retentions |
|---|---|
| N/A            Each "Offense" Limit | N/A            Each "Offense" Retention |
| $1,000,000     Each "Claim" Limit | $250,000       Each "Claim" Retention |
| $2,000,000     Aggregate Limit | N/A            Aggregate Retention |
| ☐ Included in the General Aggregate Limit set forth in the Commercial General Liability Coverage Part Declarations; or <br> ☒ Applies separately to Employee Benefits Injury Liability. | ☐ Included in the General Aggregate Retention set forth in the Commercial General Liability Coverage Part Declarations; or <br> ☒ Applies separately to Employee Benefits Injury Liability. |

**Form EH 04 94 06 05**                                    **Page 1 of 5**

(c) 2005, The Hartford

EXH 4-33

**The following is added to Section I - Coverages:**

**1. Insuring Agreement.**

    **a.** In accordance with the **Insuring Agreement** as described in the Coverage Part (which may or may not be amended by endorsement), we will also pay on behalf of the insured all sums that the insured shall become legally obligated to pay as damages because of "employee benefits injury" to which this endorsement applies.

    **b.** Subparagraph **1.g.** of the Insuring Agreement is amended so that the coverage provided by this endorsement applies to "employee benefits injury" only if:

        **(1)** The "offense" was not committed before the Retroactive Date, if any, shown in the above Schedule or after the end of the "policy period" shown in the Common Policy Declarations;

        **(2)** The "employee benefits injury" is caused by an "offense" committed in the "coverage territory"; and

        **(3)** A "claim" for damages because of the "employee benefits injury" is first made against any insured, in accordance with paragraphs **c.** and **d.** below, during the "policy period" or any Extended Reporting Period we provide under the Extended Reporting Period section of this endorsement.

    **c.** A "claim" by a person or organization seeking damages will be deemed to have been made when notice of such "claim" is received and recorded by an insured or by us, whichever comes first.

    **d.** All "claims" for damages because of "employee benefits injury" to the same person or organization will be deemed to have been made at the time the first of those "claims" is made against the insured.

**2. Exclusions.**

The following additional exclusions apply:

    **a. Dishonest, Fraudulent, Criminal Or Malicious Act**

    Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

    **b. Bodily Injury, Property Damage, Or Personal And Advertising Injury**

    "Bodily injury", "property damage" or "personal and advertising injury".

    **c. Failure To Perform A Contract**

    Damages arising out of failure of performance of contract by any insurer.

    **d. Insufficiency Of Funds**

    Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

    **e. Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

    Any "claim" based upon:

        **(1)** Failure of any investment to perform;

        **(2)** Errors in providing information on past performance of investment vehicles; or

        **(3)** Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

    **f. Workers' Compensation And Similar Laws**

    Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

    **g. ERISA**

    Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

    **h. Available Benefits**

    Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

    **i. Taxes, Fines Or Penalties**

    Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

    **j. Employment-Related Practices**

    Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

EXH 4–34

3. **For the purposes of the coverage provided by this endorsement:**

   a. All references to Supplementary Payments - Coverages **A** and **B** are replaced by Supplementary Payments - Coverages **A, B and Employee Benefits Liability.**

   b. Paragraphs **2.b.** and **3.** of the **Supplementary Payments** provision do not apply.

4. **Limits of Insurance**

   For the purposes of this endorsement only, the following shall apply:

   a. Subject to item **1.a.** of the Insuring Agreement in this endorsement, the Limits of Insurance set forth in the above Schedule and the rules below fix the most we will pay regardless of the number of:

      (1) Insureds;

      (2) "Claims" made or "suits" brought; or

      (3) Persons or organizations making "claims" or bringing "suits".

   b. The Aggregate Limit set forth in the above Schedule is the most we will pay for all damages to which this endorsement applies.

   c. Subject to **b.** above:

      (1) The Each "Offense" Limit, if any, set forth in the above Schedule, is the most we will pay for all damages with respect to any one "offense"; or

      (2) The Each "Claim" Limit, if any, set forth in the above Schedule, is the most we will pay for all damages sustained by any one "employee" including any "employee's" dependent or beneficiary

      whichever of **(1)** or **(2)** above applies.

   The Limits of Insurance and the amount of the "self-insured retention" shown in the above Schedule apply separately to each "policy period". If the "policy period" is extended after issuance for an additional period, such additional period will be deemed to be part of the "policy period" for purposes of determining the applicable Limits of Insurance and "self-insured retention".

5. **Conditions**

   Solely as respects any coverage afforded b this endorsement, the **Representations**

Condition and **Other Insurance** Condition **(Section IV)** are amended as follows:

a. The Representations Condition is deleted in its entirety and replaced by the following:

   By accepting this endorsement, you agree:

   (1) The statements in the Declarations of the Coverage Part of which this endorsement forms a part are accurate and complete;

   (2) Those statements are based upon representations you made to us;

   (3) At the time you applied for this endorsement you had no knowledge of any "claim" or "suit;" or of any "offense" which might reasonably be expected to result in a "claim" or a "suit," except as you had reported to us in writing at the time you so applied;

   (4) We have issued this endorsement in reliance upon your representations; and

   (5) If you should unintentionally fail to disclose at the inception date of this Coverage Part of which this endorsement forms a part any conditions in your premises or operations that may result in a "claim" under this endorsement, but have not resulted in a "claim" as of the inception date of this Coverage Part, we shall not deny coverage under this endorsement because of such failure. However, this provision does not apply to failure to disclose at the inception of the Coverage Part any knowledge of any "claim" or "suit" or of any "offense" which might reasonably be expected to result in a "claim" or "suit."

b. The following is added to the **Other Insurance** Condition:

   This insurance is excess over any non claims made insurance if:

   (1) No Retroactive Date is set forth in the above Schedule; or

   (2) Such other insurance has a "policy period" which continues after the Retroactive Date set forth in the above Schedule.

## 6. Definitions

For the purposes of this endorsement only, the following additional definitions apply:

**a.** "Administration" means:

   (1) Giving counsel to your "employees" or their dependents and beneficiaries, with respect to interpreting the scope of your "employee benefits program" or their eligibility to participate in such programs; and

   (2) Handling records in connection with "employee benefits program".

**b.** "Claim" means a demand made by any one "employee" or an "employee's" dependent or beneficiary, for damages alleging "employee benefits injury", including the institution of a "suit" for such damages against the insured.

**c.** "Employee benefits injury" means injury that arises out of any negligent act, error or omission in the "administration" of your "employee benefits programs".

**d.** "Employee benefits program" means a formal program or programs of "employee" benefits maintained in connection with your business or operation, such as but not limited to:

   (1) Group life insurance, group accident or health insurance, profit sharing plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such insurance or plans; and

   (2) Unemployment insurance, social security benefits, workers' compensation and disability benefits.

**e.** "Offense" means, with respect to "employee benefits injury", an act, error or omission described in the "administration" of your "employee benefits program". All "employee benefits injury" arising out of the same or similar act, error or omission shall be considered as arising solely out of one "offense".

**f.** "Self-insured retention" refers to the amount(s) you must pay for:

   (1) Damages; or

   (2) Damages and "claim expenses"

in accordance with the definition of "self-insured retention" set forth in the Coverage Part, and as shown in the above Schedule.

"Self-insured retention" hereby includes "employee benefits injury" as provided by this endorsement.

The "Self-insured retention" amounts applicable to the coverage provided by this endorsement are defined as follows:

   (1) As respects the Aggregate Retention, "self-insured retention" means the amount you or any insured must pay as:

     (a) Damages, or

     (b) Damages "claim expenses"

   in accordance with the definition of "self-insured retention" set forth in the policy, for all "employee benefits injury"; in any one "policy period", and

   (2) Subject to (1) above,

     (a) The Each "Offense" Retention is the amount you must pay for any one "offense"; or

     (b) The Each "Claim" Retention is the amount you must pay for any one "claim"

before we will pay anything.

Your obligation to pay the "self-insured retention" shall apply fully and separately to each "policy period" and shall not be reduced by:

   (1) The payment of any deductible amount, any participation of the insured or any amount retained by the insured under any other policy of insurance or for any other applicable "policy period"; and

   (2) Any payment made on your behalf by another, including any payment from any other applicable insurance.

**g.** "Suit" means, with respect to "employee benefits injury", a civil proceeding in which damages because of "employee benefits injury" to which this endorsement applies are alleged.

