**GAUNTLETT & ASSOCIATES**
David A. Gauntlett (SBN 96399)
James A. Lowe (SBN 214383)
Andrew M. Sussman (SBN 112418)
18400 Von Karman, Suite 300
Irvine, California 92612
Telephone: (949) 553-1010
Facsimile: (949) 553-2050
jal@gauntlettlaw.com
ams@gauntlettlaw.com

Attorneys for Plaintiff
Big 5 Sporting Goods Corp.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| BIG 5 SPORTING GOODS CORPORATION, a Delaware corporation, <br><br> Plaintiff, <br><br> vs. <br><br> ZURICH AMERICAN INSURANCE COMPANY, a New York corporation; and HARTFORD FIRE INSURANCE COMPANY, a Connecticut corporation, <br><br> Defendants. | Case No.: CV 12-3699 (DMG) <br><br> Hon. Dolly M. Gee <br><br> **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT ON ZURICH AMERICAN INSURANCE COMPANY'S AND HARTFORD FIRE INSURANCE COMPANY'S DUTY TO REIMBURSE PLAINTIFF'S DEFENSE EXPENSES** <br><br> Date: August 10, 2012 <br> Time: 2:00 P.M. <br> Ctrm: 7, 2nd Floor, <br> Spring Street Courthouse |

# TABLE OF CONTENTS

**Page**

I.    1 OCCURRENCE, 2 INSURERS, 12 ZIP CODE LAWSUITS.......................................... 1

    A.    Dispute About Reimbursement of Defense Expenses ........................ 1

    B.    The Class Action Lawsuits Allege ZIP Code Collection Policy That Violate Customer Privacy Rights........................................................ 2

II.   GOVERNING LEGAL PRINCIPLES UNDER CALIFORNIA LAW ........................... 4

    A.    Summary Judgment Standard ......................................................... 4

    B.    California Law Governs This Dispute................................................ 4

    C.    Reimbursement Duty Based On Mere *Potential* For Coverage .............................. 4

        1.    Duty to Reimburse Expenses Depends on *Potential* Coverage Based On Alleged Facts, Not Labeled Causes of Action.......................... 4

        2.    Inferences Need Not Be Pled to Establish Duty........................... 5

        3.    A Factual Dispute About Whether an Offense Is Alleged *Establishes* the Duty to Reimburse Defense Expenses ...................... 6

III.  DEFENSE REIMBURSEMENT FOR PRIVACY VIOLATION CLAIMS ..................... 6

    A.    Insurers' Policy Language Creates a Four-Part Test ....................... 6

    B.    The Four-Part Test Is Met.............................................................. 7

        1.    All Actions Allege Potentially Covered Invasion of Privacy ...................... 7

        2.    "Oral or Written Publication" Element is Satisfied ..................... 9

        3.    "Material" Element Is Satisfied ............................................ 12

        4.    "Person" Element Is Satisfied .............................................. 13

        5.    Violates a "Right of Privacy" Element is Satisfied...................... 13

    C.    Zurich and Hartford Acknowledged A Duty to Reimburse.................................. 16

    D.    Consolidated Amended Complaint Proves Duty From Beginning...................... 17

    E.    The SIR Is No Impediment to the Defense Reimbursement Sought ................... 18

        1.    Zurich's Duty to Pay All "Defense Costs" in Excess of the SIR .............. 18

        2.    Hartford's Duty to Pay All "Claim Expenses" in Excess of the SIR........ 19

        3.    The Cases Allege One "Occurrence" Requiring One SIR Here .............. 20

i

4.   SIR "Stacking" Is Prohibited And Immediate Payment Is Required ................................................................................................ 22

IV.   NO EXCLUSIONS BAR THE POTENTIAL FOR COVERAGE ................................... 23

V.   CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Adickes v. S.H. Kress & Co.,*
   398 U.S. 144 (1970)...................................................................4

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986)...................................................................4

*Anthem Elecs., Inc. v. Pacific Employers Ins. Co.,*
   302 F.3d 1049 (9th Cir. (Cal.) 2002)..................................5

*Appalachian Ins. Co. v. Liberty Mut. Ins. Co.,*
   676 F.2d 56 (3rd Cir. (Pa.) 1982) ......................................22

*Associated Indem. Corp. v. Dow Chemical Co.*
   814 F.Supp. 613 (E.D.Mich. 1993) ..................................22

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986)...................................................................4

*Champion Intern. Corp. v. Continental Cas. Co.*
   546 F.2d 502, cert.den., 434 U.S. 819 (2d Cir. 1976) ........................22

*Chemstar, Inc. v. Liberty Star Mut. Ins. Co.,*
   41 F.3d 429 (9th Cir. (Cal.) 1994).....................................21

*Conestoga Servs. Corp. v. Executive Risk Indem., Inc.,*
   312 F.3d 976 (9th Cir. (Cal.) 2002)...................................4

*Gon v. First State Ins. Co.,*
   871 F.2d 863 (9th Cir. 1989) .............................................23

*Hooters of Augusta, Inc. v. American Global Ins. Co.,*
   157 Fed.Appx. 201 (11th Cir. (Ga.) 2005) ........................14

*Howard, Weil, Labouisse, Friedrichs v. Ins. Co.*
   557 F.2d 1055 (5th Cir. 1977) ...........................................22

*Hudson Ins. Co. v. Colony Ins. Co.,*
   624 F.3d 1264 (9th Cir. (Cal.) 2010)..................................8

*Hyundai Motor Am. v. National Union Fire Ins. Co. of Pittsburgh, PA,*
   600 F.3d 1092 (9th Cir. (Cal.) 2010)..................................5

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986)...................................................................4

*Mead Reinsurance v. Granite State Ins. Co.*
   873 F.2d 1185 (9th Cir. 1988) ...........................................21

*Park Univ. Ent., Inc. v. American Cas. Co. of Reading,*
   442 F.3d 1239 (10th Cir. (Kan.) 2006) ...................................................14

*Pension Trust Fund v. Fed. Ins.,*
   307 F.3d 944 (9th Cir. (Cal.) 2002) ........................................................8

*Western Rim Investment Advisors, Inc. v. Gulf Ins. Co.,*
   269 F. Supp. 2d 836 (N.D.Tex.2003) .....................................................10

**STATE CASES**

*Atlantic Mut. Ins. Co. v. J. Lamb, Inc.,*
   100 Cal. App. 4th 1017 (2002) ..........................................................5, 24

*Buss v. Superior Court,*
   16 Cal.4th 35 (1997) ....................................................................19, 20

*California Pacific Homes, Inc. v. Scottsdale Ins. Co.,*
   70 Cal. App. 4th 1187 (1999) ................................................................23

*De Asis v. Dep't of Motor Vehicles,*
   112 Cal. App. 4th 593 (2003) ...............................................................24

*EOTT Energy Corp. v. Storebrand Internat. Ins. Co.,*
   45 Cal. App. 4th 565 (1996) ..................................................................21

*Hill v. Nat'l Collegiate Athletic Assn.,*
   7 Cal. 4th 1 (1994) ....................................................................7, 8, 24

*Lee v. Fid. Nat. Title Ins. Co.,*
   188 Cal. App. 4th 583 (2010) ...............................................................12

*Mariscal v. Old Republic Life Ins. Co.,*
   42 Cal. App. 4th 1617 (1996) .................................................................5

*Mirpad, LLC v. Calif. Ins. Guar. Ass'n,*
   132 Cal. App. 4th 1058 (2005) ...............................................................6

*Montgomery Ward & Co. v. Imperial Cas. & Indem. Co.,*
   81 Cal.App.4th 356 (2000) ..................................................................22

*Montrose Chem. Corp. v. Superior Court,*
   6 Cal. 4th 287, 861 P.2d 1153 (1993) ...............................................6, 18

*People v. Rivera,*
   127 Cal. App. 3d 136 (1981) ................................................................24

*Pineda v. Williams-Sonoma Stores, Inc.,*
   51 Cal. 4th 524, 246 P.3d 612 (2011) .....................................................15

