ELDON S. EDSON (SBN 168896)
eedson@selmanbreitman.com
JAN L. POCATERRA (SBN 134247)
jpocaterra@selmanbreitman.com
SELMAN BREITMAN LLP
11766 Wilshire Boulevard, Sixth Floor
Los Angeles, CA  90025
Telephone:      (310) 445-0800
Facsimile:      (310) 473-2525
Attorneys for Defendant
ZURICH AMERICAN INSURANCE
COMPANY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIG 5 SPORTING GOODS CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>ZURICH AMERICAN INSURANCE COMPANY, a New York corporation; and HARTFORD FIRE INSURANCE COMPANY, a Connecticut corporation,<br><br>Defendants. | CASE NO.  CV12-3699-DMG (MANx)<br><br>[Assigned to Hon. Dolly M. Gee]<br><br>**ZURICH AMERICAN INSURANCE COMPANY'S NOTICE OF CORRECTED MOTION AND CORRECTED MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT OF ISSUES; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date   :   August 10, 2012<br>Time  :   2:00 p.m.<br>Ctrm. :   7 - Second Floor<br>            Spring Street Courthouse<br><br>Complaint Filed: April 27, 2012 |

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at 2:00 p.m. on August 10, 2012, in Courtroom 7 of the United States District Court, located at 312 N. Spring Street, Los Angeles, California, the Honorable Dolly M. Gee, Judge Presiding, defendant and counterclaimant ZURICH AMERICAN INSURANCE COMPANY ("Zurich") will and hereby does move this Court for an order granting summary judgment or, in the

1

Selman Breitman LLP
ATTORNEYS AT LAW

Selman Breitman LLP
ATTORNEYS AT LAW

alternative, partial summary judgment of issues against plaintiff and counter-defendant BIG 5 SPORTING GOODS CORPORATION ("Big 5") on Big 5's complaint for declaratory judgment, breach of contract, and breach of the duty of good faith and fair dealing.

This corrected motion is made pursuant to the Federal Rules of Civil Procedure, Rule 56, on the grounds that no triable issue of material fact exists to require trial on the merits and that Zurich is entitled to a complete summary judgment as a mater of law.  The summary judgment motion is made on the grounds that Zurich owed no obligation to defend or indemnify Big 5 in various underlying actions with allegations of violations against Big 5 related to the Song Beverly Credit Card Act ("Song Beverly Act") because Statutory Violation Exclusions in the Zurich insurance policies apply to completely bar coverage.  Thus, Big 5 is not entitled to any declaratory relief because no breach of contract or breach of the covenant of good faith and fair dealing occurred.  Instead, Zurich is entitled to full reimbursement of all defense costs and settlement sums which it has paid on behalf of Big 5 regarding said underlying actions.

In the alternative, Zurich seeks partial summary judgment as to the three causes of action found in plaintiff's complaint because plaintiff Big 5 cannot prevail on its claims related to the declaratory relief, breach of contract and bad faith due to the following issues: 1) there is no coverage for claims which solely seek civil penalties whether said penalties arise out of the Song Beverly Act, the Consumer Remedies Act or Business and Professional Code, section 17200; 2) the negligence claims in the underlying actions do not seek damages for "bodily injury" or "property damage"; 3) as a matter of law, there can be no viable privacy invasion or unlawful intrusion claims based on conduct violating the Song Beverly Act in any of the underlying actions; 4) no attorney's fees are owed under the Zurich policies related to underlying causes of action which present no potential for coverage and such fees are not deemed "damages".  Zurich seeks partial summary judgment on

2

each issue, respectively, and seeks a declaration from this Court that Zurich is entitled to reimbursement of defense costs as to the uncovered claims.

However, if this Court rules favorably on all four issues above, Big 5 will not be able to establish that the Zurich insurance policies provide any coverage and there will be no defense obligations.  In that circumstance, Zurich would have a right to full summary judgment and complete reimbursement of all defense costs and settlement sums it expended.

This corrected motion is supported by this Notice, the attached Memorandum of Points and Authorities, the concurrently filed Statement of Uncontroverted Facts and Conclusions of Law, the Declaration of Thomas DeLuca, the accompanying Joint Appendix of Exhibits, the complete file and records herein, such additional evidence and arguments as may be presented at the hearing on this motion and any other grounds that the court deems just and proper.

Respectfully submitted,

DATED:  July 5, 2012           SELMAN BREITMAN LLP


By: /s/Jan Pocaterra
        ELDON S. EDSON
        JAN L. POCATERRA
    Attorneys for Defendant
    ZURICH AMERICAN INSURANCE
    COMPANY

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ........................................................................................ 1

II.    SUMMARY OF FACTS ............................................................................ 1

    A.   The 2008 Song Beverly Actions, Tender And Response To Same. ........................................................................................... 1

    B.   The 2011 Song Beverly Actions, Tender And Response To Same. ........................................................................................... 2

    C.   Zurich's Reservations Of Rights And Payments To Big 5 ................... 3

    D.   Relevant Information On Terms In The Zurich Policies. ..................... 4

III.   ZURICH IS ENTITLED TO SUMMARY JUDGMENT IN THIS CASE. ........................................................................................................ 8

IV.    STATUTORY VIOLATION EXCLUSIONS IN THE ZURICH POLICIES BAR ALL COVERAGE FOR BIG 5 FOR THE UNDERLYING ACTIONS ....................................................................... 9

    A.   "Arising Directly Or Indirectly Out Of" Is Broadly Construed And Bars Coverage For Both Statutory And Tort Related Privacy Claims Based On Allegations Of Song Beverly Violations. .............. 10

    B.   The Term "Any" Incorporates A Bar For All Statutes Which Prohibit Transmission Or Communication Of Information. ............... 13

    C.   The Song Beverly Actions Allege Communication Of Information. ...................................................................................... 14

    D.   A Clear Policy Exclusion Should Be Enforced As Written. ............... 15

V.     ZURICH IS ENTITLED TO FULL REIMBURSEMENT FOR DEFENSE COSTS AND SETTLEMENT SUMS IT EXPENDED. .......... 16

VI.    IN THE ALTERNATIVE, ZURICH IS ENTITLED TO FULL OR PARTIAL SUMMARY JUDGMENT ON THE FOLLOWING ISSUES. ................................................................................................... 18

    A.   No "Personal And Advertising Injury" Damages Can Be Awarded; California Courts Limit Song Beverly Claims To Civil Penalties And Bar Common Law And Statutory Privacy Causes Of Action. ...................................................................................... 18

    B.   The Negligence Claims In The Song Beverly Act Complaints Fail To State Damages For "Bodily Injury" Or "Property Damage". ...................................................................................... 20

    C.   Civil Penalties For Song Beverly Act Violations Or Section 17200 Claims Are Not Covered "Damages" Under California Precedent. ..................................................................................... 22

    D.   Attorney's Fees Awarded To Underling Song Beverly Act Plaintiffs Would Not Be Covered Under California Court Decisions. ..................................................................................... 23

VII.   ZURICH SEEKS RECOVERY OF UNCOVERED DEFENSE COSTS. ..................................................................................................... 24

VIII.  CONCLUSION ........................................................................................ 25

Selman Breitman LLP
ATTORNEYS AT LAW

i

CV 12-3699-DMG (MANx)

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*
(1986) 477 U.S. 242.................................................................................8, 9

*Barseback Kraft AB v. United States,*
121 F.3d 1475 ......................................................................................13

*Celotex Corp. v. Catrett*
(1986) 477 U.S. 317, 106 S.Ct. 2548.......................................................9, 18

