1  ELDON S. EDSON (SBN 168896)
   eedson@selmanbreitman.com
2  JAN L. POCATERRA (SBN 134247)
   jpocaterra@selmanbreitman.com
3  SELMAN BREITMAN LLP
   11766 Wilshire Boulevard, Sixth Floor
4  Los Angeles, CA 90025
   Telephone: (310) 445-0800
5  Facsimile: (310) 473-2525

6  Attorneys for Defendant
   ZURICH AMERICAN INSURANCE
7  COMPANY

8

9              UNITED STATES DISTRICT COURT

10     CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11 | BIG 5 SPORTING GOODS              | CASE NO.  CV12-3699-DMG (MANx)

12 | CORPORATION, a Delaware           | [Assigned to Hon. Dolly M. Gee]
   | corporation,
13 |                                   | **DEFENDANT ZURICH AMERICAN**
14 |              Plaintiff,           | **INSURANCE COMPANY'S**
   |                                   | **OPPOSITION TO BIG 5'S MOTION**
15 |       v.                          | **FOR PARTIAL SUMMARY**
   |                                   | **JUDGMENT; MEMORANDUM OF**
16 |                                   | **POINTS AND AUTHORITIES [filed**
   | ZURICH AMERICAN INSURANCE         | **concurrently with STATEMENT OF**
17 | COMPANY, a New York corporation;  | **GENUINE DISPUTES; SECOND**
   | and HARTFORD FIRE INSURANCE       | **DECLARATION OF THOMAS**
18 | COMPANY, a Connecticut corporation,| **DELUCA; and OBJECTIONS TO**
   |                                   | **DECLARATION OF IAN R.**
19 |                                   | **LANDGREEN]**
20 |              Defendants.          | Date  :  August 10, 2012
   |                                   | Time  :  2:00 p.m.
21 |                                   | Ctrm. :  7 - Second Floor
   |                                   |          Spring Street Courthouse
22 |
23 |                                   | Complaint Filed: April 27, 2012
24
25
26
27
28

Selman Breitman LLP
ATTORNEYS AT LAW

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION ............................................................................. 1

II.    AS A MATTER OF LAW, ZURICH HAS NO OBLIGATIONS
       SINCE PURE SONG BEVERLY CLAIMS STATE NO "DAMAGES" ...... 2

III.   AS A MATTER OF LAW, PRIVACY INVASION "DAMAGES"
       CANNOT BE AWARDED ON SONG BEVERLY CLAIMS. ..................... 3

IV.    STATUTORY VIOLATION EXCLUSIONS BAR ALL COVERAGE. ...... 5

       A.    "Arising Directly Or Indirectly Out Of" Bars Coverage For
             Statutory And Tort Claims Based On Song Beverly Violations. ......... 6

       B.    The Term "Any" Incorporates A Bar For All Statutes Which
             Prohibit Transmission Or Communication Of Information................. 7

       C.    The Underlying Actions Allege Communication Of Information........ 8

       D.    A Clear Policy Exclusion Should Be Enforced As Written................. 9

V.     FIVE DISPUTES OF MATERIAL FACT DEFEAT BIG 5'S MOTION .... 10

VI.    BIG 5 CANNOT TRIGGER DEFENSE DUTIES ON
       SPECULATION, NOR CREATE COVERAGE WHERE NO
       "DAMAGES" EXIST.................................................................... 12

       A.    Speculation Cannot Trigger A Defense Duty. .................................. 12

VII.   PLAINTIFFS' NEGLIGENCE CLAIMS DO NOT RESULT IN
       "BODILY INJURY" OR "PROPERTY DAMAGE."...................................14

VIII.  ATTORNEY'S FEES AWARDED TO UNDERLYING PLAINTIFFS
       WOULD NOT BE COVERED. ..................................................... 15

IX.    BIG 5 HAS NOT DEMONSTRATED SATISFACTION OF THE
       CONDITION PRECEDENT TO COVERAGE OBLIGATIONS. ............. 16

       A.    Payment, Or Exhaustion, Of The Proper SIR Amounts Is A
             Condition Precedent To Zurich's Coverage Duties............................ 16

       B.    SIR Payments Exist Per "Occurrence", But Big 5 Relies On The
             Wrong "Occurrence" Definition. ..................................................... 18

       C.    Big 5's "Anti-Stacking" Cases On SIRS Relate To The
             Inapplicable "Continuous Trigger" Concept.................................... 21

       D.    Big 5's Assertion Of "Delayed Payments" Ignores The SIR
             Condition Precedent To Zurich's Coverage Duties............................ 22

X.     BIG 5'S BREACH OF CONTRACT AND BAD FAITH
       ALLEGATIONS MUST FAIL AS A MATTER OF LAW. ......................... 24

Selman Breitman LLP
ATTORNEYS AT LAW

538018.1  465.30770

i

# TABLE OF CONTENTS
## (Continued)

Page

XI.   CONCLUSION ............................................................................24

Selman Breitman LLP
ATTORNEYS AT LAW

538018.1  465.30770

**CV 12-3699-DMG (MANx)**

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Barseback Kraft AB v. U. S.,*
(Fed. Cir. 1997)121 F.3d 1475, 1481 ................................................ 8

*Chemstar, Inc. v. Liberty Star Mutual Insurance*
(9th Cir. 1994) 41 F.3d 429 ..................................................... 20

*Continental Casualty Co. v. City of Richmond*
(9th Cir. 1985) 763 F.2d 1076 .................................................. 6, 7

*Evanston Insurance Co. v. American Safety Indemnity Co.*
(N.D. Cal. 2011) 768 F.Supp.2d 1004 ......................................... 17

*Fleck v. KDI Sylvan Pools, Inc.*
(3rd Cir. 1992) 981 F.2d 107, 115 ....................................................

*Gon v. First State Insurance Co.*
(9th Cir. 1989) F.2d 863 ......................................................... 23

*Howard, Weil, Labouisse, Friedrichs, Inc. v. Insurance Co. of North Amer.*
(1977) 557 F.2d 1055 ................................................................ 20

*Jimkoski v. State Farm Mut. Auto. Ins. Co.*
(6th Cir., 2007) 247 Fed.Appx. 654, 662 ...................................... 12

*Korn v. Polo Ralph Lauren Corp.*
(E.D. Cal. 2008) 644 F.Supp.2d 1212 ........................................... 2

*Lassen Canyon Nursery v. Royal Insurance Co. of America*
(9th Cir.1983) 720 F.2d 1016 .................................................... 15

*Okada v. MGIC IndemnityCorp.*
(9th Cir. 1986) 823 F.2d 276 ) .................................................. 23

*Storek v. Fidelity & Guaranty Insurance,*
504 F.Supp.2d at 811 ............................................................. 12

*U. S. v. Baskes,*
(C.A.7, Ill.) 1980, 649 F.2d 471 ................................................ 12

*Upper Deck Co. v. Federal Insurance Co.*
(9th Cir.2004) 358 F.3d 608 .................................................... 13

## STATE CASES

*American Cyanamid Co. v. American Home Assurance Co.*
(1994)30 Cal.App.4th 969 ....................................................... 19

*Baker v. National Interstate Ins. Co.*
(2009) 180 Cal.App.4th 1319, 1328 ............................................ 10

Selman Breitman LLP
ATTORNEYS AT LAW

iii

# TABLE OF AUTHORITIES

Page

*Bank of the West v. Sup. Ct.*
    (1992) 2 Cal.4th 1254 .................................................................................... 3

*Bullock v. Maryland Casualty Co.*
    (2001) 85 Cal.App.4th 1435 ......................................................................... 3

*California Pacific Homes, Inc. v. Scottsdale Ins. Co.*
    (1999) 70 Cal.App.4th 1187 ....................................................................... 21

*Century Transit Systems, Inc. v. American Empire Surplus Lines Insurance*
    *Co.* (1996) 42 Cal.App.4th 121 .................................................................... 6

