ELDON S. EDSON (SBN 168896)
eedson@selmanbreitman.com
JAN L. POCATERRA (SBN 134247)
jpocaterra@selmanbreitman.com
SELMAN BREITMAN LLP
11766 Wilshire Boulevard, Sixth Floor
Los Angeles, CA  90025
Telephone: (310) 445-0800
Facsimile: (310) 473-2525
Attorneys for Defendant
ZURICH AMERICAN INSURANCE
COMPANY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

BIG 5 SPORTING GOODS
CORPORATION, a Delaware
corporation,

                    Plaintiff,

        v.

ZURICH AMERICAN INSURANCE
COMPANY, a New York corporation;
and HARTFORD FIRE INSURANCE
COMPANY, a Connecticut corporation,

                    Defendants.

CASE NO.  CV12-3699-DMG (MANx)

[Assigned to Hon. Dolly M. Gee]

**ZURICH AMERICAN INSURANCE
COMPANY'S REPLY TO BIG 5'S
OPPOSITION TO ZURICH'S
MOTION FOR SUMMARY
JUDGMENT/PARTIAL SUMMARY
JUDGMENT**

Date  :  August 10, 2012
Time  :  2:00 p.m.
Ctrm. :  7 - Second Floor
            Spring Street Courthouse

Complaint Filed: April 27, 2012

Selman Breitman LLP
ATTORNEYS AT LAW

539553.1  465.30770

CV 12-3699-DMG (MANx)

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ............................................................................ 1

II.    DESPITE BIG 5'S LABELS, WHEN LOOKING TO THE *FACTS*,
       PER CALIFORNIA LAW, THERE IS NO *POTENTIAL* FOR
       COVERAGE. .............................................................................. 2

       A.   BIG 5 HAS *FOLGELSTROM* AVOIDANCE SYNDROME. ............ 2

       B.   BIG 5 ERRS -- A GROUNDLESS CLAIM IS NOT ALWAYS
            A POTENTIALLY COVERED CLAIM. ............................................. 6

       C.   BIG 5'S RELIANCE ON AN INAPPLICABLE SLIP OPINION
            IN THE *TWIN STAR* MATTER IS MISPLACED. .............................. 9

       D.   TWISTING RESERVATIONS OF RIGHTS INTO
            COVERAGE "ADMISSIONS" IS ERRONEOUS AND
            UNAVAILING. ............................................................................. 12

III.   BIG 5 CANNOT IGNORE THE ZURICH STATUTORY
       VIOLATIONS EXCLUSIONS WHICH COMPLETELY BAR
       COVERAGE. .............................................................................. 13

       A.   BIG 5 ADMITS IT DISSEMINATED PLAINTIFFS' ZIP
            CODES. ..................................................................................... 13

       B.   BIG 5'S LEGAL PRECEDENT IS INAPPOSITE. .......................... 16

IV.    CIVIL PENALTIES AND ATTORNEY FEE'S ARE *NOT*
       DAMAGES. ................................................................................. 17

V.     *BLUE RIDGE* IS INAPPLICABLE; ZURICH IS ENTITLED TO
       EITHER A FULL REIMBURSEMENT OF DEFENSE AND
       SETTLEMENT PAYMENTS OR THE UNCOVERED PORTIONS ......... 20

VI.    BIG 5'S CLAIMS THAT ZURICH "ADMITS" CERTAIN
       ALLEGATIONS IN ITS ANSWER ARE WITHOUT MERIT .................. 21

VII.   CONCLUSION ............................................................................ 24

Selman Breitman LLP
ATTORNEYS AT LAW

**Selman Breitman** LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Anthem Electrics, Inc. v. Pacific Employers Insurance Co.*
(9th Cir. (Cal.) 2002) 302 F.3d 1049................................................ 2, 3

*Barnes v. AT & T v. Pension Benefit Plan-Nonbargained Program*
718 F.Supp.2d 1167 (N.D. Cal. 2010)............................................. 22, 23

*Farrell v. Pike*
342 F.Supp.2d 433 (M.D. N.C. 2004)............................................... 23

*Great West Life Assurance Company v. Levithan*
834 F.Supp. 858 (E.D. Pa. 1993)..................................................... 22

*Los Osos Community Services District v. American Alternative Insurance Corporation*
585 F.Supp.2d 1195 (2008) .......................................................... 6, 7

*Raychem Corp. v. Federal Insurance Company*
853 F.Supp. 1170 (N.D. Cal. 1994)................................................... 21

*Reyes v. Downey Savings And Loan Association*
541 F.Supp.2d 1108 (C.D. Ca. 2008).................................................. 23

*St. Paul Mercury Insurance Co. v. Ralee Engineering Co.*
804 F.2d 520 (9th Cir. 1986) ........................................................ 13

*The Upper Deck v. Federal*
358 F.3d 608 (9th Cir. 2004) .................................................... 4, 10

## STATE CASES

*AIU Insurance Company v. Superior Court*
51 Cal.3d 807 (1990).................................................................. 18

*Armstrong World Industries, Inc. v. Aetna Casualty & Surety Co.*
45 Cal.App.4th 1 (1993)............................................................... 10

*Blue Ridge Co. v. Jacobsen*
25 Cal.4th 489 (2001)............................................................. 13, 20

*Bullock v. Maryland Casualty Co.*
85 Cal.App.4th 1446 (2001)....................................................... 17, 19

*Buss v. Superior Ct.*
16 Cal.4th 35 (1997).............................................................. 20, 21

*Catsouras v. Dep. of Cal. Highway Patrol*
181 Cal.App.4th 856 (2010)........................................................... 5

*Certain Underwriters v. Superior Court* ("Powerine I")
24 Cal.4th 945 (2001)............................................................ 18, 19

ii

539553.1   465.30770

**TABLE OF AUTHORITIES**
**(Continued)**

Page

*Cutler-Orosi Unified Sch. Dist. v. Tulare Cty. Sch.*
31 Cal.App.4th 617 (1994)................................................................ 19

*Diaz v. Oakland Tribune, Inc.*
(1983) 139 Cal.App.3d 118 (1983) ........................................... 5

*Egan v. Mutual of Omaha Insurance Co.*
24 Cal.3d 809 (1979)................................................................ 12

*Fire Insurance Exchange v. Jimenez*
184 Cal.App.3d 437 (1986)........................................................ 2

*Folgelstrom v. Lamps Plus, Inc.*
195 Cal.App.4th 986 (2011)..........................................2-6, 8, 11, 19

*Frank & Freedus v. Allstate*
45 Cal.App.4th 461 (1996)........................................................ 13

*Garriott Crop Dusting v. Superior Court*
221 Cal.App.3d 783 (1990)........................................................ 8

*Gray v. Zurich Insurance Co.,*
65 Cal.2d 263, 279 (1966)........................................................ 13

*Gunderson v. Fire Insurance Exchange*
37 Cal.App.4th 1106 (1995)....................................................... 7

*Health Net, Inc. v. RLI Insurance Company*
206 Cal.App.4th 232 (2012)................................................... 18, 19

*Hogan v. Midland National Insurance Co.*
3 Cal.3d 553 (1970)................................................................. 7

*Jaffe v. Cranford Insurance Co.*
168 Cal.App.3d 930 (1985)....................................................... 17

*Mirpad, LLC v. Cal. Insurance Guarantee Association*
132 Cal.App.4th 1058 (2005)..................................................... 16

*Montrose Chemical Corp. v. Superior Court*
6 Cal.4th 287 (1993)............................................................... 10

*Montrose Chemical Corp. v. Superior Court*
25 Cal.App.4th 902 (1994)....................................................... 12