"Suit" includes:

   (1) An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   (2) Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**7. Extended Reporting Periods.**

For purposes of the coverage provided by this endorsement only, we will provide one or more Extended Reporting Periods as described below:

**a. Basic Extended Reporting Period**

(1) Regardless of why this endorsement is canceled or non-renewed, we will automatically provide a Basic Extended Reporting Period starting at the end of the "policy period," and lasting for a period of sixty (60) days. The Basic Extended Reporting Period is provided at no charge.

(2) The Basic Extended Reporting Period does not apply to "claims" that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such "claims."

**b. Extended Reporting Period**

(1) If this endorsement is canceled or non-renewed for any reason other than non-payment of premium, we will offer, for an additional premium as set forth in paragraph (3) below, an Extended Reporting Period Option as set forth in paragraph (2) below.

(2) You may select an Extended Reporting Period Option starting at the end of the "policy period" and lasting for one (1) year.

(3) Premium for the Extended Reporting Period Option will be determined by taking into account the following:

(a) The exposures insured;

(b) Previous types and amounts of insurance;

(c) Limits of Insurance available under this endorsement for future payment of damages; and

(d) Other related factors.

(4) We will issue an Extended Reporting Period endorsement only if:

(a) You request it within sixty (60) days of the end of the "policy period;"

(b) You have paid all premiums due for this policy at the time you request an Extended Reporting Period endorsement; and

(c) You promptly pay when due the additional premium for the Extended Reporting Period endorsement.

**c.** During the Extended Reporting Period, coverage under this endorsement applies as excess over any valid and collectible insurance available under policies in force after such Extended Reporting Period starts.

**d. All Extended Reporting Periods**

The Basic Extended or Extended Reporting Periods:

(1) Do not extend the "policy period" or change the scope of coverage provided. They only apply to "claims" for "employee benefits injury" that occurs before the end of the "policy period" but not before the Retroactive Date, if any, shown in the above Schedule;

(2) Do not reinstate or increase the Limits of Insurance shown in the above Schedule. The Limits of Insurance for any Extended Reporting Period shall be a part of, and not in addition to, the Limits of Insurance shown in the above Schedule. This applies regardless of the number of involved insureds, or any other factors;

(3) Are not renewable; and

(4) Cannot, once in effect, be canceled. We need not return any part of the premium paid for any reason.

**Policy Number:** 72 ECS R95004          **Effective Date:** 09/25/2010

**Named Insured and Address:**   BIG 5 SPORTING GOODS CORPORATION
                                 2525 E. EL SEGUNDO BLVD
                                 EL SEGUNDO, CA 90245



# CONFIRMATION OF COVERAGE ELECTION - TERRORISM RISK INSURANCE ACT

We have previously notified you that in accordance with the federal Terrorism Risk Insurance Act, as amended (TRIA), we must make terrorism coverage available in the policies we offer.

Any coverage for terrorist acts certified under TRIA made available in our policies is partially reinsured by the United States Department of the Treasury under a formula established by the Act. Under this formula, the federal share equals 85% of that portion of such insured losses that exceeds the applicable insurer deductible. However, if aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a Program Year (January 1 through December 31) the Treasury will not make any payment for any portion of the amount of such losses that exceeds $100 billion.

If aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion and, in such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

At that time we advised you that the premium for such terrorism coverage would be
  $ 1,950
**Please be advised that this premium charge may be adjusted at audit if applicable.** As a result of our notification, you have made the following election:

**Accepted Terrorism Coverage:**   ☒

**Rejected Terrorism Coverage:**   ☐

If you accepted this coverage, but do not pay the additional premium, you agree that we have the right to attach an endorsement to your policy effective at the inception/renewal date of your policy, which will exclude certified acts of terrorism from coverage under your policy.

If you elect to purchase coverage for certified acts of terrorism, we reserve the right to exclude coverage for losses that are not eligible for federal reinsurance under the Act.

**Form GN 98 47 16 (ED. 01/08)**                                    **Page 1 of 2**

(c) 2008, The Hartford

EXH 4-38

**TERRORISM EXCLUSION ON YOUR BINDER AND/OR POLICY AND ITS RENEWALS**

If the "Rejected Terrorism Coverage" box above is checked, you have previously rejected such coverage by signing a written rejection statement and returning such document to us.

By doing so you have also authorized the attachment of a terrorism exclusion to your policy and/or binder. An exclusion of certified acts of terrorism will now form a part of your binder and/or your current policy and its subsequent renewals and is included with your policy or binder.

If upon renewal of your policy you wish to have terrorism coverage provided, please contact your agent, broker or representative **prior to the inception of your renewal policy** and coverage as required by the federal Terrorism Risk Insurance Act will be made available.  You will then be quoted a premium for terrorism coverage, and if you decide to purchase the coverage, the exclusion(s) will be removed from your renewal policy.

Questions regarding your election can be directed to your agent or broker.

**Form GN 98 47 16 (ED. 01/08)**                                                                                 **Page 2 of 2**

EXH 4-39



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
CONDOMINIUM AND COOPERATIVE DIRECTORS AND OFFICERS LIABILITY COVERAGE FORM
EDUCATORS LEGAL LIABILITY COVERAGE FORM
EMPLOYEE BENEFITS LIABILITY COVERAGE FORM
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
LIBRARY ERRORS AND OMISSIONS LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE PART
MANUFACTURERS' ERRORS AND OMISSIONS LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRINTER'S ERRORS AND OMISSIONS LIABILITY COVERAGE FORM
PRODUCT RECALL EXPENSE COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION

**A.** A "Certified act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism.   The criteria contained in the federal Terrorism Risk Insurance Act, as amended (TRIA), for a "certified act of terrorism" includes the following:

   **1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to TRIA; and

   **2.** The act resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and

   **3.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** If aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under TRIA, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion and, in such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**C.** The United States Department of the Treasury, will pay a share of terrorism losses incurred under the federal program.  The federal share equals 85% of that portion of such insured losses that exceeds the applicable insurer deductible.   However, if aggregate insured losses attributable to certified terrorist acts exceed $100 billion in a Program Year (January 1 through December 31) the Treasury will not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**D.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the War Exclusion.

**Form HC 23 70 01 08**                                                                                                     **Page 1 of 1**

(c) 2008, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc., with its permission.)

EXH 4–40

**POLICY NUMBER:**  72 ECS R95004



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADJUSTMENT OF TERRORISM CHARGES AT AUDIT

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    EMPLOYEE BENEFITS LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART

It is agreed that:

The premium set forth in your policy, on your declarations page or any separate endorsement for Certified Acts of Terrorism, is a preliminary premium based on your original premium and will be recomputed and adjusted by applying a charge of    1.000    %  to the premium computed at your final audit.  The addition of this terrorism charge will result in your final audited premium.

**Form HS 98 55 01 06**                                                                                    **Page 1 of 1**

(c) 2006, The Hartford

**Policy Number:** 72 ECS R95004

COMMERCIAL GENERAL LIABILITY
CG 20 26 07 04

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

### SCHEDULE

**Name Of Additional Insured Person(s) Or Organization(s)**

ANY PERSON OR ORGANIZATION YOU HAVE AGREED TO ADD AS AN ADDITIONAL INSURED ON YOUR POLICY IN A WRITTEN CONTRACT OR AGREEMENT.

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**A.** In the performance of your ongoing operations; or

**B.** In connection with your premises owned by or rented to you.

CG 20 26 07 04                    (c) ISO Properties, Inc., 2004                    **Page 1 of 1**

EXH 4–42

COMMERCIAL GENERAL LIABILITY



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ABSOLUTE LEAD EXCLUSION

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    FARM LIABILITY COVERAGE

This insurance does not apply to any damages, judgments, settlements, loss, costs or expenses that:

a. May be awarded or incurred by reason of any claim or "suit" alleging actual or threatened injury or damage of any nature or kind to person or property which arises out of or would not have occurred in whole or in part but for the lead hazard; or

b. Arise out of any request, demand or order to:

    1. Identify, abate, test for, sample, monitor, clean up, remove, cover, contain, treat, detoxify, decontaminate, neutralize or mitigate or in any way respond to or assess the effects of the lead hazard; or

    2. As a result of such effects, repair, replace or improve any property.

c. Arise out of any claim or any "suit" for damages because of:

    1. Identification of, abatement of, testing for, sampling, monitoring, cleaning up, removing, covering, containing, treating, detoxifying, decontaminating, neutralizing or mitigating or in any way responding to or assessing the effects of the lead hazard; or

    2. As a result of such effects, repairing, replacing or improving any property.

As used in this exclusion, lead hazard means an exposure or threat of exposure to the actual or alleged properties of lead and includes the mere presence or suspected presence of lead in any form or combination.