*Safeco Ins. Co. v. Robert S.,*
26 Cal. 4th 758 (2001) ...................................................................... 23

*Scottsdale Ins. Co. v. MV Transp.,*
36 Cal. 4th 643 (2005) ................................................................. 9, 18

*United Pacific Ins. Co. v. McGuire Co.,*
229 Cal. App. 3d 1560 (1991) ............................................................ 5

*Waller v. Truck Ins. Exch., Inc.,*
11 Cal. 4th 1 (1995) .......................................................................... 6

*Wright v. Compton Unified Sch. Dist.,*
46 Cal.App.3d 177 (1975) ................................................................ 24

## DOCKETED CASES

*Career Sys. Dev. Corp. v. Am. Home Assur. Co.,*
No. C 10-2679 BZ, 2011 WL 4344578 (N.D. Cal. Sept. 14, 2011) .................... 8

*Electronics for Imaging Inc. v. Atlantic Mut. Ins. Co.,*
No. C 06-03947 CRB, 2006 WL 3716481 (N.D. Cal. Dec. 15, 2006) ............... 5

*LensCrafters, Inc. v. Liberty Mut. Fire Ins. Co.,*
No. C 04-1001 SBA, 2005 WL 146896 (N.D. Cal. Jan. 20, 2005) ......... 9, 10, 14

*Twin Star Ventures, Inc. v. Universal Underwriters Ins. Co.,*
No. 10-4284 MMC, 2012 WL 948842 (N.D. Cal. Mar. 20, 2012) ............... 8, 13

*Zurich American Ins. Co. v. Fieldstone Mortgage Co.,*
No. CCB-06-2055, 2007 WL 3268460 (D.Md. Oct. 26, 2007) ...................... 10

## FEDERAL RULES AND STATUTES

Fed. R. Civ. P. 56 ................................................................................... 1

FED. R. CIV. P. 56(c) ............................................................................. 4

L.R. 7-3 ................................................................................................. 1

## STATE RULES AND STATUTES

Cal. Civ. Code § 1747.08 ...................................................................... 15

Cal. Civ. Code § 2860 ....................................................................... 1, 17

California Penal Code § 632 ....................................................................... 13

California Constitution, Article I, § 1 ........................................................ 24

OTHER AUTHORITIES

CAL. PRACTICE GUIDE: INSURANCE LITIGATION § 7:520 .......................... 20

RANDOM HOUSE UNABRIDGED DICTIONARY 1540 (2d ed. 1993) ............................ 14

RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 1185 (2d ed. 1993) ......... 12

**TO ZURICH AMERICAN INSURANCE COMPANY, HARTFORD FIRE INSURANCE COMPANY AND THEIR RESPECTIVE COUNSEL**:

NOTICE IS HEREBY GIVEN that on August 10, 2012 at 9:30 a.m., or as soon thereafter as counsel may be heard in Courtroom 7 of the above-entitled court, located at the Spring Street Courthouse - 312 N. Spring Street, Los Angeles, CA 90012, plaintiff BIG 5 SPORTING GOODS CORPORATION will and hereby does move the Court for partial summary judgment pursuant to Fed. R. Civ. P. 56. This motion is made following the conferences of counsel pursuant to L.R. 7-3, which took place between May 7 and 11, 2012, at which time the parties did not resolve this matter.[1]

This motion is based on this notice of motion, the attached points and authorities, all pleadings and papers on file in this action, and upon such other matters as may be presented to the court at the time of hearing.

# I. 1 OCCURRENCE, 2 INSURERS, 12 ZIP CODE LAWSUITS

## A. Dispute About Reimbursement of Defense Expenses

In this insurance coverage case, Plaintiff, Big 5 Sporting Goods Corporation ("Big 5") seeks a declaratory judgment that its insurers, Defendants Zurich American Insurance Company ("Zurich") and Hartford Fire Insurance Company ("Hartford"), are obligated to fully pay Big 5 for reasonable defense expenses incurred in twelve underlying class action lawsuits which allege that Big 5 infringed the privacy rights of class members resulting from Big 5's policy of allegedly requesting, recording and publishing the ZIP Codes of customers to its stores.

Zurich and Hartford issued to Big 5 Commercial General Liability policies that promise to pay defense expenses incurred as a result of "PERSONAL AND ADVERTISING INJURY" caused by an "ORAL OR WRITTEN PUBLICATION, IN ANY MANNER, OF MATERIAL THAT VIOLATES A PERSON'S RIGHT OF PRIVACY." [Big 5's Statement of Undisputed Facts, ["**BSUF**") ¶¶ 8, 15] Zurich issued three policies for the period 2007 to 2010.

---

[1]The parties agreed to address reimbursement duties in current cross-motions, leaving for later the issues of monies owed, rates, reasonableness, Civil Code 2860, etc.

The Hartford policy covered a period from 2010 to 2011. Because the underlying complaints do not limit their allegations to a particular period of time, the allegations in the last ten cases appear to extend across all four policy years. [**BSUF** ¶¶ 29-67]

Big 5 is permitted to retain and control defense counsel. The insurers' obligations to reimburse expenses begin when the "PER OCCURRENCE" self insured retention ("SIR") of $250,000 is satisfied by Big 5's payment of defense expenses and damages. [**BSUF** ¶¶ 11, 17] Big 5 has long since satisfied its SIR for the single "OCCURRENCE" that resulted in all these ZIP Code cases. So it is entitled to full reimbursement of reasonable and necessary defense expenses of more than a million dollars in excess of the "PER OCCURRENCE" SIR under its Policies. [**BSUF** ¶ 94]

Zurich and Hartford have failed and refused to fully reimburse Big 5's reasonable defense expenses, even in cases which they admit raise a potential for coverage. Big 5 seeks a declaration that its insurers must reimburse defense expenses and have breached their duties to do so.

### B.   The Class Action Lawsuits Allege ZIP Code Collection Policy That Violate Customer Privacy Rights

The *Zimerman* and *Gonzalez* actions[2] were filed against Big 5 In 2008. [**BSUF** ¶ 22] They alleged that in 2007, during the Zurich Policy period, Big 5 violated class members' privacy rights through its corporate policy requiring cashiers to request and record customers' ZIP Code before completing a credit card transaction in Big 5 stores. [**BSUF** ¶ 22]  Zurich acknowledged its defense reimbursement duties for the *Zimerman* and *Gonzalez* actions but failed to fully pay. [**BSUF** ¶¶ 69, 75, 77, 80] Big 5 successfully defended the *Gonzalez* suit and settled the *Zimerman* suit. [**BSUF** ¶¶ 70, 78]  Then nine more suits were filed that are now pending in a consolidated case.

In early 2011, nine additional class action suits were filed alleging that Big 5

---

[2] ***Zimerman** v. Big 5 Sporting Goods*, Case No. BC383834, Los Angeles Superior Court; ***Gonzalez** v. Big 5 Sporting Goods Corporation*, Case No. 37-2008-83307, San Diego Superior Court.

violated class members' privacy rights by following its corporate policy requiring employees to request and record customers ZIP Codes prior to completion of credit card transactions and then publishing the private information. [**BSUF** ¶¶ 29, 40] Zurich and Hartford acknowledged their defense reimbursement obligations only in the *Nelson* and *Motta* actions[3] but they have not properly reimbursed Big 5 for defense expenses paid in those actions. [**BSUF** ¶¶ 83-85] Although the remaining seven ZIP Code lawsuits filed in 2011[4] made virtually the same fact allegations as the *Nelson* and *Motta* actions, Zurich and Hartford denied any reimbursement obligations for them because labeled privacy claims were not alleged. [**BSUF** ¶¶ 87-90]

All nine of the 2011 ZIP Code lawsuits were consolidated later in 2011 into the pending *Coordination Proceedings, Big 5 Sporting Goods Song-Beverly Cases*, Case No. JCCP 4667, Los Angeles Superior Court. [**BSUF** ¶ 60] The consolidated amended complaint specifically alleges that Big 5, as a matter of corporate policy, requested and recorded customers' personal identification information, in the form of customers' ZIP Codes, as a condition to completing a credit card purchase in a Big 5 stores and allege that the private information was published. [**BSUF** ¶ 61] Both Zurich and Hartford have acknowledged their obligations to reimburse Big 5 for defense expenses in the *Coordination Proceedings* action but have not properly reimbursed Big 5.