*Continental Casualty Company v. City of Richmond*
(9th Cir. 1985) 763 F.2d 1076 [applying California law] ...........................11

*Fleck v. KDI Sylvan Pools, Inc.,*
981 F.2d 107 ......................................................................................13

*Gulf Underwriters Insurance Co. v. KSI Services, Inc.*
(4th Cir. 2007) 233 Fed. Appx. 239.............................................................12

*Korn v. Polo Ralph Lauren Corp.*
(E.D. Cal. 2008) 644 F.Supp.2d 1212 ...................................................18, 22

*Paulson v. State Farm Mutual Insurance Co.*
(C.D.Cal. 1994) 867 F.Supp. 911 .................................................................9

*Red Ball Motor Freight, Inc. v. Employers Mutual Liability Insurance Co.*
(5th Cir. 1951) 189 F.2d 374, *supra*, at 1080 ...............................................11

*Religious Tech. Ctr. v. Wollersheim*
(9th Cir.1986) 796 F.2d 1076 ......................................................................19

*United States v. Rosenwasser,*
323 U.S. 360 ......................................................................................13

## STATE CASES

*AIU Insurance Company v. Superior Court*
(1990) 51 Cal.3d 807 .......................................................................22

*Aerojet-General,*
17 Cal.4th 38, 70 Cal.Rptr.2d 118, [948 P.2d 909]......................................17

*Baker v. National Interstate Insurance Co.*
(2009) 180 Cal.App.4th 1319 .......................................................16

*Bank of the West v. Superior Court*
(1992) 2 Cal.4th 1254.......................................................................22, 23

*Blue Ridge Insurance Co. v. Jacobsen*
(2001) 25 Cal.4th 489 .......................................................................20

Selman Breitman LLP
ATTORNEYS AT LAW

538761.1  465.30770

**TABLE OF AUTHORITIES**
**(Continued)**

Page

*Buss v. Superior Court*
(1997) 16 Cal.4th 35 .................................................................14, 24, 25

*Century Transit Systems, Inc. v. American Empire Surplus Lines Insurance*
*Co.* (1996) 42 Cal.App.4th 121 ................................................10, 11

*Combs v. State Farm Fire & Casualty Co.*
(2006) 143 Cal.App.4th 1338 .........................................................24

*Cutler-Orosi Unified School District v. Tulare County School etc. Authority*
(1994) 31 Cal.App.4th 617 .......................................................22, 24

*DeAnza Santa Cruz Mobile Estates Homeowners Association v. DeAnza*
*Santa Cruz Mobile Estates,*
94 Cal.App.4th 890,,114 Cal.Rptr.2d 708 ......................................19

*Fogelstrom v. Lamps Plus, Inc.*
(2d Dist. 2011) 195 Cal.App.4th 986 .......................................19, 20

*Health Net, Inc. v. RLI Ins. Co.*
(2012), 2012 WL 1850929, __ Cal.Rptr.3d ..................................24

*Hill v. National Collegiate Athletic Association*
(1994) 7 Cal.4th 1 ........................................................................20

*McLaughlin v. National Union Fire Insurance Co.*
(1994) 23 Cal.App.4th 1132 .........................................................21

*Minkler v. Safeco Insurance Co. of America*
(2010) 49 Cal.4th 315 ..................................................................13

*National Insurance Underwriters v. Carter*
(1976) 17 Cal.3d 380 ....................................................................16

*Palmer v. Truck Insurance Exchange*
(1999) 21 Cal.4th 1109 .................................................................16

*Pineda v. Williams Sonoma*
(2011) 51 Cal.4th 524 ...................................................................14

*Rosen v. State Farm General Insurance Co.*
(2003) 30 Cal.4th 1070 .................................................................16

*San Diego Housing Com. v. Industrial Indemnity Co.*
(2002) 95 Cal.App.4th 669 ...........................................................24

*Scottsdale Insurance Co. v. MV Transportation*
(2005) 36 Cal.4th 643 ............................................................16, 17, 18

Selman Breitman LLP
ATTORNEYS AT LAW

iii

**TABLE OF AUTHORITIES**
**(Continued)**

Page

*Southgate Recreation and Park District v. California Associate For Park And Recreation Insurance* (2003)
106 Cal.App.4th 293 ......................................................................... 10

*Estate of Starkweather*
(1998) 64 Cal.App.4th 580 ........................................................... 19

*State Farm General Insurance Co. v. Mintarsih*
(2009) 175 Cal.App.4th 274 .................................................. 23, 25

*Waller v. Truck Insurance Exchange, Inc.*
(1995) 11 Cal.4th 1 ........................................................... 21, 22

**DOCKETED CASES**

*Gonzalez v. Big 5,*
Case No. 37-2008-000383307 .................................................. 2

*Zimerman v. Big 5*
Case No. BC383834 ............................................................ 1, 2, 4

**FEDERAL STATUTES**

Fed.R.Civ.P. 56 .............................................................. 8, 18

**STATE STATUTES**

California Business & Professions Code Section 17200 .................... 2, 22

California Civil Code section 1747 .......................................... 2

California Civil Code section 1747.08 ............................... 16, 18, 19

California Civil Code section 2860 ........................................... 4

California Code of Civil Procedure section 1021.5 ...................... 23

Selman Breitman LLP
ATTORNEYS AT LAW

538761.1  465.30770

CV 12-3699-DMG (MANx)

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Via cross-motions for summary judgment, the parties in this action seek this Court's guidance on a number of legal issues regarding insurance coverage for lawsuits filed against Big 5 Sporting Goods Corporation alleging violations of the Song Beverly Credit Card Act. That statute prohibits retailers from requesting and recording "personal identification information", including addresses or ZIP Codes, at the time of a credit card transaction to purchase goods. Zurich American Insurance Company issued Commercial General Liability Policies to Big 5 and has accepted its insured's tender for certain "Song Beverly Actions." However, under well established California law, Zurich has no defense obligations because no potential for coverage of these lawsuits exists. Zurich respectfully requests this Court to grant it summary judgment finding that because coverage is non-existent, Zurich has not breached the insurance contracts nor acted in bad faith.

## II.   SUMMARY OF FACTS

### A.   The 2008 Song Beverly Actions, Tender And Response To Same.

The first Song Beverly Act lawsuit against Big 5, *Zimerman v. Big 5*, Case No. BC383834, was filed on January 15, 2008 in the Los Angeles County Superior Court. (Zurich's Separate Statement of Uncontroverted Facts and Conclusions of Law ("SUF"), No. 23) The *Zimerman* suit asserted two causes of action based on alleged violations of California statutes. (SUF, No. 24) The operative facts were the same for both causes of action resting on allegations that Big 5 requested or required credit card purchasers to provide ZIP Codes at the time of sale, which was printed on a credit card receipt. (SUF, No. 25) The *Zimerman* complaint alleged that Big 5 "used the personal information … for business purposes, including to create and maintain a database for in-house or other forms of marketing and advertising and/or to sell data to direct marketing specialists or other third parties." (SUF, No. 26)

*Zimerman's* first cause of action alleged that Big 5's practice as to ZIP Codes

CV 12-3699-DMG (MANx)