*Chateau Chamberay Homeowner's Association v. Associated International*
    *Insurance Co.* (2001) 90 Cal.App.4th 335 ................................................. 24

*Folgelstrom v. Lamps Plus, Inc.*
    (2d Dist. 2011) 195 Cal.App.4th 986 ................................................... 3, 4, 5

*Friedman Prof'l Management Co. v. Norcal Mutual Insurance Co.,*
    120 Cal.App.4th 17 ...................................................................................... 14

*Frontier Oil Corp. v. RLI Insurance Co.*
    (2007) 153 Cal.App.4th 1436 ..................................................................... 18

*Giddings v. Industrial Indemnity Co.*
    (1980) 112 Cal.App.3d 213 ......................................................................... 15

*Gray v. Zurich Insurance Co.*
    (1966) 65 Cal.2d 263 .............................................................................. 2, 14

*Gunderson v. Fire Insurance Exch.*
    (1995) 37 Cal.App.4th 1106 ....................................................................... 12

*Harbor Insurance Co. v. Central National Insurance Co.,*
    165 Cal.App.3d 1029 ................................................................................... 19

*Hill v. National Collegiate Athletic Association*
    (1994) 7 Cal.4th 1 ...................................................................................... 3, 4

*Hurley Construction Co. v. State Farm Fire & Casualty Co.*
    (1992) 10 Cal.App.4th 533 ............................................................... 12, 13, 15

*Jaffe v. Cranford Insurance Co.*
    (1985) 168 Cal.App.3d 930 ........................................................................... 2

*La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.*
    (1994) 9 Cal.4th 27 ....................................................................................... 5

*Legacy Vulcan Corp. v. Superior Court*
    (2010) 185 Cal.App.4th 677 ................................................................... 16, 17

Selman Breitman LLP
ATTORNEYS AT LAW

iv

**CV 12-3699-DMG (MANx)**

# TABLE OF AUTHORITIES

Page

*Love v. Fire Insurance Exchange*
(1990) 221 Cal.App.3d 1136.................................................................24

*McLaughlin v. National Union Fire Insurance Co.*
(1994) 23 Cal.App.4th 1132...............................................................24

*Minkler v. Safco Insurance Co. of America*
(2010) 49 Cal.4th 315.............................................................................8

*Montgomery Ward & Company, Inc. v. Imperial Casualty & Indemnity Co.*
(2000) 81 Cal.App.4th 356...........................................................21, 22

*Montrose Chemical Co. v. Superior Court*
(1993) 6 Cal.4th 287..................................................................5, 19, 21

*Narver v. Cal. State Life Ins. Co.*
(1930) 211 C 176, 181..........................................................................18

*National Insurance Underwriters v. Carter*
(1976) 17 Cal.3d 380............................................................................10

*North American Capacity Insurance Co. v. Claremont Liability Insurance
Co., (2009) 77, Cal.App.4th 272* ......................................................17

*Palmer v. Truck Insurance Exchange*
(1999) 21 Cal.4th 1109.........................................................................10

*Pineda v. Williams Sonoma*
(2011) 51 Cal.4th 524.............................................................................9

*Quan v. Truck Insurance Exchange*
(1998) 67 Cal.App.4th 583.....................................................................2

*Roseleaf Corp. v. Radis,*
122 Cal.App.2d 196...............................................................................16

*Rosen v. State Farm General Ins. Co.*
(2003) 30 Cal.4th 1070, 1073..............................................................10

*San Diego Housing Com. v. Industrial Indemnity Co.*
(2002) 95 Cal.App.4th 669...................................................................16

*Scottsdale Insurance Co. v. MV Transportation*
(2005) 36 Cal.4th 643.....................................................................14, 23

*Southgate Recreation And Park District v. California Association For Park
And Recreation Insurance* (2003) 106 Cal.App.4th 293....................6

*State Farm General Insurance Co. v. Mintarsih*
(2009) 175 Cal.App.4th 274...........................................................15, 16

Selman Breitman LLP
ATTORNEYS AT LAW

538018.1  465.30770

**CV 12-3699-DMG (MANx)**

# TABLE OF AUTHORITIES

Page

*Storek & Storek, Inc. v. Citicorp Real Estate,*
  *(2002) 00*, Cal.App.4th 44 ........................................................... 11

*Waller v. Truck Insurance Exchange, Inc.*
  (1999) 11 Cal.4th 1 ....................................................................... 24

*Zurich Insurance Co. v. Peterson*
  (1986) 188 Cal.App.3d 438 ..................................................... 19, 21

## STATE STATUTES

California Code of Civil Procedure Section 1021.5 .................................... 15

Civ.Code, § 1434 .......................................................................... 16

Civ.Code, § 1436 .......................................................................... 16

Civ.Code, § 1439 .......................................................................... 16

Civil Code section 1747.08 ................................................................ 9

Profession Code Section 17200 ........................................................... 3

## MISCELLANEOUS

1 Witkin, Summary of Cal.Law .......................................................... 16

Rest.2d Contracts, § 224 ................................................................. 16

Rest.2d Torts, § 652D ...................................................................... 4

Selman Breitman LLP
ATTORNEYS AT LAW

DEFENDANT ZURICH AMERICAN INSURANCE COMPANY ("Zurich") submits its Opposition to the Motion for Partial Summary Judgment filed by Plaintiff/Counter-defendant Big 5 Sporting Goods Corporation ("Big 5") and incorporates its Corrected Motion for Summary Judgment and Memorandum of Points and Authorities [Dkt. No. 38] herein as if fully set forth in its entirety.

## I.   INTRODUCTION

Big 5's Motion for Partial Summary Judgment swings but misses the mark in carrying the required burden of proof on coverage obligations under the Zurich policies.  Simply put: 1) speculation cannot create coverage; 2) a mistaken definition of "occurrence" cannot make self insured retentions disappear; and 3) causes of action with no covered "damages" cannot trigger defense duties.   Three strikes – Big 5's motion must be found out of legal credibility and denied.

Further, pure Song Beverly claims run afoul of coverage for two reasons.  First, the only available awards are uncovered "civil penalties."  Secondly, Statutory Violations Exclusions in all three Zurich policies bar coverage for "personal and advertising injury" arising "directly or indirectly" out of an act which allegedly violates a statute prohibiting or limiting the communication or transmission of information.  Several underlying Song Beverly Actions expressly allege that Big 5 violated the Song Beverly Act by utilizing an "Information Capture Policy" in communication with customers to collect and transmit customer "personal identification information" to paper or to a database during a credit card transaction.

Big 5 cannot manufacture satisfaction of the proper "per offense" SIR amounts any more than it can create insurable damages where they do not exist or are expressly barred. As a matter of law, there is no conceivable potential for indemnification of damages under Zurich's policies and Zurich's defense duties were never actually raised.  Even if this were not true, which it is, Big 5 is outside the boundaries of coverage because it has not satisfied the required SIR payments.  Thus, Zurich respectfully requests that Big 5's motion be denied.

1

Selman Breitman LLP
ATTORNEYS AT LAW

538018.1  465.30770

## II.   AS A MATTER OF LAW, ZURICH HAS NO OBLIGATIONS SINCE PURE SONG BEVERLY CLAIMS STATE NO "DAMAGES"

Under black letter insurance law, the basis for an insurer's obligation must be rooted in the existence of a potential for covered damages. This precept was discussed in *Quan v. Truck Ins. Exchange* (1998) 67 Cal. App. 4th 583, where the insured was allegedly involved in sexual misconduct against a minor. *Quan*, the insured, asserted that because he denied any wrongdoing the claim was "false and fraudulent" and the insurer had a defense duty. The Court disagreed; it held that where there is no potential for covered damage, no matter whose versions of events are found to be true, the insurer owes no duty to defend. *Id.* at 599-601. This applies here – no matter what develops on Song Beverly liability, or whether such liability is imposed at all, Big 5 will not be required to pay "covered damages." Thus, Zurich is not obligated since "… the insurer need not defend if the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage." *Gray v. Zurich Ins. Co.* (1966) 65 Cal.2d 263, 276.