*Nichols v. Great American Insurance Co.*
169 Cal.App.3d 766 (1985)..................................................... 7, 8

*Qualcomm, Inc. v. Certain Underwriters at Lloyd's, London*
161 Cal.App.4th 184 (2008)..................................................... 14

Selman Breitman LLP
ATTORNEYS AT LAW

**TABLE OF AUTHORITIES**
(Continued)

Page

*Rosen v. State Farm General Insurance Co.*
    30 Cal.4th 1070 (2003) .................................................................. 15

*Scottsdale Insurance Company v. MV Transportation*
    36 Cal.4th 643 (2005) .................................................................... 20

*Shulman v. Group W Productions, Inc.*
    (1998) 18 Cal.4th 200 (1998) ........................................................ 11

*Standard Mutual Insurance Company v. Lay, --*
    N.E.2d -- 2012 WL 1377599 (Ill.App. 2012) ............................. 18, 19

*Susan S. v. Israels*
    55 Cal.App.4th 1290 (1997) ............................................................ 5

*Swain v. Cal. Casualty Insurance Co.*
    99 Cal.App.4th 1 (2002) .................................................... 2, 4, 6, 10

*Ulrich v. State Farm*
    109 Cal.App.4th 598 (2003) ............................................................ 2

*Urbaniak v. Newton*
    226 Cal.App.3d 1128 (1991) ........................................................... 5

*Venoco, Inc. v. Gulf Underwriters Insurance Co.*
    175 Cal.App.4th 750 (2009) ............................................................ 9

**FEDERAL STATUTES**

47 U.S.C. section 227 ....................................................................... 18

29 U.S.C. section 1132 ..................................................................... 18

Federal Rules of Civil Procedure, rule 8(b)(4) ......................... 21, 22, 23

**DOCKETED CASES**

*Axiom Insurance Managers LLC v. Capital Specialty*
    *Insurance Corporation*
    2012 WL 2424606 (N.D. Ill. 2012) .......................................... 16, 17

*Galvani v. Tokyo Marine*
    2012 WL 2568220 (N.D. Cal. 2012) ...................................... 3, 4, 10

*Ojeda-Sanchez v. Bland,*
    2010 WL 1838356 (S.D. Ga. 2010) ............................................... 22

*Scherer v. Equitable Life Assurance Society of the United States*
    2004 WL 2101932 (S.D. N.Y. 2004) .............................................. 23

CV 12-3699-DMG (MANx)

539553.1  465.30770

Selman Breitman LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES
## (Continued)

Page

*Twin Star Ventures, Inc. v. Universal Underwriters Insurance Company, Inc.*
2012 WL 948842 (N.D. Cal. 2012) ...................................................... 9, 10, 11

## MISCELLANEOUS

Random House Roget's Thesaurus 633 (1996) ....................................... 16

Webster's New Ninth New Collegiate Dictionary
(1st ed 1985) p. 266 ........................................................................... 15

Couch On Insurance, Third Edition section 200:8 .................................... 7

Selman Breitman LLP
ATTORNEYS AT LAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Selman Breitman LLP
ATTORNEYS AT LAW

# I.     **INTRODUCTION**

Neither Big 5 nor Zurich dispute that a court must look to the **facts** alleged in a third party complaint to ascertain whether insurance coverage is available to an insured.  Further, the parties agree that technical labels attached to causes of action by underlying plaintiffs are without consequence in determining a potential for coverage.  Despite this consensus, Big 5 fabricates arguments that Zurich has somehow admitted a potential for coverage – either through the responses in its Answer, or by the fact that Zurich reserved rights under its policies in agreeing to participate in Big 5's defense.  Both of these contentions border on the preposterous!

Once the smoke clears, it is obvious that Big 5's arguments are unavailing.  First, the recent *Folgelstrom v. Lamps Plus* decision applies as a matter of law to bar the underlying plaintiffs' causes of action labeled common law and constitutional invasion of privacy – Big 5 can have no liability for these claims, thus, there can be no potentially covered damages.  The only <u>viable</u> claims are the alleged violations under the Song Beverly Act related to Big 5's "Information Capture Policy" which cannot create a potential for coverage.[1]  Secondly, any award of civil penalties or attorney's fees against Big 5 under the Song Beverly Act does not constitute "damages" under the Zurich policies because they are punitive in nature and do not compensate an alleged victim.  Thirdly, the Statutory Violations Exclusions in the Zurich policies eliminate any potential for coverage as Big 5 allegedly "disseminated", "communicated" or "transmitted" ZIP Codes through its "Information Capture Policy" in connection with customers' credit card transactions in violation of a statute, the Song Beverly Act.  Finally, Zurich has met its burden to demonstrate as a matter of law that there is no conceivable theory under which the claims in the underlying Song Beverly Actions fall within coverage.  Consequently, *MV Transportation v. Scottsdale* controls these circumstances such that Zurich is

---

[1] Big 5 dislikes underlying plaintiffs' nomination of this alleged corporate policy and has attempted to change it for purposes of these pleadings to "ZIP Code Policy"; however, that phrase is not found in any one of the underlying complaints.

539553.1  465.30770

Selman Breitman LLP
ATTORNEYS AT LAW

1  entitled to full reimbursement of its defense expenses and settlement sums.

2  ## II.   DESPITE BIG 5'S LABELS, WHEN LOOKING TO THE *FACTS*, PER

3  ## CALIFORNIA LAW, THERE IS NO *POTENTIAL* FOR COVERAGE.

4  Zurich whole-heartedly agrees with Big 5 that "focusing on the labels of

5  claims" is "improper." Big 5 Opp., p. 6:20-21. Despite this pronouncement by Big

6  5, in order to create coverage and ignore the Zurich Statutory Violations Exclusions,

7  Big 5 emphasizes what it deems "alternative claims" to the Song Beverly Act

8  purportedly alleged by the underlying plaintiffs: (1) common law invasion of

9  privacy; and (2) the California constitutional right of privacy.[2] However, coverage

10 turns **not** on the technical cause of action pled by a third party, but on the **facts**

11 alleged by the underlying plaintiffs. *Swain v. Cal. Casualty Ins. Co.*, 99 Cal.App.4th

12 1, 8 (2002); *Fire Ins. Exchange v. Jimenez*, 184 Cal.App.3d 437, 443 (1986); *Ulrich*

13 *v. State Farm*, 109 Cal.App.4th 598, 618 (2003).

14 ### A.   BIG 5 HAS *FOLGELSTROM* AVOIDANCE SYNDROME.

15 Big 5's Opposition to Zurich **completely ignores** the decision of *Folgelstrom*

16 *v. Lamps Plus, Inc.*,195 Cal.App.4th 986 (2011), and it would like this Court to turn

17 a blind eye to that holding as well. The *Folgelstrom* Court unequivocally held that a

18 plaintiff, as a matter of law, cannot maintain a cause of action for constitutional or

19 common law invasion of privacy based on Song Beverly type conduct where a

20 defendant requested and recorded plaintiff's ZIP Code in connection with a credit

21 card transaction. *Id.* at 992-993. Thus, as Big 5 footnotes in its Hartford

22 Opposition, "[The insurers] are relieved of their duty to defend if [claimant's]

23 complaint 'can by no conceivable theory raise a single issue which could bring it

24 within the policy coverage.'" *Anthem Elecs., Inc. v. Pacific Employers Ins. Co.* (9th

25 Cir. (Cal.) 2002) 302 F.3d 1049, 1058. (Big 5's Hartford Opp., p. 6, n.5)

26 Big 5 also contends in its Hartford Opposition that "*Folgelstrom's* facts

27

28 ---

[2] In its opposition, Big 5 asserts that it does not seek coverage under Coverage A. of the Zurich policies for "Bodily Injury and Property Damage Liability"; thus, it acquiesces that there would be no coverage as to any claim for "negligence".