**Form HC 21 37 03 93**

© 1993, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - FUNGI, BACTERIA AND VIRUSES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
MANUFACTURERS' ERRORS AND OMISSIONS LIABILITY COVERAGE PART
EDUCATORS LEGAL LIABILITY COVERAGE FORM
CONDOMINIUM AND COOPERATIVE DIRECTORS AND OFFICERS LIABILITY COVERAGE FORM

This insurance does not apply to:

1. Injury or damage arising out of or related to the presence of, suspected presence of, or exposure to:

   a. Fungi, including but not limited to mold, mildew, and yeast;

   b. Bacteria;

   c. Viruses; or

   d. Dust, spores, odors, particulates or byproducts, including but not limited to mycotoxins and endotoxins, resulting from any of the organisms listed in a., b., or c. above;

   from any source whatsoever.

2. Any loss, cost or expense arising out of the testing for, monitoring of, cleaning up of, removal of, containment of, treatment of, detoxification of, neutralization of, remediation of, disposal of, or any other response to or assessment of, the effects of any of the items in 1.a., b., c. or d. above, from any source whatsoever.

However, this exclusion does not apply to "bodily injury" or "property damage" caused by the ingestion of food.

**Form HC 21 90 06 08**                                                          **Page 1 of 1**

© 2008, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc. with its permission.)

**POLICY NUMBER:**  72 ECS R95004



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PER LOCATION - AMENDMENT OF GENERAL AGGREGATE SUBJECT TO MAXIMUM ANNUAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART (EXCESS)
COMMERCIAL GENERAL LIABILITY COVERAGE PART (EXCESS - BROAD FORM)

## SCHEDULE

**LIMITS OF INSURANCE:**
The Limits of Insurance shown in the Declarations are amended by the following:

The Limits of Insurance, subject to all the terms of this policy that apply, are:

| | | |
|---|---|---|
| Each Occurrence Limit | $ | See Declarations Page |
| Personal and Advertising Injury Limit | $ | See Declarations Page |
| General Aggregate Limit | $ | 2,000,000 |
| Location General Aggregate Limit | $ | 2,000,000 |
| Maximum Annual Aggregate Limit | $ | 20,000,000 |
| Products-Completed Operations Aggregate Limit | $ | See Declarations Page |

In return for the payment of the premium when due and subject to all the terms of the Commercial General Liability Coverage Part not expressly modified herein, we agree with you as follows:

**A.** The **LIMITS OF INSURANCE (SECTION III)** is deleted in its entirety and replaced with the following:

1. **The Most We Will Pay**

    Subject to item **1.a** of the Insuring Agreement, the Limits of Insurance shown in the above Schedule and the rules below fix the most we will pay regardless of the number of:

    **a.** Insureds;

    **b.** Claims made or "suits" brought; or

    **c.** Persons or organizations making claims or bringing "suits".

2. **Maximum Annual Aggregate**

    The Maximum Annual Aggregate Limit is the most we will pay for the sum of:

    **a.** Damages under the General Aggregate Limit; and

    **b.** Damages under any one or more Location General Aggregate Limit(s), as described in paragraph **4.** below.

3. **General Aggregate Limit**

    Subject to **2.** above, the General Aggregate Limit is the most we will pay for the sum of:

    **a.** Damages under **Coverage B - -Personal and Advertising Injury Liability**; and

    **b.** Damages under **Coverage A - Bodily Injury and Property Damage Liability**, with the following exceptions:

**Form EH 25 35 08 09**

© 2009 The Hartford

**Page 1 of 3**

(1) "Bodily injury" or "property damage" included in the "products-completed operations hazard"; or

(2) "Bodily injury" or "property damage" attributed solely to ongoing operations at a single "location".

4.  **Location General Aggregate Limit**

Subject to **2.** above:

a.  A separate Location General Aggregate Limit applies to each single "location", in lieu of and not in addition to, the General Aggregate.   Such Location General Aggregate is the most we will pay for all damages under **Coverage A - Bodily Injury and Property Damage Liability**, with the following exceptions:

(1) "Bodily injury" or "property damage" included in the "products-completed operations hazard"; or

(2) "Bodily injury" or "property damage" which cannot be attributed solely to the ongoing operations at a single "location".   Such damages will erode the General Aggregate Limit as provided in paragraph **3.** above.

b.  The Location General Aggregate Limit:

(1) Applies only to "occurrences" attributed solely to ongoing operations at a single "location"; and

(2) Does not include damages for **Coverage B - Personal and Advertising Injury Liability**, no matter where or in how many "locations" the offense or offenses may be committed.   Such damages will erode the General Aggregate Limit as provided in paragraph **3.** above.

c.  Any payments made under this paragraph **4.**, for damages for "bodily injury" or "property damage" shall reduce the Maximum Annual Aggregate Limit and the Location General Aggregate for that "location".   Such payments shall not reduce the General Aggregate Limit or the Products-Completed Operations Aggregate Limit nor shall they reduce any other Location General Aggregate Limit.

5.  **Products-Complete Operations Aggregate Limit**

The Products-Completed Operations Aggregate Limit is the most we will pay for damages under **Coverage A - Bodily Injury and Property Damage Liability** because of "bodily injury" and "property damage" included in the "products-completed operations hazard."

6.  **Personal And Advertising Injury Limit**

Subject to **3.** above, the Personal and Advertising Injury Limit is the most we will pay under **Coverage B - Personal and Advertising Injury Liability** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

7.  **Each Occurrence Limit**

Subject to **3.**, **4.**, or **5.** above, whichever applies, the Each Occurrence Limit is the most we will pay for damages under **Coverage A - Bodily Injury and Property Damage Liability** because of "bodily injury" or "property damage" arising out of any one "occurrence".

8.  **How Limits And Self-Insured Retention Apply To Additional Insureds**

If you have agreed in a contract or agreement that another person or organization be added as an insured on your policy:

a.  You are responsible for payment of any "self-insured retention" on behalf of such person or organization; and

b.  The most we will pay on behalf of such insured or any other insured endorsed to this Coverage Part, is the lesser of:

(1) The limits of insurance specified in the contract or agreement; or

(2) The Limits of Insurance shown in the Declarations.

Any amount we pay shall be in excess of the "self-insured retention" and is part of and not in addition to the Limits of Insurance shown in the Declarations and described in this Section.

9.  **If More Than One Limit Of Insurance Applies**

If more than one limit of insurance under this Coverage Part and any endorsements attached thereto applies to any claim or "suit", the most we will pay under this Coverage Part and such endorsements is the single highest limit of liability of all coverages applicable to such claim or "suit".

The Limits of Insurance of this Coverage Part and the amount of the "self-insured retention" apply separately to each "policy period". If the "policy period" is extended after issuance for an additional

period, such additional period will be deemed to be part of the "policy period" for purposes of determining the applicable Limits of Insurance and "self-insured retention".

B. For the purposes of this endorsement, the Definitions Section is amended by the addition of the following definition:

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right of way of a railroad.

EXH 4–47

POLICY PERIOD 72 ECS R95004



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF CONTRACTUAL LIABILITY EXCLUSION FOR PERSONAL AND ADVERTISING INJURY LIMITED TO FALSE ARREST, DETENTION OR IMPRISONMENT FOR DESIGNATED CONTRACTS OR AGREEMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART (EXCESS)

### SCHEDULE

Designated Contract Or Agreement:

ALL CONTRACTS FOR SECURITY SERVICES

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** With respect to the contract or agreement designated in the Schedule above, Subparagraph **e.** of Paragraph **2. Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**e.** Contractual Liability

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement.

This exclusion does not apply to:

**(1)** Liability for damages that the insured would have in the absence of the contract or agreement; or

**(2)** Liability for "personal and advertising injury" if:

**(a)** The liability pertains to your business and is assumed in the designated contract or agreement shown in the Schedule in which you assume the tort liability of another. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

**(b)** The "personal and advertising injury" occurs subsequent to the execution of the designated contract or agreement shown in the Schedule; and

**(c)** The "personal and advertising injury" arises out of the offenses of false arrest, detention or imprisonment. Solely for the purposes of liability so assumed in such designated contract or agreement, reasonable attorney fees and necessary litigation expenses incurred by or for a

**Form EH 22 00 06 05**

Page 1 of 2

(c) 2005, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc. with its permission.)

party other than an insured are deemed to be damages because of "personal injury" described in Paragraph **A.2.e.(2)(c)** above, provided:

**(i)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same designated contract or agreement; and

**(ii)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

Form EH 22 00 06 05

EXH 4–49

**POLICY NUMBER:** 72 ECS R95004



## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT OF PROVISIONS - OUR PAYMENT OF CLAIM EXPENSES WHEN SELF-INSURED RETENTION IS EXHAUSTED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILTY COVERAGE PART (EXCESS)
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART (EXCESS)

**A.** Paragraphs **1.a.** and **2.a** of **Supplementary Payments** are deleted and replaced by the following:

  **1. You will pay:**

    **a.** With respect to any claim or "suit" against you or any other insured that you have a duty to defend, all "claim expenses" you incur, within the amount of the "self-insured retention". If we elect to assume control of the defense, you will continue to pay such expenses, or reimburse us for such expenses within the amount of the "self-insured retention", at our sole discretion and direction. If we pay such expenses, you must reimburse us for all such expenses within seven business days of the date you receive notification that such payment has been made.