Despite acknowledging their reimbursement obligations in several of the underlying actions, Zurich and Hartford have not fully reimbursed Big 5 for defense expenses in any of the cases including the pending *Coordination Proceedings*.

---

[3] ***Nelson** v. Big 5 Sporting Goods Corporation*, Case No. CGC-11-508829, San Francisco Superior Court; ***Motta** v. Big 5 Sporting Goods Corporation*, Case No. CGC-11-509228, San Francisco Superior Court.

[4] ***Valiente** v. Big 5 Sporting Goods Corporation*, Case No. BC455049, Los Angeles Superior Court; ***Matatova** v. Big 5 Sporting Goods Corporation et al*, Case No. BC455459, Los Angeles Superior Court; ***Mossler** v. Big 5 Sporting Goods Corp.*, Case No. BC455477, Los Angeles Superior Court; ***Holmes** v. Big 5 Sporting Goods Corporation et al*, Case No. RG-11563123, Alameda Superior Court; ***Wiener** v. Big 5 Sporting Goods Corporation*, Case No. BC456300, Los Angeles Superior Court; ***Smith** v. Big 5 Sporting Goods Corporation*, Case No. 39-2011-00261014-CU-BT-STK, San Joaquin Superior Court; and ***Gabriel** v. Big 5 Sporting Goods Corporation*, Case No. BC462213, Los Angeles Superior Court.

## II.     GOVERNING LEGAL PRINCIPLES UNDER CALIFORNIA LAW

### A.     Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there are no genuine issues of material fact for trial and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Material facts "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The underlying facts are viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970). Once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

### B.     California Law Governs This Dispute

The Zurich and Hartford policies contain no choice of law provision.  In the absence of contractual language to the contrary, federal courts sitting in diversity apply the substantive law of the forum state. *Conestoga Servs. Corp. v. Executive Risk Indem., Inc.,* 312 F.3d 976, 980-81 (9th Cir. (Cal.) 2002).  Under California choice of law rules, the pendency of the underlying actions in California, the location of the insured (California), the Zurich and Hartford Policies' place of execution and issuance (California), and the fact that Zurich and Hartford regularly conduct business in California all compel the application of California law.

### C.     Reimbursement Duty Based On Mere *Potential* For Coverage

#### 1.     Duty to Reimburse Expenses Depends on *Potential* Coverage Based On Alleged Facts, Not Labeled Causes of Action

As the Ninth Circuit has explained, California law requires Zurich and Hartford

to reimburse Big 5's defense expenses "for claims that potentially fall within the policy's coverage provisions." *Hyundai Motor Am. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 600 F.3d 1092, 1097 (9th Cir. (Cal.) 2010). The obligation to reimburse defense expenses "can be excused only when the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage." *Id*. at 1097 (Internal citations omitted.)  Zurich's and Hartford's duty to reimburse defense expenses is triggered by alleged and reasonably inferable facts, not a complaint's legal labels.[5] So lack of specifically labeled claims matching policy language is of no moment.

## 2.    Inferences Need Not Be Pled to Establish Duty

No matter how minimal, spare, or recondite complaint allegations may be, if they raise the merest glimmer of possible coverage, then the duty to reimburse defense expenses is triggered. *Id.*  If there is any doubt as to whether the alleged facts establish the existence of a duty to reimburse defense expenses, they must be resolved in the insured's favor. *United Pacific Ins. Co. v. McGuire Co.*, 229 Cal. App. 3d 1560, 1567 (1991).  The allegations in a complaint are to be liberally construed, *Mariscal v. Old Republic Life Ins. Co.*, 42 Cal. App. 4th 1617, 1623 (1996), and reasonable inferences must be made based upon the language in the complaint in determining the potential for coverage.   The inferences themselves need not be of record since they do not purport to be evidence, but rather reasonable constructions of the evidence.[6] The complaint more than potentially pled all elements of an offense to trigger a defense.[7]

---

[5] *Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1034 (2002) ("The scope of the duty does not depend on the labels given to the causes of action in the third party complaint; instead it rests on whether the *alleged facts or known extrinsic facts* reveal a *possibility* that the claim may be covered by the policy.").

[6] *Anthem Elecs., Inc. v. Pacific Employers Ins. Co.*, 302 F.3d 1049, 1058 (9th Cir. (Cal.) 2002) ("[The insurers] are relieved of their duty to defend if [claimant's] complaint '*can by no conceivable theory raise a single issue which could bring it within the policy coverage.*' . . . The complaint raises an obvious inference that [the claimant] lost the use of its systems because of [the insured's] defective products." (emphasis added)).

[7] *Electronics for Imaging Inc. v. Atlantic Mut. Ins. Co.*, No. C 06-03947 CRB, 2006

### 3.     A Factual Dispute About Whether an Offense Is Alleged *Establishes* the Duty to Reimburse Defense Expenses

As Judge Croskey explained: "If coverage depends on an unresolved dispute over a *factual* question, the very existence of that dispute would establish a possibility of coverage and thus a duty to defend." *Mirpad, LLC v. Calif. Ins. Guar. Ass'n*, 132 Cal. App. 4th 1058, 1068 (2005) (Original emphasis). The standard is so liberal that if this Court were to believe that there is a factual dispute about whether an "[O]RAL OR WRITTEN PUBLICATION, IN ANY MANNER, OF MATERIAL THAT VIOLATES A PERSON'S RIGHT OF PRIVACY" is possibly alleged by the complaints or extrinsic evidence, "the very existence of that dispute would establish a possibility of coverage." *Id.* at 1068. Zurich and Hartford are therefore be required to reimburse Big 5's defense expenses.

## III.   DEFENSE REIMBURSEMENT FOR PRIVACY VIOLATION CLAIMS

### A.     Insurers' Policy Language Creates a Four-Part Test

The language of the insurance policy determines whether alleged conduct is *potentially* within coverage. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 19 (1995). The Policies' identical coverage language for "personal and advertising injury" claims requires reimbursement for potentially covered claims alleging "oral or written publication, in any manner of material that violates a person's right of privacy." ["**BSUF**") ¶¶ 8, 15] The Policies provide actual (indemnity) coverage for: (1) [o]ral or written publication, in any manner, (2) of material (3) that violates a person's (4) right of privacy. No advertising is required for this offense. A duty to defend is established simply by the *potential* that these tests can be met. *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 861 P.2d 1153 (1993) ("[An insurer is excluded from a duty to defend only when] the third party complaint *can by no conceivable theory raise a single issue which could bring it within the policy coverage.*").

---

WL 3716481, at *3 (N.D. Cal. Dec. 15, 2006) citing *CNA Cas. of Cal. v. Seaboard Sur. Co.*, 176 Cal. App. 3d 598, 609 n.4 (Cal. Ct. App. 1986) ("[P]resented with a tender of a defense, it is not insurer's place to analyze and evaluate the underlying claim of liability in order to reject the defense of any claim that is not meritorious.").

**B.      The Four-Part Test Is Met**

      **1.      All Actions Allege Potentially Covered Invasion of Privacy**

All underlying cases allege Big 5 violated the underlying plaintiffs' privacy by requesting, recording and publishing customers' ZIP Codes. This alleged conduct is within the definition of the plaintiffs' right of privacy as defined by California law. *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 39-40 (1994).