538761.1  465.30770

violated California Civil Code Section 1747 et seq., the Song Beverly Credit Card Act, ("Song Beverly Act") which limits recording of "personal identification information", including addresses, in connection with a credit card transaction. The second cause of action alleged violations of California Civil Code Section 1750, et seq. (the "Consumers' Legal Remedy Act"). (SUF, No. 27) The *Zimerman* prayer for relief sought: (1) certification of a class; (2) civil penalties provided under the Song Beverly Act; (3) injunctive relief; and (4) attorney's fees, costs and interests. (SUF, No. 28) Big 5 tendered this action to Zurich on February 8, 2008, and Zurich responded with a full reservation of rights letter on March 13, 2008. (SUF, No. 29)

On May 5, 2008, *Gonzalez v. Big 5*, Case No. 37-2008-000383307, was filed in San Diego County Superior Court on violations of the Song-Beverly Act. (SUF, No. 30) The complaint alleged violation of California Business & Professions Code Section 17200 based on the alleged Song-Beverly Act violations. There was a related privacy invasion claim alleging that Big 5 violated plaintiffs' privacy rights by requesting and recording ZIP Code information. (SUF, No. 31) Big 5 tendered the *Gonzalez* claim to Zurich on June 28, 2008 and on July 11, 2008, via full reservations of rights, Zurich accepted tender of the *Gonzalez* suit. (SUF, No. 32)

**B.    The 2011 Song Beverly Actions, Tender And Response To Same.**

Between the dates of February 14, 2011 and June 1, 2011, Big 5 was served with nine putative class action lawsuits based on alleged violations of the Song Beverly Act, all of which were tendered to Zurich, *Nelson, Motta, Valiente, Matatova, Mossler, Holmes*, *Weiner, Smith* and *Gabriel*. (SUF, No. 33) Of the nine suits, only two contained allegations of an invasion of privacy based on alleged acts by Big 5 prohibited by the Song Beverly Act as to requesting, recording and use of the ZIP Code information; these were the *Nelson* and the *Motta* actions. (SUF, No. 34) The other seven suits were based purely on statutory violations under the Song Beverly Act and Business & Professions Code, section 17200. (SUF, No. 35)

Zurich accepted tender of the *Nelson* and *Motta* actions under a full

Selman Breitman LLP
ATTORNEYS AT LAW

1   reservation of rights on  June 2, 2011. (SUF, No. 36) Denial letters were sent on

2   May 27, 2011 as to six of the seven lawsuits. Denial was sent as to the *Gabriel*

3   action on September 21, 2011. (SUF, No. 37)

4       In October 2011, all nine of the Song Beverly Actions were ordered into a

5   *Coordination Proceeding*, Case No. JCCP 4667, in the Los Angeles County

6   Superior Court. Plaintiffs filed an Amended Consolidated Complaint as to all

7   actions which, with allegations on Song Beverly claims, contained related causes for

8   negligence, invasion of privacy and unlawful intrusion based on the alleged

9   violations of the Song Beverly Act. (SUF, No. 38) On October 28, 2011, Big 5

10  tendered this Amended Consolidated Complaint to Zurich and to Hartford Fire

11  Insurance Company ("Harford"), its subsequent carrier. On December 19, 2011,

12  Zurich agreed to participate in Big 5's defense, subject to a full reservation of rights.

13  (SUF, No. 39)

14       **C.    Zurich's Reservations Of Rights And Payments To Big 5.**

15       All of Zurich's reservation of rights and denial letters on the Song Beverly

16  Actions to Big 5 reserved rights on the coverage issues raised in this cross-summary

17  judgment/partial summary judgment motion including: 1) Statutory Violation

18  Exclusions; 2) no coverage for civil penalties claims, i.e., the Song Beverly Act, the

19  Consumer Remedies Act or Business and Professional Code, section 17200; 2) no

20  damages for "bodily injury" or "property damage" in underlying plaintiffs'

21  negligence claims; 3) no viable privacy invasion/unlawful intrusion claims based on

22  conduct violating the Song Beverly Act ; 4) no attorney's fees awards covered; and

23  5) the right to recovery of all sums expended if there is a determination of no

24  coverage, or, alternatively the right to reimbursement of defense costs for uncovered

25  claims.[1] (SUF, No. 40)  Zurich also reserved rights on exhaustion of Big 5's

26  $250,000 Self Insured Retention ("SIR"), a condition precedent to Zurich's

27  ───────────────

28  [1] There are additional reservations of rights in all Zurich's reservation and denial letters to Big 5 which Zurich does not waive by the fact that said reservations are not listed above or discussed herein.

3

Selman Breitman LLP
ATTORNEYS AT LAW

538761.1   465.30770

obligations, per the SIR Endorsements in all three policies. (SUF, No. 41)  On the five actions for which Zurich accepted tender, Zurich also reserved rights under the California "Cumis counsel" statute, Civil Code section 2860. (SUF, No. 42)

Under this full reservations of rights, Zurich made a defense costs payment to Big 5 on the *Zimerman* matter of $ 27,675.03, and also made a settlement payment of $30,000.00 as to that matter. (SUF, No. 43)  In addition, under the same reservations of rights, Zurich has made payments to Big 5 as to defense costs for certain of the 2011 Song Beverly Actions and the *Coordination Proceeding* which total $86,010.59 (Declaration of Thomas DeLuca, ¶ 4-6.)

**D.     Relevant Information On Terms In The Zurich Policies.**

Zurich issued three Commercial General Liability ("CGL") Policies of insurance to Big 5.  The first, Policy No. GLO 9262202-00, was issued effective September 25, 2007 through September 25, 2008. (SUF, No.1) The second, Policy No. GLO 9262202-01, was issued effective September 25, 2008 through September 25, 2009. (SUF, No. 2)  The third, Policy No. GLO 9262202-02, was issued effective September 25, 2009 through September 25, 2010. (SUF, No.3)

Pursuant to the terms and conditions stated within Coverage A. of the CGL Coverage Form, the Zurich policies offered coverage for "bodily injury" or "property damage" during the policy period caused by an "occurrence". (SUF, No. 4) Coverage A of the CGL Coverage Form, in all Zurich policies provided an Insuring Agreement for "bodily injury" and "property damage" liability:

Coverage A Bodily Injury and Property Damage Liability

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies  (SUF, No. 12)

The definition of "bodily injury" was set out in the three policies: "Bodily injury" means bodily injury, sickness or disease sustained by a person,

4

1   including death resulting from any of these at any time. (SUF, No. 13)

2        The original definition of "occurrence" was set out as follows:

3           "Occurrence" means an accident, including continuous or

4        repeated exposure to substantially the same general harmful

5        conditions. (SUF, No. 14)

6        The definition of "property damage" was set out in the policies as follows:

7          "Property damage" means:

8          a.  Physical injury to tangible property, including all resulting

9        loss of use of that property.  All such loss of use shall be deemed

10       to occur at the time of the physical injury that caused it; or

11         b.  Loss of use of tangible property that is not physically injured.