In California, "damages" under Zurich's standard liability policies' Coverage A. or Coverage B. are limited to payments which compensate a party for injuries suffered. *Jaffe v. Cranford Ins. Co.*, (1985) 168 Cal.App.3d 930, 935. In *Jaffe v. Cranford,* the court reasoned, "…. the outcome of Jaffe's criminal case could not result in damages payable under the policy since neither imprisonment nor a fine constitutes 'damages' for insurance purposes." Thus, there [was] no conceivable set of facts under which Cranford [insurer] could be liable for the result in the criminal case." *Id.* Here, civil penalties are the only award and no coverage exists for Big 5's damages as a matter of law. There are no facts which could be asserted to bring any of these Song Beverly claims within coverage, even if they could be stated under tort or under the California Constitution, which they cannot, (See, Section III, *infra.*)

Underlying Song Beverly plaintiffs, as private citizens, are solely confined to the statutory remedy of civil penalties. *Korn v. Polo Ralph Lauren Corp.* (E.D. Cal.

Selman Breitman LLP
ATTORNEYS AT LAW

538018.1  465.30770

Selman Breitman LLP
ATTORNEYS AT LAW

2008) 644 F.Supp. 2d 1212, 1219.   Zurich owes no obligation where suits against Big 5 merely complain of statutory violations under which compensatory damages are not recoverable. *Bank of the West v. Sup. Ct.*, (1992) 2 Cal.4th 1254, 1266.

In similar fashion, several of the underlying plaintiffs' suits alleged violations of Business and Profession Code Section 17200 or the Consumer Legal Remedies Act. These claims also fail to raise a potential for coverage as they seek civil penalties or injunctive relief for unfair business practices.   The California Supreme Court has recognized that insurable "damages" may not be awarded under these statutory schemes, and that claims for violation of these statutes raises no potential for coverage under any liability policy. *Bank of the West, supra,* 2 Cal.4th at 1266. Further, when an award to plaintiffs is described as "penalties", public policy would not permit Zurich to insure those sums. *Bullock v. Maryland Casualty Co.,* (2001) 85 Cal.App.4th 1435, 1448. Big 5 cannot overcome this public policy preclusion.

## III.   AS A MATTER OF LAW, PRIVACY INVASION "DAMAGES" CANNOT BE AWARDED ON SONG BEVERLY CLAIMS.

Big 5 insists that the underlying plaintiffs have stated all elements of a privacy invasion claim, both under the tort context and under the California Constitution. (Big 5's Motion, pp. 13-16) However, here, neither the facts alleged nor the elements pled, can breathe insurable life into claims for which no covered damages can be awarded.  As a matter of law, there is an absolute bar against Big 5's liability for privacy invasion or unlawful intrusion on the factual basis of Song Beverly claims. *Folgelstrom v. Lamps Plus, Inc.*, (2d Dist. 2011) 195 Cal. App. 4th 986, 990-993.  No pleading amendment can modify the gravamen of these suits.

Big 5 apparently ignores this recent precedent by claiming that ZIP Code violation conduct asserted in the underlying complaints falls "within the definition of the plaintiff's right to privacy as defined by California law."  This is just not so. While defining the final element of this right, the California Supreme Court in *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 37, stated:

3

538018.1  465.30770

No community could function if every intrusion into the realm of private action, no matter how slight or trivial, gave rise to a cause of action for invasion of privacy. "Complete privacy does not exist in this world except in a desert, and anyone who is not a hermit must expect and endure the ordinary incidents of the community life of which he is a part." (Rest.2d Torts, supra, § 652D, com. c.) **Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right.** Thus, the extent and gravity of the invasion is an indispensable consideration in assessing an alleged invasion of privacy. *Id.*

Using this specific Supreme Court guidance, the *Fogelstrom* Court recently ruled, as a matter of law, that neither state constitutional privacy claims nor common law privacy causes of action can be viably based on conduct violating the Song Beverly Act.  In *Folgelstrom,* just as in the *Hill* decision, the court reviewed "…whether a legally recognized privacy interest is present in a given case…" *Id.* at 990-993.  After addressing the alleged violations related to the transmission of ZIP Code information during a retail sales transaction, the *Fogelstrom* Court opined that plaintiffs could not state a "serious invasion" of privacy based on the conduct banned by the Song Beverly Act.  *Id.* at 992.  In fact, the *Fogelstrom* Court quoted the *Hill* Court when opining the California Constitution requires that "…actionable invasions of privacy must be sufficiently serious in nature, scope and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right."  *Id.* The *Fogelstrom* Court ruled that neither capture nor use of plaintiff's address or ZIP Code without his knowledge or permission constituted an "egregious breach of social norms."  *Id.* at 992.

Thus, even if all twelve Song Beverly Actions actually stated facts or alleged a claim for privacy invasion, such a claims are void as a matter of law if based on

4

538018.1  465.30770

conduct violating the Song Beverly Act. *Folgelstrom, supra,* at 990-993. As Big 5 states, a liability insurer's duty to defend will arise when a suit against an insured potentially seeks <u>damages</u> within the coverage of the policy. *La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.* (1994) 9 Cal.4th 27, 43. *Folgelstrom* acts as an <u>absolute bar</u> to Big 5's liability for damages arising from privacy invasion and unlawful intrusion claims based on conduct barred by the Song Beverly Act. Potential for covered damages is nonexistent and no defense duties arise.

Likewise, according to the California Supreme Court, an insurer may defeat a claim of coverage where "evidence presents undisputed facts which conclusively eliminate a potential for liability." *Montrose Chemical Co. v. Superior Court,* (1993) 6 Cal.4th 287, 298–299. There can be no dispute about the *Folgelstrom* holding. As a matter of law, that California court conclusively eliminated Big 5's potential for liability by mandating that plaintiffs alleging Song Beverly claims cannot assert actionable claims as to a "legally protected privacy interest." *Folgelstrom, supra,* 195 Cal. App. 4th 992-993.

## IV.   <u>STATUTORY VIOLATION EXCLUSIONS BAR ALL COVERAGE.</u>

Zurich's "Statutory Violations Exclusions" state, in pertinent part, that there is no insurance for "bodily injury", "property damage", or "personal and advertising injury" "arising directly or indirectly out of any action or omission that violates or is alleged to violate … any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information." (Zurich's Statement of Uncontroverted Facts, ("ZSUF"), Nos. 18-21, Dkt. No. 24)  No California court has addressed either of these exclusions.   However, a number of California courts have addressed two significant phrases or terms which govern the breadth of the coverage bar: a) "arising directly or indirectly out of"; and b) "any."  Review of this dual body of precedent operates to completely extinguish coverage for Big 5 as to all the underlying actions based on alleged violations of the Song Beverly Act.

Selman Breitman LLP
ATTORNEYS AT LAW

A.   **"Arising Directly Or Indirectly Out Of" Bars Coverage For Statutory And Tort Claims Based On Song Beverly Violations.**

The phrase "arising out of" is broadly construed by California courts, even in the context of a policy exclusion.  For example, in *Southgate Recreation And Park Dist. v. California Asso. For Park And Recreation Ins.* (2003) 106 Cal.App.4th 293, a park district sought coverage from a joint powers authority administering the district's liability risk pooling fund.  The coverage agreement contained an exclusion for liability "arising out of or related to construction … contracts or to any other contract for the purchase of goods or services."

The Court of Appeal held that the exclusion barred the subcontractors' claims for conversion, breach of trust and violation of stop notice:

> The term "'[a]rising out of' is a broad concept requiring only a 'slight connection' or an 'incidental relationship' between the injury and excluded risk [Citation.] "'arising out of' connective … broadly links" the exclusionary operative events with the exclusion. *Id.* at 301.