materially differ from those in the underlying Song Beverly Actions against Big 5."
(Big 5's Hartford Opp., p.19)  It claims the *Folgelstrom* plaintiffs only accused
*Lamps Plus* of "taking and recording customer ZIP Codes – not 'disseminating' them
as like [sic] Big 5 is alleged to have done."  *Id.*  First, the statement about the
*Folgelstrom* facts is simply wrong. The Court specifically noted, "Lamps Plus then
provides the customer's name, credit card number and ZIP code to Experian
Marketing Services, a third party credit reporting agency." *Folgelstrom* at 988.
More importantly, in making this statement, **Big 5 admits that the underlying**
**Plaintiffs have alleged it "disseminated" the ZIP Code information of its**
**customers.**  *Id.* (See, Zurich Reply, Section III., p. 14-17)

　　　　In relation to applying *Folgelstrom* here, a recent decision, *Galvani v. Tokyo*
*Marine*, 2012 WL 2568220 (N.D. Cal. 2012), is directly on point.  The *Galvani*
Court reiterated that it is the **facts** which determine coverage and *not* the technical
cause of action pled.  *Id.* at *5. *Galvani* involved a tender by the insured under his
homeowner's policy.  In 1982, the insured's wife was found floating in the San
Francisco Bay with her body in a sleeping bag tied with a rope to a cinder block.
Marks around the wife's neck led the coroner to conclude the cause of death was
asphyxiation due to strangulation.  Criminal charges were filed against the insured,
but all charges were eventually dropped.  Alison Galvani, the daughter of the
insured and the victim, was five years old at the time of her mother's death.  In 2010,
Alison became suspicious of some of the insured's statements about her mother's
death, and sued her father for wrongful death.  One of Alison's allegations was that
"Defendant, PATRICK GALVANI, wrongfully, *negligently*, and/or deliberately
killed Plaintiff's Mother, NANCY GALVANI."  *Id.* at *5 (emphasis in original).
The court rejected the insured's attempt to bring the claim within the coverage of the
State Farm policy simply because one of Alison's causes of action was labeled
*negligent* wrongful death: "This is not enough for the court to find coverage of the
wrongful death action, as 'coverage turns not on the technical legal cause of action

but on the facts alleged in the underlying complaint or otherwise known to the insurer…While Galvani is correct that his burden is only to show the 'possibility' or 'potential' for coverage, such a showing must be based on more than mere speculation." *Id.* (citing *Swain, supra,* 99 Cal.App.4th 1, 8); *The Upper Deck v. Federal*, 358 F.3d 608, 614-16 (9th Cir. 2004).[3]

Just as in *Galvani*, the fact that the underlying plaintiffs have alleged common law and constitutional invasion of privacy torts does not bring these claims within the coverage of the Zurich policies.  Rather, the **facts** taken as a whole, show that there is no potential for coverage.  The underlying actions allege that Big 5's conduct via its "Information Capture Policy" violated the Song Beverly Act during a credit card transaction by requesting a ZIP code which was then allegedly recorded and used by Big 5.  Whether the allegations are true or not, it is an **undisputable fact** that all underlying complaints demonstrate these accusations. (Joint Appendix ("Jt. Appx."), Exs. 5-16)  It is of no import that the underlying plaintiffs label their claims to be common law and constitutional invasion of privacy in addition to Song Beverly Act violations.  Rather, "coverage turns *not* on the technical legal cause of action *but* on the facts." *Galvani, supra,* 2012 WL 2568220 at *5.  Here, the **facts** alleged relate entirely to Big 5's ZIP Code collection and dissemination conduct in each complaint. Since the targeted conduct by Big 5 solely relates to violations of the Song Beverly Act during credit card transactions, the "alternative claims" are null and void as a matter of law. *Folgelstrom, supra,* 195 Cal.App.4th at 992-993.

The *Folgelstrom*  case unequivocally holds that plaintiffs cannot plead common law and constitutional invasion of privacy based on facts regarding a credit card transaction with a ZIP Code request.  In *Folgelstrom*, the plaintiffs sought recovery under the "Credit Card Act, invasion of his common law and constitutional

---

[3] Similarly here, Big 5 acknowledges an intentional decision to elect a "corporate policy" regarding collection of customer ZIP Codes which eliminates the potential for coverage of any negligence or unintentional conduct. [Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law in Support of Cross-Motions, Fact No. 18 (Dkt. 19)].

CV 12-3699-DMG (MANx)

539553.1  465.30770

Selman Breitman LLP
ATTORNEYS AT LAW

rights to privacy and violation of Business and Professions Code section 17200." *Folgelstrom, supra,* 195 Cal.App.4th at 989. The plaintiffs alleged that *Lamps Plus* routinely asked customers for ZIP Codes during credit card transactions. *Lamps Plus* then allegedly used the credit card and ZIP Code information to create a mailing list. The Court initially opined that "Whether a legally recognized privacy interest is present in a given case is a question of law to be decided by the court." *Id.* at 990. In refusing to allow plaintiffs recovery under a constitutional right to privacy, the *Folgelstrom* Court reasoned: "… the conclusion that this court should recognize a privacy interest on the part of the plaintiff to not receive unsolicited mailings from a retail business" is not supportable. *Id.* As a matter of law, the court simply could not agree that a mere ZIP Code request rose to the level of actual constitutional privacy claims, such as a CHP officers' internet dissemination of the decapitated corpse of an accident victim [*Catsouras v. Dep. of Cal. Highway Patrol,* 181 Cal.App.4th 856 (2010)], the gratuitous disclosure of a patient's HIV status [*Urbaniak v. Newton,* 226 Cal.App.3d 1128 (1991)], or the improper use of confidential mental health records [*Susan S. v. Israels,* 55 Cal.App.4th 1290 (1997)].

As to common law privacy invasion, the tort is proven only if the plaintiff had an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source. *Diaz v. Oakland Tribune, Inc.* 139 Cal.App.3d 118, 126 (1983). Using that standard, the *Folgelstrom* Court applied similar reasoning to find, as a matter of law, that plaintiff could not maintain a privacy invasion claim and defendant could not be liable because receiving unsolicited mailing was not "highly offensive". *Folgelstrom,* 195 Cal.App. 4th at 993.

Here, in the "Information Capture Policy", or "ZIP Code Policy," as set-forth by Big 5 in its own pleadings from the underlying actions, a Big 5 cashier would request a customer's ZIP Code, and if the customer provided the ZIP Code, it was typed into a key pad and stored in an electronic "ZIP Code database." If a customer paid by credit card, then certain credit card information was captured by Big 5 and

CV 12-3699-DMG (MANx)

539553.1  465.30770

was stored in a "transaction database," and it was transmitted to a third party credit card processing company. Big 5 then "used" customer ZIP codes to assess geographic areas to open new Big 5 stores and distribute newspaper flyers. (Zurich Request for Judicial Notice, Exhibit 1 (DEFENDANT BIG 5'S SPORTING GOODS CORPORATION AND BIG 5 CORP.'S BRIEFING), p.3:4-4:8.)

Just as in *Folgelstrom*, the underlying plaintiffs have pled causes of action under the Song Beverly Act, common law invasion of privacy and constitutional invasion of privacy. Both *Folgelstrom* and the present case contain allegations that the retailers asked for ZIP Codes during a credit card transaction. As in *Folgestrom*, Big 5 used the ZIP Code information to distribute newspaper flyers. However, the Court of Appeal refused to allow the *Folgelstrom* plaintiffs to recover under theories of either common law or constitutional invasion of privacy. Because the facts in *Folgelstrom* are virtually identical, as a matter of law, the underlying plaintiffs cannot assert causes against Big 5 for common law or constitutional invasion of privacy and no damages can be awarded. Coverage turns *not* on the technical legal cause of action *but* on the **facts**; therefore, the underlying plaintiffs' invasion of privacy claims are essentially meaningless. *Swain, supra,* 99 Cal.App.4th 1, 8.