  **2. We will pay:**

    **a.** With respect to any claim you investigate or settle, or any "suit" against you or any insured you have a duty to defend, all "claim expenses" in excess of the "self-insured retention".

    We will pay all "claim expenses" we incur if we have elected to associate with the defense counsel assigned by or on behalf of you or any other insured, whether within or in excess of the applicable "self-insured retention".

**B.** The following applies with respect to coverage provided under:

**COMMERCIAL GENERAL LIABILTY COVERAGE PART (EXCESS )**

  **1.** Paragraph **1b.** of the **Insuring Agreement, Section I - Coverage A- Bodily Injury And Property Damage Liability** and paragraph **1.b.** of the **Insuring Agreement, Section I - Coverage B Personal And Advertising Injury Liability** is deleted and replaced by the following:

    **b.** You are responsible for payment of expenses for any defense counsel selected by or on behalf of you or any insured, including "claim expenses", until the "self-insured retention" has been exhausted solely by your payment of "claim expenses" and that portion of judgments or settlements to which this insurance would have applied in the absence of the "self-insured retention."

    If we make a payment relating to the defense counsel or defense of any claim against you or any insured within the "self-insured retention", it will be on your behalf, and you must reimburse us within seven business days of the date you receive notice that such payments have been made.

**Form EH 99 53 06 05**

**Page 1 of 2**

(c) 2005, The Hartford

"Claim expenses" and other defense expenses incurred subsequent to the exhaustion of the "self-insured retention" are payable by us, as provided in Supplementary Payments, as modified in **A.** above.

**2.** Paragraph **1.d.(3)(b)** of the **Insuring Agreement, Section I - Coverage A- Bodily Injury And Property Damage Liability** and paragraph **1.b.** of the **Insuring Agreement, Section I - Coverage B Personal And Advertising Injury Liability** is deleted and replaced by the following:

**b.** You shall continue to pay, or reimburse us for, any "claim expenses" pursuant to the defense of you or any insured until the "self-insured retention is exhausted.

During the course of controlling the defense we shall have the right but not the duty to settle the claim or "suit" by paying all or part of the "self-insured retention" or Limits of Insurance. Such payment is on your behalf, and you are responsible for reimbursing us for payments of damages and "claim expenses" within the "self-insured retention" we have made within seven business days of the date you receive notice that such payments have been made.

**C.** The following applies with respect to coverage provided under:

**PRODUCTS/COMPLETED          OPERATIONS LIABILTY COVERAGE PART (EXCESS )**

**1.** Paragraph **1b.** of the **Insuring Agreement, Section I - Coverages - Bodily Injury And Property Damage Liability** is deleted and replaced by the following:

**b.** You are responsible for payment of expenses for any defense counsel selected by or on behalf of you or any insured, including "claim expenses", until the "self-insured retention" has been exhausted solely by your payment of "claim expenses" and that portion of judgments or settlements to which this insurance would have applied in the absence of the "self-insured retention".

If we make a payment relating to the defense counsel or defense of any claim against you or any insured within the "self-insured retention", it will be on your behalf, and you must reimburse us within seven business days of the date you receive notice that such payments have been made.

"Claim expenses" and other defense expenses incurred subsequent to the exhaustion of the "self-insured retention" are payable by us, as provided in Supplementary Payments, as modified in **A.** above.

**2.** Paragraph **1.d.(3)(b)** of the **Insuring Agreement, Section I - Coverages Bodily Injury And Property Damage Liability** is deleted and replaced by the following:

**b.** You shall continue to pay, or reimburse us for, any "claim expenses" pursuant to the defense of you or any insured until the "self-insured retention is exhausted.

During the course of controlling the defense we shall have the right but not the duty to settle the claim or "suit" by paying all or part of the "self-insured retention" or Limits of Insurance. Such payment is on your behalf, and you are responsible for reimbursing us for payments of damages and "claim expenses" within the "self-insured retention" we have made within seven business days of the date you receive notice that such payments have been made.

Form EH 99 53 06 05

EXH 4–51

**POLICY NUMBER:**  72 ECS R95004



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ABSOLUTE POLLUTION EXCLUSION - EXCEPTION FOR BUILDING HEATING, COOLING AND DEHUMIDIFYING EQUIPMENT

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART (EXCESS)
> COMMERCIAL GENERAL LIABILITY COVERAGE PART (EXCESS – BROAD FORM)

**SCHEDULE**

**Designated Locations:**
ALL LOCATIONS COVERED UNDER THIS POLICY.

With respect to any location shown in the Schedule of this endorsement, subparagraph **(1) (a)** of Exclusion **f.** under Paragraph **2. Exclusions** of **Section I – Coverage A-Bodily Injury And Property Damage Liability** does not apply to "bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use by the building's occupants or their guests.

**Form EH 04 05 04 08**                                                              Page 1 of 1

© 2008, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc., with its permission.)

EXH 4–52

**POLICY NUMBER:** 72  ECS  R95004



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BATCH CLAUSE

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART (EXCESS)

**A.** It is agreed that all covered claims or "suits" for "bodily injury" or "property damage" which arise out of the same hazard, defect or source of contamination relating to any single "batch" of "your product" shall be considered as arising out of one "occurrence".

All damages and subsequent claims or "suits" arising out of any "occurrence" noted above shall be allocated to the one policy period in which "bodily injury" or "property damage" first occurs, and only the available Limits of Insurance of that policy period will apply to the payment or settlement of all such claims or "suits".

**B.** For the purposes of this endorsement, the following definition is added to the **Definitions** Section:

One "batch" of "your product" shall be deemed to include all like products which are produced in a single production run and can be distinguished from other such products:

**1.** By a specific location, date or time of production; or

**2.** By a common lot number, batch number or other production identifier assigned to such products.

**Form ET 24 37 09 10**

© 2010, The Hartford

**Page 1 of 1**

EXH 4–53



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FELLOW EMPLOYEE SUITS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Paragraph **2.a. (1)** of **Section II – Who Is An Insured** is replaced by the following:

**(1)** "Bodily injury" or "personal and advertising injury" arising out of his or her providing or failing to provide professional health care services.

However, this exclusion does not apply to any nurse, emergency medical technician or paramedic employed by you to provide such services only if you are not in the business of providing professional health care services.

**B.** The following is added to paragraph **2.a** of **Section II – Who Is An Insured**

**(3)** "Personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or that "volunteer worker" as a consequence of Paragraph **(3)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(3)(a)** or **(b)** above.

**C.** Paragraph **4.a.** of **Section II – Who Is An Insured** is deleted.

**POLICY NUMBER:**  72 ECS R95004



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DAMAGE TO PREMISES RENTED TO YOU ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART (EXCESS)

> The "self-insured retention" applicable to the coverage provided by this endorsement is intended to be consistent with the application of "claim expenses" and damages in accordance with the "self-insured retention" in the Coverage Part to which this endorsement is attached. If the "self-insured retention" in the Coverage Part is reduced by damages and "claim expenses", then the "self-insured retention" applicable to this endorsement is likewise so reduced. If the "self-insured retention" in the Coverage Part is reduced by damages only, then the "self-insured retention" applicable to this endorsement is also likewise reduced.

In return for payment of the premium when due and subject to all the terms of the Coverage Part not expressly modified herein we agree with you as follows:

## SCHEDULE

| Description Of Property | Self-Insured Retention | Limit of Insurance | | Rate (Per $100 of Premium) | Premium |
|---|---|---|---|---|---|
| PREMISES RENTED OR LEASED TO THE NAMED INSURED | See Declarations | $1,000,000 | each "occurrence" | | INCLUDED |

**A. DAMAGE TO PREMISES RENTED TO YOU**

Exclusions **c., d., e., h.,** and **j.** through **n.** of **SECTION I - COVERAGE A** do not apply to "property damage" caused by fire, lightning or explosion to structures that are described in the Schedule of this endorsement while rented to you or temporarily occupied by you with the permission of the owner.