The *Zimerman* Complaint alleged that liability arose out of Big 5's conduct of "requesting and recording personal identification information, specifically zip codes" and using "the personal identification information…to sell such data to direct marketing specialists or other third parties."  [**BSUF** ¶ 24] Similarly, the *Gonzalez* Complaint alleged that Big 5 "invaded Plaintiff's…right to privacy by wrongfully requesting and recording their personal identification information" and "having their personal information disseminated to others."  [**BSUF** ¶ 27]  The *Nelson* and *Motta* complaints are similar and allege the "actions constitute a 'serious' invasion of privacy in that Plaintiff and the Class have had their private home addresses accessed, shared, and/or sold to others without their knowledge or consent."  [**BSUF** ¶¶ 36-37]

The *Matatova* Complaint alleges that Big 5 uses its "Information Capture Policy" in order to obtain "customers' personal identification information for marketing, advertising or other purposes." [**BSUF** ¶ 53] The *Holmes* Complaint also alleges that Big 5 wrongfully obtains customers' private information and is "using and disseminating this improperly obtained and maintained information." [**BSUF** ¶ 55] The *Valiente*, *Mossler*, *Wiener*, *Smith*, and *Gabriel* actions make similar allegations implicating an invasion of privacy. [**BSUF** ¶¶ 51, 54, 56-57, 59] The consolidated *Coordination Proceedings* CAC makes the same fact allegations, characterizing Big 5's alleged conducted as "a 'serious' invasion of privacy in that Plaintiffs and the Class have had their private home addresses accessed, shared, and/or sold to others without their knowledge or consent."  [**BSUF** ¶ 64]

All underlying actions allege that Big 5 has instituted a policy of collecting

customers' zip codes and credit card information in order to procure their home addresses which they then share or sell to other vendors, retailers, or marketing specialists.  The underlying plaintiffs expressly assert that Big 5's conduct violates their rights of privacy.  Such allegations require a defense since even a singular word in a complaint can implicate a defense.[8]

While some of the underlying complaints label causes of action as violations of various statutes, there can be no genuine factual dispute that the fact allegations also unambiguously allege that Big 5 violated the plaintiffs' constitutional privacy rights as recognized under California law.

A California constitutional right of privacy claim requires that a plaintiff "establish each of the following: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." *Hill*, 7 Cal. 4th at 39-40. Triggering Zurich's and Hartford's duty to reimburse defense expenses does not require that all of these elements be expressly alleged. *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1269 (9th Cir. (Cal.) 2010) ("California courts have cast doubt on the notion that a complaint must support all elements of a cause of action to state potential liability.").[9]

As noted by *Twin Star Ventures, Inc. v. Universal Underwriters Ins. Co.*, 10-4284 MMC, 2012 WL 948842, at *3 (N.D. Cal. Mar. 20, 2012), the underlying plaintiffs do not need "to allege sufficient facts to state a claim" for violation of their constitutional right of privacy. They only need to show "at least the potential for coverage" establishing "the possibility existed, at least until the end of any trial, that

---

[8] *Pension Trust Fund v. Fed. Ins.*, 307 F.3d 944, 951 (9th Cir. (Cal.) 2002) ("California courts have repeatedly found that remote facts buried within causes of action that may potentially give rise to coverage are sufficient to invoke the defense duty.").

[9] *Career Sys. Dev. Corp. v. Am. Home Assur. Co.*, C 10-2679 BZ, 2011 WL 4344578, at *2 (N.D. Cal. Sept. 14, 2011) ("Pursuant to *Scottsdale* and *Barnett*, it was also not necessary for Woo–Ming and Hoyt to have pled all of the elements of defamation to trigger defendant's duty to defend.").

[the underlying plaintiffs] could amend to assert a" constitutional right of privacy claim. *Id*. at *4. "[T]hat the precise causes of action pled by the third-party complaint may fall outside policy coverage does not excuse" Zurich's and Hartford's defense reimbursement obligations where, as here, "under the facts alleged, **reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability.**" *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 654 (2005) (emphasis added).

Here, not only did the possibility exist that the underlying claims could be amended to assert a California right of privacy claim, but nine actions amended their complaint to actually and specifically assert such a claim. [**BSUF** ¶ 64]

### 2.    "Oral or Written Publication" Element is Satisfied

The first "personal and advertising injury" offense element requires that there be an "ORAL OR WRITTEN PUBLICATION IN ANY MANNER." "PUBLICATION" is undefined in the Policies.  In *LensCrafters, Inc. v. Liberty Mut. Fire Ins. Co.* No. C 04-1001 SBA, 2005 WL 146896, at *8 (N.D. Cal. Jan. 20, 2005) the policy included identical language as here, except that it did not have the broadening term "in any manner." The insured eyeglass vendor allegedly "created the position of 'optical specialists' who are laypersons which are styled such that 'from the patients' perspective they appear to be part of the optometrists' medical staff.' " The "optical specialists" then allegedly record the patients' confidential medical information and disclose it to the insured for "marketing and sales purposes." *Id* at *8, *11. The insured also allegedly transferred the private medical information to a database and used the information to conduct a direct mail program to encourage those patients to purchase additional products from the insured. *Id*. The insurer contended that there was no coverage because there was no "publication" to a third party. *Id*. at *9. The court disagreed.

Despite the narrower policy language, the court reasoned that " 'publication of material that violates a person's right of privacy' **does not require widespread disclosure**." *Id* at *10 (emphasis added). The court held that although "common law

invasion of privacy by public disclosure of private facts requires that the actionable disclosure be widely published," nothing in the insurer's policy, like here, "limits 'right of privacy' to common law right of privacy." *Id*. The court found that "**a less-than-public dissemination of information**, such as that alleged in the complaint, could constitute a 'publication' that 'violates a person's [California constitutional] right of privacy." *Id.*, citing *Hill*, 7 Cal. 4th at 27. Referring to defamation law as an example, the court noted that " 'the definition of "publication" is not restricted to widely disseminated materials such as magazines and newspapers' . . .**[i]t is enough that it is communicated to a single individual.**" *Id*. at *10 (emphasis added).

According to the *LensCrafters* court, the "mere disclosure of medical information…from medical personnel to non-medical personal for non-medical reasons" was enough to trigger the insurer's duty to defend under the "publication of material that violates a person's right of privacy" personal injury offense. *Id.* at *11. The court found that the "publication" element was satisfied even when the insured "cause[d] and allow[ed]" medical records to be "accessed and reviewed" by its own employees for non-medical reasons. *Id.* at *11.

Several courts have discussed the boundaries of "publication." In *Zurich American Ins. Co. v. Fieldstone Mortgage Co.*, No.. CCB-06-2055, 2007 WL 3268460, at *5 (D.Md. Oct. 26, 2007) (citing *Park Univ. Ent., Inc. v. American Cas. Co. of Reading,* 442 F.3d 1239, 1248-49, 1250 (10th Cir. (Kan.) 2006)), the court concluded that "the majority" of courts to ponder the meaning of "publication" in the context of an "advertising injury" provision have found that publication need not be to a third party. The *Zurich* court opined, "publication" carries no necessary connotation requiring disclosure to a person with "previous ignorance" of the matter subject to "publication." *Id*. at *5. *See also, e.g., Western Rim Investment Advisors, Inc. v. Gulf Ins. Co.*, 269 F.Supp.2d 836, 846-47 (N.D.Tex.2003) (noting that "[a]n invasion-of-privacy claim based on intrusion upon seclusion ... does not require that its factual underpinnings include an allegation of publication to a third party."). Here intrusion

upon seclusion and other varieties of invasion of privacy are alleged in the ZIP Code cases including the *Coordination Proceedings*. [**BSUF** ¶ 66]

Like *LensCrafters*, Big 5 allegedly maintained an in-house database containing customers' private information such as zip codes and home addresses that would have been accessed and reviewed at least by its employees to solicit more business. The *Zimmerman* Complaint alleged that Big 5 used "personal identification information…for business purposes" by "creat[ing] and maintain[ing] a database for in-house…forms of marketing and advertising." [**BSUF** ¶ 24] Similarly the *Gonzalez* Complaint alleged "[a]fter acquiring personal identification information…at the point of sale," Big 5 was able "to access…names and addresses, among other personal identification information." [**BSUF** ¶ 27]

All 2011 ZIP Code actions make similar allegations. The *Nelson* and *Motta* complaints allege that Big 5 employs an "Information Capture Policy" to "request and record personal identification information" which it then uses "to obtain its customers' home addresses." [**BSUF** ¶¶ 32-33] The *Holmes* Complaint alleges Big 5 "creat[ed] and maintain[ed] a database containing this private customer information." [**BSUF** ¶ 55]. The *Valiente, Matatova, Mossler, Wiener, Smith*, *Gabriel*, and *Coordinated Proceedings* complaints make similar allegations. [**BSUF** ¶¶ 51, 53-54, 56-57, 59]

Big 5's alleged collection, storage, and access of customers' private personal information in order to solicit more business is analogous to the access of patients' medical records for non-medical reasons and therefore constitutes a "publication." The *LensCrafters* court's reasoning is even more applicable where Big 5 is expressly accused of disclosing private information to third parties in each of the underlying complaints as opposed to only in-house employees as in *LensCrafters*.