12       All such loss of use shall be deemed to occur at the time of the

13       "occurrence" that caused it. (SUF, No. 15)

14      Coverage B of the CGL Coverage Form, provided an Insuring Agreement for

15  Personal and Advertising Injury Liability.  (SUF, No. 16) Pursuant to the terms and

16  conditions of Coverage B., coverage was offered for "personal and advertising

17  injury" caused by an offense committed during the policy period:

18      <u>Coverage B Personal and Advertising Injury Liability:</u>

19      1.  Insuring Agreement

20        a.  We will pay those sums that the insured becomes legally

21        obligated to pay as damages because of "personal and advertising

22        injury" to which this insurance applies. (SUF, No.    16)

23  The policies' definition of "personal and advertising injury" was set out:

24        "Personal and advertising injury" means injury, including

25       consequential "bodily injury", arising out of one or more of the

26       following offenses:

27      a.  False arrest, detention or imprisonment;

28      b.  Malicious prosecution;

538761.1  465.30770

c.  The wrongful eviction from, wrongful entry into, or invasion of
the right of private occupancy of a room, dwelling or premises that a
person occupies, committed by or on behalf of its owner, landlord or
lessor;

d.  Oral or written publication, in any manner, of material that
slanders or libels a person or organization or disparages a person's
or organization's goods, products or services;

e.  Oral or written publication, in any manner, of material that
violates a person's right of privacy;

f.  The use of another's advertising idea in your "advertisement"; or,

g.  Infringing upon another's copyright, trade dress or slogan in your
"advertisement."  (SUF, No. 17)

All three Zurich policies contained an endorsement with a Statutory Violation
Exclusion which barred coverage for "bodily injury" and "property damage" arising
directly or indirectly out of Big 5's violation of statutes which prohibit or limit the
distribution, transmission, communication of information. (SUF, No. 18) The Zurich
policies effective from September 2007 to September 2008 and September 2008 to
September 2009 contained this Statutory Violation Exclusion with the following:

A. The following exclusion is added to Paragraph 2., Exclusions of
Section 1 Coverage A - Bodily Injury And Property Damage Liability:

2.  Exclusions

This insurance does not apply to:

DISTRIBUTION OF MATERIAL IN VIOLATION OF
STATUTES.

"Bodily Injury" or "property damage" arising directly or indirectly
out of any action or omission that violates or is alleged to violate: …

c.  Any statute, ordinance or regulation, other than the TCPA or
CAN-SPAM Act of 2003, that prohibits or limits the sending,

CV 12-3699-DMG (MANx)

538761.1  465.30770

transmitting, communicating or distribution of material or information. (SUF, No. 19)

All three Zurich policies contained a Statutory Violation Exclusion which barred coverage for "personal and advertising injury" arising directly or indirectly out of Big 5's violation of statutes which prohibit or limit the distribution, transmission,  or communication of information. (SUF, No. 20) The policies effective from September 2007 to September 2008 and September 2008 to September 2009 contained a Statutory Violation Exclusion with the following:

B. The following exclusion is added to Paragraph 2., Exclusions of Section 1 – Coverage B - Personal And Advertising Injury Liability:

2. Exclusions

This insurance does not apply to:

DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES.

"Personal and Advertising Injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate: …

c. Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information. (SUF, No. 21)

A similar version of the Statutory Violation Exclusion was included in the Zurich policy effective September 2009 through September 2010 which stated:

Distribution of Material in Violation of Statutes Exclusion Amendment

This endorsement modifies insurance provided under the:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Exclusion q. under Paragraph 2., Exclusions of Section I – Coverage A - Bodily Injury And Property Damage Liability is replaced by the following:

7

CV 12-3699-DMG (MANx)

Selman Breitman LLP
ATTORNEYS AT LAW

538761.1  465.30770

2.  Exclusions

This insurance does not apply to:

    q.  Distribution Of Material In Violation Of Statutes

    "Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate: …

        (4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA, that relates to, prohibits or limits the accessing, collection, recording, printing, dissemination, disposal, sending, transmitting, communicating or distribution of material or information.

B.  Exclusion p. under Paragraph 2., Exclusions of Section 1 – Coverage B – Personal and Advertising Injury Liability is replaced by the following:

2.  Exclusions

This insurance does not apply to:

    p.  Distribution of Material in Violation of Statutes

    "Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

        (4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA, that relates to, prohibits or limits the accessing, collection, recording, printing, dissemination, disposal, sending, transmitting, communicating or distribution of material or information. (SUF, No. 22)

III.  **ZURICH IS ENTITLED TO SUMMARY JUDGMENT IN THIS CASE.**

    A motion for summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, (1986) 477 U.S. 242,

8

538761.1  465.30770

Selman Breitman LLP
ATTORNEYS AT LAW

247-48.  The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson, supra,* 477 U.S. at 250. The summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action.  *Celotex Corp. v. Catrett,* (1986) 477 U.S. 317, 372, 106 S.Ct. 2548, 2555.  Summary judgment is particularly appropriate to adjudicate issues of the duty to defend, the duty to indemnify, and breach of the covenant of good faith and fair dealing.    In fact, this process allows courts "…to address at the earliest possible stage the initial determination of whether, as a matter of law and based on the undisputed facts, the insurer's actions are unreasonable and in bad faith." *Paulson v. State Farm Mut. Ins. Co.* (C.D.Cal. 1994) 867 F.Supp. 911, 914.

IV.    **STATUTORY VIOLATION EXCLUSIONS IN THE ZURICH POLICIES BAR ALL COVERAGE FOR BIG 5 FOR THE UNDERLYING ACTIONS.**

All three "Statutory Violations Exclusions" in the Zurich policies state in pertinent part that there is no insurance for "bodily injury", "property damage", or "personal and advertising injury" "arising directly or indirectly out of any action or omission that violates or is alleged to violate … any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information." (SUF, Nos. 18-21)  No California court has addressed either of these exclusions. However, a number of California court decisions have addressed two of the most significant phrases and/or terms in these exclusions governing the breadth of this coverage bar: a) "arising directly or indirectly out of"; and b) "any."  Combined, this dual body of precedent operates to completely extinguish coverage for Big 5 as to all the underlying actions based on alleged violations of the Song Beverly Act. These exclusions are clear and explicit, thus, they should be enforced as written.

Selman Breitman LLP
ATTORNEYS AT LAW

A.    **"Arising Directly Or Indirectly Out Of" Is Broadly Construed And Bars Coverage For Both Statutory And Tort Related Privacy Claims Based On Allegations Of Song Beverly Violations.**

Standing alone, the phrase "arising out of" is broadly construed by California courts, even in the context of a policy exclusion.  For example, in *Southgate Recreation and Park District v. California Assoc. For Park And Recreation Insurance* (2003) 106 Cal.App.4th 293, a park district contracted with a general contractor to build a golf course, but the general contactor went bankrupt and the sureties on the project's performance and payment bonds defaulted.  When unpaid subcontractors brought suit against the park district for payment of the goods and services provided, the park district sought coverage from a joint powers authority administering the district's liability risk pooling fund.  The coverage agreement contained an exclusion for liability "arising out of or related to construction … contracts or to any other contract for the purchase of goods or services."

The California Court of Appeal held that the exclusion barred the subcontractors' claims for conversion, breach of trust and violation of stop notice:

> The term "'[a]rising out of' is a broad concept requiring only a 'slight connection' or an 'incidental relationship' between the injury and excluded risk [Citation.]   Such language 'requires [the court] to examine the conduct underlying the … lawsuit, instead of the legal theories attached to the conduct.'" [Citations omitted.]  As this court has noted, the "'arising out of' connective … broadly links" the exclusionary operative events with the exclusion.  [Citation omitted.]  This court has also generally equated "arising out of" with "origination, growth or flow from the event." *Id.* at 301.

Similarly, in *Century Transit Systems, Inc. v. American Empire Surplus Lines Ins. Co.* (1996) 42 Cal.App.4th 121, the court held that an assault and battery exclusion with the phase "arising out of" barred coverage for a claim by finding that

10

Selman Breitman LLP
ATTORNEYS AT LAW

538761.1 465.30770

the term "based on" "has the same effect as 'arising out of'." The court explained that "'[a]rising out of' is a broad concept requiring only a 'slight connection' or an 'incidental relationship' between the injury and the excluded risk." (*Id.* at 127 n. 4.)