Similarly, in *Century Transit Systems, Inc. v. American Empire Surplus Lines Ins.* Co. (1996) 42 Cal.App.4th 121, 127 n.4, the appellate court held that an assault and battery exclusion with the phase "arising out of" barred coverage for a claim. The court explained that "'[a]rising out of' is a broad concept requiring only a 'slight connection' or an 'incidental relationship' between the injury and the excluded risk."

Even more apropos is the Ninth Circuit's opinion in *Continental Casualty Co. v. City of Richmond* (9th Cir. 1985) 763 F.2d 1076 addressing a broader phrase like that found in the Zurich policies. There, the pertinent exclusion barred coverage for any claim "arising directly or consequentially from bodily injury . . . or death of any person . . ."  Quoting from a Fifth Circuit decision, the Ninth Circuit stated:

> 'Arising out of' are words of much broader significance than 'caused by'.  They are ordinarily understood to mean "'originating from' 'having its origin in,' 'growing out of' or 'flowing from' or in short, 'incident to,

538018.1  465.30770

**CV 12-3699-DMG (MANx)**

or having connection with'…"  *City of Richmond, supra,* at 1080.

The *City of Richmond* Court dismissed the heirs' "causation analysis" argument that their civil rights claim was based on a prior pattern and practice of police brutality and not connected with the assault and battery death of their father. *Id.* at 1081.  The Ninth Circuit opined the claim "need bear only an incidental relationship to the injury to come within the exclusionary clause …"  *Id.*

Notably, the court held that broad interpretation given to "arising from" was "augmented" by the exclusion's use of the term "directly or consequentially":

A broad interpretation of "arising from" in the context of the CNA exclusionary clause is even more strongly suggested here by the augmentation of "arising" with the words "directly or consequentially." This language clearly implies that, to be excluded from coverage, a claim need be only slightly connected to one of the types of injury that is specifically identified for exclusion.  *Id.* at 1081.

These legal authorities mandate that only a "slight connection" need exist between alleged privacy invasion acts and the alleged conduct by Big 5 violating the Song-Beverly Act to create a total bar for plaintiffs' damages "arising directly or indirectly out of " the statutory violations. As long as one direct or indirect cause of plaintiffs' loss was conduct allegedly constituting a statutory violation, all damages based on the same or similar conduct are barred by Zurich's exclusions.

All three Zurich policies contain a Statutory Violations Exclusion and said exclusion is a complete bar to coverage for both the 2008 and the 2011 Song Beverly Act claims. Zurich respectfully requests this Court deny partial summary judgment in favor of Big 5 and instead grant summary judgment to Zurich.

**B.**   **The Term "Any" Incorporates A Bar For All Statutes Which Prohibit Transmission Or Communication Of Information.**

California decisions have consistently held that, viewed in isolation, a clause excluding coverage for particular conduct by "any" insured means that such conduct

Selman Breitman LLP
ATTORNEYS AT LAW

by one insured will bar coverage for all other insureds under the same policy on claims arising from the same occurrence. *Minkler v. Safco Ins. Co. of America,* (2010) 49 Cal.4th 315, 322-323.  This expansive interpretation is in line with holdings, even in varying situations, by the U.S. Supreme Court and other federal courts.  The word 'any' is generally used in the sense of 'all' or 'every' and its meaning is most comprehensive." *Barseback Kraft AB v. U. S.,* (Fed. Cir. 1997)121 F.3d 1475, 1481; *Fleck v. KDI Sylvan Pools, Inc.,* (3rd Cir. 1992) 981 F.2d 107, 115

Zurich's Statutory Violations Exclusions use the term "any" twice to emphasize the preclusion of insurance for:

"bodily injury", "property damage", or "personal and advertising injury" "arising directly or indirectly out of <u>any</u> action or omission that violates or is alleged to violate … <u>any</u> statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information. (emphasis added)  (Jt.Appx., Ex. 3).

Thus, any or all coverage for allegations that any or all alleged acts of Big 5 violating the Song Beverly Act (limiting transmission of information) which allegedly resulted in related, indirect claims for privacy invasion/unlawful intrusion and negligence are barred.  Zurich's policies have no coverage obligations for any. or all, damages arising from any, or all, acts which allegedly violate any, or all, statutes prohibiting or limiting transmission or communication of information.

### C.      The Underlying Actions Allege Communication Of Information.

Under the Statutory Violation Exclusions, the statutorily prohibited or limited conduct is "… the sending, transmitting, communicating or distribution of material or information."  The Song Beverly Act was specifically designed to protect consumers' privacy interests by preventing personal information from being communicated or transmitted to strangers.  Indeed, the focus of the Song Beverly Act is to prohibit retailers from "soliciting and recording information about the

8

**CV 12-3699-DMG (MANx)**

Selman Breitman LLP
ATTORNEYS AT LAW

cardholder" which bars all businesses from recording customers' ZIP Codes during a credit card transaction. *Pineda v. Williams Sonoma,* (2011) 51 Cal.4th 524, 532.

The underlying Song Beverly Actions allege that Big 5 was obtaining and communicating "personal identification information" – ZIP Codes. According to the Merriam Webster Dictionary, the plain and ordinary meaning of "communication", or communicating, is "a process by which information is exchanged between individuals through a common system of symbols, signs, or behavior." (Webster's New Ninth New Collegiate Dict. (1st ed. 1985) p.266) Here, Big 5 allegedly requested that its customers exchange personal identification information during the process of a credit card transaction – this can be nothing but "communication". Then, allegedly Big 5 transmitted the customers' communicated information to paper or into a database which lead to the filing of the Song Beverly Actions. The Statutory Violation Exclusions bar coverage for these Song Beverly Act claims because of the "communication" and/or "transmission" of personal identification information exchanged between Big 5 and its customers.

### D. A Clear Policy Exclusion Should Be Enforced As Written.

Zurich's Statutory Violation Exclusions do not require demonstrated proof or any evidence of Big 5's communicative acts which allegedly violate the Song Beverly Act regarding plaintiffs' personal identification information. Neither is the operation of the Statutory Violations Exclusions contingent on a determination of liability against Big 5 for Song Beverly Act violations. The exclusions are purely triggered by "allegations" of statutory violations. They state there is  " no insurance for "bodily injury", "property damage", or "personal and advertising injury" "arising directly or indirectly out of any action or omission that violates or is alleged to violate ..." any statute limiting transmission or communication of information. (emphasis added)  (ZSUF, Nos. 19-21, Dkt. No. 24)

It is undisputable that each and every Song Beverly Action complaint alleged Big 5 violated Civil Code section 1747.08. (ZSUF, No. 27, 30, 33)  Under the plain

**Selman Breitman LLP**
ATTORNEYS AT LAW

538018.1  465.30770

**CV 12-3699-DMG (MANx)**

language of the Statutory Violation Exclusions, there is no potential for coverage and thus no defense obligation.  An insurance company may limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected. *National Ins. Underwriters v. Carter*, (1976) 17 Cal.3d 380, 386.

Where an insurer has expressly precluded insurance coverage under a policy, courts should enforce the exclusion because "[I]f the policy language 'is clear and explicit, it governs.'" *Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109, 1115. Likewise, the California Supreme Court mandates that " "[W]e do not rewrite any provision of any contract, [including an insurance policy], for any purpose." *Rosen v. State Farm General Ins. Co.* (2003) 30 Cal.4th 1070, 1073.   In particular, "… a court may not rewrite a policy to bind an insurer to cover a risk which it did not contemplate covering, and for which it was not paid to provide coverage." *Baker v. National Interstate Ins. Co.* (2009) 180 Cal.App.4th 1319, 1328.  Therefore, this Court should refuse to rewrite Zurich's policy and enforce it as written.