### B.   BIG 5 ERRS -- A GROUNDLESS CLAIM IS NOT ALWAYS A POTENTIALLY COVERED CLAIM.

Although the Big 5's Opposition brief as to Zurich was silent on the *Folgelstrom* holding, Big 5 inserted a single argument on this decision into its Statement of Genuine Disputes. [Dkt. 45][4] It cited *Los Osos Community Services District v. American Alternative Insurance Corporation,* 585  F.Supp.2d 1195 (2008), for the premise that the duty to defend extends to "groundless, frivolous, false and fraudulent claims asserted against an insured." This is not always so and

---

[4] Zurich has submitted Objections and Request to Strike the extensive 10 pages of legal argument in Big 5's Statement of Genuine Disputes [Dkt. 45]. This section conflicts with the Court's Standing Order and constitutes a second, unpermitted Memorandum of Points and Authorities since it brings up new legal arguments not made in Big 5' Opposition Memorandum. [Dkt. 43]

539553.1  465.30770

the *Los Osos* Court did not even discuss the issue.

According to the Court of Appeal in *Gunderson v. Fire Insurance Exchange,* 37 Cal.App.4th 1106, 1114 (1995),  the duty to defend a lawsuit which raises a *possibility* of liability, but is eventually shown to be groundless, does not equate with a duty to defend a lawsuit which raises *no* potential liability.  **"The 'groundless, false or fraudulent' clause ... does not extend the obligation to defend without limits; it includes only defense to those actions of the nature and kind covered by the policy."**  *Nichols v. Great American Ins. Co.*, 169 Cal.App.3d 766, 776-777 (1985), citing *Gray v. Zurich,* 65 Cal.2d 263, 274 (emphasis added.) "The rule is settled that an insurer is under a duty to defend a claim whenever the allegations of a complaint would support a recovery upon a risk covered by the policy." *Hogan v. Midland Nat'l. Ins. Co.,* 3 Cal.3d 553, 563 (1970).

The N*ichols* decision is instructive here.  There, *Nichols* plaintiffs conceded there was no possibility of indemnity under their Midland insurance policy. However, they strongly asserted the "duty to defend" clause was broader than the indemnity provision. *Id.* at 776. The *Nichols* Court agreed as a general proposition. Yet, the Court noted that was not a rule without exceptions (even in the older CGL policies where the duty to defend existed if "any of the allegations of the suit are groundless, false or fraudulent, ...")[5]  The Court opined that a defense must be provided in certain circumstances even though it is ultimately determined that no liability exists. It ruled the "groundless, false or fraudulent" defense obligation inapplicable for the action against *Nichols*; since there was no potential for liability coverage under the homeowner's policy, there was no duty to defend.  *Id.* at 777.

Couch on Insurance, Third Edition, § 200:8. recognized the same principle: However, an insurance policy that requires an insurer to provide a defense against potentially groundless, false or fraudulent suits does not expand the insurer's duty outside the scope of the liability policy:

---

[5] This phrase does not exist in the Zurich policies issued between 2007-2010.

CV 12-3699-DMG (MANx)

Selman Breitman LLP
ATTORNEYS AT LAW

539553.1   465.30770

although an insurer is obligated to defend all suits against the insured, even if groundless, false, or fraudulent, the insurer is not bound to defend a suit based on a claim outside the coverage of the policy.

There are certain insurance policies which contain a provision stating that the carrier will defend "groundless, false or fraudulent" claims.  But, even where that promise is explicitly made, such provisions must still be  interpreted in light of all the coverage provisions. *Nichols, supra*, 169 Cal.App. 3d at 776-77. For example, where indemnity is limited to injury or damage "to which this insurance applies," the duty to defend is also limited. Even if Zurich's policies had a false claim provision, which they do not,  Zurich would not be obligated to defend these actions: 1) there can be no liability of Big 5 as a matter of law; 2) no damages can exist; and 3) the claims are excluded.

The distinctive and significant reason which prevents the actions against Big 5 from falling into the "frivolous/groundless" category is the absolute certainty of the liability bar for Big 5 as a matter of law.  In contrast, the carrier in *Garriott Crop Dusting v. Superior Court*, 221 Cal.App.3d 783 (1990), asserted a liability defense on the statute of limitations as a reason that its coverage did not attach.  The *Garriott* Court refuted that contention by noting that an equitable tolling could render that defense inoperable.  Thus, it held,

> Effectiveness of a statute of limitations is not a certainty, however; equity may prohibit Garriott from effectively raising the statute of limitations defense. [citation omitted] Thus this defense is not a certainty but a mere potentiality, and **the duty to initially defend Garriott exists regardless of potentially meritorious defenses** to the City's claims. *Id.* at 796.

Under the governing mandate by a California Court of Appeal in *Folgelstrom,* Big 5 can have no liability for privacy invasion claims based on Song Beverly conduct as a matter of law. This is not a "potentially meritorious defense", it

539553.1  465.30770

Selman Breitman LLP
ATTORNEYS AT LAW

1   is a legal certainty.  The potential for coverage is nonexistent as well as excluded.

2        Even more instructive is the holding in *Venoco, Inc. v. Gulf Underwriters Ins.*

3   *Co.,* 175 Cal. App. 4th 750 (2009), where the Court interpreted an insurance policy

4   that contained a duty to defend a false claims provision. The *Venoco* Court

5   recognized that it "must resolve uncertainties in favor of the insured", and cited

6   *Gray v. Zurich Ins. Co.*  Nonetheless, the Court reviewed the entire policy, not just

7   one phrase:

8        "… where the language of the provision is clear and limited, the courts

9        may not expand it beyond its terms. …Here, as in *Gray*, the duty to

10       defend groundless actions applies only to claims covered by the policy.

11       The phrase "to which this insurance applies " is not ambiguous. This

12       qualified provision is not an agreement to defend all suits or to defend

13       actions that fall outside the coverage provisions. *Venoco, supra,* 175

14       Cal.App.4th at 765.

15       This Big 5 matter is governed by the *Venoco* decision where the court

16   recognized that the defense obligation parameters do not outweigh other relevant

17   provisions and even exclusions. The *Veneco* court refused to rewrite the policy;

18   instead it enforced the pollution exclusion finding no potential for coverage. *Id.* This

19   Court should follow suit; despite the groundless nature of these claims, they cannot

20   present potentially covered damages and fall outside the policy provisions.

### C.   BIG 5'S RELIANCE ON AN INAPPLICABLE SLIP OPINION IN THE *TWIN STAR* MATTER IS MISPLACED.

23       Big 5's reliance on *Twin Star Ventures, Inc. v. Universal Underwriters*

24   *Insurance Company, Inc.*, 2012 WL 948842 (N.D. Cal. 2012), is misplaced for

25   several reasons.  First, in *Twin Star*, Larry Jarman filed suit against his former

26   employer, *Twin Star*.  *Twin Star* was insured by Universal under a policy with

27   significantly different and broader policy terms which covered "all sums the Insured

28   legally must pay and Damages because of Injury…" *Id.* at *3. Zurich covers "those

539553.1  465.30770

Selman Breitman LLP
ATTORNEYS AT LAW

1  sums that the insured becomes legally obligated to pay as damages because of

2  'personal and advertising injury'…" The latter phrase is far less broadly construed in

3  California than the "all sums" phrase. *Armstrong World Industries, Inc. v. Aetna*

4  *Casualty & Surety Co.,* 45 Cal.App.4th 1, 57 (1993).