**B. LIMITS OF INSURANCE**

The Limit of Insurance stated in the Schedule above applies separately to the insurance afforded by reason of the exclusions made inapplicable by this endorsement and is in lieu of and not in addition to any other limits stated in this Coverage Part.

**Form EH 04 52 06 05**

**Page 1 of 2**

(c) 2005, The Hartford

EXH 4-55

**III. SECTION III LIMITS OF INSURANCE** is amended to include the following:

Subject to the Each Occurrence Limit shown in the Declarations page of the Coverage Part to which this endorsement is attached, the Limit of Insurance shown in the Schedule above for Damage To Premises Rented To You is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire, lightning or explosion.  Such Limit applies to all damage proximately caused by the same event, whether such damage results from fire, lightning or explosion or any combination of the three.

However, if the amount of the "self-insured retention" set forth in the Declarations is greater than the Limit of Insurance shown in the above schedule, this insurance does not apply.

**IV. "SELF-INSURED RETENTION"**

The "self-insured retention" shown above and stated on the Declarations page does not apply separately to the insurance afforded by reason of the exclusions made inapplicable by this endorsement

As used in this endorsement "self-insured retention" refers to the amount(s) you must pay for:

**a.** Damages; or

**b.** Damages and "claim expenses"

in accordance with the definition of "self-insured retention" set forth in the Coverage part.

Form EH 04 52 06 05

EXH 4−56

**POLICY NUMBER:** 72 ECS R95004



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ABSOLUTE POLLUTION EXCLUSION - EXCEPTION FOR HOSTILE FIRE

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART (EXCESS)
> COMMERCIAL GENERAL LIABILITY COVERAGE PART (EXCESS - BROAD FORM)

**SCHEDULE**

**Designated Locations:**

ALL LOCATIONS COVERED UNDER THIS POLICY.

With respect to any location shown in the Schedule of this endorsement, subparagraph **(1)(a)** of Exclusion **f.** under Paragraph **2. Exclusions** of **Section I – Coverage A-Bodily Injury And Property Damage Liability** does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".  As used in this endorsement, a "hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**Form EH 04 04 04 08**                                                                                                    **Page 1 of 1**

© 2008, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc.)

**COMMERCIAL GENERAL LIABILITY**

**Policy Number:** 72 ECS R95004

**Effective Date:** 09/25/2010



### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# HOST LIQUOR LIABILITY COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

It is agreed that under SECTION I - COVERAGE A Exclusion c. does not apply:

(1) To liability imposed upon any insured as the result of giving or serving alcoholic beverages at functions incidental to your business;

(2) Provided you are not engaged in the business of:

   **a.** manufacturing,

   **b.** distilling,

   **c.** selling,

   **d.** serving, or

   **e.** furnishing alcoholic beverages, and

(3) There has been no intentional violation of any:

   **a.** statute,

   **b.** regulation, or

   **c.** ordinance

committed by or at the discretion of any insured.

**Form HC 04 08 04 89** Printed in U.S.A. (NS)

(c) 1989, The Hartford

EXH 4–58

**POLICY NUMBER:** 72 ECS R95004



## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# WORLDWIDE COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1. The definition of "coverage territory" in **Definitions - Section V** is replaced by the following:

   "Coverage territory" means:

   a. Anywhere in the world, except as provided in **2.** below, with respect to any claim or "suit" seeking damages on account of injury or damage caused by "personal and advertising injury", or an "occurrence"; provided that with respect to any claim or "suit" brought outside the United States of America (including its territories and possessions), Puerto Rico and Canada:

      (1) We shall have the right but not the duty to investigate, defend or settle any such claim or "suit" brought against any insured; and

      (2) If we elect not to investigate, defend or settle any such claim or "suit", the insured under our supervision shall arrange for such investigation and defense thereof as are reasonably necessary, and subject to our prior authorization, shall effect such settlement thereof as we and the insured deem expedient.  We will reimburse the insured for the reasonable cost of such investigation and defense, and within our limit of insurance, for the amount of any settlement so effected.

   b. International waters or airspace provided the injury or damage does not occur in the course of travel or transportation to, from or between any of the countries listed in **2.** below.

2. "Coverage territory" shall not include any of the following countries:

   a. Any country under embargo or sanctions with the United States, to the extent of the embargo or sanctions determined by The Office of Foreign Assets Control; or

   b. Any country shown in the Schedule below:

## SCHEDULE

Form HS 24 73 06 05

Page 1 of 1

(c) 2005, The Hartford

EXH 4-59

**POLICY NUMBER:** 72 ECS R95004



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF OTHER INSURANCE CONDITION SCHEDULED ADDITIONAL INSUREDS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART (EXCESS)
COMMERCIAL GENERAL LIABILITY COVERAGE PART (EXCESS - BROAD FORM)

**SCHEDULE**

ANY PERSON(S) OR ORGANIZATION(S) QUALIFYING AS AN ADDITIONAL INSURED UNDER THIS COVERAGE PART, PROVIDED THAT YOU HAVE AGREED TO PROVIDE ANY SUCH ADDITIONAL INSURED WITH PRIMARY AND NON-CONTRIBUTORY OTHER INSURANCE STATUS IN A WRITTEN CONTRACT OR WRITTEN AGREEMENT.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** With respect to the additional insured designated in the Schedule above, Paragraph **4. Other Insurance of Section IV- Conditions** is deleted and replaced by the following:

   **4. Other Insurance**

   If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

   **a.** Primary Insurance

   Subject to the "self-insured retention" this insurance is primary and we will not seek contribution from other insurance available to the person or organization shown in the Schedule of this Endorsement except when **b.** below applies:

   **b.** Excess Insurance

   This insurance is excess over any of the following other insurance, whether primary, excess, contingent or any other basis:

   **(1)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

   **(2)** That is Fire insurance for premises rented to you; or

   **(3)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to **Exclusion g.** of Section I. Coverage **A - Bodily Injury And Property Damage Liability.**

   When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**Form EH 20 16 06 05**                                                            **Page 1 of 2**

(c) 2005, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc. with its permission.)

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the limits of insurance shown in the Declarations of this Coverage Part.

**c.  Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limits of insurance to the total applicable limits of insurance of all insureds.

Form EH 20 16 06 05

EXH 4–61



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF PERSONAL AND ADVERTISING INJURY COVERAGE-DISCRIMINATION-PATRONS ONLY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART (EXCESS AND EXCESS - BROAD FORM)

It is agreed that:

1. Paragraph **2.t.** of **Exclusions - Coverage B Personal and Advertising Injury Liability** is deleted.

2. Paragraph **20.** of **Section V - Definitions** is amended as follows:

   The definition of "personal and advertising injury" is amended by adding the following offense:

   **h.** Discrimination by reason of age, sex, religion or national or racial origin, or disparate treatment committed by an insured, but not by or at the direction of you, any "executive officer," director, stockholder, partner or member of your organization.

   Such discrimination is only with respect to injury to the feelings or reputation of a natural person, other than your "employee" or prospective "employee", who is a patron or prospective patron of yours.

   However, this insurance for discrimination does not apply to:

   **(1)** Fines or penalties.

   **(2)** Class actions or to any individual claim for damages which is included within or is a part of any class action.

   **(3)** Any person other than your patron, or prospective patron.

**Form ET 50 17 07 06**                                                                 Page 1 of 1

(c)  2006, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc. with its permission.)

EXH 4–62

POLICY NUMBER: 72  ECS  R95004



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LAWYERS PROFESSIONAL LIABILITY COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART (EXCESS)
> COMMERCIAL GENERAL LIABILITY COVERAGE PART (EXCESS – BROAD FORM)

> **The "self-insured retention" applicable to the coverage provided by this endorsement is intended to be consistent with the application of "claim expenses" and "damages" in accordance with the "self-insured retention" in the Coverage Part to which this endorsement is attached. If the "self-insured retention" in the Coverage Part is reduced by "damages" and "claim expenses," then the "self-insured retention" applicable to this endorsement is likewise so reduced. If the "self-insured retention" in the Coverage Part is reduced by "damages only", then the "self-insured retention" applicable to this endorsement is also likewise reduced.**

## SCHEDULE

**Coverage:**      Lawyers Professional Liability Coverage

| Limits of Insurance | | Self-Insured Retentions | |
|---|---|---|---|
| $ 1,000,000 | Each Claim Limit | $250,000 | Each Claim Retention |
| $ 1,000,000 | Aggregate Limit | $ N/A | Aggregate Retention |

**I.** The following is added to Section **I – COVERAGES:**

**LAWYERS PROFESSIONAL LIABILITY COVERAGE – INSURING AGREEMENT**

1.  In accordance with the **Insuring Agreement** as described in the Coverage Part (which may or may not be amended by endorsement), and subject to the terms and conditions of the **Insuring Agreement** not expressly modified within this endorsement, we will pay those sums you become legally obligated to pay as "damages" because of injury to which this insurance applies.