The *Zimerman* Complaint alleges Big 5 disclosed "personal identification information…to direct marketing specialists or other third parties." [**BSUF** ¶ 24] The *Gonzalez* Complaint alleges Big 5 disclosed private "personal information" by "disseminating it to others." [**BSUF** ¶ 27] The *Nelson* and *Motta* Complaints allege

Big 5 "negligently shared…personal identification information…with other vendors and retailers, and without authorization," and that Big 5's conduct was an "unwanted dissemination of [] private information." [**BSUF** ¶¶ 34-35] The *Mossler* Complaint alleges "Big 5 uses the collected personal identification information for marketing, future solicitation, and other data collection purposes." [**BSUF** ¶ 54] The *Holmes* Complaint alleges Big 5 "improperly us[ed] and disseminat[ed] this improperly obtained and maintained information." [**BSUF** ¶ 55] The *Weiner* and *Smith* complaints allege "Defendant uses customers' personal identification information for profit." [**BSUF** ¶¶ 56-57] The *Coordination Proceedings* CAC alleges Big 5 "accessed, shared, and/or sold to others" its customers' "private home addresses…without their knowledge or consent." [**BSUF** ¶ 64]

The allegations and Policies here are broader than in *LensCrafters.* Big 5 is expressly accused of disclosing private information to third parties. The Zurich and Hartford Policy language expands the offense to include "any manner" of "publication." [**BSUF** ¶¶ 8, 15] In California, "the words in an insurance policy are to be interpreted according to the plain meaning which a layman, not an attorney or insurance expert, would ordinarily attach to the words." *Lee v. Fid. Nat. Title Ins. Co.*, 188 Cal. App. 4th 583, 597-98 (2010) (quotations omitted). "Any" is commonly defined as "every - used to indicate one selected without restriction." "Manner" ordinarily means "kind, sort."[10] Therefore "every kind" of conceivable publication is sufficient to trigger coverage under the Policies. Big 5's alleged disclosures of private information is a "publication" under California law, so this element is met.

### 3. "Material" Element Is Satisfied

The term "material" is also undefined in the policy but ordinarily means "the elements, constituents, or substances of which something is composed or can be made." RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 1185 (2d ed. 1993).

---

[10] MERRIAM-WEBSTER ONLINE DICTIONARY, http://www.merriam-webster.com/dictionary/manner.

Here the "material" was the private "personal information" including consumers' zip codes and home addresses addressed by the underlying actions. [**BSUF ¶¶ 22-67**]  The "material" element is therefore satisfied.

### 4.    "Person" Element Is Satisfied

The *Zimmerman*, *Gonzalez*, *Nelson*, *Motta*, *Valiente*, *Matatova, Mossler, Holmes, Wiener, Smith, Gabriel* and *Consolidated* action plaintiffs allege themselves to be "persons."  [**BSUF ¶¶ 22-67**]  So the "PERSON" element is met in every case.

### 5.    Violates a "Right of Privacy" Element is Satisfied

The final element requires that Big 5 allegedly violated a "RIGHT OF PRIVACY." In *Twin Star*, 2012 WL 948842, at *3 the insurance policy at issue there had similar but narrower coverage than here, limited to "common law claims for invasion of the right of privacy."    The insured was sued by a former employee for allegedly recording his phone calls made at work without his consent. *Id*. at *1. The claimant alleged that the insured's recording of his calls was unlawful and violated California Penal Code § 632, which prohibited the eavesdropping or the recording of confidential communications. *Id*. The insurer asserted there was no coverage because the underlying plaintiff "failed to allege sufficient facts to state a claim for common law invasion of privacy" and merely "alleged a statutory violation." The court disagreed, noting that "the test is whether [underlying plaintiff's] allegations raised a 'potential for coverage,'...i.e, that a common law claim for **invasion of privacy could be asserted**." *Id*. at *4.

The *Twin Star* court concluded that the underlying "allegations raised the potential for coverage" because the "the common law tort of invasion of the right to privacy 'encompasses...unwarranted sensory intrusions such as eavesdropping [and] wiretapping.' " *Id*.  It did not matter that underlying plaintiff "expressly sought relief for the alleged invasion of privacy under a statute, as opposed to the common law", because "the possibility existed, at least until the end of any trial, that [the underlying plaintiff] **could amend to assert a common law invasion of privacy claim**." *Id*.

(emphasis added).

Zurich's and Hartford's Policies do not limit coverage to just "common law claims for invasion of the right of privacy" but broadly provide coverage for any "[O]RAL OR WRITTEN PUBLICATION, IN ANY MANNER, OF MATERIAL THAT VIOLATES A PERSON'S RIGHT OF PRIVACY." [**BSUF** ¶¶ 8, 15] This language that does not require that "right of privacy," be limited to common law claims[11] or even those that comprise the tort of "invasion of privacy."[12] Rather, a plain meaning analysis of the policy language controls.[13]

Like *Twin Star*, the underlying actions here all allege that Big 5 potentially violated the underlying plaintiffs' "right of privacy." Specifically, all of the underlying plaintiffs potentially allege that Big 5 violated their California constitutional right of privacy. And as illustrated below, some of the underlying complaints, including the Consolidated Amended Complaint ("CAC") covering eleven pending 2011 actions, expressly allege violations of the California constitutional right of privacy.

A potential Constitutional right of privacy claim was first demonstrated in the *Zimerman* Complaint. Although not required to trigger Big 5's right to reimbursement, the *Zimerman* Complaint alleges all elements of a constitutional right

---

[11]*LensCrafter*, 2005 WL 146896, at *10 ("[N]othing in the Liberty Policies limits 'right of privacy' to common law right of privacy.");

*Park Univ. Enters. v. American Cas. Co. of Reading, PA*, 314 F. Supp. 2d 1094, 1109 (D. Kan. 2004), *aff'd*, 442 F.3d 1239 (10th Cir. (Kan.) 2006) (declining to define "right of privacy" by importing Illinois tort standards where insurer failed to adopt that meaning in its policy).

[12]*Hooters of Augusta, Inc. v. American Global Ins. Co.*, 157 Fed.Appx. 201, 205-06 (11th Cir. (Ga.) 2005) ("Notably, the insurance policy contains no language explicitly limiting the scope of the term 'privacy' or, for that matter, alerting non-expert policyholders that coverage depends on the source of law underlying the relevant privacy right. . . .")