Even more on point is the Ninth Circuit's opinion in *Continental Casualty Company v. City of Richmond* (9th Cir. 1985) 763 F.2d 1076 [applying California law] which addressed a broader phrase like that found in the Zurich policies. There, the issue centered on whether a CNA public officials' liability policy covered claims asserted in a civil rights and wrongful death action. The pertinent exclusion barred coverage for any claim "arising <u>directly or consequentially</u> from bodily injury . . . or death of any person . . ." (emphasis added). The Ninth Circuit viewed the phrase "arising from" as central to the dispute and quoted from a Fifth Circuit decision which stated that "'arising from' implies something broader than causation":

> 'Arising out of' are words of much broader significance than 'caused by'. They are ordinarily understood to mean "'originating from' 'having its origin in,' 'growing out of' or 'flowing from' or in short, 'incident to, or having connection with'...." [quoting from *Red Ball Motor Freight, Inc. v. Employers Mutual Liability Insurance Co.* (5th Cir. 1951) 189 F.2d 374, 378] *City of Richmond*, *supra,* at 1080.

The *City of Richmond* Court dismissed the heirs' "causation analysis" argument around the exclusion that their civil rights claim was based on a prior pattern and practice of police brutality against black citizens, thus, not connected with the assault and battery death of their father. *Id.* at 1081. Instead, the Ninth Circuit opined that the claim "need bear only an incidental relationship to the injury to come within the exclusionary clause of the CNA policy, and the sequence of events is only one factor to consider in reaching this determination." *Id.*

The Ninth Circuit held that the generally broad interpretation given to "arising from" was "augmented" by the exclusion's use of "directly or consequentially":

> A broad interpretation of "arising from" in the context of the CNA

1  exclusionary clause is even more strongly suggested here by the

2  augmentation of "arising" with the words "directly or consequentially."

3  This language clearly implies that, to be excluded from coverage, a

4  claim need be only slightly connected to one of the types of injury that

5  is specifically identified for exclusion.  Where, as in this case, we find

6  an unmistakable connection between the bodily injury and death, and

7  the claims being asserted, CNA's exemption from any coverage

8  obligation is clear." *Id.* at 1081.

9       Multiple federal courts interpreting the identical phrase contained in Zurich's

10  exclusion, "arising directly or indirectly out of," construe the phrase extremely

11  broadly.  In *Gulf Underwriters Insurance Co. v. KSI Services, Inc*. (4th Cir. 2007)

12  233 Fed. Appx. 239, the relevant exclusion barred coverage for claims "arising

13  directly or indirectly out of … an act or omission that a jury, court or arbitrator finds

14  dishonest, fraudulent, criminal, malicious or was committed while knowing it was

15  wrongful."  The court addressed whether an errors and omissions policy covered

16  losses due to embezzlement of funds by an escrow's company's employee where the

17  escrow company was concurrently sued for negligent supervision.  The Court of

18  Appeals found the exclusion precluded coverage even though the negligence in

19  supervision was allegedly a distinct wrongful act covered by the policy.  The court

20  stated that while the negligent supervision may have been a contributing cause of

21  the loss, an equally important cause of the loss was the employee's criminal acts.

22       The policy language excluding coverage for damages arising "directly

23  or indirectly" out of criminal acts contemplates multiple causes of

24  liability and does not restrict the exclusion's operation to circumstances

25  in which the criminal act was the liability's direct or sole cause or even

26  its proximate or primary cause.  Thus, so long as one of the direct or

27  indirect causes of the loss was a criminal act, the exclusion operates to

28  deny coverage. *Id.* at 241.

Selman Breitman LLP
ATTORNEYS AT LAW

12

CV 12-3699-DMG (MANx)

Based on these legal authorities, there need only be a "slight connection" between the alleged privacy invasion acts and the conduct by Big 5 which allegedly violated the Song-Beverly Act to result in a complete bar of all damages claimed by underlying plaintiffs "arising directly or indirectly out of " the Song Beverly statutory violations. So long as one of the direct or indirect causes of plaintiffs' loss was conduct allegedly constituting a statutory violation, all damages based on that same or similar conduct are barred by Zurich's exclusions. (See also *Zurich Specialties London Limited v. Bickerstaff, Whatley, Ryan & Burkhalter, Inc.* (9th Cir. 2011) 425 Fed. Appx. 554, 555, "'arising out of' …. broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship.")

All three Zurich policies contain a Statutory Violations Exclusion which completely bars coverage for all Song Beverly Act claims; there is no potential for indemnity under the Zurich policies and no duty to defend Big 5 for any of the Song Beverly Actions.  Zurich requests this Court grant a summary judgment.

**B.**     **The Term "Any" Incorporates A Bar For All Statutes Which Prohibit Transmission Or Communication Of Information.**

California courts uniformly give a broad construction to the term "any" in an insurance policy.  For example, California decisions have consistently held that, viewed in isolation, a clause excluding coverage for particular conduct by "any" insured means that such conduct by one insured will bar coverage for all other insureds under the same policy on claims arising from the same occurrence. *Minkler v. Safeco Ins. Co. of America*, (2010) 49 Cal.4th 315, 322-323.  This expansive interpretation is in line with holdings, even in varying situations, by the U.S. Supreme Court and other federal courts.  The word 'any' is generally used in the sense of 'all' or 'every' and its meaning is most comprehensive." *Barseback Kraft AB v. United States*, 121 F.3d 1475, 1481, (Fed. Cir. 1997); *Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107, 115 (3rd Cir. 1992); see also *United States v.*

13

1   *Rosenwasser*, 323 U.S. 360, 362-63 (1945) ("any" employee means all employees

2   under the Fair Labor Standards Act, unless specifically excluded).

3     In Zurich's Statutory Violations Exclusions, the term "any" is used not once,

4   but twice to emphasize the preclusion of insurance for:

> "bodily injury", "property damage", or "personal and advertising
> injury" "arising directly or indirectly out of <u>any</u> action or omission that
> violates or is alleged to violate … <u>any</u> statute, ordinance or regulation,
> other than the TCPA or CAN-SPAM Act of 2003, that prohibits or
> limits the sending, transmitting, communicating or distribution of
> material or information. (emphasis added). (Jt.Appx., Ex. 3).

11     Consequently, any or all coverage for allegations that any or all alleged acts

12   of Big 5 violating the Song Beverly Act (limiting transmission of information)

13   which allegedly resulted in related, indirect claims for privacy invasion/unlawful

14   intrusion and negligence are barred.   The Zurich policies have no defense or

15   indemnity obligation for any or all injury or damages arising from any, or all, acts

16   which allegedly violate any, or all, statutes which prohibit or limit the transmission

17   or communication of information, i.e., "personal identification information".

### C. The Song Beverly Actions Allege Communication Of Information.

19     Under the Statutory Violation Exclusions, the statutorily prohibited or limited

20   conduct is "… the sending, transmitting, communicating or distribution of material

21   or information."   The Song Beverly Act was specifically designed to protect

22   consumers' privacy interests by preventing financial or personal information from

23   being communicated to strangers.   Indeed, the focus of the Song Beverly Act is to

24   prohibit retailers from "soliciting and recording information about the cardholder"

25   which bars all businesses from recording customers' ZIP Codes during a credit card

26   transaction.   *Pineda v. Williams Sonoma*, (2011) 51 Cal.4[th] 524, 532; Cal. Civil

27   Code section 1747.08(a).   In *Pineda*, the California Supreme Court broadly

28   construed the consumer protections and surmised the reasons behind the legislation

Selman Breitman LLP
ATTORNEYS AT LAW

14

limiting communication of a consumer's ZIP Code as follows:

> [it] Constitute[s] information unnecessary to the sales transaction that, alone or together with other data such as a cardholder's name or credit card number, can be used for the retailer's business purposes. Under this reading, a cardholder's ZIP code is similar to his or her address or telephone number, in that a ZIP code is both unnecessary to the transaction and can be used, together with the cardholder's name, to locate his or her full address. *Id.* at 537.