## V.    FIVE DISPUTES OF MATERIAL FACT DEFEAT BIG 5'S MOTION

As set out in Zurich's Statement of Genuine Dispute of Material Fact, five of Plaintiff Big 5's assertions on Zurich's policy provisions and background facts are entirely contrary to actual facts. These five errors defeat Big 5's motion:

- Big 5 asserts in Fact 6: "The Zurich Policies provide that Big 5 will select and control defense counsel."  Not so; once a suit is filed, the Zurich SIR Endorsement states "..2. …Where exposure, loss reserve, or potential judgment initiates or changes or suit is filed per the following:…**o.    A suit is filed.  We shall have the right to appoint defense counsel,…**" (Pocaterra Dec., Ex. B, pg. 3 of 4)  Big 5's statement is in error; this dispute results in fatal reasoning flaws.

- For the SIR, Big 5 asserts in Fact 8: 'Occurrence' means accident including continuous or repeated exposure to the same general harmful conditions…"; this definition is found in the policies' CGL Form.

10

538018.1  465.30770

Selman Breitman LLP
ATTORNEYS AT LAW

Solely for the SIR, the definition of "occurrence" states; **"Occurrence" for purposes of this endorsement only, means an "occurrence", offense,** accident, act, error or omission, **or any other such similar event, as defined or used in our policy, that must occur in order to initiate payment of covered losses under the policy terms and conditions.** (Pocaterra Dec., Ex. B, pg. 4 of 4)  Significant and material arguments are based on this erroneous definition; they must fail.

- Big 5 asserts in Fact 10 that as to the Statutory Violation Exclusion, Zurich's 2009-2010 policy contains the "same exclusion" as the prior Zurich policies. (Pocaterra Dec. Ex. A1)  Big 5 ignores the fact that there is a new endorsement added to the 2009-2010 policy which supersedes the language quoted by Big 5. (Pocaterra Dec. Ex. A2)

- Big 5 asserts in Fact 72 that it "…satisfied the self-insured retention by its payment of $250,000.00 of defense expenses in the *Zimerman* action."  The "evidence" presented by Big 5 to support that "fact" is a bald statement by Big 5's Ian R. Landgreen. (Landgreen Dec., ¶ 73). Determination of whether there has been "satisfaction"  of a condition precedent to Zurich's coverage obligations constitutes a legal question, not a fact.  Big 5 errs in basing argument regarding the Zurich SIRs on erroneous and inadmissible lay person testimony.[1]

- Big 5 asserts in Fact 88 that "Zurich has not provided Big 5 with a coverage position regarding the *Gabriel* action."  Not true; in the Parties' Joint Appendix of Exhibits, Exhibit 35 is titled "Zurich's denial letter dated 9-21-11 (*Gabriel*)."  A coverage position was provided.

Zurich addresses the policy language disputes in separate sections which

---

[1] Courts look to "layperson understanding" when construing policy language, but satisfaction of a condition precedent relates to whether legally adequate conduct, i.e., performance, has occurred. *Storek & Storek, Inc. v. Citicorp Real Estate,* (2002)100 Cal.App.4th 44, 55-58.

11

Selman Breitman LLP
ATTORNEYS AT LAW

**CV 12-3699-DMG (MANx)**

1   follow.  As to the evidentiary issue, Zurich has concurrently filed Objections to

2   Declaration of Ian Landgreen under Federal Rule of Evidence, Rule 701.  Mr.

3   Landgreen's declaration contains several "legal conclusions" which he improperly

4   states as "facts."  Courts generally refuse to permit testimony by a witness where the

5   question relates to legal implications of witness' conduct.  *U. S. v. Baskes,* (C.A.7,

6   Ill.) 1980, 649 F.2d 471,  (See also, *Jimkoski v. State Farm Mut. Auto. Ins. Co.*, (6th

7   Cir., 2007) 247 Fed.Appx. 654, 662 court precluded estate from eliciting opinion

8   testimony from insurer's personnel regarding legal conclusions which invaded

9   province of court to determine the applicable law.) Mr. Landgreen's statements that

10  Big 5 "satisfied" the SIRs in the Zurich policies are in error and inadmissible.

## VI.   BIG 5 CANNOT TRIGGER DEFENSE DUTIES ON SPECULATION, NOR CREATE COVERAGE WHERE NO "DAMAGES" EXIST.

### A.   Speculation Cannot Trigger A Defense Duty.

14          California cases continually reiterate the mantra that an insurer's defense

15  duties arise whenever there is the "possibility" or "potential" for coverage.

16  However, these decisions also make clear that this concept is restricted to the nature

17  of the lawsuit actually asserted by the third party. *Storek v. Fidelity & Guar. Ins,,*

18  *supra,* 504 F.Supp.2d at 811. Contrary to Big 5's assertions, an insurer owes no duty

19  to defend based upon mere "speculation" as to claims that a third party might have

20  brought or amended into the action.

21          **An insured may not trigger the duty to defend by speculating about**

22          extraneous 'facts' regarding potential liability or **ways in which the**

23          **third party claimant might amend its complaint at some future**

24          **date.** This approach misconstrues the principle of 'potential liability'

25          under an insurance policy. *Gunderson v. Fire Ins. Exch.,* (1995) 37

26          Cal.App.4th 1106, 1114. (emphasis added)

27          Thus, "the insured may not speculate about unpled third party claims to

28  manufacture coverage." *Hurley Constr. Co. v. State Farm Fire & Cas. Co.,* (1992)

Selman Breitman LLP
ATTORNEYS AT LAW

10 Cal.App.4th 533, 538.  The Ninth Circuit recognized this legal mandate in *Upper Deck Co. v. Fed. Ins. Co.,* (9th Cir.2004) 358 F.3d 608, 615-16.  There, the Ninth Circuit refused the insured's attempts to manufacture coverage as "tenuous" and "far-fetched" and stated, " … the underlying complaint [does] not allege sufficient facts to give rise to a claim for bodily injury. The dots simply do not connect." *Id.*

> Mere speculation that the plaintiffs could or will allege such [additional] facts does not give rise to a duty to defend. The possibility of an amendment does not require the insurer to speculate about any conceivable claim that a plaintiff might bring against the insured or to spin out wild theories of recovery for every conceivable damage. Liability under the policies can only be characterized as speculative and hypothetical. The duty to defend, albeit a broad one, encompassing liability for damages potentially covered under the policies, does not stretch this far. *Upper Deck Co., supra,* at 615-16.

Similarly, Big 5 overextends in an attempt to place all twelve of the Song Beverly Actions within the "invasion of privacy" ambit in several speculative ways: 1) quoting selective paragraphs of individual suits to manufacture "inferences" that a privacy tort could be stated (Big 5 Motion, pp.7-9; 13-16; Statement, pp.11-44); 2)claiming individual underlying actions which alleged no facts relating to privacy invasion are "similar" to those that did state such claims (Big 5 Motion, pp.7-9;11-12; Statement, ¶¶ 33,35,37,39,49,50,58,63, & 65); 3) noting the underlying complaints could be amended to state a privacy invasion claim. (Big 5 Motion, pp. 9, 16,18); and 4) assigning citation status to arguments or twisting legal precedent.

As examples of No. 4, there is an "*Id.*" citation on Big 5's page 5, lines 11-12, but counsel for Zurich has not been able to find any state or federal case cited on that page which holds such an overly broad construction of the defense duty.  Also, the Judge Croskey quote is quite truncated; the actual text supports Zurich:

> If coverage depends on an unresolved dispute over a factual question,

13

538018.1  465.30770

the very existence of that dispute would establish a possibility of coverage and thus a duty to defend. (citations omitted) **However, "where [as here] [the] only potential for ... [coverage] turns on resolution of [a] legal question, there is no duty to defend ...."** [citations omitted], **unless and until the coverage issue is resolved in favor of the insured.** [citations omitted] **As the Supreme Court recently stated, "... if, as a matter of law, neither the complaint nor the known extrinsic facts indicate any basis for potential coverage, the duty to defend does not arise in the first instance."** *Scottsdale Ins. Co. v. MV Transportation* (2005) 36 Cal.4th 643, 655.