5      Also, in *Twin Star*, the Universal term "Injury" had six definitions, of which

6  one is relevant here – "common law claims for invasion of privacy." *Twin Star,*

7  *supra,* 2012 WL 948842 at *3.  Zurich's definition requires more than just a "claim

8  for invasion of privacy", since such invasion must include a "publication of

9  material". (Jt. Appx., Exhibits 1, 2, 3 [Zurich policies]; Pocaterra Dec., Ex. C1 and C2.)

10  Moreover, the Universal statutory violation exclusion at issue in *Twin Star* was very

11  basic with little specification, excluding "Injury when a claim for invasion of the

12  right of privacy is a statutory violation." *Id.* at *3.  In contrast, Zurich's exclusion

13  clarifies its scope and contains the broadest of phrases barring any claim "arising

14  directly or indirectly out of any act or omission that violates or is alleged to violate

15  ….any statute …that prohibits or limits the ….transmitting, communicating or

16  distribution of material or information." (emphasis added). (Jt. Appx., Exhibit 1;

17  Pocaterra Dec., Ex. A1.)

18      Further, the *Galvani, Swain,* and *Upper Deck* guideline to focus on the "facts"

19  is instructional here when reviewing the distinguishing points in the *Twin Star* case.

20  Equally important is the divergent policy language since the black letter rule for

21  determination of coverage requires comparison of the allegations in the complaint

22  with the provisions in the insurance policy. *Montrose Chemical Corp. v. Superior*

23  *Court,* 6 Cal.4th 287, 295 (1993).  The Jarman complaint against *Twin Star* asserted

24  seventeen causes of action, including a cause of action for common law invasion of

25  privacy which alleged that *Twin Star* taped Jarman's phone calls at work and then

26  listened to them.  Using the Universal policy's general definition of a claim for

27  invasion of privacy, the *Twin Star* court opined ".. the test is whether Jarman's

28  allegations raised a 'potential for coverage,' . . . given that, under California law, the

common law tort of invasion of privacy 'encompasses unwarranted sensory intrusions such as eavesdropping and wiretapping.'" *Twin Star, supra,* 2012 WL 948842 at *4 (citations omitted).  The *Twin Star* Court found potential coverage and under the Universal policy's definition, the court was correct.  However, that claim against Jarman would never have raised a potential for coverage under the Zurich policies' privacy invasion definition because merely listening to taped conversation does not constitute "publication" as that term is generally defined in California law.  Again, comparison of the **facts** alleged with the policy provisions demonstrates the differences inherent between *Twin Star* and the complaints against Big 5.

Additionally, the *Twin Star* Court refused to apply Universal's statutory violation exclusion because it deemed that the complaint against Jarman could have been amended to state a different type of privacy claim. *Id.* at *4. In the present case, there can be no amendment to state a viable cause of action – invasion of privacy can **never** be asserted on the basis of the Song Beverly Act **as a matter of law** under the *Folgelstrom* decision.  There can be no covered damages.

Finally, in *Twin Star*, the court reasoned that previous California precedent found a wiretapping allegation sufficient to maintain a cause of action for the tort of invasion of privacy. *Shulman v. Group W Productions, Inc.* (1998) 18 Cal.4th 200, 231 *citing* Rest.2d Torts, § 652B, com. b., pp. 378–379.  In contrast here, no matter whether Big 5 requested ZIP Codes, recorded ZIP Codes, used ZIP Codes, or even "published" ZIP Codes, California precedent mandates that plaintiffs can never maintain a cause of action against Big 5 for either common law or constitutional invasion of privacy.  Ergo, *Twin Star* is entirely distinguishable from the present case. In *Twin Star*, a potential remained that plaintiff could amend into pleading a potentially covered invasion of privacy count. In the matter at bar, all liability against Big 5 for any purported invasion of privacy related to ZIP Code collection conduct is barred as a matter of law; thus, there can be no potentially covered claim.

/ / /

539553.1  465.30770

**D.   TWISTING RESERVATIONS OF RIGHTS INTO COVERAGE "ADMISSIONS" IS ERRONEOUS AND UNAVAILING.**

Finally, Big 5 completely misleads the court by repeatedly stating that "Although Zurich 'reserved its rights' to conclusively prove no coverage exists or to possibly avoid indemnity liability for judgments, Zurich has admitted the existence of a 'potential' for coverage . . ." (Opp. p. 10:3-6.)  This is just not so!  Under California law, agreeing to defend under a complete reservation of rights to withdraw or seek full reimbursement simply does not constitute such an admission. That would defeat the very purpose of a reservation of rights which preserves a carrier's right to deny coverage entirely. Zurich never "agreed" that coverage was potentially present, but did not move to file an action either.  California law requires that an insurance carrier place the insured's interests in an equal plane with its own. *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 818–819 (1979).  Therefore, a carrier is dissuaded from prematurely seeking a coverage declaration, and may delay filing such an action,  if it could create prejudice to the insured. *Montrose Chemical Corp. v. Superior Court*, 25 Cal.App.4th 902, 910 (1994).

For each Song Beverly Action where Zurich agreed to participate in Big 5's defense, a complete reservation of rights was asserted. (See Jt. Appx., Exs. 20, 21, 22, 23 and 44).  These rights included, but were not limited to, the right to partial reimbursement and the right to full recovery.  For example, the March 3, 2008 letter to Big 5 regarding the *Zimerman* claim stated:

> Zurich American's funding is subject to a full reservation of rights.  In the event that the <u>Zimerman </u>Lawsuit is ultimately determined to present a mixture of covered and noncovered claims, Zurich American's reservation includes, but is not limited to, the right to recoup payments attributable to the noncovered claims. Zurich American's reservation also included, but is not limited to, the right to recover payments if it is ultimately determined as a matter of law that

CV 12-3699-DMG (MANx)

Selman Breitman LLP
ATTORNEYS AT LAW

539553.1  465.30770

there was no possibility of coverage. (Jt. Appx., Ex.20, p. 13 of 14)
Every other reservation of rights letter to Big 5 contained a virtually identical set of
reservations. (Jt. Appx., Ex. 21, p. 12 of 13;  Ex. 22, p. 10 of 11; Ex. 23, p. 10 of 11;
and Ex. 44, p.11 of 12)  Zurich denied coverage for the remaining actions.

California law permits an insurer to raise its own noncoverage defense after it
has undertaken the insured's defense if it has adequately reserved its right to assert
the defense at a later time. *Gray v. Zurich Insurance Co.,* 65 Cal.2d 263, 279 (1966);
*St. Paul Mercury Ins. Co. v. Ralee Engineering Co.*, 804 F.2d 520, 522 (9th Cir.
1986).  In fact, even after a judgment has been rendered against an insured, an
insurance carrier may decline coverage if the carrier has properly reserved its rights.
"In any event, if the insurer adequately reserves its right to assert the noncoverage
defense later, it will not be bound by the judgment."  *Gray v. Zurich, supra,* 65
Cal.2d at 279.  Big 5's nonsensical contentions turn insurance law on its head – in
fact, if such circumstances were true, virtually all claims would be covered no
matter what the insurance contract stated and no matter what response a carrier had
to a tender.