2.  This insurance applies only to injury caused by the negligent act, error or omission of:

    **a.** The insured; or

    **b.** Any other person for whose negligent act, error or omission that the insured is legally responsible, in the conduct of the insured's profession as a lawyer employed by you.

3.  This insurance applies to injury caused by the negligent act, error or omission only if:

    **a.** The injury takes place in the "coverage territory"; and

    **b.** The negligent act, error or omission occurs during the "policy period".

**II. ADDITIONAL EXCLUSIONS**

For the purposes of the Lawyers Professional Liability coverage afforded by this endorsement, the following additional exclusions apply.

This insurance does not apply to:

**a.** "Bodily injury", "property damage" or "personal and advertising injury".

**b.** Any dishonest, fraudulent, criminal or malicious act, error or omission of the insured.

**c.** Any claim for which the insured is entitled to indemnity or defense under any policy or policies in force prior to the effective date of this insurance.

Form ET 04 25 09 10

Page 1 of 4

EXH 4–63

d. Any claim arising out of or based upon any actual or alleged intentional or unintentional violation of any provision of the Employee Retirement Income Security Act of 1974, Public Law 93-406 or any amendments thereto.

e. The conduct of any private business enterprise by the insured or in which the insured is a partner, or which is controlled, operated or managed by the insured, either individually or in a fiduciary capacity, including ownership, maintenance or use of any property in connection therewith and including the private practice of law.

f. Any claim made or brought arising out of or based upon any alleged violation of municipal, state or federal laws.

g. Any loss sustained by the insured as the executor or administrator of any trust or estate.

h. Liability assumed by the insured under any contract or agreement, other than contracts or agreements prepared for or at your request.

i. The preparation of income tax returns, other than those prepared for you.

j. Any claim made by you against an insured who is your salaried employee.

k. Any claim arising out of or attributable to an insured's activities in his or her capacity as a director, officer, partner or employee of any enterprise which is not an insured.

l. Any claim seeking an accounting or a recovery of profits or fees realized or allegedly realized by the insured, or based upon or attributable to the insured gaining any profit or advantage to which it is claimed he or she was not legally entitled.

m. Any claim arising out of, based upon or attributable to the insolvency or bankruptcy of the insured.

III. For the purposes of the Lawyers Professional Liability coverage afforded by this endorsement, **SUPPLEMENTARY PAYMENTS – COVERAGES A AND B** is replaced by the following:

**SUPPLEMENTARY PAYMENTS – LAWYERS PROFESSIONAL LIABILITY COVERAGE**

1. **You will pay:**

   a. With respect to any claim or "suit" against you or any other insured that you have a duty to defend, all "claim expenses" you incur, within the amount of the "self-insured retention". If we elect to assume control of the defense, you will continue to pay such expenses, or reimburse us for such expenses within the amount of the "self-insured retention", at our sole discretion and direction. If we pay such expenses, you must reimburse us for all such expenses within seven business days of the date you receive notification that such payment has been made.

   b. Prejudgment interest awarded against you or any insured on that portion of the judgment or settlement that is within or equal to the amount of the "self-insured retention". Your payment will be in the ratio that your liability for the judgment rendered or settlement made bears to the whole amount of such judgment or settlement.

   c. Interest on that portion of a judgment or settlement that accrues after entry of the judgment and before you have paid, offered to pay, or deposited in court the part of the judgment that is within or equal to the amount of the "self-insured retention". Your payment will be in the ratio that your liability for the judgment rendered or settlement made bears to the whole amount of such judgment or settlement.

   Paragraphs **b.** and **c.** above will not reduce the amount of the applicable "self-insured retention".

2. **We will pay:**

   a. With respect to any claim you investigate or settle, or any "suit" against you or any insured you have a duty to defend, all "claim expenses" in excess of the "self-insured retention".

   We will pay all "claim expenses" we incur if we have elected to associate with the defense counsel assigned by or on behalf of you or any other insured, whether within or in excess of the applicable "self-insured retention".

   b. The following in the ratio that our liability for the judgment rendered or settlement made bears to the whole amount of such judgment or settlement:

      (1) Prejudgment interest awarded against you or any other insured on that portion of the judgment or settlement we pay that is in excess of the amount of the "self-insured retention".

EXH 4–64

(2) Interest on that portion of a judgment or settlement that accrues after entry of the judgment and before you have paid, offered to pay, or deposited in court the part of the judgment that is in excess of the amount of the "self-insured retention".

(3) The cost of appeal bonds or bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

(4) All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or 'suit', including actual loss of earnings up to $500 a day because of time off from work.

(5) All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

These payments are included within and will reduce the Limits Of Insurance of this endorsement.

## IV.  LIMITS OF INSURANCE

Solely for the purposes of the Lawyers Professional Liability coverage afforded by this endorsement, the following shall apply:

The Limits of Insurance stated in the Schedule of this endorsement apply separately to the insurance afforded hereunder and are in lieu of and not in addition to any other limits stated in the Coverage Part. However these limits are subject to the General Aggregate Limit stated in the Declarations of the Coverage Part.

### 1.  The Most We Will Pay

Subject to item **1.a.** of the **Insuring Agreement**, the Limits of Insurance shown in the Schedule and rules below fix the most we will pay for "damages" and Supplementary Payments regardless of the number of:

**a.**  Insureds;

**b.**  Claims made or "suits" brought; or

**c.**  Persons or organizations making claims or bringing "suits".

### 2.  Aggregate Limit

The Aggregate Limit is the most we will pay for all "damages" and Supplementary Payments.

### 3.  Each Claim Limit

Subject to the Aggregate Limit, the Each Claim Limit is the most we will pay for the sum of all "damages" and Supplementary Payments because of all injury or damage sustained by any one person or organization.

For the purpose of applying our Limits of Insurance, all "damages" claimed by one or more persons or organizations as the results of a series of related negligent acts, errors or omissions shall be considered as comprising one act, error or omission.

The Limits of Insurance of this endorsement and the amount of the "self-insured retention" apply separately to each "policy period". If the "policy period" is extended after issuance for an additional period, such additional period will be deemed to be part of the "policy period" for purposes of determining the applicable Limits of Insurance and "self-insured retention".

## V.  For the purposes of the Lawyers Professional Liability coverage afforded by this endorsement, the **Duties In The Event Of Occurrence, Offense, Claim Or Suit** condition (Section **IV – Commercial General Liability Conditions**), is replaced by the following:

### 2.  Duties In The Event Of Act, Error Or Omission, Claim Or Suit

**a.  Notice of Act, Error Or Omission**

You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the act, error or omission took place; and

(2) The names and addresses of any injured persons and witnesses.

**b.  Notice Of Claim Or Suit**

If a claim is made or "suit" is brought against any insured, you or any insured must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable if the claim or "suit" is likely to exceed the "self-insured retention".

You or any insured must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c. Assistance And Cooperation Of The Insured**

You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit" involving or likely to involve a sum in excess of the "self-insured retention";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit";

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance or the "self-insured retention" may also apply;

(5) Advise us of the name and address of defense counsel retained to represent the insured's interest with respect to the "self-insured retention". Further, if the claim or "suit", in our opinion, involves or is reasonably likely to involve payment by us under this endorsement, we shall require you or the insured against whom the claim is made or "suit" is brought, to obtain our written consent regarding your selection of any defense counsel;

(6) Furnish us the following information:

   (a) Quarterly loss runs identifying all open and paid claims and "claim expenses". Such loss runs shall be furnished until all claims and "claim expenses" are paid;

   (b) Complete information on all claims reserved for 50% or more of the amount of the "self-insured retention". This information must be furnished within 30 days from the date such reserve is established; and

(7) Maintain adequate claim records and supporting data which document reserves for payment of claims, dates and amounts of any settlements, including specific identification of "claim expenses" incurred and paid.