[13]*Hooters* 157 Fed.Appx. at 206 ("We therefore must consider the ordinary meaning of the term 'privacy,' not whatever specialized [statutory] meaning the word may have taken on in the context of [federal statutory law].'); "Privacy" means "the state of being free from intrusion or disturbance in one's private life or affairs: *the right to privacy*." RANDOM HOUSE UNABRIDGED DICTIONARY 1540 (2d ed. 1993).

of privacy claim.  **First**, *Zimerman* Complaint asserted: a legally protected privacy interest by relying on Cal. Civ. Code §1747.08, because its "overriding purpose was to 'protect the personal privacy of consumers who pay for transactions with credit cards.' " *Pineda v. Williams-Sonoma Stores, Inc.*, 51 Cal. 4th 524, 534, 246 P.3d 612, 619 (2011). [**BSUF ¶¶** 23-24]  **Second**, in claiming that Big 5 wrongfully collected their ZIP codes in order obtain additional personal information, the *Zimerman* plaintiffs also demonstrated a reasonable expectation of privacy.  [**BSUF ¶** 24] Because under California law, "personal identification information," that all people have a reasonable expectation of privacy in, "includes a cardholder's ZIP code." *Id*.

**Third**, the *Zimerman* Complaint alleges conduct by Big 5 evidencing a serious invasion of privacy. The *Zimerman* Complaint alleged that Big 5 "was reckless in not knowing that zip code information is a form of personal identification information…[y]et Big 5 cavalierly and irresponsibly disclosed such personal identification information."  [**BSUF ¶** 24] The *Zimerman* Complaint also asserts a serious invasion of privacy by alleging that "Big 5 uses the personal identification information…for business purposes, including to create and maintain a database for in-house or other forms of marketing and advertising and/or to sell such data to direct marketing specialists or other third parties.  [**BSUF ¶** 24]

All of the elements of a California constitutional right of privacy claim were similarly alleged in the *Gonzalez*, *Valiente*, *Matatova, Mossler, Holmes, Wiener, Smith,* and *Gabriel* actions.  Like *Zimerman*, all of the actions alleged: (1) a legally protected privacy interest by relying on Cal. Civ. Code §1747.08 [**BSUF ¶¶** 40-59]; (2) a reasonable expectation of privacy, because people have a reasonable expectation of privacy in "personal identification information," including ZIP codes, as alleged in all of the actions  [**BSUF ¶¶** 51, 53-57, 59]; and (3) conduct constituting a serious invasion of privacy, because the actions allege that customers' "personal identification information" was wrongfully recorded, disseminated, and used for marketing and advertising purposes. [**BSUF ¶¶** 51, 53-57, 59]

The *Nelson* and *Motta* Complaints went a step further by explicitly alleging a claim under California's constitutional right of privacy. [**BSUF** ¶¶ 36-37] The complaints   alleged that the plaintiffs had a "constitutionally guaranteed right of privacy" which gave them: (1) a "legally protectable privacy interests in their home address information, and their ability to control the disclosure and dissemination of this information" [**BSUF** ¶¶ 36-37]; (2) a "reasonable expectations that their private home addresses would remain private when they entered into credit card transactions with" Big 5 [**BSUF** ¶¶ 36-37]; and (3) that Big 5's alleged dissemination of this information "constitute[d] a 'serious' invasion of privacy." [**BSUF** ¶¶ 36-37]

The *Nelson, Motta, Valiente, Matatova, Mossler, Holmes, Wiener, Smith,* and *Gabriel* actions were consolidated so that all of their claims were superseded by the *Coordinated Proceedings* action.  [**BSUF** ¶ 60] Making allegations identical to those in the *Nelson* and *Motta* complaints, the *Coordinated Proceedings* action expressly alleges an invasion of privacy claim under California's constitutional right of privacy **manifesting the potential for amendment that was present in the factual allegations in all earlier complaints.** [**BSUF** ¶ 64]

Since all of the underlying complaints alleged at least a potential claim for invasion of privacy under California's constitutional right of privacy, the "VIOLATES A RIGHT OF PRIVACY" element is satisfied.

### C.    Zurich and Hartford Acknowledged A Duty to Reimburse

Zurich and Hartford have already acknowledged that they have a duty to pay Big 5 for defense expenses incurred in the *Zimerman*, *Gonzalez*, *Nelson*, *Motta*, and the consolidated *Coordination Proceedings* actions. But they failed to do so completely.

Zurich agreed to "participate" in the funding of Big 5's *Zimerman* action defense, stating "Zurich American will…participate in funding Big 5's defense of the *Zimerman* Lawsuit." [**BSUF** ¶ 69] Similarly in the *Gonzalez* action defense, Zurich stated "it will participate with other of Big 5's insurers in funding the reasonable and

necessary costs that are incurred in Big 5's defense of the *Gonzalez* lawsuit." [**BSUF ¶ 77**] Zurich also agreed that it had a duty to reimburse Big 5's defense expenses for the *Nelson* and *Motta* actions, stating that it "will participate in the funding of the reasonable and necessary costs that are incurred in Big 5 Sporting Goods' ("Big 5") defense". [**BSUF ¶ 83**]

Hartford also acknowledged its reimbursement obligations in the *Nelson* and *Motta* actions, stating that it "agrees to provide coverage to Big 5 in the Litigation" and that it "will allow Big 5 to retain its own defense counsel in connection with the Litigation …" [**BSUF ¶ 84**]

### D.     Consolidated Amended Complaint Proves Duty From Beginning

When the *Mossler, Holmes, Wiener, Smith,* and *Gabriel* actions were consolidated into the *Coordinated Proceedings*, Zurich and Hartford conceded their reimbursement obligations were triggered. But both refused (and still refuse) to pay defense expenses for the seven original actions before consolidation. [**BSUF ¶¶ 92-93**]

Once the *Nelson*, *Motta*, *Valiente*, *Matatova, Mossler, Holmes, Wiener, Smith, Gabriel* complaints were consolidated into the *Coordination Proceedings* CAC, Zurich and Hartford each acknowledged their duty to reimburse Big 5's defense expenses. Zurich advised that "it will participate in the funding of the reasonable and necessary costs that are incurred in Big 5 Sporting Goods' ("Big 5") defense." [**BSUF ¶ 92**] Zurich noted "that that the aspect of the consolidated lawsuit which seeks damages for the alleged disclosure of plaintiffs' personal information by Big 5 through its sale of the information to others raises a potential for coverage as an offense which pertains to 'THE ORAL OR WRITTEN PUBLICATION OF MATERIAL, IN ANY MANNER, OF MATERIAL THAT VIOLATES A PERSON'S RIGHT OF PRIVACY." [**BSUF ¶ 92**]

Hartford also "agree[d] to pay defense expenses incurred by Big 5 in the Litigation" and that it "will allow Big 5 to retain its own defense counsel in connection with the Litigation under California Civil Code 2860." [**BSUF ¶ 93**]

Although Zurich and Hartford denied coverage for the original *Valiente*,

*Matatova, Mossler, Holmes, Wiener, Smith,* and *Gabriel* complaints, they alleged the same facts as in *Zimerman*, *Gonzalez*, *Nelson*, and *Motta*, **the potential for amendment existed from the beginning**. Zurich's and Hartford's own coverage determinations establish Big 5's entitlement to reimbursement in all of the underlying actions which all allege the same conduct, but with different labels. The insurers ignore half a century of California law that "**the insured is entitled to a defense . . . if the complaint might be amended to give rise to a liability that would be covered under the policy.**" *Montrose I*, 6 Cal. 4th at 299 (citing *Gray v. Zurich Insurance Co*. 65 Cal.2d 263, 275-276. (1966) emphasis added.); *Scottsdale* 36 Cal. 4th at 654. Since the 2011 complaints were *actually* amended to allege potentially covered claim, as admitted by both Zurich and Hartford, they cannot dispute that the original complaints could have been amended to give rise to a covered liability. Both insurers owe defense reimbursement for all original complaints.