The allegations in the underlying Song Beverly Actions involve assertions that Big 5 was obtaining and communicating "personal identification information" – ZIP Codes.  According to the Merriam Webster Dictionary, the plain and ordinary meaning of "communication", or communicating, is "a process by which information is exchanged between individuals through a common system of symbols, signs, or behavior." (Webster's New Ninth New Collegiate Dict. (1st ed. 1985) p.266)  Here, Big 5 allegedly requested that its customers exchange personal identification information during the process of a credit card transaction – this can be nothing but "communication".  Then, allegedly Big 5 recorded their customers' communications which lead to the plaintiffs' filing the Song Beverly Actions.  Whether or not, Big 5 used its customers' ZIP Code communications after obtaining them is not relevant here; the Statutory Violation Exclusions operate to bar coverage for the Song Beverly Act claims because of the "communication" of information.

### D. A Clear Policy Exclusion Should Be Enforced As Written.

Notably, the Statutory Violation Exclusions do not require demonstrated proof or evidence of Big 5's transmission or communicative acts which allegedly violate the Song Beverly Act in relation to the underlying plaintiffs' personal identification information.  Neither is the operation of the three Statutory Violations Exclusions contingent on a determination of liability against Big 5 for Song Beverly Act violations.  These exclusions are triggered by "allegations" of statutory

Selman Breitman LLP
ATTORNEYS AT LAW

violations since the text states there is " no insurance for "bodily injury", "property damage", or "personal and advertising injury" "arising directly or indirectly out of any action or omission that violates or is alleged to violate …" any statute limiting transmission or communication of information. (emphasis added) (SUF, Nos. 19-21)

It is undisputable that each and every Song Beverly Action complaint alleged Big 5 violated Civil Code section 1747.08. (SUF, No. 27, 30, 33)  Even if these are frivolous allegations, under the plain language of the Statutory Violation Exclusions, there is no potential for coverage and thus no defense obligation.  An insurance company has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected. *National Ins. Underwriters v. Carter*, (1976) 17 Cal.3d 380, 386 (quoting *Continental Cas. Co. v. Phoenix Constr. Co.*, 46 Cal.2d 423, 432, 296 P.2d 801 (1956)).

Where an insurer has expressly precluded insurance coverage under a policy, courts should enforce the exclusion because "[I]f the policy language 'is clear and explicit, it governs.'" *Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109, 1115. Likewise, the California Supreme Court mandates that " "[W]e do not rewrite any provision of any contract, [including an insurance policy], for any purpose." *Rosen v. State Farm General Ins. Co.* (2003) 30 Cal.4th 1070, 1073.  In particular, "… a court may not rewrite a policy to bind an insurer to cover a risk which it did not contemplate covering, and for which it was not paid to provide coverage." *Baker v. National Interstate Ins. Co.* (2009) 180 Cal.App.4th 1319, 1328.  Therefore, this Court should refuse to rewrite Zurich's policy and enforce it as written.

## V.  ZURICH IS ENTITLED TO FULL REIMBURSEMENT FOR DEFENSE COSTS AND SETTLEMENT SUMS IT EXPENDED.

*Scottsdale Ins. Co. v. MV Transportation*, (2005) 36 Cal. 4th 643, states where there is a determination that a carrier never had coverage for a claim, the carrier is entitled to a complete reimbursement of all sums expended on both the defense and the indemnity of the insured. The California Supreme Court explained:

Selman Breitman LLP
ATTORNEYS AT LAW

538761.1  465.30770

CV 12-3699-DMG (MANx)

... in an action wherein none of the claims is even potentially covered because it does not even possibly embrace any triggering harm of the specified sort within the policy period caused by an included occurrence, the insurer does not have a duty to defend. ... 'This freedom is implied in the policy's language. It rests on the fact that the insurer has not been paid premiums by the insured for [such] a defense ... [T]he duty to defend is contractual. "The insurer has not contracted to pay defense costs" for claims that are not even potentially covered.' (*Aerojet–General*, supra, 17 Cal.4th 38, 59, 70 Cal.Rptr.2d 118, 948 P.2d 909, quoting *Buss*, supra, 16 Cal.4th 35, 47). *Id.* at 655.

... where, as here, the insurer does not deny a defense at the outset, but instead elects to provide one under a reservation of its right to reimbursement. By law applied in hindsight, courts can determine that no potential for coverage, and thus no duty to defend, ever existed. If that conclusion is reached, the insurer, having reserved its right, may recover from its insured the costs it expended to provide a defense which, under its contract of insurance, it was never obliged to furnish. *Id.* at 658.

Similar to the *Scottsdale v. MV Transportation* case, Zurich's policies never afforded potential coverage for any of Big 5's claims because every cause of action in each underlying complaint was either directly or indirectly caused by alleged statutory violations of the Song Beverly Act. Yet, Zurich agreed to defend certain claims and did so under a full reservation to rights, making clear that it was reserving the right to full recovery of all its expenditures.[2] (SUF, 40) Accordingly, if the court grants Zurich's motion for summary judgment on the Statutory Violation Exclusions, having reserved its right to full recovery on these exclusions as to each

---

[2] Zurich agreed to defend *Zimerman, Gonzalez, Nelson, Motta* and the *Coordination Proceeding* Actions.

CV 12-3699-DMG (MANx)

Selman Breitman LLP
ATTORNEYS AT LAW

538761.1   465.30770

1   tendered action, Zurich may obtain reimbursement of defense costs and indemnity

2   sums which, in hindsight, it never owed. *MV Transportation*, *supra*, at 658. Zurich

3   respectfully requests this Court to enforce the Statutory Violation Exclusions which

4   bar coverage and order that Zurich is entitled to a full reimbursement of all defense

5   and indemnity sums it expended on the Underlying ZIP Code actions against Big 5.

6   **VI.   IN THE ALTERNATIVE, ZURICH IS ENTITLED TO FULL OR**

7   **PARTIAL SUMMARY JUDGMENT ON THE FOLLOWING ISSUES.**

8       Upon a showing that there is no genuine dispute of material fact as to

9   particular claim(s) or defense(s), the court may grant summary judgment in the

10  party's favor on "each claim or defense—or the part of each claim or defense—on

11  which summary judgment is sought." FRCP 56(a). The purpose of partial summary

12  judgment "is to isolate and dispose of factually unsupported claims or defenses."

13  *Celotex v. Catrett*, (1986) 477 U.S. 317, 323-24, 106 S.Ct. 2548. In this action,

14  Zurich is entitled to partial summary judgment as to certain issues and/or defenses

15  which defeat the claims by plaintiff Big 5. Should this Court rule in Zurich's favor

16  on each of the following defenses, Zurich would then be entitled to a full summary

17  judgment and complete reimbursement of all sums expended on this matter for both

18  defense costs and indemnity sums. If only some issues are granted in Zurich's favor,

19  an order for reimbursement as to expenditures on the uncovered claims is requested.