Using tactic Nos. 1 and 2 throughout its motion, Big 5 seeks to manufacture coverage via inferences and imaginary "similarities" between the complaints in the various underlying Song Beverly Actions. (Big 5's Motion, Section B.1., pp.7-9) None of the complaints listed in the brief on page 7, lines 17-21 contain allegations seeking damages for invasion of privacy. (See complaints by *Valiente, Matatova, Holmes, Mossler, Weiner, Smith* and *Gabriel,* Joint Appx., Exs. 9-15).[2] 'The determination of whether the insurer owes a duty to defend is made in the first instance by comparing the allegations of the complaint with the terms of the policy. *Gray v. Zurich,* 65 Cal.2d at 276. "[T]he insured may not speculate about unpled third party claims to manufacture coverage" ... thus, a court must examine the "facts shown in the third party complaint " to determine that "[t]here have been no allegations, or facts ever presented to or learned by the insurer" to support coverage. *Friedman Prof'l Mgmt. Co. v. Norcal Mut. Ins. Co.,* 120 Cal.App.4th 17, 35.

## VII.   PLAINTIFFS' NEGLIGENCE CLAIMS DO NOT RESULT IN "BODILY INJURY" OR "PROPERTY DAMAGE."

An insured has no reasonable expectation of coverage for a type of damage

---

[2] Zurich notes further reasons that these underlying actions are not covered in Sections V.B – IX. D._(See pages, 13 -24, *infra*).

14

Selman Breitman LLP
ATTORNEYS AT LAW

not alleged in the underlying complaint. See e.g., *Lassen Canyon Nursery v. Royal Ins. Co. of Am.*, (9th Cir.1983) 720 F.2d 1016, 1018 (policy covering claim for property damage did not cover claim for economic damages); *Hurley Constr. Co. v. State Farm, supra,* (1992) 10 Cal. App. 4th 533, 539. (insuring clause limited to claims for bodily injury and property damage did not cover claim for economic and punitive damages); *Giddings v. Indus. Indem. Co.,* (1980) 112 Cal.App.3d 213, 219 (policy covering property damages did not cover claim for recovery for injuries to intangible economic interests). None of the twelve Song Beverly Complaints, even those containing a negligence cause of action, alleged damages for "bodily injury" or "property damage" as defined in the three Zurich policies. Nor was accidental conduct alleged. Coverage A. is not triggered for either defense or indemnity duties.

## VIII. <u>ATTORNEY'S FEES AWARDED TO UNDERLYING PLAINTIFFS WOULD NOT BE COVERED.</u>

The Song Beverly Act plaintiffs have sought attorneys fees under California Code of Civil Procedure Section 1021.5; however, the Zurich policy would not cover such attorney's fees. Section 1021.5 provides that a court, upon motion, "may award attorney's fees to a successful party against one or more opposing party in any action which has resulted in the enforcement of an important right effecting the public interest." California Courts recognize that attorney's fees are subject to coverage under the Supplementary Payments Provisions of insurance policies and that coverage for such a fee award is tied to the duty to defend. In *State Farm General Ins. Co. v. Mintarsih,* (2009) 175 Cal.App.4th 274, 285, the court refused to grant indemnity for attorney's fees taxed against an insured as to a cause of action where there was no duty to defend since no potential coverage existed.

Attorney's fees awards in underlying actions would not be taxed on the tort claims, but instead solely on the basis of the Song Beverly Act which is not a covered cause of action. Ergo, just as an insured cannot reasonably expect an insurer to pay defense costs for a suit where there is no potential for coverage, an

**CV 12-3699-DMG (MANx)**

538018.1  465.30770

insured cannot reasonably expect an insurer to pay costs taxed against the insured in such a suit. Per *Mintarsih,* there is no coverage for such an award. *Id.* at 285.

In addition, California courts have recognized that attorney's fees awards are not themselves "damages" in the context of an insurance policy. Attorney fee awards are not 'damages' under a CGL policy. Fee awards do not compensate claimants for the injury that brought them to court and therefore do not fit the concept of 'damages' in its ordinary and popular sense. *San Diego Housing Com. v. Industrial Indemnity Co.,* (2002) 95 Cal.App.4th 669, 689.

## IX.   BIG 5 HAS NOT DEMONSTRATED SATISFACTION OF THE CONDITION PRECEDENT TO COVERAGE OBLIGATIONS.

Under the law of contracts, parties may expressly agree that a right or duty is conditional upon the occurrence or non-occurrence of an act or event. Civ.Code, § 1434 et seq.; Rest.2d Contracts, § 224; 3A Corbin, Contracts (1960) § 631, p. 21; 1 Witkin, Summary of Cal.Law (9th ed. 1987) (Contracts, § 722, p. 654.) Thus, a condition precedent is either an act of a party that must be performed or an uncertain event that must happen before the contractual right accrues or the contractual duty arises. (Civ.Code, § 1436; 1 Witkin, Summary of Cal.Law, supra, Contracts, § 722, p. 654.) Ordinarily a plaintiff cannot recover on a contract without alleging and proving performance or waiver of performance of conditions precedent. Civ.Code, § 1439; *Roseleaf Corp. v. Radis,* 122 Cal.App.2d 196, 206. Here, Zurich's defense obligations are expressly subject to a condition precedent – Big 5's satisfaction of the Self Insured Retention ("SIR") payments – and that has not occurred.

### A.   Payment, Or Exhaustion, Of The Proper SIR Amounts Is A Condition Precedent To Zurich's Coverage Duties.

Several California cases have construed the impact of an SIR on defense obligations. In *Legacy Vulcan Corp. v. Superior Court,* (2010) 185 Cal.App.4th 677, the court concluded that a provision requiring exhaustion of an SIR does not, on its own, prevent the imposition of duty to defend upon an insurer's tender for

16

Selman Breitman LLP
ATTORNEYS AT LAW

defense. *Id.* at 696.  But, if a policy plainly and clearly states that the insurer's duty to defend is conditioned on the exhaustion of an SIR, said duty will not arise at tender, but rather when such exhaustion occurs.  "… a true 'self-insured retention,' expressly limits the duty to indemnify to liability in excess of a specified amount and expressly precludes any duty to defend until the insured has actually paid the specified amount." *Id.* at 694 n. 12.  Zurich's SIR Endorsement clearly requires such compliance stating at Section I. H., "Compliance with the requirements set forth in this endorsement is a condition precedent to coverage."(Pocaterra Dec., Ex. B, pg.3)

Further, Zurich's SIR Endorsement in each policy year plainly expressed to Big 5 that "… you shall be responsible  for payment of all damages and 'defense costs' as they are incurred for each 'occurrence' until you have paid damages and 'defense costs' equal to the Per Occurrence Amount shown in the Schedule…" (Pocaterra Dec., Ex. B., pg. 1)  Immediately above that provision, in bold print, is the "SCHEDULE" which denotes the Self Insured Retention Amount to be $250,000.00 Per Occurrence. (*Id.*)  Thus, as a condition precedent to Zurich's duties, the SIR Amounts must be paid by Big 5 toward the first $250,000.00 of defense cost or damages for <u>each</u> "occurrence" as that term is defined in the SIR Endorsement.

*Legacy Vulcan* is in concert with other California cases on a condition precedent.  In *North American Capacity Ins. Co. v. Claremont Liability Ins. Co.,* (2009)177 Cal.App.4th 272, 289, the court summarized that such a condition "refers to an act, condition or event that must occur before the insurance contract becomes effective or binding on the parties." It held that these conditions "neither confer nor exclude coverage for a particular risk but, rather, impose certain duties on the insured in order to obtain the coverage provided by the policy." *Id.*  As noted, the Zurich policy expressly conditioned Zurich's defense duty on Big 5's payment of the SIR amounts.  No duty to defend attached until payment was made by Big 5 for <u>each</u> "occurrence."  Even *Montrose* does not require otherwise. *Evanston Ins. Co. v. American Safety Indem. Co.,*(N.D. Cal. 2011) 768 F.Supp. 2d 1004, 1013.