"The law permits an insurance company to condition an acceptance of defense
on a later right to contest coverage or seek reimbursement of defense costs." *Frank
& Freedus v. Allstate,* 45 Cal.App.4th 461, 474 (1996). The law also allows a carrier
to reserve its rights to full recovery of a settlement sum. *Blue Ridge Co. v.
Jacobsen,* 25 Cal.4th 489, 497-98 (2001).[6] Big 5's assertion that Zurich somehow
admitted a potential for coverage by accepting a defense obligation under a full
reservation of its rights plainly defies both law and logic.

## III.   BIG 5 CANNOT IGNORE THE ZURICH STATUTORY VIOLATIONS EXCLUSIONS WHICH COMPLETELY BAR COVERAGE.

### A.   BIG 5 ADMITS IT DISSEMINATED PLAINTIFFS' ZIP CODES.

Viewing the **facts and allegations** by the underlying Song Beverly plaintiffs,

[6] Other requirements in this decision are not applicable here. (See, Reply, p.20)

539553.1  465.30770

there is no potential for coverage based on the Statutory Violations Exclusions in the Zurich policies.  In plain and clear language, all three Zurich Statutory Violations Exclusions bar coverage for:

> "Personal and Advertising Injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate: …
>
> c.  Any statute, ordinance or regulation . . . that prohibits or limits the sending, transmitting, communicating or distribution of material or information.[SUF, No. 21, 22][7]

Big 5 admits that "Twelve underlying class action lawsuits allege" that Big 5 "**disseminated**" the underlying claimants' ZIP codes.  (Big 5 Opp., p. 1:9-11).  The Zurich Statutory Violations Exclusions bar coverage for "alleged violations" of a "statute" that prohibits "**transmitting**" or "**communicating**" "information."  Big 5 also asserts that the Song Beverly plaintiffs pled a "publication" as that policy term is used in "publication of material … that violates a person's privacy." (Big 5's Hartford Opp., pp. 10-11)  It specifically outlines certain "sharing" and "dissemination" "to others" allegations in the *Nelson, Motta, Mossler, Holmes, Weiner, Smith* and *Coordination Proceeding* Complaints. (*Id.*)

In Merriam Webster Online Thesaurus, *available at* www.merriam-webster.com/thesaurus/disseminate, the term "disseminate" is synonymous to both "transmit" and "communicate".  Courts will not adopt a strained or absurd interpretation of an insurance policy to create an ambiguity where none exists. *Qualcomm, Inc. v. Certain Underwriters at Lloyd's, London*, 161 Cal.App.4th 184 (2008).  Here, the Statutory Violations Exclusions in the Zurich policies explicitly and unambiguously bar Big 5's claim for coverage in the underlying Song Beverly Actions and this Court should not re-write a clear and understandable exclusion.

---

[7] The exclusion in the 2009-2010 policy utilizes more than these four types of conduct to describe the barred activities, but all three exclusions use the terms "sending, transmitting, communicating or distribution …" [SUF, Nos. 21 & 22]

14

Selman Breitman LLP
ATTORNEYS AT LAW

*Rosen v. State Farm General Ins. Co.*, 30 Cal.4th 1070, 1073 (2003).

Additionally, the Song Beverly Actions allege that Big 5 was obtaining and **communicating** "personal identification information" – ZIP Codes. The Merriam Webster Dictionary definition of "communication", or communicating, is "a process by which information is exchanged between individuals through a common system of symbols, signs, or behavior." (Webster's New Ninth New Collegiate Dict. (1st ed. 1985) p.266)  Big 5 allegedly requested that its customers exchange personal identification information during the process of a credit card transaction – this can be nothing but "communication".

In order to attempt to confuse the court, Big 5 states that Zurich's exclusion "only applies to requesting and recording information, not selling or distributing information." (Big 5 Opp., p. 14:19-21).  This contention is easily dismissed by Big 5's own arguments.  Repeatedly, Big 5 concedes that the underlying plaintiffs alleged that it "disseminated" their ZIP codes.  (Big 5 Opp., p. 1:9-11).  In addition, in opposition to Hartford's motion, Big 5 states:

> [T]he Underlying suits allege Big 5's "publication" of the claimants' ZIP codes . . . The terms "to another," "marketing," and **disseminated**" all connote sufficiently broad distribution to satisfy any reasonable definition of "publication" . . . The insured's "publication" of the claimants' confidential information to anyone else suffices . . . Big 5 is alleged to have distributed private information to others besides claimants, as well as "**disseminated**" this data in "marketing." (Big 5 Opp. to Hartford Motion, p. 10:23-11:25.)

Nowhere in the Statutory Violations Exclusions to the Zurich policies does it state that the exclusion is limited to requesting and recording information.  The Zurich policies unambiguously bar coverage for "transmitting" information.  When

Selman Breitman LLP
ATTORNEYS AT LAW

interpreting an insurance policy provision, courts must give its terms their ordinary and popular sense. *Mirpad, LLC v. Cal. Ins. Guarantee Assn.*, 132 Cal.App.4th 1058 (2005). In Roget's Thesaurus, a synonym for the word "transmit" is "disseminate." Random House Roget's Thesaurus 633 (1996). Big 5 admits that the underlying plaintiffs allege Big 5 "disseminated" their ZIP codes through its Information Capture Policy. The term "disseminate" is synonymous to "transmit."

Moreover, Big 5 cannot have it both ways—arguing transmission of information in opposition to Hartford's motion in order prove the "publication" element—and then purporting that it only sold and distributed information in the Zurich motion. This splitting of hairs does not create a "slight crack" in the Zurich Statutory Violations Exclusion. (Big 5 Opp. p. 11:16-17). Without a doubt, the Zurich policy exclusion bars coverage for Big 5's dissemination, communication, and/or transmission of the underlying plaintiffs' ZIP Codes. The underlying **facts/allegations**, taken as a whole, do not fall within coverage under the Zurich policies because plaintiffs allege Big 5 "transmitted" their ZIP Codes. If there was "publication of material" (ZIP Codes) by Big 5, as it asserts, which allegedly violated the Song Beverly Act, as plaintiffs assert, then there had to be conduct which falls within the bar of Zurich's Statutory Violations Exclusions.

## B.    BIG 5'S LEGAL PRECEDENT IS INAPPOSITE.

Big 5 relies on *Axiom Insurance Managers LLC v. Capital Specialty Insurance Corporation*, 2012 WL 2424606 (N.D. Ill. 2012), but this case is distinguishable. *Axiom* worked with retail insurance brokers to place coverage for insureds. Indemnity was a competitor of *Axiom*. Indemnity sued *Axiom* alleging several causes of action including violation of the Texas Insurance Code and defamation. Indemnity claimed *Axiom* made false statements about Indemnity's financial condition and those statements were intentionally passed on to customers to benefit *Axiom* and harm Indemnity. Indemnity tendered its defense to *Capital*. In finding *Capital* had a duty to defend *Axiom*, the Illinois court reasoned: "Legal

CV 12-3699-DMG (MANx)

539553.1  465.30770

labels in complaints are often incomplete or missing altogether . . . 'what is important is not the legal label that plaintiff attaches to the defendant's (that is, the insured's) conduct, but whether the conduct as alleged in the complaint is at least arguably within one or more of the categories of wrongdoing that the policy covers." *Id.* at *5. The court found that Indemnity could maintain a cause of action for defamation against *Axiom* because the "defamation claim did not require proof that *Axiom* knew the statements about Indemnity's financial condition were false." *Id.* at *7. While the court found that the Statutory Violations Exclusion to the *Capital* policy would bar coverage for the Insurance Code statutory violations, because the defamation claim was viable, *Capital* had a duty to defend *Axiom.*

*Axiom* is distinguishable from the present case because the underlying plaintiffs have **absolutely no viable cause of action** against Big 5, other than its statutory claim under the Song Beverly Act. As annunciated in the *Folgelstrom* ruling, the only cause of action the underlying plaintiffs can even assert is a cause of action under the Song Beverly Act. Even if this were not the case, because all of the causes of action in the underlying Song Beverly Actions arise "directly or indirectly" out of conduct which allegedly violates a statute limiting the transmitting of information, the Zurich Statutory Violations Exclusions preclude all coverage.