**VI.** Solely for the purposes of this endorsement, the following definitions are added to the **Definitions** Section:

**1.** "Damages" means damages sustained by any person or organization and includes a monetary judgment, award or settlement but does not include:

   **a.** Fines or penalties; or

   **b.** "Damages" for which insurance is prohibited by the law applicable to the construction of this policy.

**2.** "Self-insured retention" refers to the amount(s) you must pay for:

   **a.** "Damages"; or

   **b.** "Damages" and "claim expenses"

in accordance with the definition of "self-insured retention" set forth in the Coverage Part, and as shown in the above Schedule.

"Self-insured retention" hereby includes injury caused by negligent acts, errors or omissions as provided by this endorsement.

The "self-insured retention" amounts applicable to the coverage provided by this endorsement are defined as follows:

(1) As respects the Aggregate Retention, "self-insured retention" means the amount you or any insured must pay as:

   (a) Damages, or

   (b) Damages "claim expenses"

in accordance with the definition of "self-insured retention" set forth in the policy, for all injury in any one "policy period", and

(2) Subject to Paragraph (1) above the Each Claim Retention is the amount you must pay for any one "claim" before we will pay anything.

Your obligation to pay the "self-insured retention" shall apply fully and separately to each "policy period" and shall not be reduced by:

(1) The payment of any deductible amount, any participation of the insured or any amount retained by the insured under any other policy of insurance or for any other applicable "policy period"; and

(2) Any payment made on your behalf by another, including any payment from any other applicable insurance.

Form ET 04 25 09 10

EXH 4–66

# IMPORTANT NOTICE TO POLICYHOLDERS



## CLAIMS MADE COVERAGE

Dear Policyholder:

This notice is not your policy. It is a notice which describes some of the major features of your claims made coverage. Please read your policy carefully to determine rights, duties and what is and is not covered. Only the provisions of your policy determine the scope of your insurance protection.

**YOUR POLICY PROVIDES CERTAIN COVERAGES ON A CLAIMS MADE BASIS**

<u>Occurrence Vs Claims Made</u>

There is no difference in the kinds of damages covered on an occurrence basis or a claims made basis. Claims for damages may be assigned to different policy periods, however, depending on which coverage you have purchased.

Coverage on an occurrence policy is provided for injury or damage that occurs during the policy period, no matter when the claim is made.

Your claims made coverage provides for injury or damage **if the claim for damages is first made against any insured during the policy period.** A claim by a person or organization seeking damages will be considered as being first made when notice of such claim is received and recorded by any insured or by us, whichever comes first. This insurance does not apply to a covered injury which occurred before the Retroactive Date or after the end of the policy period.

**RETROACTIVE DATE**

According to the terms and conditions of the claims made coverage, each coverage may carry its own Retroactive Date. There is no coverage for damage that occurred before the Retroactive Date. If your coverage does not have a Retroactive Date, the covered injury or loss must occur during the policy period.

**EXTENDED REPORTING PERIODS**

Your policy includes a Basic Extended Reporting Period of 60 days. However, if a claim is made after the termination of your claims made policy or endorsement thereto, you may not have coverage for the claim unless you purchase an Extended Reporting Period.

Carefully review the provision entitled **EXTENDED REPORTING PERIODS**. These provisions have certain limitations including but not limited to the availability of and the length of coverage and the time during which you must purchase or accept any offered Extended Reporting Periods.

Your claims made coverage contains certain limitations, exclusions and conditions. Please read them carefully and consult your agent about any questions you might have.

**Form HS 99 46 06 05**

**Page 1 of 1**

© 2005, The Hartford

EXH 4-67



# IMPORTANT NOTICE TO POLICYHOLDERS WITH PREMISES OR OPERATIONS IN FLORIDA

## FLORIDA HURRICANE CATASTROPHE FUND EMERGENCY ASSESSMENT

The Florida Office of Insurance Regulation has levied an emergency assessment on direct written premiums for all property and casualty lines of business in Florida.

This emergency assessment is to fund obligations, costs and expenses of the Florida Hurricane Catastrophe Fund and the Florida Hurricane Catastrophe Fund Corporation.

This emergency assessment is 1%, and applies to all subject policies effective on or after January 1, 2007.

We are required by statute and order to collect this emergency assessment from policyholders, and remit it to the State.

This assessment for your policy appears as **FHCF EMER ASSESS CL**.

**Form G-3413-0**

© 2006, The Hartford

EXH 4–68



# IMPORTANT NOTICE TO POLICYHOLDERS WITH PREMISES OR OPERATIONS IN FLORIDA

## Florida Insurance Guaranty Association

Companies writing property and casualty insurance business in Florida are required to participate in the Florida Insurance Guaranty Association (FIGA). The Florida Insurance Guaranty Association administers assessments that are necessary for the payment of covered claims. Each insurance company is assessed its fair share.

Florida allows companies to surcharge policies to recover these assessments.

Your policy includes the following surcharge:

FIGA REGULAR

Your policy may also include the following surcharge:

FIGA EMERGENCY

The surcharge(s) for your policy will appear as FL FIGA REG **YEAR** or FL FIGA EMG **YEAR**. (The **YEAR** as displayed on your policy will change based on the year of the assessment.)

Failure to pay the FL FIGA REG and FL FIGA EMG Surcharges by the policyholder shall be treated as non-payment of premium and will be sufficient cause to cancel the policy.

IF YOU HAVE ANY QUESTIONS ABOUT THE FL FIGA SURCHARGES, PLEASE CONTACT YOUR HARTFORD AGENT.

Form G-3419-1

© 2007, The Hartford

COMMERCIAL GENERAL LIABILITY
CG 32 34 01 05

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> ELECTRONIC DATA LIABILITY COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCT WITHDRAWAL COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> UNDERGROUND STORAGE TANK POLICY

The term "spouse" is replaced by the following:

Spouse or registered domestic partner under California law.

© ISO Properties, Inc., 2004                        **Page 1 of 1**

EXH 4–70

IL 02 70 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs **2.** and **3.** of the **Cancellation** Common Policy Condition are replaced by the following:

**2.  All Policies In Effect For 60 Days Or Less:**

If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured at the mailing address shown in the policy and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

**a.** 10 days before the effective date of cancellation if we cancel for:

**(1)** Nonpayment of premium; or

**(2)** Discovery of fraud by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.  All Policies In Effect For More Than 60 Days**

**a.** If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

**(1)** Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

**(2)** Discovery of fraud or material misrepresentation by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**(3)** A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

IL 02 70 09 08

© ISO Properties, Inc., 2007

Page 1 of 4

EXH 4–71

(4) Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

(5) Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

(6) A determination by the Commissioner of Insurance that the:

    (a) Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

    (b) Continuation of the policy coverage would:

        (i) Place us in violation of California law or the laws of the state where we are domiciled; or

        (ii) Threaten our solvency.

(7) A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

**b.** We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

(1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium or discovery of fraud; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph **3. a.**

**B.** The following provision is added to the **Cancellation** Common Policy Condition:

**7. Residential Property**

This provision applies to coverage on real property which is used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household personal property in a residential unit, if such coverage is written under one of the following:

Commercial Property Coverage Part

Farm Coverage Part - Farm Property - Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

**a.** If such coverage has been in effect for 60 days or less, and is not a renewal of coverage we previously issued, we may cancel this coverage for any reason, except as provided in **b.** and **c.** below.

**b.** We may not cancel this policy solely because the first Named Insured has:

(1) Accepted an offer of earthquake coverage; or

(2) Cancelled or did not renew a policy issued by the California Earthquake Authority (CEA) that included an earthquake policy premium surcharge.

However, we shall cancel this policy if the first Named Insured has accepted a new or renewal policy issued by the CEA that includes an earthquake policy premium surcharge but fails to pay the earthquake policy premium surcharge authorized by the CEA.

**c.** We may not cancel such coverage solely because corrosive soil conditions exist on the premises. This restriction **(c.)** applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

(1) Capital Assets Program Coverage Form (Output Policy);

(2) Commercial Property Coverage Part - Causes Of Loss - Special Form; or

(3) Farm Coverage Part - Causes of Loss Form - Farm Property, Paragraph **D.** Covered Causes of Loss - Special.

© ISO Properties, Inc., 2007

IL 02 70 09 08

EXH 4–72

**C.** The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

1. Subject to the provisions of Paragraphs **C.2.** and **C.3.** below, if we elect not to renew this policy, we will mail or deliver written notice stating the reason for nonrenewal to the first Named Insured shown in the Declarations and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

   We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

2. **Residential Property**

   This provision applies to coverage on real property used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household property contained in a residential unit, if such coverage is written under one of the following:

   Capital Assets Program (Output Policy) Coverage Part

   Commercial Property Coverage Part

   Farm Coverage Part - Farm Property - Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form.