> **E.     The SIR Is No Impediment to the Defense Reimbursement Sought**
>
> **1.     Zurich's Duty to Pay All "Defense Costs" in Excess of the SIR**

The Zurich Policies not only promise to "PAY THOSE SUMS THAT THE INSURED BECOMES LEGALLY OBLIGATED TO PAY AS DAMAGES BECAUSE OF 'PERSONAL AND ADVERTISING INJURY' TO WHICH THIS INSURANCE APPLIES" but also agree that "[W]E WILL HAVE THE RIGHT AND DUTY TO DEFEND THE INSURED AGAINST ANY 'SUIT' SEEKING THOSE DAMAGES…" [**BSUF ¶** 8] Big 5 is permitted to select and control defense counsel. [**BSUF ¶** 6]

Under its "SELF INSURED RETENTION ENDORSEMENT," [**BSUF ¶** 11] Zurich's duty to pay defense costs does not begin until Big 5 has paid the SIR (the first $250,000 of defense costs for an "OCCURRENCE") "REGARDLESS OF THE NUMBER OF PERSONS OR ORGANIZATIONS MAKING CLAIMS OR BRINGING SUITS BECAUSE OF THE 'OCCURRENCE.' " [**BSUF ¶** 11] Zurich is then "LIABLE … FOR THE AMOUNT OF … 'DEFENSE COSTS' IN EXCESS OF THE 'SELF INSURED RETENTION.' " [**BSUF ¶** 11] The endorsement defines "OCCURRENCE" as an "OFFENSE, ACCIDENT, ACT, ERROR OR

OMISSION OR ANY OTHER SUCH SIMILAR EVENT, AS DEFINED OR USED IN OUR POLICY, THAT MUST OCCUR IN ORDER TO INITIATE PAYMENT OF COVERED LOSSES UNDER THE POLICY TERMS AND CONDITIONS." [**BSUF** ¶ 11]

The endorsement heading emphasizes that "WE PAY ALL DEFENSE COSTS EXCESS OF SELF INSURED RETENTION AMOUNT" [**BSUF** ¶ 11] and "[T]HE PER OCCURRENCE AMOUNT IS THE MOST YOU WILL PAY FOR DAMAGES AND 'DEFENSE COSTS' ARISING OUT OF ANY ONE 'OCCURRENCE' REGARDLESS OF THE NUMBER OF PERSONS OR ORGANIZATIONS MAKING CLAIMS OR BRINGING SUITS BECAUSE OF THE 'OCCURRENCE'." [**BSUF** ¶ 11] "DEFENSE COSTS" are broadly defined. "DEFENSE COSTS INCLUDE BUT ARE NOT BE LIMITED TO ALL SUPPLEMENTARY PAYMENTS … ALL COURT COSTS, FEES AND EXPENSES, COSTS FOR ALL ATTORNEYS, WITNESSES, EXPERTS, DEPOSITIONS, REPORTED OR RECORDED STATEMENTS, SUMMONSES, SERVICE OF PROCESS, LEGAL TRANSCRIPTS OR TESTIMONY, … PUBLIC RECORDS, ALTERNATIVE DISPUTE RESOLUTION, INTEREST, INVESTIGATIVE SERVICES … DECLARATORY JUDGMENT, SUBROGATION AND ANY OTHER FEES, COSTS OR EXPENSES REASONABLY CHARGEABLE TO THE INVESTIGATION, NEGOTIATION, SETTLEMENT OR DEFENSE OF A CLAIM OR LOSS UNDER THE POLICY(IES)" [**BSUF** ¶ 11]

These contract provisions broaden Zurich's obligation to pay defense costs beyond those discussed in *Buss v. Superior Court,* 16 Cal.4th 35, 48 (1997) (a "duty to defend the entire 'mixed' action prophylactically, as an obligation imposed by law") because the Zurich Policies promise to pay even settlements and interest. This broad obligation arises as soon as the insured satisfies the SIR for the "occurrence."

### 2. Hartford's Duty to Pay All "Claim Expenses" in Excess of the SIR

The Hartford Policy similarly promises that Hartford "WILL PAY THOSE SUMS THAT YOU … BECOME[] LEGALLY OBLIGATED TO PAY AS DAMAGES BECAUSE OF 'PERSONAL AND ADVERTISING INJURY' TO WHICH THIS INSURANCE APPLIES; BUT ONLY TO THE EXTENT THAT SUCH 'PERSONAL AND ADVERTISING INJURY' IS IN EXCESS OF THE

'SELF-INSURED RETENTION' THAT HAS BEEN EXHAUSTED SOLELY BY THE PAYMENT OF 'CLAIM EXPENSES' . . . ." [**BSUF** ¶ 15]  The applicable "SELF INSURED RETENTION" here is also $250,000 PER OCCURRENCE. [**BSUF** ¶¶ 13, 17]

The Hartford Policy broadly defines "claim expenses" as "THOSE EXPENSES INCURRED IN THE INVESTIGATION OR DEFENSE OF CLAIMS OR 'SUITS'." [**BSUF** ¶ 15] Hartford's Policy defines the "SELF-INSURED RETENTION" as "THE AMOUNT YOU MUST PAY AS DAMAGES AND 'CLAIM EXPENSES' FOR 'PERSONAL AND ADVERTISING INJURY', OR ANY ONE 'OCCURRENCE', RESPECTIVELY BEFORE WE WILL PAY ANYTHING."  [**BSUF** ¶ 15] Hartford is liable for "CLAIM EXPENSES" in excess of the $250,000 SELF-INSURED RETENTION arising from a single personal and advertising injury OCCURRENCE so long as it constitutes "CONTINUOUS OR REPEATED EXPOSURE TO SUBSTANTIALLY THE SAME HARMFUL CONDITIONS." [**BSUF** ¶ 15]

These contract provisions also broaden Hartford's duty to reimburse underlying defense expenses beyond that of a duty to defend, as discussed in *Buss,* 16 Cal.4th at 48 (a "duty to defend the entire 'mixed' action prophylactically, as an obligation imposed by law"), because the Hartford Policy promises to pay "THOSE EXPENSES INCURRED IN THE…DEFENSE OF …'SUITS'." This broad duty arises once Big 5 satisfies its self-insured retention for the "OCCURRENCE."

### 3.    The Cases Allege One "Occurrence" Requiring One SIR Here

Under both Zurich's and Hartford's Policies, defense expenses are subject to reimbursement where they exceeded the $250,000 SIR "PER OCCURRENCE" and were incurred in a lawsuit "seeking damages that would be covered if a judgment was rendered on any theory or cause of action that could be based on the facts involved." CROSKEY, ET AL., CAL. PRACTICE GUIDE: INSURANCE LITIGATION § 7:520 (Rev. #1 2002). The Policies' SIR provisions require Big 5 to pay only $250,000 in defense expenses for all claims or suits based on a single "OCCURRENCE."

All of the separate suits and each class member's separate claim is based on Big 5's corporate policy of collecting ZIP Codes from customers. That is the

"OCCURRENCE," the repeated exposure to the same condition or the error or omission that occurred to initiate the claimed offense of violation of privacy rights. There was one common "occurrence," not two or eleven or eleven times the number of class members. The suits do not allege the privacy violation occurred because a given cashier asked a particular customer for a ZIP code but instead allege that large classes of people had their privacy rights violated because the corporation decided to collect the ZIP Codes, record them and publish them.

Each lawsuit alleges the same conduct differing only in store location and customer. The cause of each cashier's request for and recording of information was Big 5's corporate decision to collect ZIP Code data. The cashiers' compliant acts were not intervening causes or "occurrences." The single "occurrence" over the years and cases was the corporate policy that set in motion the repeated events illustrated in multiple class allegations.

Courts considering this issue have readily found a single "occurrence" and a single SIR after a single management decision results in multiple suits or damages to multiple parties. *Chemstar, Inc. v. Liberty Star Mut. Ins. Co.*, 41 F.3d 429, 432-433 (9th Cir. (Cal.) 1994) held that 28 third-party claims for plaster pitting caused by interior use of the insured manufacturer's lime arose from one occurrence, that under California law, all claims arose from one occurrence caused by manufacturer's failure to warn end-users of unsuitability of its product for interior use.

*EOTT Energy Corp. v. Storebrand Internat. Ins. Co.*, 45 Cal. App. 4th 565, 575 (1996) (Croskey, J) reversed the trial court's finding that 653 thefts of the petroleum products were multiple occurrences, each subject to a $100,000 deductible. "As used in the policy, the term 'occurrence' reasonably contemplated that multiple claims could, in at least some circumstances, be treated as a single occurrence or loss" to which a single deductible would apply. "[A] series of *related* acts, attributable to a *single* cause, may be treated as having been caused by one occurrence." *Id.* at 576.