20  **A.    No "Personal And Advertising Injury" Damages Can Be Awarded;**

21  **California Courts Limit Song Beverly Claims To Civil Penalties**

22  **And Bar Common Law And Statutory Privacy Causes Of Action.**

23      Several California courts have reviewed the issue of what remedies are

24  available to private claimants under the Song Beverly Act and each has limited

25  plaintiffs to the sole remedy allowed them by the California Legislature -- civil

26  penalties. In *Korn v. Polo Ralph Lauren Corp.* (E.D. Cal. 2008) 644 F.Supp. 2d

27  1212, 1219, the court barred plaintiffs' claims for injunctive relief under §1747.08.

28  The *Korn* Court relied on well-established case precedent holding that, "Where a

Selman Breitman LLP
ATTORNEYS AT LAW

18

new right is created by statute, the party aggrieved by its violation is confined to the statutory remedy if one is provided." *Estate of Starkweather*, (1998) 64 Cal.App.4th 580, 593.   Similarly, in *DeAnza Santa Cruz Mobile Estates Homeowners Ass'n v. DeAnza Santa Cruz Mobile Estates*, 94 Cal.App.4th 890, 912,114 Cal.Rptr.2d 708 (2001), the court opined: "Where a statute creates new rights and obligations not previously existing in the common law, the express statutory remedy is deemed to be the exclusive remedy available for statutory violations."   Indeed, the Ninth Circuit cautioned in *Religious Tech. Ctr. v. Wollersheim*, (9th Cir.1986) 796 F.2d 1076, 1088, "[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." As the *Korn* Court mandated:

> When enacted, the Song Beverly Act addressed the existing law that neither authorizes nor forbade merchants from requiring personal information as part of a credit card transaction.   As such, the statute created new rights. A plain reading of the statute as a whole reveals, unambiguously, that plaintiffs may sue for civil penalties while the Attorney General or other government actor may sue for both civil penalties and injunctive relief. Plaintiff, as a private citizen, is confined to the statutory remedy of civil penalties as expressly provided in § 1747.08(e). *Id.* at 1219.  (emphasis added).

The full weight of authority above voids any and all common law causes of action in the underlying plaintiffs' complaints against Big 5. Only the Song Beverly Act claims (Section 1747.08) remain allowing civil penalties which are not covered.

Even more apropos, a California Appellate Court recently refused to recognize both state constitutional privacy claims and common law privacy causes of action based on the Song Beverly Act.  It dismissed these attempts at recovery as a matter of law, noting that such ruling is proper in addressing "…whether a legally recognized privacy interest is present in a given case…" *Fogelstrom v. Lamps Plus, Inc.*, (2d Dist. 2011) 195 Cal. App. 4th 986, 990-993. Further, the *Fogelstrom* Court

19

Selman Breitman LLP
ATTORNEYS AT LAW

opined that plaintiffs did not state a "serious invasion" of privacy as to the conduct banned by the Song Beverly Act. *Id.* at 992. California law requires that under the constitution "...actionable invasions of privacy must be sufficiently serious in nature, scope and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Id.* quoting *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal. 4th 1, 39-40. The *Fogelstrom* Court ruled neither capture nor use of plaintiff's address without his knowledge or permission constituted an "egregious breach of social norms." *Id.* at 992.

The underlying plaintiffs face dual hurdles – the Korn mandate confining them to civil penalties, and the *Fogelstrom* edict that requesting, recording or use of ZIP Code information falls short of a "serious" invasion of privacy and cannot constitute an "egregious breach of social norms". Insurance coverage vanishes under either ruling; the combination renders that lack of coverage void a fortiori.

Equally importantly, Zurich reserved its rights to deny coverage on the grounds that underlying plaintiffs failed to state "personal and advertising injury" damages in all reservation and denial letters which were forwarded to Big 5 after tender of the Song Beverly Actions in both 2008 and 2011 and after tender of the *Coordination Proceeding*. (SUF, 40) An insurer can reserve its right to assert noncoverage unilaterally merely by giving notice to the insured. *Blue Ridge Ins. Co. v. Jacobsen*, (2001) 25 Cal.4th 489, 498. If the insurer adequately reserves its right to assert the noncoverage defense later, it will not be bound even by a settlement or judgment and can later raise the noncoverage defense previously reserved. *Id.* at 498-99. Therefore, Zurich requests that this Court grant summary judgment or partial summary judgment in favor of Zurich on the basis of this defense.

**B.   The Negligence Claims In The Song Beverly Act Complaints Fail To State Damages For "Bodily Injury" Or "Property Damage".**

A number of the underlying Song Beverly Act complaints, including the Consolidated Amended Complaint in the *Coordination Proceeding*, contain a cause

20

CV 12-3699-DMG (MANx)

of action for negligence. An insured's negligence could be covered under the Zurich policies, but only if the alleged negligence results in either "bodily injury" or "property damage" to the claimant during the policy period. However, in seeking recovery for the purported negligence of Big 5, none of the underlying plaintiffs alleged "bodily injury" losses under the definitions in the Zurich policies. For that, plaintiffs would need to be seeking damages for "bodily injury, sickness or disease" or "mental anguish, mental injury, shock, sickness, disease or disability." No allegations of this type of damage are found in the Song Beverly Actions. Therefore, there is no potential for coverage under the bodily injury liability provisions of the policies and Zurich has no duty to defend Big 5 for the negligence claims.

Likewise, no coverage for the negligence claim is afforded under the "property damage" coverage of Zurich's policies. None of the underlying plaintiffs have asserted damages for "physical injury to tangible property" or "loss of use of tangible property." Well established California law recognizes that an act triggering coverage must be an injury to or loss of tangible property, not damage to one's economic interest. *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 26.

Even were mental and physical distress alleged, although they are not, California courts refuse to find insurance coverage if such " bodily injury" is caused by an economic occurrence. *McLaughlin v. National Union Fire Ins. Co.* (1994) 23 Cal.App.4th 1132, 1150–1151. Here, all the underlying negligence counts allege that the "occurrence" was the requesting and/or recording of personal identification information by Big 5 which allegedly created a near potential for economic loss to plaintiffs via the "unknowing use" or "negligent sharing" of the ZIP Code information. As the California Supreme Court stated in the *Waller* decision:

> We agree with the Court of Appeal below that Keating, Chatton, and McLaughlin properly determined that CGL policies do not provide coverage for economic losses that cause emotional distress. As we have observed, the CGL policy provides coverage for "occurrences" that

Selman Breitman LLP
ATTORNEYS AT LAW

21

CV 12-3699-DMG (MANx)

cause bodily injury or tangible property losses. [Citation omitted] These policies were never intended to cover emotional distress damages that flow from an uncovered "occurrence," and the parties could not reasonably have expected that coverage would be expanded merely because a claim of emotional or physical distress is alleged as a result of the economic loss.[Citations omitted] *Waller*, *supra*, at 23.

California courts would find no potential for coverage and no corresponding duty to defend any of the negligence causes of action in the 2008 or 2011 Song Beverly Act complaints under the Zurich policies.  Thus, this Court should grant summary judgment or partial summary judgment in favor of Zurich on this issue.

## C.   Civil Penalties For Song Beverly Act Violations Or Section 17200 Claims Are Not Covered "Damages" Under California Precedent.