17

**CV 12-3699-DMG (MANx)**

538018.1  465,30770

Selman Breitman LLP
ATTORNEYS AT LAW

B.   **SIR Payments Exist Per "Occurrence", But Big 5 Relies On The Wrong "Occurrence" Definition.**

Where an endorsement is attached to an insurance policy, this specialized form governs over the general forms in the policy. Because an endorsement forms a part of the insurance contract, the policy and the endorsement must be construed together. *Narver v. Cal. State Life Ins. Co.* (1930) 211 C 176, 181; *Frontier Oil Corp. v. RLI Ins. Co.* (2007) 153 Cal.App.4th 1436, 1463. If the policy and the endorsement have contrasting verbiage, the endorsement controls. *Id.* This premise applies to the Zurich policies' SIR Endorsement. (Pocaterra Dec., Ex. B) Solely for the operation of the SIR, the SIR definitions control the outcome; in particular to govern the definition of "occurrence" as modified in the SIR Endorsement;

> "Occurrence" for purposes of this endorsement only, means an "occurrence", offense, accident, act, error or omission, or any other such similar event, as defined or used in our policy, that must occur in order to initiate payment of covered losses under the policy terms and conditions.
> (emphasis added).(ZSUF, No.11; Pocaterra Dec., Ex. B, p.4)

Big 5 asserts that alleged privacy invasion claims are made by the Song Beverly Act plaintiffs. As intentional torts, these claims do not arise under Coverage A. which has the original "occurrence" definition triggered by an accident. Instead, if the court finds a trigger, it must be under Coverage B. for "advertising and personal injury" liability. To initiate potential for payment of covered losses, Coverage B. must be triggered by an "offense", not by an accidental "occurrence" as defined in Coverage A. The "offense" must be a discrete act within one of the seven defined groups of conduct and happen during one of the Zurich policy periods. (Pocaterra Dec., Ex. C1, p.7 of 16 and C2, p.7 of 17) Big 5 asserts that the alleged privacy invasions fall within the offense regarding "oral or written publication… of material that violates a person's right of privacy..". (Big 5 Motion, p. 6-7, 14)

As modified solely for the SIR Endorsement, the definition of "occurrence"

18

Selman Breitman LLP
ATTORNEYS AT LAW

538018.1  465.30770

Selman Breitman LLP
ATTORNEYS AT LAW

1   has no verbiage regarding " an accident, including continuous or repeated exposure

2   to substantially the same general harmful conditions" which is the original,

3   superseded, definition from Zurich's CGL Coverage Form, Coverage A. (ZSUF, No.

4   14) Yet, Big 5 insists on utilizing terms from this superseded definition to claim

5   that there was "one common 'occurrence'" in the underlying Song Beverly Actions,

6   purportedly being a long-standing "corporate policy" by Big 5 "of collecting ZIP

7   Code information from customers." (Big 5's Motion, p.20, ln.27 - p.21, ln.4). This is

8   incorrect. Zurich litigated this issue successfully in *Zurich Ins. Co. v. Peterson,*

9   (1986) 188 Cal.App.3d 438 regarding the "offense" of malicious prosecution where

10  the court adopted the non-continuous triggering event ruling of an earlier decision,

11  *Harbor Ins. Co. v. Central Nat'l Ins. Co.* 165 Cal.App.3d 1029.

12         Similar "offense" terminology was construed in *Harbor Ins. Co., supra,* at

13  1035, where the court held that the general rule regarding the occurrence trigger of

14  coverage was not applicable to policies which used a term other than "occurrence"

15  for the coverage trigger. *American Cyanamid Co. v. American Home Assurance*

16  *Co.,* (1994) 30 Cal.App.4th 969, 981. In *Harbor Ins. Co.,* the insured was sued for

17  the "offense" of malicious prosecution. Two of its policies provided coverage for

18  damages arising from the offenses of false arrest or malicious prosecution " 'if such

19  offense is committed during the policy period.' " *Harbor Ins. Co., supra,* 165

20  Cal.App.3d at 1035.  The Court of Appeal held that the offense of malicious

21  prosecution is committed when the malicious action is instituted. *Id.*, at pp. 1036–

22  1037. Hence, the court concluded there could be no coverage under the *Harbor*

23  policies which went into effect after the malicious action was filed and activated. *Id.*

24         Moreover, unlike "occurrence", there is no modification of the term "offense"

25  in the SIR Endorsement. (Pocaterra Dec., Ex. B)  Instead, it remains as part of the

26  CGL Form, Coverage B. Insuring Agreement stating that the "offense" must happen

27  "during the policy period". (Pocaterra Dec., Ex. C1, p.6-7 of 16; Ex. C2, p.7 of 17)

28  This "offense" trigger requirement is antithetical to the *Montrose* "continuing loss

19

**CV 12-3699-DMG (MANx)**

1  trigger" which may be able to link one ongoing property loss, or one longstanding

2  corporate policy, into a singular "occurrence".   No California court precedent links

3  a longstanding corporate policy over three policy periods into one Coverage B.

4  "offense" which must occur during a single policy period.

5      Further, there is no California court decision, state or federal, which stands for

6  the proposition that cases which allege multiple "offenses", require only one SIR

7  payment.  Big 5's citations to decisions which construe the number of "occurrences"

8  and find only one applicable SIR or deductible are entirely irrelevant to the case at

9  bar. For example, while construing Coverage A. in *Chemstar, Inc. v. Liberty Star*

10 *Mut. Ins.*, (9th Cir. 1994) 41 F.3d 429, the *Chemstar* Court noted that, "[T]he policies

11 allegedly covering these losses were all based on a standard comprehensive general

12 liability policy…".  It further noted that the insured's failure to warn users about a

13 potential product defect was the singular cause of all damage. *Id*. at 432.

14      Under a *Chemstar* scenario, Big 5's one occurrence argument fits since: 1) the

15 "occurrence" definition would be "continuous or repeated exposure to substantially

16 the same harmful conditions.."; and 2) the *Chemstar*  type losses creating plaster

17 pitting would cause accidental "property damage" under Coverage A.. Here, neither

18 basis for Big 5's one "occurrence" stance exists: 1) Big 5 makes claims under

19 Coverage B. "personal and advertising injury" with the discrete "offense" trigger;

20 and 2) the intentional "offense" event, a privacy invasion, must be time-framed

21 "during the policy period" not tied to "continuous or repeated exposure".

22      The other decisions cited in Big 5' Motion, pp.21-22, can be rebutted in a

23 similar fashion, since all but one utilized the Coverage A. type "occurrence" trigger

24 for bodily injury, property damage (or discrimination).  Most found that "continuous

25 and repeated" conduct was present, resulting in an opinion that there was one cause

26 for the loss and one SIR or deductible. The 5th Circuit construing  a blanket bond

27 similarly found fraud from a "chain of events constituting one episode". *Howard,*

28 *Weil, Labouisse, Friedrichs, Inc. v. Ins. Co. of North Amer.*, (1977) 557 F.2d 1055,

20

Selman Breitman LLP
ATTORNEYS AT LAW

1060. None discussed a requirement that the event, a Coverage B. "offense", happen "during the policy period." (Pocaterra Dec., Ex. C1, p.6-7 of 16; Ex. C2, p.7 of 17)

Since the coverage trigger is an "offense" which the Coverage B. Insuring Agreement requires to occur "during the policy period", at least one distinct privacy invasion "offense" must happen during each of Zurich's policy periods. (Pocaterra Dec., Ex. C1, p.6-7 of 16; Ex. C2, p.7 of 17) This triggers each policy's SIR, on a per "offense" basis, such that Big 5's payment of each policy's SIR as a condition precedent must be met before Zurich's obligations are ripe under each policy.