## IV.   CIVIL PENALTIES AND ATTORNEY FEE'S ARE *NOT* DAMAGES.

Big 5 does not dispute that the "Zurich Policies promise 'to pay those sums that the insured becomes obligated to pay **as damages** because of 'personal and advertising injury.'" (Big 5 Opp. p. 16:7-8). Nor does Big 5 challenge that there are two ways Big 5 might become obligated to pay monetary sums under the Song Beverly claims: civil penalties awarded to the claimants and attorney fee awards. (Big 5 Opp. p. 17:12-13). However, Big 5 refuses to acknowledge that California courts mandate "damages" be a payment to compensate a party for injuries suffered. *Jaffe v. Cranford Ins. Co.,* 168 Cal. App.3d 930, 935 (1985). This does not include civil penalties. *Bullock v. Maryland Cas. Co.,* 85 Cal. App.2d 219, 227 (2001).

In an attempt to bring civil penalties within the realm of "damages" under the Zurich policies, Big 5 stretches the facts of two California Supreme Court cases regarding environmental clean up costs to apply to the case at hand: (1) *AIU Insurance Company v. Superior Court,* 51 Cal.3d 807 (1990); and (2) *Certain Underwriters v. Superior Court* ("*Powerine I*"), 24 Cal.4th 945 (2001). However, the facts of *AIU* and *Powerine I* are distinctly different. *AIU* dealt with whether the costs of abating and cleaning up hazardous waste and reimbursing governmental agencies for cleanup efforts constituted a "legal obligation" of an insured, within meaning of CGL policies under Coverage A. *Powerine I* addressed whether an actual lawsuit must be filed before the insured is "legally obligated to pay" costs associated with the clean up of a site. Neither of these cases addressed the situation in the present case, whether civil penalties and/or attorney's fees awarded under the Song Beverly Act are "damages" within an insurance policy. Neither is applicable to this matter which arises under Coverage B. in an entirely different context.

Secondly, as to the civil penalties for which Big 5 seeks coverage under the Zurich policies, the recent decision of *Health Net, Inc. v. RLI Insurance Company* 206 Cal.App.4th 232 (2012), is instructive. In *Health Net*, the plaintiffs sought coverage for a "civil monetary penalty" under 29 U.S.C. section 1132(c) of up to $100 per day for a violation of the statute. In the opinion, Justice Crosky opined that "a long line of California cases" hold that statutes providing for "'recovery of statutory damages calculated without reference to actual harm' are, in fact, penal provisions." *Id.* at 256, n. 31 [citations omitted]. Because of the penal nature of such civil monetary penalties, Justice Crosky reasoned that these civil penalties were not covered under an insurance policy. *Id.* at 255-56. Similarly, in *Standard Mutual Insurance Company v. Lay*, -- N.E.2d --, 2012 WL 1377599 (Ill. App. 2012), the Appellate Court of Illinois held that a statutory penalty of $500 for each fax sent in violation of the Telephone Consumer Protection Act (47 U.S.C. section 227), was in the nature of punitive damages, and thus, not insurable. Applying the reasoning of

Selman Breitman LLP
ATTORNEYS AT LAW

Selman Breitman LLP
ATTORNEYS AT LAW

*Health Net* and *Standard* to the case at hand, the civil penalties sought under the Song Beverly Act cannot be covered under the Zurich policies because such civil penalties are penal and punitive in nature.  In addition, they are uncovered costs awarded for Big 5's lack of proper compliance with the law.  *Bullock v. Maryland, supra,* 85 Cal. App. 4th at 1446-1447.

With respect to the attorney's fees that may be awarded under the Song Beverly Act, Big 5's statement that "*Cutler-Orosi* is no longer good law" and is "superseded by *Powerine*" is simply wrong.  (Big 5 Opp. p. 21:6-7).  *Powerine I, supra,* never even addressed *Cutler-Orosi Unified Sch. Dist. v. Tulare Cty. Sch.,* 31 Cal.App.4th 617 (1994), and rather, *Powerine I* dealt with whether there must be an actual lawsuit (which is obviously not at issue here).  In fact, the recent *Health Net* decision cited the *Cutler-Orosi* decision with favor for the proposition that "An award of attorney fees does not compensate a plaintiff for the injury that brought the plaintiff into court; **attorney fees are inconsistent with the meaning of the word "Damages" in the ordinary and popular sense."**  *Health Net, supra,* 206 Cal.App.4th at 257.  Accordingly, *Cutler-Orosi* remains good law, and its reasoning squarely applies to preclude coverage for Big 5 under the Zurich policies for any attorney's fees awarded pursuant to the Song Beverly Act.

Finally, Big 5 states that "Even if the Song Beverly claims themselves were excluded by the Policies, the 'invasion of privacy' claims seeking money damages remain and are potentially covered."  (Big 5 Opp. p. 18:18-20).  Based on the reasoning of *Folgelstrom, supra,* at 992-993, the underlying plaintiffs cannot even plead invasion of privacy for requesting a ZIP Code in connection with a credit card transaction.  As such, Big 5 will never be liable to pay any "damages" in connection with an invasion of privacy claim; the potential for coverage disappears *Id.*  Further, it is Zurich's position that all claims arising out of the alleged violations of the Song Beverly Act are excluded under the Zurich policies.

/ / /

Selman Breitman LLP
ATTORNEYS AT LAW

**V.      _BLUE RIDGE_ IS INAPPLICABLE; ZURICH IS ENTITLED TO
EITHER A FULL REIMBURSEMENT OF DEFENSE AND
SETTLEMENT PAYMENTS OR THE UNCOVERED PORTIONS.**

In order to circumvent the well-settled decision of _Scottsdale Insurance Company v. MV Transportation_, 36 Cal.4th 643 (2005), Big 5 attempts to apply the facts of another decision, _Blue Ridge Insurance Company v. Jacobsen,_ 25 Cal.4th 489 (2001).  Stated plainly, the _Blue Ridge_ decision is just not all fours with the case at hand.  _Blue Ridge_ annunciated three prerequisites for an insurer seeking reimbursement from an insured of settlement funds for an uncovered claim. Here, Big 5 claims that because Zurich did not utilize the _Blue Ridge_ requirements, Zurich is barred from recovery of its settlement payment in the _Zimerman_ Action.  False.

Notably, Big 5 fails to set out any facts of the _Blue Ridge_ case.  _Blue Ridge_ deals with a situation where the insurer wants to settle a case, but the insured is against the settlement.  Under that scenario, to obtain reimbursement, the carrier must follow three steps: 1) written and timely reservation of rights; 2) written notice of insurer's intent to accept settlement offer; and 3) written offer for insured to assume its own defense if insured disagrees.  _Blue Ridge, supra_, 25 Cal.4th at 502. Big 5 leaves out one major point here – **Big 5 and Zurich both agreed** to the _Zimerman_ settlement.  (Decl. of Maria Piazza, ¶¶ 4-7)  Even Big 5 did not assert in its Opposition that it objected to the _Zimerman_ settlement, because it did not.

Therefore, the _Blue Ridge_ requirements were not necessary for Zurich to preserve its rights to settlement funds recovery for _Zimerman_ – the March 3, 2008 reservation of rights letter served that purpose as quoted above. (See pg. 13, _supra_). The _Blue Ridge_ ruling does not apply to the case at hand.  Rather, it is the decision in _MV Transportation_ that controls, and Zurich is entitled to reimbursement of all defense expenses and settlement monies expended for these non-covered claims.