   **a.** We may elect not to renew such coverage for any reason, except as provided in **b.**, **c.** and **d.** below:

   **b.** We will not refuse to renew such coverage solely because the first Named Insured has accepted an offer of earthquake coverage.

   However, the following applies only to insurers who are associate participating insurers as established by Cal. Ins. Code Section 10089.16. We may elect not to renew such coverage after the first Named Insured has accepted an offer of earthquake coverage, if one or more of the following reasons applies:

   **(1)** The nonrenewal is based on sound underwriting principles that relate to the coverages provided by this policy and that are consistent with the approved rating plan and related documents filed with the Department of Insurance as required by existing law;

   **(2)** The Commissioner of Insurance finds that the exposure to potential losses will threaten our solvency or place us in a hazardous condition. A hazardous condition includes, but is not limited to, a condition in which we make claims payments for losses resulting from an earthquake that occurred within the preceding two years and that required a reduction in policyholder surplus of at least 25% for payment of those claims; or

   **(3)** We have:

   **(a)** Lost or experienced a substantial reduction in the availability or scope of reinsurance coverage; or

   **(b)** Experienced a substantial increase in the premium charged for reinsurance coverage of our residential property insurance policies; and

   the Commissioner has approved a plan for the nonrenewals that is fair and equitable, and that is responsive to the changes in our reinsurance position.

   **c.** We will not refuse to renew such coverage solely because the first Named Insured has cancelled or did not renew a policy, issued by the California Earthquake Authority that included an earthquake policy premium surcharge.

   **d.** We will not refuse to renew such coverage solely because corrosive soil conditions exist on the premises. This restriction (**d.**) applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

   **(1)** Capital Assets Program Coverage Form (Output Policy);

   **(2)** Commercial Property Coverage Part - Causes Of Loss - Special Form; or

   **(3)** Farm Coverage Part - Causes Of Loss Form - Farm Property, Paragraph **D.** Covered Causes Of Loss - Special.

3. We are not required to send notice of nonrenewal in the following situations:

   **a.** If the transfer or renewal of a policy, without any changes in terms, conditions, or rates, is between us and a member of our insurance group.

© ISO Properties, Inc., 2007

b. If the policy has been extended for 90 days or less, provided that notice has been given in accordance with Paragraph **C.1.**

c. If you have obtained replacement coverage, or if the first Named Insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

d. If the policy is for a period of no more than 60 days and you are notified at the time of issuance that it will not be renewed.

e. If the first Named Insured requests a change in the terms or conditions of risks covered by the policy within 60 days of the end of the policy period.

f. If we have made a written offer to the first Named Insured, in accordance with the timeframes shown in Paragraph **C.1.**, to renew the policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

© ISO Properties, Inc., 2007

IL 02 70 09 08

EXH 4–74



# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**IL 00 17 11 98**                   Copyright, Insurance Services Office, Inc., 1998                   **Page 1 of 2**

E. **Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

F. **Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Our President and Secretary have signed this policy. Where required by law, the Declarations page has also been countersigned by our duly authorized representative.

Donald C. Hunt, Secretary

Juan Andrade, President

**Page 2 of 2**

**IL 00 17 11 98**

EXH 4–76

**POLICY NUMBER:** 72 ECS R95004



## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# AMENDMENT - PREMIUMS AND PREMIUM AUDIT

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The following is added to the **Premiums** Common Policy Condition:

The Minimum Retained Premium stated in the Declarations shall be considered as fully earned at the inception of the policy.

In the event of cancellation by the first Named Insured, we shall be entitled to retain any Minimum Retained Premium stated in the applicable Coverage Part Declarations.

**B.** The following is added to the **Premium Audit** Condition:

If the Advance Premium set forth in the applicable Coverage Part Declarations is adjustable, such Advance Premium is an estimated premium for the Audit Period set forth in the Declarations.  At the end of such Audit Period, we will compute any applicable Audit Premium.

Then:

**(1)** Audit Premium which is greater than the paid Advance Premium is due and payable by the first Named Insured upon notice; or

**(2)** Paid Advance Premium which is greater than Audit Premium will be refunded to the first Named Insured," subject to any Minimum Retained Audit Premium or Minimum Retained Premium set forth in the Declarations,

whichever of **(1)** or **(2)** applies.

(c) 2005, The Hartford

EXH 4—77

**Policy Number:** 72 ECS R95004

**Effective Date:** 09/25/2010

IL 00 21 07 02

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

(c) ISO Properties, Inc., 2001

EXH 4–78

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

(c) ISO Properties, Inc., 2001

IL 00 21 07 02

EXH 4–79



THE
HARTFORD

# U.S. DEPARTMENT OF THE TREASURY, OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy.   You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by the United States. **Please read this Notice carefully.**

The Office of Foreign Assets Control ("OFAC") of the U.S. Department of the Treasury administers and enforces economic and trade sanctions based on U.S. foreign policy and national security goals against targeted foreign countries and regimes, terrorists, international narcotics traffickers, those engaged in activities related to the proliferation of weapons of mass destruction, and other threats to the national security, foreign policy or economy of the United States.  OFAC acts under Presidential national emergency powers, as well as authority granted by specific legislation, to impose controls on transactions and freeze assets under U.S. jurisdiction.  OFAC publishes a list of individuals and companies owned or controlled by, or acting for or on behalf of, targeted countries.  It also lists individuals, groups, and entities, such as terrorists and narcotics traffickers designated under programs that are not country-specific.   Collectively, such individuals and companies are called "Specially Designated Nationals and Blocked Persons" or "SDNs".  Their assets are blocked and U.S. persons are generally prohibited from dealing with them.  This list can be located on OFAC's web site at – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is an SDN, as identified by OFAC, the policy is a blocked contract and all dealings with it must involve OFAC.   When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC.



**Named Insured:** BIG 5 SPORTING GOODS CORPORATION

**Policy Number:** 72  ECS  R95004

**Effective Date:** 09/25/2010       **Expiration Date:** 09/25/2011

**Company Name:** Hartford Fire Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims.

All other terms and conditions remain unchanged.

**Form IH 99 41 04 09**                            **Page 1 of 1**

EXH 4–81



# IMPORTANT STATE INFORMATION

### FRAUD WARNING STATEMENTS

ARKANSAS, DISTRICT OF COLUMBIA, FLORIDA, KENTUCKY, LOUISIANA, MAINE, NEW JERSEY, NEW MEXICO, PENNSYLVANIA, TENNESSEE, VIRGINIA AND WEST VIRGINIA APPLICANTS:

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS THE PERSON TO CRIMINAL AND CIVIL PENALTIES.

NOTE:  IN LOUISIANA, MAINE, TENNESSEE, VIRGINA AND THE DISTRICT OF COLUMBIA, PENALTIES MAY ALSO INCLUDE THE DENIAL OF INSURANCE BENEFITS.

COLORADO APPLICANTS:   IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES, AND DENIAL OF INSURANCE AND CIVIL DAMAGES. ANY INSURANCE COMPANY OR AGENT OF AN INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A POLICY HOLDER OR CLAIMANT FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICY HOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN THE DEPARTMENT OF REGULATORY AGENCIES.

HAWAII APPLICANTS:  FOR YOUR PROTECTION, HAWAII LAW REQUIRES YOU TO BE INFORMED THAT PRESENTING A FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT IS A CRIME PUNISHABLE BY FINES OR IMPRISONMENT, OR BOTH.

MARYLAND:  ANY PERSON WHO KNOWINGLY AND WILLFULLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR WHO KNOWINGLY AND WILLFULLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.

NEW YORK APPLICANTS:  ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT WHICH IS A CRIME, AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATED VALUE OF THE CLAIM FOR SUCH VIOLATION.

OHIO APPLICANTS:   ANY PERSON WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT HE IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT IS GUILTY OF INSURANCE FRAUD.

© 2008, The Hartford

EXH 4–82

**OKLAHOMA APPLICANTS**:   WARNING:   ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURER, MAKES ANY CLAIM FOR THE PROCEEDS OF AN INSURANCE POLICY CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY.

**OREGON APPLICANTS**:  ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD OR SOLICIT ANOTHER TO DEFRAUD AN INSURER: (1) BY SUBMITTING AN APPLICATION OR; (2) FILING A CLAIM CONTAINING A FALSE STATEMENT AS TO ANY MATERIAL FACT MAY BE VIOLATING STATE LAW.



**PRODUCER COMPENSATION NOTICE**

You can review and obtain information on The Hartford's producer compensation practices at www.TheHartford.com or at 1-800-592-5717.

Form G-3418-0