*EOTT* cited numerous other cases including *Chemstar* and also *Mead*

*Reinsurance v. Granite State Ins. Co.* 873 F.2d 1185, 1188 (9th Cir. 1988) (11 separate lawsuits alleging excessive force by police were founded upon alleged policy of condoning police brutality and thus constituted a single "occurrence"); *Champion Intern. Corp. v. Continental Cas. Co.* 546 F.2d 502, 506, cert.den., 434 U.S. 819 (2d Cir. 1976) (continuous and repeated sale of defective paneling-used in one thousand four hundred vehicles-constituted one "occurrence" even though it resulted in damages to a large number of individual consumers); *Appalachian Ins. Co. v. Liberty Mut. Ins. Co.*, 676 F.2d 56, 61 (3rd Cir. (Pa.) 1982) [insured's pattern of employment discrimination constituted one "occurrence" even though resulting in multiple claims over extended periods]; *Howard, Weil, Labouisse, Friedrichs v. Ins. Co.* 557 F.2d 1055, 1059-1060 (5th Cir. 1977) (a series of trades and bad checks constituted "a single ongoing episode resulting in a single loss" under a broker's blanket bond.); *Associated Indem. Corp. v. Dow Chemical Co.* 814 F.Supp. 613, 623 (E.D.Mich. 1993) (damage to different buildings caused by same defect in building material constituted one "occurrence").

The facts alleged in the underlying lawsuits establish that only one "occurrence" (i.e., Big 5's corporate policy decision). The undisputed evidence is that Big 5 satisfied this single "occurrence" SIR by paying more than $250,000 in defense expenses in the first case, the *Zimerman* action. [**BSUF** ¶ 72] Since the underlying lawsuits against Big 5 arise from the same corporate decision "occurrence," and because the insurers sold SIR "per occurrence" policies instead of SIR "per claim" policies, [**BSUF** ¶ 5, 8, 13, 15] Zurich and Hartford cannot impose on Big 5 the requirement to the SIR on a "per claim" basis.

### 4. SIR "Stacking" Is Prohibited And Immediate Payment Is Required

Big 5 is also not required to pay a SIR per policy or per insurer but only once per "occurrence." In *Montgomery Ward & Co. v. Imperial Cas. & Indem. Co.* 81 Cal.App.4th 356, 370 (2000), the insured sought a defense from four successive

22

insurers to a lawsuit for environmental contamination occurring during the years all policies were in force. The court disallowed such "horizontal exhaustion" and "stacking" of successive policies' SIRs because "stacking of retained limits would have the effect of affording an insured far less coverage for occurrence-based claims than the insured has purchased." *Montgomery Ward* followed *California Pacific Homes, Inc. v. Scottsdale Ins. Co.*, 70 Cal. App. 4th 1187, 1193-1194 (1999) which similarly rejected the insurers' request to "stack" the SIRs in two insurers' policies issued for consecutive one-year terms over a five year period.  Each policy contained a $250,000 "retained limit," requiring the insured to pay that sum towards a judgment or settlement as a condition to triggering the insurer's coverage liability.

The Zurich's and Hartford's Policies promise to pay all defense expenses for a potentially covered claim after the "per occurrence" SIR is satisfied. No policy language permits delay or avoidance of reimbursement of defense expenses once the SIR is satisfied. No words of limitation can be added to the policy to justify the insurers' failure to promptly and fully reimburse those defense expenses. *Safeco Ins. Co. v. Robert S.*, 26 Cal. 4th 758, 764 (2001) ("[W]e cannot read into the policy what Safeco has omitted.")

Policies promising defense reimbursement similar to those here have been held to require "**payment of legal expenses as incurred**." *Gon v. First State Ins. Co.*, 871 F.2d 863, 868 (9th Cir. 1989), citing *Okada v. MGIC Indem. Corp.*, 823 F.2d 276 (9th Cir.1986). There is no policy language permitting delayed payments.

## IV.    NO EXCLUSIONS BAR THE POTENTIAL FOR COVERAGE

The Zurich Policies exclude coverage for "PERSONAL AND ADVERTISING" injury arising from any statute, ordinance, or regulation that prohibits or limits the sending, transmitting, communication or distribution of material or information. [**BSUF** ¶¶ 9-10]  The Hartford Policy has a virtually identical exclusion in addition to an exclusion titled "RIGHT OF PRIVACY CREATED BY STATUTE" eliminating coverage for "PERSONAL OR ADVERTISING INJURY" "arising out of the violation of a person's right of

privacy created by any state or federal act." [**BSUF** ¶ 15]

Here, the underlying allegations that trigger Big 5's right to reimbursement were not based on any statute but are ingrained in California's Constitution. A claim premised on California's constitutional right of privacy arises from Article I, Section 1 of the California Constitution. *Hill,* 7 Cal. 4th at 15. Unlike statutes, ordinances, or any state or federal act, the California Constitution is "a document of independent force." *People v. Rivera*, 127 Cal.App.3d 136, 144, (1981). Constitutional provisions establish the standards upon which a statute's legitimacy is determined. *Wright v. Compton Unified Sch. Dist.*, 46 Cal.App.3d 177, 183 (1975) ("The state constitution is controlling and statutes which are inconsistent with and contrary to constitutional provisions cannot stand."). The California Constitution creates the state's ability to pass laws and therefore cannot itself be a statute, ordinance, regulation or state act. *De Asis v. Dep't of Motor Vehicles*, 112 Cal. App. 4th 593, 599 (2003).

These exclusions cannot avoid coverage where the policies explicitly promise to cover suits alleging violations of the right to privacy. The policies anticipate that there are privacy rights, like the California constitutional right to privacy, beyond those created by statute and specifically agrees to cover them. Interpreted any other way, the exclusion is contradictory to the express grant of coverage and is ineffective.

Defeating a duty to defend based upon a policy exclusion is very difficult. Here Zurich and Hartford must prove that no matter what the context, the underlying allegations could never create any liability covered by its Policy "in all possible worlds." It cannot meet that test in light of the potential for amendment of the pleading that actually occurred in the consolidated amended complaint in the *Coordination Proceedings*.[14]

---

[14] *J. Lamb, Inc.*, 100 Cal. App. 4th at 1038-39 (2002) ("[A]n insurer may only defeat an existing potential for coverage by **undisputed facts that conclusively negate such coverage**. This is particularly true where the insurer seeks to defeat coverage by reliance on an exclusion. An insurer may rely on an exclusion to deny coverage only if it provides conclusive evidence demonstrating that the exclusion applies. . . . Thus, an **insurer** that wishes to rely on an exclusion **has the burden of proving, through**

1    The undisputed allegations of the underlying complaints make it impossible for

2    Zurich or Hartford to prove the application of their exclusions, "through conclusive

3    evidence … in all possible worlds."  The right of privacy created by statute exclusions

4    therefore does not bar Big 5's right to reimbursement of defense expenses.

5    **V.    CONCLUSION**

6        Big 5 seeks a partial summary judgment that Zurich and Hartford owed and

7    breached their duties to reimburse defense expenses in the Underlying Actions and

8    that Big 5 has met its single self insured retention resulting from a single occurrence

9    by paying $250,000 in defense expenses in the *Gonzalez* action.

10

11   Dated:  June 18, 2012                    **GAUNTLETT & ASSOCIATES**

12                                            By:    /s/ James A. Lowe

13                                                   David A. Gauntlett
                                                     James A. Lowe
14                                                   Andrew M. Sussman
                                                 Attorneys for Plaintiff
15                                               Big 5 Sporting Goods Corporation

16

17

18

19

20

21

22

23

24

25

26

27   ───────────────────

28   **conclusive evidence**, that the exclusion applies **in all possible worlds**." (emphasis added)).