In California, "damages" under Zurich's standard liability policies' Coverage A. or Coverage B. are limited to "'compensation,' 'money,' 'recovered' by a party for 'loss' or 'detriment' it has suffered through the acts of another." *AIU Insurance Company v. Superior Court*, (1990) 51 Cal.3d 807, 825-26.   As noted, the underlying plaintiffs, as private citizens, are confined to the statutory remedy of civil penalties as expressly provided in the Song Beverly Act. *Korn v. Polo Ralph Lauren Corp*. supra, 644 F.Supp. 2d at 1219. Zurich owes no coverage obligation where the suit against the insured only complains of a violation of statute under which compensatory damages are not recoverable and only statutory penalties can be awarded. *Bank of the West v. Superior Court*, (1992) 2 Cal.4th 1254, 1266.

In similar fashion, several of the underlying plaintiffs' suits alleged violations of Business and Profession Code Section 17200 or the Consumer Legal Remedies Act. These claims also fail to raise a potential for coverage as they seek civil penalties or injunctive relief for unfair business practices.[3]  The California Supreme

---

[3]  Injunctive and equitable relief are available, but not covered "damages." *Cutler-Orosi Unified Dist. v. Tulare Co. School Auth.,* (1994) 31 Cal.App.4th 617, 631.

22

538761.1  465.30770

Court has recognized that "damages" may not be awarded under the statutory scheme, and that a claim for violation of these statutes raises no potential for coverage under any liability policy. *Bank of the West v. Superior Court*, supra, 2 Cal.4th at 1266. Therefore, Zurich respectfully requests that this Court grant partial summary judgment or complete summary judgment as to this issue if all issues included in the partial summary judgment motion are granted.

### D.  Attorney's Fees Awarded To Underling Song Beverly Act Plaintiffs Would Not Be Covered Under California Court Decisions.

The Zurich policy does not cover any attorney's fees awarded to the underlying Song Beverly Act plaintiffs under California Code of Civil Procedure Section 1021.5.  This statute provides that a court, upon motion, "may award attorney's fees to a successful party against one or more opposing party in any action which has resulted in the enforcement of an important right effecting the public interest." Initially, California Courts recognize the principle that attorney's fees are subject to coverage under the Supplementary Payments Provisions of insurance policies and that coverage for such a fee award is tied to the duty to defend.  In *State Farm General Ins. Co. v. Mintarsih*, (2009) 175 Cal.App.4th 274, 285, the court refused to grant indemnity for attorney's fees taxed against an insured as to a cause of action where there was no duty to defend since no potential coverage existed.  Since attorney's fees awards in this action would not be awarded on the tort actions, but instead solely on the basis of the Song Beverly Act which is not a covered cause of action against Big 5.  Ergo, just as an insured could not reasonably expect an insurer to pay defense costs where there was no potential for coverage, an insured could not reasonably expect an insurer to pay costs awarded against the insured in such a suit and there is no coverage for such an award. *Id.* at 285.

In addition, California courts have recognized that attorney's fees awards are not themselves "damages" in the context of an insurance policy. Fee awards do not compensate claimants for the injury that brought them to court and therefore do not

23

538761.1  465.30770

Selman Breitman LLP
ATTORNEYS AT LAW

fit the concept of 'damages' in its ordinary and popular sense. *San Diego Housing Comm. v. Industrial Indem. Co.*, (2002) 95 Cal.App.4th 669, 689; *Combs v. State Farm Fire & Cas. Co.* (2006) 143 Cal.App.4th 1338, 1345. The most recent case on this issue was *Health Net, Inc. v. RLI Ins. Co.*, (2012), 2012 WL 1850929, \_\_Cal.Rptr.3d \_\_\_ . There, the insured argued that the claim for attorney's fees was itself a claim for damages, thus, covered by the policy, regardless of whether the underlying claims which were alleged to justify the award of attorney's fees were themselves covered. The court disagreed, opining that the insuring clause provides that insurers shall pay on behalf of the insured "all sums which the Insured shall become legally obligated to pay as Damages ... resulting from any Claim ... for any Wrongful Act of the Insured....". An award of attorney fees does not compensate a plaintiff for the injury that brought the plaintiff into court; attorney fees are inconsistent with the meaning of the word "Damages" in the ordinary and popular sense. *Cutler–Orosi, supra,* 31 Cal.App.4th at 632. It concluded that if the entire action alleged no covered wrongful act under the policy, coverage could not be bootstrapped based solely on a claim for attorney's fees. Also, if a complaint alleged some covered wrongful acts and some acts not covered, the attorney's fees were covered only to the extent they arose out of the covered wrongful acts. *Id.* at *13.

Due to the precedent above, Zurich respectfully requests that this Court grant summary judgment and/or partial summary judgment ruling that any attorney's fees awards in the Song Beverly Actions are not covered by the Zurich policies.

## VII.   ZURICH SEEKS RECOVERY OF UNCOVERED DEFENSE COSTS.

The California Supreme Court held, "[A]s to the claims that are not even potentially covered, however, the insurer may indeed seek reimbursement for defense costs." *Buss v. Superior Court,* (1997) 16 Cal. 4th 35, 49. "California law clearly allows insurers to be reimbursed for attorney's fees" and expenses "paid in defending insureds against claims for which there was no obligation to defend." *Id.* The reason is this. Under the policy, the insurer does not have a duty to defend the

insured as to the claims that are not even potentially covered. With regard to defense costs for these claims, the insurer has not been paid premiums by the insured. It did not bargain to bear these costs. *Buss*, *supra,* at 50-51.

Zurich clearly reserved its Buss rights in all five of its reservation of rights letters upon accepting Big 5's tender of the *Zimerman, Gonzalez, Nelson, Motta* and *Coordination Proceeding* actions related to alleged Song Beverly Act violations. (SUF, No. 40)  An insurer has no contractual duty to defend claims for which there is no potential for coverage, and defense costs that are solely attributable to such claims are not part of the bargained-for exchange. (*Buss*, at 65 Cal.Rptr.2d 366, 939 P.2d 766.) An insurer's right to reimbursement of those defense costs is implied in law to avoid unjust enrichment. *Ibid.* An insured could have no objectively reasonable expectation to retain the windfall of payment for the defense of claims for which there was no potential coverage.  *State Farm General Ins. Co. v. Mintarsih*, *supra,* 175 Cal.App.4th at 284.  Thus, if any of the issues included in Zurich's partial summary judgment motion are granted, Zurich respectfully requests a judicial declaration that reimbursement is owed to Zurich for uncovered sums.

## VIII.  CONCLUSION

For all the forgoing reasons, Zurich respectfully requests that this Court enforce the clear and explicit Statutory Violations Exclusions in the Zurich policies and grant summary judgment to Zurich along with a declaratory order that Zurich is owed full reimbursement of all sums expended on behalf of Big Five as to the Song Beverly Actions.  In the alternative, Zurich requests this Court review each issue presented in the section of this motion requesting partial summary judgment and make a ruling in favor of Zurich.  If all requests for partial summary judgment are favorable to Zurich, Zurich respectfully requests a complete summary judgment with the order for full reimbursement of all sums expended; if only some of the partial summary judgment requests are granted, Zurich requests a declaration for reimbursement of the uncovered defense costs.

CV 12-3699-DMG (MANx)

538761.1  465.30770

Selman Breitman LLP
ATTORNEYS AT LAW

DATED:  July 5, 2012

SELMAN BREITMAN LLP

By: /s/Jan Pocaterra_____
ELDON S. EDSON
JAN L. POCATERRA
Attorneys for Defendant
ZURICH AMERICAN INSURANCE COMPANY

Selman Breitman LLP
ATTORNEYS AT LAW

538761.1  465.30770

26