### C.   Big 5's "Anti-Stacking" Cases On SIRS Relate To The Inapplicable "Continuous Trigger" Concept.

*Montrose Chemical Corp. v. Admiral Ins. Co.*, *supra,* 10 Cal.4[th] at 645, established that standard comprehensive general liability (CGL) language provides coverage for property damage occurring during the policy period, and in the case of successive policies, damage that is continuous or progressively deteriorating throughout several policy periods is potentially covered by all policies in effect during those periods (the continuous injury trigger of coverage). This *Montrose* case and its trigger was relied upon for the ultimate "anti-stacking" finding as to SIRs in both *Montgomery Ward & Company, Inc. v. Imperial Cas. & Indem. Co.,* (2000) 81 Cal.App.4th 356 and in *California Pacific Homes, Inc. v. Scottsdale Ins. Co.* (1999) 70 Cal.App.4th 1187.

The continuous loss "occurrence" trigger of Coverage A. is antithetical to the discrete act "offense" trigger of Coverage B., operating in the timeframe of "during the policy period". As noted in *Zurich Ins. v. Peterson*, as to malicious prosecution:

> The fact that damages increase as the prosecution continues does not
> transform malicious prosecution into a continuing occurrence. We join
> the reasoned decisions of the majority in holding that for purposes of an
> insurance policy which measures coverage by the period within which
> the "offense is committed", the tort of malicious prosecution occurs

Selman Breitman LLP
ATTORNEYS AT LAW

**CV 12-3699-DMG (MANx)**

1  upon the filing of the complaint. *Id.*, 188 Cal.App.3d at 448.

2  Here, too, coverage is "measured" by the policy period for a privacy invasion

3  "offense". Further, said "offense" per policy period is the SIR trigger. Even the

4  *Montgomery Ward* court recognized that the SIR must be exhausted before coverage

5  could become available. "[C]ertainly an SIR in an insurance policy must be

6  exhausted before the insurer is liable under that policy. This is the very nature of an

7  SIR, and flows from the specific terms of the policy." *Montgomery Ward,* at 367.

8  Moreover, the *Montgomery Ward* Court insisted that all courts are bound to

9  review, not re-write, the terms of the policy because the plain language controls

10  coverage rather than legal concepts in vacuum. *Id.* at 366-367. This construction

11  rule applies here. Despite Big 5's assertions, Zurich is not seeking a "per claim"

12  trigger for its SIR exhaustion.[3] Instead, under the plain language of the modified

13  "occurrence" definition in the SIR Endorsement, Zurich seeks a "per offense"

14  trigger. Translated, the SIR trigger question becomes "was there at least one

15  "offense" alleged to have happened during each policy period?" If there has been a

16  trigger at all, the answer to that question must be "yes". Consequently, there would

17  be one SIR triggered for each policy period, again assuming there are coverage

18  obligations at all. In *arguendo*, if there is coverage, which Zurich has rebutted,

19  Zurich would agree that Big 5 exhausted the $250,000 SIR for the 2007-2008 policy

20  with defense costs for the *Zimerman* Action. Therefore, if Zurich has any coverage,

21  two SIRs remain to be exhausted as conditions precedent to Zurich's defense

22  obligations under the 2008-2009 and 2009-2010 policies.

**D.**   **Big 5's Assertion Of "Delayed Payments" Ignores The SIR**
23

24   **Condition Precedent To Zurich's Coverage Duties.**

25  Big 5 tosses out a couple of citations on "delayed reimbursement" and

26  "payment of legal expenses as incurred", turning a blind eye to its own pre-existing

27  _____

28  [3] In fact, the initial Zurich policy which had contained a "per claim" SIR form, was
retroactively revised to a "per occurrence" form, with the modified "occurrence"
definition. (2nd DeLuca Dec.¶¶ 6-7, pg. 2., Exs. A. B).

Selman Breitman LLP
ATTORNEYS AT LAW

duty regarding full satisfaction of the SIR amounts.  Neither of the cited cases discussed an SIR Endorsement, or a condition precedent owed by an insured. (See *Gon v. First State Ins. Co.* (9th Cir. 1989) F.2d 863, 868 , citing *Okada v. MGIC Indem.Corp.*, (9th Cir. 1986) 823 F.2d 276) (Big 5's Motion, p. 23)  Contrary to Big 5's claim, there <u>is</u> policy language which can delay an insurer's defense payments – the SIR Endorsement, Section II, Our Rights and Obligations Excess of the SIR:

> In the event of your refusal to respond to your obligations for the payment of "self insured retention" amounts or "defense costs" for any reason, we shall not make payments for you, nor in any event shall we be required to substitute for you as respects your responsibility ….
>
> (Pocaterra Dec., Ex. B, pg. 3 of 4)

It is Zurich' position that any defense obligation, be it a duty to defend or to reimburse defense costs, cannot exist until Big 5 meets the express condition precedent of proper SIR payments. (Pocaterra Dec., Ex.B, pg.3)  Plainly, the parties hotly dispute these very legal issues and seek this Court's guidance to determine: 1) if there is any coverage under Zurich's policies; 2) if so, have the SIR conditions precedent been "satisfied"; and 3) if so, when did the defense obligations arise and for which actions.  Due to these questions pending before this Court, the allegations of "delayed payments" ring both hollow and premature. Further, should the answer to questions 1 or 2 be "no", it will be Big 5 whose payments are due, not Zurich.

While Zurich agreed, under full reservations of rights to participate in Big 5's defense for several of the Song Beverly Actions, it did so fully aware that due to these reservations, it had the right to litigate the coverage issues and the right to full reimbursement of all sums expended if said litigation was successful. *Scottsdale v. MV Transportation, supra,* 36 Cal. 4th at 655.  Because Big 5 elected to file this coverage action, Zurich now exercises its rights to litigate and to be reimbursed.

/ / /

/ / /

538018.1  465.30770

## X. BIG 5'S BREACH OF CONTRACT AND BAD FAITH ALLEGATIONS MUST FAIL AS A MATTER OF LAW.

Per long-standing California law, in order to state a bad faith claim, Big 5 must prove by admissible evidence that Zurich breached its duties under the policies and unreasonably withheld policy benefits.  However, a bad faith claim cannot be maintained unless policy benefits are due.  *Love v. Fire Ins. Exchange,* (1990) 221 Cal. App.3d 1136, 1153.  Indeed, the absence of coverage relieves an insurer for bad faith denial of coverage, or for dilatory claims handling. *Waller v. Truck Ins. Exchange, Inc.* (1999) 11 Cal. 4th 1, 36; *McLaughlin v. Nat'l. Union Fire Ins. Co.* (1994) 23 Cal. App.4th 1132, 1161.

Even if this Court were to find coverage, because there is a genuine legal dispute, Big 5's cause of action for bad faith could not prevail. *Chateau Chamberay Homeowner's Ass'n. v. Associated Int'l. Ins. Co.*, (2001) 90 Cal. App. 4th 335, 347-348.  The parties agreed to cross motions for summary judgment acknowledging at the least that genuine legal issues exist.  Big 5's bad faith and breach of contract claims must fail as a matter of law.

## XI. CONCLUSION

For all the legal and factual reasons stated above, Zurich has no coverage obligations to Big 5 and, thus, respectfully requests this Court to deny Big 5's Motion for Partial Summary Judgment.  Instead, Zurich requests that this Court grant its Motion for Summary Judgment that there are no duties under the policies; thus, there can be no breach of contract, no cause for bad faith and Zurich is owed

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Selman Breitman LLP
ATTORNEYS AT LAW

538018.1 465.30770

24

**CV 12-3699-DMG (MANx)**

1 full reimbursement.  In the alternative, Zurich requests that this Court grant its

2 Motion for Partial Summary Judgment ordering reimbursement for uncovered sums.

3

4 DATED:  July 6, 2012           SELMAN BREITMAN LLP

5

6 By:  /s/Jan Pocaterra
                                                ELDON S. EDSON
7                                               JAN L. POCATERRA
                                         Attorneys for Defendant
8                                        ZURICH AMERICAN INSURANCE
                                         COMPANY
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

538018.1  465.30770

Selman Breitman LLP
ATTORNEYS AT LAW