In the alternative, Zurich  made a motion to obtain reimbursement of the uncovered portions of the defense expenses under _Buss v. Superior Ct.,_ 16 Cal.4th 35

CV 12-3699-DMG (MANx)

Selman Breitman LLP
ATTORNEYS AT LAW

(1997).   Without a doubt, the law in California as to reimbursement of uncovered defense fees is controlled by this California Supreme Court mandate. The *Buss* Court unequivocally held, "Not only is it good law that the insurer may seek reimbursement for defense costs as to the claims that are not even potentially covered, but it also makes good sense." *Id.* at 778.

To rebut the *Buss* holding in its Statement of Genuine Disputes, but not in its Opposition brief, Big 5 relied on a federal district court decision decided three years before *Buss* was issued, *Raychem Corp. v. Federal Insurance Company*, 853 F.Supp. 1170 (N.D. Cal. 1994).  This is yet another example of Big 5 misleading the court.  The *Raychem* Court merely found that the insurer had failed to present evidence and raise a genuine issue as to the covered versus non-covered defense costs claimed by the insured.  The insured, on the other hand, had submitted a declaration setting forth the reason the fees were incurred for covered claims.  Based on the insurer's lack of evidence, the court refused to allocate covered and non-covered defense fees.  *Id.* at 1183-84.  Here, the parties have agreed to forego briefing on the amounts of defense fees and claims of reasonableness in the pending cross-motions. [Plaintiff's Notice of Motion, p. 1, n. 1 (Dkt. 16)]

Accordingly, the reasoning of *Raychem* is not only inapplicable here, but it is also superseded by the California Supreme Court precedent in the *Buss* decision.  Based on the reasoning of *Buss,* Zurich is entitled to reimbursement of its non-covered defense fees and seeks a court declaration in that regard as an alternative to an order granting full recovery of all defense costs and settlement sums.

## VI.   BIG 5'S CLAIMS THAT ZURICH "ADMITS" CERTAIN ALLEGATIONS IN ITS ANSWER ARE WITHOUT MERIT

Big 5's argument that Zurich made admissions of potential coverage in its Answer to Big 5's Complaint is both legally and factually incorrect.  First, Zurich's responses constitute legally sufficient denials.  Rule 8 (b)(4) of the Federal Rules of Civil Procedure allows a party to deny part of an allegation:

> A party that intends in good faith to deny only part of an allegation
> must admit the part that is true and deny the rest. Rule 8 (b)(4)

Zurich's Answer does precisely that. Given the repetitive allegations by Big 5 setting out only selected paragraphs of the Song Beverly Act Complaints and then mischaracterizing their content with a biased and "legally loaded summary" of certain underlying allegations, Zurich was required to admit part and deny part of the allegations. An example of this circumstance is found in the Big 5 Complaint at paragraphs 19 and 20 consisting of "selected" text from the *Zimerman* complaint (¶19), followed by a biased legal conclusion about the type of damages which plaintiff *Zimerman* sought. (¶20). (Jt. Appx., Ex. 46, ¶¶ 19-20, pp. 10-11 of 51). Zurich's response to paragraph 19 sets forth this express denial: "Further, to the extent that a response to said allegations in paragraph 19 is required, Zurich states that the *Zimerman* Complaint is the best evidence of its contents **and denies any of the allegations contained in paragraph 19** of Big 5's complaint to the extent that they are inconsistent therewith." (emphasis added) A virtually identical denial is also found in Zurich's Answer to all other similar paragraphs that Big 5 targets.

Several federal courts found that responses similar to Zurich's constitute sufficient denials, or did not justify deeming allegations as admitted. *Great West Life Assurance Company v. Levithan*, 834 F.Supp. 858, 856 (E.D. Pa. 1993) [Court refused to deem allegations admitted based on statements in an answer that "the writings speak for themselves" since the responses constituted "denials of the Plaintiff's characterization and representation of the writings"]; *Ojeda-Sanchez v. Bland*, 2010 WL 1838356, at * 2 (S.D. Ga. 2010) [Court refused to deem allegations admitted pursuant to Rule 8 where defendants responded in their answer "[t]he contracts speak for themselves and the allegations of Paragraph 25 are denied to the extent they conflict with the contracts referred to herein"].

In *Barnes v. AT & T v. Pension Benefit Plan-Nonbargained Program*, 718 F.Supp.2d 1167 (N.D. Ca. 2010), the Court refused to deem allegations as admitted

where the defendant responded to certain allegations by stating that alleged documents "speak for themselves," and then denied the allegations to the extent they were inconsistent with the documents: "In many of these paragraphs, AT & T [defendant] is simply admitting the factual allegations pertaining to the referenced documents to the extent that the documents actually says [sic] what Barnes [plaintiff] alleges they says [sic], and denying the factual allegations to the extent that they are contradicted by the actual documents." *Id.* at 1175. See also, *Scherer v. Equitable Life Assurance Society of the United States* 2004 WL 2101932, at *11-14 (S.D. N.Y. 2004) [Court refused to deem allegations as admitted at the summary judgment stage where there was no "wholesale refusal" to respond to complaint allegations].

Furthermore, Big 5's case citations are inapposite. They neither involve deemed admissions at the summary judgment phase of a case, nor do they relate to the type of denials contained in Zurich's Answer. For example, in *Farrell v. Pike* 342 F.Supp.2d 433 (M.D. N. C. 2004), defendants stated in their answer that no response was required for allegations which were legal conclusions. The Court refused to strike the answer, finding the purported violation of Rule 8 not sufficiently "egregious." *Id.* at 441. Zurich's responses went well beyond the responses in *Farrell v. Pike*.

No precedent cited by Big 5 involves a response similar to Zurich's targeted responses. Moreover, even the motion to strike cases cited by Big 5 demonstrate that courts provided defendants with a second opportunity to re-plead responses; no case cited deemed allegations admitted at the summary judgment stage. The Central District of California case cited by Big 5, *Reyes v. Downey Savings And Loan Association*, 541 F.Supp.2d 1108 (C.D. Ca. 2008), related to a motion to dismiss pursuant to Rule 12(b)(6); therefore, it is relevant only to the extent it discusses the general rules of a plaintiff's pleading pursuant to Rule 8.

Accordingly, Big 5 mischaracterizes the nature and substance of the Zurich

Selman Breitman LLP
ATTORNEYS AT LAW

CV 12-3699-DMG (MANx)

responses and leaps to an entirely unsupportable conclusion.  Since Zurich properly denied a portion of the allegations in every paragraph, there are no admissions.

## VII.  CONCLUSION

Without question, when looking to the facts alleged, none of the causes of action or damages asserted against Big 5 are potentially or actually covered under the Zurich policies and the Statutory Violations Exclusions bar coverage for the underlying plaintiffs' claims.  There is no ambiguity in the Zurich policies; Big 5 has failed to argue any credible points to the contrary.  Therefore, this Court should grant Zurich's motion for summary judgment and order full reimbursement of the uncovered defense expenses and settlement sums; or, in the alternative, grant partial summary judgment and order that the uncovered defense expenses must be reimbursed.

DATED:  July 20, 2012            SELMAN BREITMAN LLP


                                 By:  /s/Jan Pocaterra
                                      ELDON S. EDSON
                                      JAN L. POCATERRA
                                      Attorneys for Defendant
                                      ZURICH AMERICAN INSURANCE COMPANY

Selman Breitman LLP
ATTORNEYS AT LAW

539553.1  465.30770

CV 12-3699-DMG (MANx)